FILED
Superior Court Of California,
Sacramento
Dennis Jones, Executive
Officer
08/11/2008
skyuingai
By_____, Deputy
Case Number:
34-2008-80000026-CU-WM-GDS

1  K. WILLIAM CURTIS
   Chief Counsel, Bar No. 095753
2  WARREN C. STRACENER
   Deputy Chief Counsel, Bar No. 127921
3  LINDA A. MAYHEW
   Assistant Chief Counsel, Bar No. 155049
4  CHRISTOPHER E. THOMAS
   Labor Relations Counsel, Bar No. 186075
5  Department of Personnel Administration
   State of California
6  1515 S Street, North Building, Suite 400
   Sacramento, CA 95811-7258
7  Telephone: (916) 324-0512
   Facsimile: (916) 323-4723
8
9  Attorneys for Petitioner, DAVE GILB, as Director of the
   California Department of Personnel Administration and the
   Department of Personnel Administration
10

11            SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                       COUNTY OF SACRAMENTO

13
   DAVID GILB, CALIFORNIA DEPARTMENT )   Case No.
14 OF PERSONNEL ADMINISTRATION,       )
                                      )   **DECLARATION OF JERRI JUDD IN**
15         Petitioners/Plaintiffs,    )   **SUPPORT OF PETITION FOR WRIT OF**
                                      )   **MANDATE (CCP § 1085); COMPLAINT**
16 v.                                 )   **FOR INJUNCTIVE AND DECLARATORY**
                                      )   **RELIEF**
17 JOHN CHIANG, sued herein in his official )
   capacity only, CALIFORNIA STATE    )
18 CONTROLLER'S OFFICE,               )   Date:
                                      )   Time:
19         Respondents/Defendants.    )   Dept:
                                      )   Trial Date:
20                                     )
                                      )   **Exempt from Fees**
21 _____ )   **(Gov. Code § 6103)**

22 I, JERRI JUDD, do hereby say and declare as follows:

23         1.      I am employed as the Personnel Program Manager in the Labor Relations Division

24 ("LRD") of the Department of Personnel Administration ("DPA"). I have served in this position

25 since 1981. My duties and responsibilities include the following activities: serving as DPA's

26 Statewide Layoff Coordinator and Statewide Salary and Leave Administrator.

27 ///

28 ///

                                        -1-

_____
DECLARATION OF JERRI JUDD

2. From 1979 until my move to DPA in 1981, I held a similar position with the State Personnel Board ("SPB") where I had substantially the same duties and responsibilities as I now have with DPA.

3. I came to DPA as part of the Governor's Reorganization Plan that created DPA in 1981.

4. Since its creation in 1981, DPA has issued documents known as pay letters. A pay letter is the historical administrative document issued by DPA and its predecessor SPB.

5. The purpose of a pay letter is to provide the State Controller with notice and instructions concerning the implementation of any changes to the salary of classifications and the impact on employee compensation, thus triggering the Controller's duty to perform his ministerial duties regarding the payment of employee salaries.

6. Once a pay letter is put together by DPA, it is normally sent over to the Controller in draft form. The Controller then reviews it and may suggest changes to it. The pay letter may be modified before it is officially released.

7. As part of my duties, I am the manager responsible for the issuance of pay letters as well as working with the Controller to implement the changes made by the pay letters.

8. On or about July 31, 2008, I received and reviewed a copy of the Governor's Executive Order S-09-08.

9. On or about August 5, 2008, in compliance with Executive Order S-09-08 and at the direction of Dave Gilb, Director of DPA, I prepared Pay Letter 08-23. (A true and correct copy of Pay Letter 08-23 is attached hereto as Exhibit A.)

10. On or about August 5, 2008, DPA sent Pay Letter 08-23 to State Controller John Chiang (Controller).

11. On or about August 7, 2008, at the direction of Dave Gilb, I drafted three additional draft pay letters. Each of these pay letters presents a different means of implementing Pay Letter 08-23. (True and accurate copies of the three draft pay letters dated August 7, 2008 are attached to the Declaration of Julie Chapman as Exhibits B, C, and D.)

/ / /

-2-

1      12.     On or about August 7, 2008, I, along with three other DPA representatives: Julie

2    Chapman, Deputy Director of Labor Relations (LRD), Bernice Torrey, Personnel Program Analyst

3    in the LRD and Theresa White, Staff Services Analyst of LRD, met with Representatives from the

4    Controller's office to discuss implementation of Pay Letter 08-23. I attended the meeting as a subject

5    matter expert to facilitate the discussion of three viable options for implementing Pay Letter 08-23.

6    Also present at the meeting were representatives from the Department of Finance (DOF), and the

7    Office of the State Chief of Information Officer (OCIO). During the meeting Julie Chapman and I

8    presented three options for implementing Pay Letter 08-23. We provided all attendees of the meeting

9    with copies of the draft pay letters, discussed above, corresponding to each of the three options we

10   presented.

11      13.     I believe each of the options presented are a viable means of implementing the

12   changes required by Executive Order S-09-08 and Pay Letter 08-23.

13      14.     The first option involved establishing pay differentials. Pay differentials represent pay

14   established for compensation, different than the regular monthly payroll payments that a particular

15   employee would otherwise receive. Specifically, the first option suggested establishing a pay

16   differential to reflect the minimum wage of $1,153 for Workweek Group 2 employees, $2,003 for

17   Workweek Group E employees; and $0.00 for Workweek Group SE employees. Next, a pay

18   differential would be established to minus out the minimum wage for these groups once the budget is

19   signed.

20      15.     I believe the first option is viable because we have successfully established 373 pay

21   differentials since 1981. Prior to 1981, the State had two pay differential established, one was for

22   bilingual pay and the other was for night shift. I have been responsible for the establishment of 373

23   pay differentials since 1981. During the personnel leave program I worked with the State

24   Controller's Office on the development of a pay differential to reduce employee's pay by one day in

25   an effort to save money. In exchange for the one day pay, employee's accrued an additional leave

26   day. The pay differential reduced employee's pay by 4.75% the equivalent to one day's pay based

27   on an average of all employees' salaries in State service. We still have such a pay differential in

28   place for the voluntary leave program where an employee's pay is reduced by up to two days for

-3-

1 additional leave days. The first option established a positive pay differential to pay minimum wage,

2 and once the budget is signed a negative pay differential would be established to off-set the positive

3 payment from the employee's master pay warrant.

4      16.    The second option presented suggested that the Controller change the salary ranges

5 for classes to the new minimum wage rates and then change employees to the minimum wage rate.

6      17.    I believe the second option is viable because we have reduced and added

7 compensation to salary ranges many times since 1981. I have drafted many pay letters that change

8 salary ranges of classes and then the salary for employees are adjusted appropriately. By reducing

9 the salary ranges to the minimum wage while there is no budget, the classification would reflect

10 minimum wage and then the employee's salary would be reduced to the minimum wage. Once the

11 budget is signed DPA would then request that the salary ranges be adjusted retroactive to the date we

12 reduced the salary ranges and employee's pay would be reinstated back to the salary rate received

13 prior to the minimum wage. We successfully achieved a similar process during the supervisor and

14 managerial reduction program when we reduced all supervisor and managerial classes by 5% and

15 then reinstated the ranges and the employee's salaries.

16      18.    The third option suggested adding an Alternate Range 9 to each class to reflect a

17 range which provided the minimum rate. The Controller would move employees, by a 335

18 transaction (Range Change), subject to minimum wage into the new alternate range. Those

19 employees not subject to the minimum wage based on an exemption to Executive Order S-09-08

20 would be retained in their current range. The 335 transaction would be voided, as of the effective

21 date of the original 335 transaction when the budget is signed.

22      19.    I believe the third option is viable because we would add an alternate range to all

23 classifications to reflect the minimum wage. All employees in classifications, regardless of what

24 range they currently are in, would move to the new Range 9 to reflect minimum range. Once the

25 budget is signed we would void out the range movement and the employees would automatically

26 return to the range and salary they received prior to the range movement to the minimum wage. We

27 have established alternate ranges for many purposes and they have been successful. We established

28 Alternate Range 285 in 2003 that adds ranges to classifications when excluded and rank and file

-4-

employee are in the same class. Rank and file employees are in the rank and file ranges and excluded employees are in the excluded ranges. If we negotiate salary range increases for rank and file employees that may be different than excluded employees we are able to pay employees in the class based on the negotiated increases. We have had these ranges in place since July 1, 2003.

20. During the August 7, 2008 meeting, the representatives from the Controller's Office did not make any suggestions or present any additional options that would assist them in complying with the California Supreme Court's decision in *White v. Davis*.

21. All state employees, except certain appointees and high level executives, received payment of their full salaries for the "July pay period" (July 1 through July 30.)

22. Only employees falling within the parameters of *White v. Davis* will receive a partial payment of their salaries for the "August pay period" (July 31 through August 31.)

23. This partial payment of wages is only a temporary condition. Once a budget is adopted, they will receive their full salaries including any unpaid wages due.

24. The Controller traditionally establishes a "cutoff" date after which no further payroll adjustments may be submitted for the current pay period.

25. The "cutoff" date for the current pay period is on or about August 21, 2008 with payday on August 29, 2008.

I have personal knowledge of the facts set forth herein and if called as a witness would testify competently thereto. I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed August 11, 2008, at Sacramento, California.

JERRI JUDD
Personnel Program Manager
Labor Relations Division
Department of Personnel Administration

-5-

DECLARATION OF JERRI JUDD

# EXHIBIT A

## DEPARTMENT OF PERSONNEL ADMINISTRATION
### SECTION I

## SUMMARY OF PROVISIONS CONCERNING THE PAYMENT OF SALARIES IN THE ABSENCE OF A STATE BUDGET
## LOCATED ON DPA'S PUBLIC WEB SITE

### This Pay Letter is pursuant to Executive Order S-09-08

**SPECIAL SALARY PAYMENT INSTRUCTION: (Effective 07/31/08)**

To comply with federal labor law and the California Supreme Court's decision in White v. Davis, in the absence of an approved state budget WWG 2, E, and SE classes shall be paid as follows:

**WWG 2: (Except for the departments and programs listed on Attachment A)**

$1,153 per month
$52.40 per day
$6.55 per hour

**WWG E: (Equivalent to $455.00 per week to meet FLSA requirements)**

$2,003 per month
$91.00 per day
$11.38 per hour

**WWG SE:**

0 per month
0 per day
0 per hour

**DOCUMENTATION:**

**Attachment A (Applies to WWG 2 Only)**

**BTH**
California Highway Patrol
Department of Transportation

**CDFA**
Agriculture Security and Emergency Response

**CDVA**
Whole Department

**CHHS**
Department of Developmental Services
Department of Mental Health

**Military**
Whole Department

**OES**
Whole Department

**Resources**
Department of Water Resources
Department of Forestry (CALFIRE)
Department of Parks and Recreation
California Conservation Corps
Office of Spill Prevention
Department of Fish and Game

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
K. William Curtis, Bar No. 095753
Department of Personnel Administration, State of California
1515 S Street, North Building, Suite 400
Sacramento, CA 95811-7258
TELEPHONE NO.: 916-324-0512    FAX NO. 916-323-4723
ATTORNEY FOR *(Name)*: Petitioner

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sacramento
STREET ADDRESS: 720 Ninth Street
MAILING ADDRESS:
CITY AND ZIP CODE: Sacramento 95814
BRANCH NAME:

CASE NAME:
Gilb v. Chiang

FILED *FOR COURT USE ONLY*
Superior Court Of California,
Sacramento
Dennis Jones, Executive
Officer
08/11/2008
skyulngai
By _____, Deputy
Case Number:
34-2008-80000026-CU-WM-GDS

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☑ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ☐ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):* 3
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date:
K. William Curtis
_____
(TYPE OR PRINT NAME)          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

FILED
Superior Court Of California,
Sacramento

Dennis Jones, Executive
Officer

08/11/2008

skyulngai

By_____, Deputy
Case Number:
34-2008-80000026-CU-WM-GDS

1   K. WILLIAM CURTIS
    Chief Counsel, Bar No. 095753
2   WARREN C. STRACENER
    Deputy Chief Counsel, Bar No. 127921
3   LINDA A. MAYHEW
    Assistant Chief Counsel, Bar No. 155049
4   CHRISTOPHER E. THOMAS
    Labor Relations Counsel, Bar No. 186075
5   Department of Personnel Administration
    State of California
6   1515 S Street, North Building, Suite 400
    Sacramento, CA 95811-7258
7   Telephone: (916) 324-0512
    Facsimile: (916) 323-4723
8
    Attorneys for Petitioner, DAVE GILB, as Director of the
9   California Department of Personnel Administration and the
    Department of Personnel Administration
10

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                        COUNTY OF SACRAMENTO

13
    DAVID GILB, CALIFORNIA DEPARTMENT )   Case No.
14  OF PERSONNEL ADMINISTRATION,      )
                                      )
15          Petitioners/Plaintiffs    )   **MEMORANDUM OF POINTS AND**
                                      )   **AUTHORITIES IN SUPPORT OF**
16     v.                             )   **PETITION FOR WRIT OF**
                                      )   **MANDATE(CCP § 1085); COMPLAINT**
17  JOHN CHIANG, sued herein in his official )   **FOR INJUNCTIVE AND DECLARATORY**
    capacity only, OFFICE OF THE STATE )   **RELIEF**
18  CONTROLLER,                       )
                                      )
19          Respondents/Defendants.   )
                                      )   Date:
20                                     )   Time:
                                      )   Dept:
21                                     )   Trial Date:
                                      )
22  _____)   **Exempt from Fees**
                                          **(Gov. Code § 6103)**
23

24

25

26

27

28

# TABLE OF CONTENTS

                                                                                                    Page

INTRODUCTION ...............................................................................................................1

STATEMENT OF FACTS ..................................................................................................1

ARGUMENT.......................................................................................................................7

I.    A PETITION FOR WRIT OF MANDATE MUST ISSUE TO COMPEL THE
      CONTROLLER TO REFRAIN FROM VIOLATING STATE LAW................................7

      A.    The Controller Has A Legal Duty To Refrain From Violating State Law,
            As Set Forth By The California Supreme Court In *White v. Davis* .........................8

      B.    A Writ of Mandate Must Issue To Prevent The Controller From Violating
            State Law Because Petitioners Have No Plain, Speedy, And Adequate
            Alternative Remedy To Such Relief ......................................................................12

      C.    The Petitioners Have A Beneficial Right To Performance In This Case .............13

II.   AN INJUNCTION MUST ISSUE TO COMPEL THE CONTROLLER TO
      REFRAIN FROM VIOLATING STATE LAW BEGINNING AUGUST 2008 .............14

      A.    A Preliminary Injunction Must Issue To Prevent The Controller From
            Issuing Unlawful Payments Pending A Hearing On The Merits Of The
            Writ Petition.........................................................................................................15

            1.    There Is A High Probability DPA Will Ultimately Prevail On The
                  Merits Of This Case ...................................................................................16

                  a.    The Supreme Court Has Previously Decided The Issue In
                        This Case.........................................................................................16

                  b.    The Controller Has A Legal Duty To Adhere To The Rule
                        Of Law And The California Constitution .......................................16

                  c.    Petitioners Have Demonstrated They Are Likely To
                        Succeed On The Merits Of The Petition For Writ Of
                        Mandate...........................................................................................17

      B.    The Balancing Of Hardships In This Case Supports The Granting Of The
            Preliminary Injunction ........................................................................................18

            1.    The Burden On The Petitioners Is Low. .....................................................19

            2.    Harm To The Petitioners Is Irreparable Because Of The Uncertain
                  Fiscal Impacts ............................................................................................20

            3.    The Harm To The Petitioners Is Of A Continuing Nature..........................22

            4.    The Controller's Actions Will Undermine DPA's Statutory Authority ....22

CONCLUSION...................................................................................................................24

-i-

**TABLE OF AUTHORITIES**

**FEDERAL**

*Biggs v. Wilson* (9th Cir. 1993)
    1 F.3d 1537 ....................................................................................................................10

**CALIFORNIA CASES**

*Anderson v. Souza* (1952)
    38 Cal.2d 825 ...............................................................................................................19

*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962)
    57 Cal.2d 450 ...............................................................................................................16

*Butt v. State of California* (1992)
    4 Cal.4[th] 668 ..............................................................................................................15

*Christopher v. Jones* (1964)
    231 Cal.App.2d 408 .....................................................................................................19

*Common Cause v. Board of Supervisors* (1989)
    49 Cal.3d 432 .....................................................................................................7, 15, 16

*Environmental Protection Information Center, Inc. v. Maxxam Corp.* (1992)
    4 Cal.App.4[th] 1373 .................................................................................................7, 15

*Horwath v. City of E. Palo Alto* (1989)
    212 Cal.App.3d 766 ..................................................................................................7, 16

*King v. Meese* (1987)
    43 Cal.3d 1217 .............................................................................................................16

*Los Angeles County v. State Dept. of Public Health* (1958)
    158 Cal.App.2d 425 .....................................................................................................17

*McCauley v. Brooks* (1860)
    16 Cal.11 .........................................................................................................13, 14, 23

*Payne v. Superior Court* (1976)
    17 Cal.3d 908 .................................................................................................................7

*Pleasant Hill Bayshore Disposal v. Chip-It* (2001)
    91 Cal.App.4th 696 ......................................................................................................16

*Right Site Coalition v. Los Angeles Unified School Dist* (2008)
    160 Cal.App.4th 336 ....................................................................................................19

*Save the Welwood Murray Mem'l Library Com v. City Council* (1989)
    215 Cal.App.3d 1003 ...................................................................................................23

-ii-

*Tirapelle v. Davis* (2003)
    20 Cal.App.4[th] 1317 ....................................................................1, 2, 13, 14, 17

*White v. Davis* (2003)
    30 Cal.4[th] 528 ............................................................................. passim

*Wind v. Herbert* (1960)
    186 Cal.App.2d 276 ............................................................................20, 22

## STATUTES

Code of Civil Procedure § 526 ...................................................................23

Code of Civil Procedure § 526(a) ...............................................................14

Code of Civil Procedure § 1060 .................................................................17

Code of Civil Procedure § 1085................................................................1, 18

Code of Civil Procedure § 1085(a) ...............................................................7

Government Code § 1231 ...........................................................................10

Government Code § 1231.1 .........................................................................10

Government Code § 12405 ............................................................................2

Government Code § 12410 ............................................................................2

Government Code § 12412 .............................................................................2

Government Code § 12440 ........................................................................4, 9

Government Code § 13144 .........................................................................4, 9

Government Code § 19815.2 ..........................................................................1

Government Code § 19815.3 ..........................................................................1

Government Code § 19815.4 .....................................................................1, 13

Government Code § 19816 .....................................................1, 2, 13, 17

Government Code § 19816.2 ........................................................................17

Government Code § 19824 .............................................................................2

Government Code § 19825 .....................................................1, 2, 13, 17

Government Code § 19825(b) .........................................................................2

Government Code § 19826 .....................................................................1, 17

Memorandum of Points and Authorities in Support of Petition For Writ of Mandate

California Constitution Article IV, § 12 .........................................................................2

California Constitution Article VII, § 4 .........................................................................2

California Constitution Article XVI, § 7 .................................................................3, 9, 16

Code of Federal Regulations, § 541.303 ......................................................................5

Code of Federal Regulations, § 541.304 ......................................................................5

-iv-

**INTRODUCTION**

In a matter of significant public importance, Petitioners bring this action under Code of Civil Procedure section 1085 to compel the Controller of the State of California and the Office of State Controller to refrain from violating the California Constitution and state law. Petitioners seek a writ of mandate that will prevent the Controller from paying state employee salaries in the absence of a state budget or other available appropriation, except as minimally required by federal law. The California Supreme Court has already held the Controller violates the California Constitution and state law by drawing monies from the state's treasury to pay state employee salaries in the absence of a state budget beyond what federal law minimally mandates. (See *White v. Davis* (2003) 30 Cal.4th 528.) The Controller has unequivocally announced his intention to refuse to comply with the requirements of the *White v. Davis* decision to pay wages as minimally required by federal law, and to refuse the efforts of Petitioners to secure compliance with that decision. If not enjoined from doing so, the Controller will illegally spend monies from the state treasury for the August 2008 pay period and beyond by continuing to pay full salaries to state employees in the absence of a state budget in contravention of the law. In the process, the Controller will have refused to comply with the lawful directives given him by Petitioners to issue employee pay in compliance with *White v. Davis* and federal law. Accordingly, for the reasons set forth herein, Petitioners respectfully request that this court grant its petition for writ of mandate against the Controller.

**STATEMENT OF FACTS**

Petitioner/Plaintiff CALIFORNIA DEPARTMENT OF PERSONNEL ADMINISTRATION (DPA) is a California state agency statutorily created by the Legislature in 1981 for the purposes of managing the nonmerit aspects of the state's personnel system. (Gov. Code § 19815.2.) DPA has jurisdiction over the state's financial relationship with its employees, including matters of salary, layoffs, and nondisciplinary demotions. (*Tirapelle v. Davis* (1993) 20 Cal.App.4th 1317, 1322; Gov. Code §§ 19816, 19825, 19826.) Petitioner/Plaintiff DAVID A. GILB (Gilb) is the Director of DPA, and sues herein in his official capacity only. Gilb is charged with administering and enforcing the laws pertaining to personnel, and to perform such other duties that may be prescribed by law. (Gov. Code §§ 19815.3, 19815.4.)

In addition to DPA's authority over the nonmerit aspects of the state's personnel system, Petitioners have authority over state employee compensation and salaries. Under state law, DPA "succeeds to and is vested with the duties, purposes, responsibilities, and jurisdiction exercised by the State Personnel Board with respect to the administration of salaries..." (Gov. Code § 19816.) Moreover, regarding any employee salary paid from state funds, "the salary is subject only to the approval of [DPA] before it becomes effective and payable..."[1] (Gov. Code § 19825.) Government Code section 19824 requires the State of California to generally pay its employees out of the General Fund. DPA therefore has widespread administrative and approval authority over state employee salaries.

Petitioners bring this suit against Respondents/Defendants JOHN CHIANG and the OFFICE OF STATE CONTROLLER to compel Respondents to refrain from violating the California Constitution and state law by paying state employees their full salaries in the absence of a budget or other available appropriation, and to order Respondents to honor Petitioners' lawfully propagated pay letter. Respondent/Defendant JOHN CHIANG is the Controller for the State of California. The Controller is the head of the Office of the Controller. (Gov. Code § 12405.) Respondent/Defendant OFFICE OF STATE CONTROLLER is a state department charged with auditing the disbursement of any state money, including the processing of payroll transactions for state employees. (Gov. Code §§ 12410, 12412.) The authority of the Controller is ministerial in nature, as in this case, when the amount of an expenditure is set by law or entrusted to the discretion of another agency or branch of government. (See *Tirapelle v. Davis*, *supra*, 20 Cal.App.4th at 1329.)

All state employees, except certain appointees and high level executives, received payment of their full salaries for the "July pay period" (July 1 through July 30.) Only employees falling within the parameters of *White v. Davis* will receive a partial payment of their salaries for the "August pay period" (July 31 through August 31.) This partial payment of wages is only a

---

[1] There is an exception to this rule, not applicable here, whenever any state court or other judicial agency is authorized by statute to fix the salary of an employee or officer who is exempt from civil service under subdivision (b) of Section 4 of Article VII of the California Constitution. (Gov. Code § 19825, subd. (b).)

1  temporary condition. Once a budget is adopted, they will receive their full salaries including any

2  unpaid wages due. (Judd Decl. ¶¶ 21-23.)

3       Article IV, section 12 of the California Constitution provides in part that "[t]he Legislature

4  shall pass the budget bill by midnight of June 15 of each year." However, in recent years the timely

5  adoption of the budget bill in California has proven to be the exception rather than the rule. (See

6  *White v. Davis, supra,* 30 Cal.4[th] 528, 533.) This year, the Legislature has failed to meet the

7  constitutional deadline to pass a budget bill by June 15. The budget for Fiscal Year 2007-2008

8  expired on June 30, 2008, leaving the State of California currently without a state budget. (Genest

9  Decl. ¶ 5.) When there is no budget for a fiscal year, the State government has no authority to make

10 a wide variety of payments. These include public-purpose payments such as payments to vendors

11 and contractors for goods and services chargeable to Fiscal Year 2008-2009; apportionments of

12 highway user taxes to the state, cities and counties for highway and road improvement projects;

13 grants to higher education students; funds for the operation of the trial courts, the University of

14 California, California State University system, and the California Community College system;

15 payments for non-federally mandated social services programs such as Community Care Licensing,

16 Adult Protective Services, State Only Foster Care, State Only Adoptions Assistance, and Cash

17 Assistance Program for Immigrants; and tax relief payments to low income senior and disabled

18 persons. (Genest Decl. ¶ 6.) Similarly, when there is no budget for a fiscal year, some payments

19 required by law must continue without consideration of the state's fiscal condition. This has resulted

20 in the commitment of approximately $487 million above the expenditure adjustments proposed by

21 the Governor in his May Revision of the proposed Fiscal Year 2008-2009 budget. (Genest Decl. ¶

22 7.) The Department of Finance (DOF) currently projects it is likely the State will have insufficient

23 cash attributable to the General Fund to meet the State's obligations, including its obligations to

24 bondholders, in either September or October, 2008. (Genest Decl.¶ 8.) Thus, unless a payment is

25 self-executing under the California Constitution or there is a continuous appropriation, the State has

26 no authority to pay state employee salaries where it does not have an appropriation (in this case, a

27 state budget). (*White v. Davis, supra at 533.*)

28 / / /

-3-

1    California law prohibits the Controller from paying state employees their salaries in the

2    absence of a budget or other available appropriation. Article XVI, section 7 of the California

3    Constitution provides, "money may be drawn from the treasury only through an appropriation made

4    by law and upon a Controller's duly drawn warrant." Government Code section 12440 provides,

5    "the Controller shall draw warrants on the Treasurer for the payment of money directed by law to be

6    paid out of the State treasury; but a warrant shall not be drawn unless authorized by law, and unless,

7    except for refunds authorized by Section 13144, unexhausted specific appropriations provided by

8    law are available to meet it." In 2003, the California Supreme Court cited these and other authorities

9    in support of its seminal decision addressing the State's payment of employee salaries without a

10   budget. (See *White v. Davis, supra,* 30 Cal.4th 528.)

11        On July 31, 2008, Governor Schwarzenegger issued an Executive Order (Executive Order S-

12   09-08) directing the State of California to take various emergency measures in light of the late

13   budget for Fiscal Year 2008-2009. (Gilb Decl. ¶ 2, Exh. A.) In that Executive Order, the Governor

14   directed state agencies and departments "to cease and desist authorization of all overtime for

15   employees effective July 31, 2008," except for "services and functions of state government deemed

16   critical and exempt by the Order and emergent situations to preserve and protect human life and

17   safety." (Gilb Decl. ¶ 3, Exh. A.) The Governor ordered the DOF and the DPA to work with the

18   Controller "to develop and implement the necessary mechanisms, including but not limited to pay

19   letters and computer programs, to comply with the California Supreme Court's *White v. Davis*

20   opinion to pay federal minimum wage to those nonexempt Fair Labor Standards Act (FLSA)

21   employees who did not work any overtime." (Gilb Decl. ¶ 4, Exh. A.) The Executive Order further

22   directed "that the necessary mechanisms to ensure compliance with the *White v. Davis* opinion must

23   be in place to be effective for the August 2008 payroll." (Gilb Decl. ¶ 5, Exh. A.) Finally, the

24   Executive Order also directed "that this Order shall remain in effect until such time as both a Fiscal

25   Year 2008-2009 Budget is adopted and the Director of the DOF confirms an adequate cash balance

26   exists to meet the State's fiscal operations." (Gilb Decl. ¶ 6, Exh. A.)

27   / / /

28   / / /

The Controller declared his intention to refuse to comply the Executive Order in a July 31, 2008 letter to the Governor. Specifically, the Controller stated without equivocation, "I will not comply with the Order." (Gilb Decl. ¶ 7, Exh. B.) The Controller further stated he intended to continue to provide full pay to all state employees irrespective of an available appropriation, and notwithstanding the *White v. Davis* decision. (Gilb Decl. ¶ 7, Exh. B.)

DPA issued a pay letter (including a cover letter) on August 5, 2008 providing the Controller with the necessary instructions to comply with the requirements of *White v. Davis* to pay wages as minimally required by federal law, the California Constitution, and state law. (Gilb Decl. ¶ 9, Exh. C.) A pay letter is the historical administrative document issued by DPA (and its predecessor, the California State Personnel Board) to the Controller that "triggers" the Controller's time to perform his ministerial duties regarding the payment of employee salaries. (Judd Decl. ¶¶ 4-5.) The Pay Letter instructed the Controller to pay nonexempt state employees (Workweek Group 2) the federal minimum wage of $6.55 per hour, effective July 31, 2008. (Gilb Decl. ¶ 10, Exh. C.) The pay letter also included a list of departments and programs that are not subject to the overtime prohibition in the Executive Order due to the critical nature of the work performed by these departments and programs. (Gilb Decl. ¶ 11, Exh. C.) The pay letters excluded these departments and programs because there is a reasonable expectation that these nonexempt FLSA state employees will work overtime. (Gilb Decl. ¶ 11, Exh. C.)

The DPA Pay Letter also provided the Controller with special salary payment instructions for all Executive, Administrative, and Professional (EAP) (Workweek Group E) employees covered by the FLSA. (Gilb Decl. ¶ 10, Exh. C.) DPA instructed the Controller to pay these employees $455.00 per week, which represents the minimum salary required by the FLSA in order to preserve the EAP exemption. (Gilb Decl. ¶10, Exh. C.) The DPA Pay Letter also provided the Controller with special salary payment instructions for employees covered by the Code of Federal Regulation sections 541.303 and 541.304 (Workweek Group SE). (Gilb Decl. ¶ 10, Exh. C.) DPA instructed the Controller to delay payment of all wages to these employees because these employees are exempt from the FLSA salary basis test and are not subject to any minimum salary requirements under the FLSA. (Gilb Decl. ¶ 10, Exh. C.)

-5-

On or about August 7, 2008, DPA met with the Controller's office to discuss implementation of Pay Letter 08-23. Also present at the meeting were representatives from the DOF, and the Office of the State Chief of Information Officer (OCIO). (Chapman Decl. ¶ 5; Judd Decl. ¶ 12.) During the meeting Julie Chapman, Deputy Director of Labor Relations for DPA and Jerri Judd, Personnel Program Manager in the Labor Relations Division of DPA presented three viable options for implementing Pay Letter 08-23. (Judd Decl. ¶¶ 12-19.) The representatives from the Controller's Office did not make any suggestions or present any additional options that would assist them in complying with the California Supreme Court's decision in *White v. Davis*. (Chapman Decl. ¶ 28; Judd Decl. ¶ 20.)

On or about August 8, 2008 DPA sent a memorandum to the Office of the State Controller documenting the prior day's meeting and requesting a response on whether or not any of the three options presented by DPA were viable from the Controller's perspective. (Chapman Decl. ¶ 31.) Specifically DPA asked that the Controller provide a response by 12:00 PM on Monday August 11, 2008. (Chapman Decl. ¶ 31.)

On or about August 11, 2008, DPA received a response from Don Scheppmann. The Controller's August 11, 2008 letter is consistent with his prior statements indicating he will not comply with his legal duties under *White v. Davis* (2003) 30 Cal.4th 528. Instead he purports to identify a number of scenarios that he considers obstacles to his ability to comply with *White v. Davis*. The August 11, 2008 letter suggests the Controller has taken virtually no action since 2003 to address the alleged obstacles in implementing salary payment consistent with *White v. Davis*. Assuming the obstacles raised in the August 11, 2008 letter have some validity (a fact DPA disputes) action is needed by the court to compel the Controller to fulfill his responsibility to comply with the law state law, the California Constitution and *White v. Davis*.

Thereafter, on August 11, 2008, Petitioners filed the instant action in this court to compel Respondents to refrain from violating the California Constitution and state law by paying state employees their full salaries in the absence of a budget or other available appropriation, and to compel Respondents to honor Petitioners' lawfully propagated pay letter implementing the payment of state employee salaries consistent with the requirements of *White v. Davis* to pay wages as

-6-

minimally required by federal law. For the reasons set forth herein, Petitioners respectfully request

that this court grant to Petitioners all of the relief requested in this action.

## ARGUMENT

### I. A PETITION FOR WRIT OF MANDATE MUST ISSUE TO COMPEL THE CONTROLLER TO REFRAIN FROM VIOLATING STATE LAW.

Petitioners request this court issue a writ of mandate directing the State Controller to

refrain from violating state law, as set forth by the California Supreme Court in *White v. Davis,*

*supra,* 30 Cal.4[th] 528, by continuing to pay state employees full salaries in the absence of a

budget or other available appropriation, except as minimally required by federal law. In

particular, Petitioners seek a writ of mandate under Code of Civil Procedure section 1085(a),

which provides as follows:

> "A writ of mandate may be issued by any court to any inferior tribunal,
> corporation, board, or person, to compel the performance of an act
> which the law specially enjoins, as a duty resulting from an office,
> trust, or station, or to compel the admission of a party to the use and
> enjoyment of a right or office to which the party is entitled, and from
> which the party is unlawfully precluded by such inferior tribunal,
> corporation, board, or person." (Civ. Proc. § 1085, subd. (a).)

A writ of mandate lies to compel a public official to perform an official act required by law.

(*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442; *Environmental Protection*

*Information Center, Inc. v. Maxxam Corp.* (1992) 4 Cal.App.4[th] 1373, 1380.) An official's

affirmative obligation to perform also encompasses the corollary obligation not to perform the duty

in violation of the law. (*Horwath v. City of E. Palo Alto* (1989), 212 Cal. App.3d 766, 773 fn. 8.)

Courts have labeled the writ restraining such unlawful performance 'prohibitory mandate,' which is

what Petitioners seek in this case. (*Ibid.*)

In general, a writ of mandate must issue when there is no plain, speedy, and adequate

alternative remedy; the respondent has a duty to perform; and the petitioner has a clear and

beneficial right to performance. (*Payne v. Superior Court* (1976) 17 Cal.3d 908, 925.) In this case,

Petitioners satisfy all of the elements for issuance for a writ of mandate. As set forth herein,

Petitioners respectfully request that the court issue a writ of mandate in this case to prevent the

-7-

1   Controller from paying state employee their full and regular salaries during a budget impasse in

2   violation of state law.

3         **A.**     **The Controller Has A Legal Duty To Refrain From Violating State Law,**

                    **As Set Forth By The California Supreme Court in *White v. Davis*.**

4

5         The issue of whether the State of California has the authority to pay state employees their full

6   salary in the absence of a budget has already been squarely litigated and decided by the California

7   Supreme Court. In *White v. Davis, supra,* 30 Cal.4[th] 528, a taxpayers' organization, in reaction to

8   state budget impasses that delayed passage of two yearly state budget bills, brought two successive

9   actions seeking injunctive and declaratory relief to prevent the Controller from making payment

10   from the treasury until such budget bills were passed. (*Id.*, at 533.) In the action filed in 1998, the

11   trial court issued a preliminary injunction broadly barring the Controller from making payments

12   from the state treasury in the absence of passage of the budget bill or an emergency appropriation.

13   (*Ibid.*) After briefing and argument, the Court of Appeal ultimately concluded the Controller may

14   authorize the payment of state funds during a budget impasse in a variety of circumstances,

15   including (1) when payment is authorized by a continuing appropriation enacted by the Legislature,

16   (2) when payment is authorized by a self-executing provision of the California Constitution, or (3)

17   when payment is mandated by federal law. (*Ibid.*) The Court of Appeal reversed the trial court's

18   judgment granting a preliminary injunction insofar as the injunction applied to these categories of

19   payments, but otherwise affirmed the order. (*Ibid.*)

20         The Controller and a number of state employee unions that had intervened in the lower court

21   actions filed petitions for review in the California Supreme Court. In particular, the state employee

22   interveners specifically challenged the Court of Appeal's conclusions regarding the payment of state

23   employee salaries during a budget impasse, contending that the Court of Appeal erred in determining

24   that state law did not authorize the Controller to pay all state employees their full and regular salaries

25   in the absence of a duly enacted budget bill. (*Id.*, at 534.) The state employee interveners also

26   contended that the Court of Appeal erred in concluding that the FLSA required the Controller,

27   during a budget impasse, to pay state employees covered by that law only at the minimum wage rate

28   for hours worked during the impasse. (*Ibid.*) The California Supreme Court granted review, in part,

1 | specifically to address this substantive question of whether the Controller is authorized to pay state
2 | employees their full and regular salaries during a budget impasse. (*Ibid.*)

3 | In *White v. Davis, supra,* the California Supreme Court held that under applicable California
4 | statutes, state employees who work during a budget impasse are protected by the contract clauses of
5 | the federal and state Constitutions and are entitled *ultimate* payment of their full salary for work
6 | performed during the budget impasse. (*Id.*, at 535.) However, the California Supreme Court also
7 | determined that the Court of Appeal was correct in determining: (1) that state employees do not have
8 | a contractual right actually to receive the payment of salary prior to the enactment of an applicable
9 | appropriation; (2) the State Controller is not authorized under state law to pay those salaries prior to
10 | such an appropriation; and (3) the Controller is required, notwithstanding a budget impasse and the
11 | limitations imposed by state law, to timely pay those state employees who are subject to the
12 | minimum wage and overtime compensation provisions of the FLSA, the wages required by that act.
13 | (*Ibid.*) Thus, pursuant to *White v. Davis*, the Office of State Controller is prohibited by state law
14 | from paying state employee salaries in the absence of a state budget or other available appropriation,
15 | except as minimally required by the FLSA[2].

16 | In *White v. Davis, supra,* the California Supreme Court carefully explained its rationale that
17 | state law does not authorize the Controller to disburse state funds to state employees until an
18 | applicable appropriation has been enacted. The Court explained as an initial matter that Article XVI,
19 | section 7 of the California Constitution provides, "money may be drawn from the treasury only
20 | through an appropriation made by law and upon a Controller's duly drawn warrant." (*Id.*, at 566.)
21 | The Court also noted that, consistent with Article XVI, section 7 of the California Constitution,
22 | Government Code section 12440 provides "the Controller shall draw warrants on the Treasurer for
23 | the payment of money directed by law to be paid out of the State treasury; but a warrant shall not be
24 | drawn unless authorized by law, and unless, except for refunds authorized by Section 13144,
25 | unexhausted specific appropriations provided by law are available to meet it." (*Id., at 567.*) Further,
26 |
27 |
28 |

---

[2] The California Supreme Court in *White v. Davis* only addressed what to pay nonexempt FLSA employees during a budget impasse. However, the holding equally applies to all state employees and requires the State to pay wages as minimally required by the FLSA.

-9-

the Court referenced Government Code section 9610, which provides, "the fixing or authorizing the fixing of the salary of a State officer or employee is not intended to and does not constitute an appropriation of money for the payment of the salary. The salary shall be paid only in the event that monies are made available by another provision of law." (*Ibid.*) The Court concluded that "the constitutional and statutory provisions set forth above clearly require that some applicable appropriation be available before a state employee's salary actually may be paid from public funds." (*Ibid.*)

The California Supreme Court also discussed the application of Government Code sections 1231 and 1231.1 in the absence of a state budget. The Court noted that, while section 1231 provides an employee's salary shall remain in effect during the budget impasse, section 1231 does not indicate a legislative intent to authorize the actual payment of salary to employees prior to the passage of a budget act that includes a requisite appropriation of funds for such salaries. (*Id.*, at 568.) The Court determined that if Section 1231 afforded employees the right actually to receive their full pay during a budget impasse. (*Ibid.*) Accordingly, the Court concluded "the employment rights of state employees must be viewed as including a condition that the actual payment of an employee's salary is dependent upon the existence of an available appropriation." (*Id.*, at 569.)

The Court also explained "so as not to leave the Controller without guidance on the issue," the rationale behind its conclusion the FLSA does not require payment of full employee salaries above and beyond the federal minimum wage to nonexempt employees, except in the situation in which the employer authorizes overtime. (*Id.*, at 575.) The Court reviewed federal law interpreting the FLSA, including *Biggs v. Wilson* (9th Cir. 1993) 1 F.3d 1537, and determined an employer complies with the FLSA so long as it pays those employees who are subject to the FLSA at the minimum wage rate on payday. (*Id.*, at 576.) The Court determined that federal law does not require an employer to pay employees their regular wage on payday, unless the employees work authorized overtime. (*Ibid.*) The Court held that under federal law "the state is required to comply with the FLSA during a budget impasse, but that the state satisfies the requirements of the FLSA by paying nonexempt state employees (who do not work overtime) at the minimum wage rate for the straight-time hours (that is, non-overtime hours) worked by those employees during the full pay

the Court referenced Government Code section 9610, which provides, "the fixing or authorizing the fixing of the salary of a State officer or employee is not intended to and does not constitute an appropriation of money for the payment of the salary. The salary shall be paid only in the event that monies are made available by another provision of law." (*Ibid.*) The Court concluded that "the constitutional and statutory provisions set forth above clearly require that some applicable appropriation be available before a state employee's salary actually may be paid from public funds." (*Ibid.*)

The California Supreme Court also discussed the application of Government Code sections 1231 and 1231.1 in the absence of a state budget. The Court noted that, while section 1231 provides an employee's salary shall remain in effect during the budget impasse, section 1231 does not indicate a legislative intent to authorize the actual payment of salary to employees prior to the passage of a budget act that includes a requisite appropriation of funds for such salaries. (*Id.*, at 568.) The Court determined that if Section 1231 afforded employees the right actually to receive their full pay during a budget impasse. (*Ibid.*) Accordingly, the Court concluded "the employment rights of state employees must be viewed as including a condition that the actual payment of an employee's salary is dependent upon the existence of an available appropriation." (*Id.*, at 569.)

The Court also explained "so as not to leave the Controller without guidance on the issue," the rationale behind its conclusion the FLSA does not require payment of full employee salaries above and beyond the federal minimum wage to nonexempt employees, except in the situation in which the employer authorizes overtime. (*Id.*, at 575.) The Court reviewed federal law interpreting the FLSA, including *Biggs v. Wilson* (9th Cir. 1993) 1 F.3d 1537, and determined an employer complies with the FLSA so long as it pays those employees who are subject to the FLSA at the minimum wage rate on payday. (*Id.*, at 576.) The Court determined that federal law does not require an employer to pay employees their regular wage on payday, unless the employees work authorized overtime. (*Ibid.*) The Court held that under federal law "the state is required to comply with the FLSA during a budget impasse, but that the state satisfies the requirements of the FLSA by paying nonexempt state employees (who do not work overtime) at the minimum wage rate for the straight-time hours (that is, non-overtime hours) worked by those employees during the full pay

-10-

1  period. *For nonexempt employees who do not work overtime, the FLSA does not require the prompt*
2  *payment of full salary." (Id., at 577.) (Italics added.)*

3        Finally, the Court also addressed the Controller's claim that its "negative payroll" system
4  rendered it infeasible or impossible for the Controller to pay only the minimum wage compensation
5  to state employees, or to segregate those employees who worked overtime from those who did not
6  work overtime, and to make such determinations quickly enough to comply with the FLSA. (*Id.*, at
7  578.) The Court did not evaluate the Controller's factual claim of impossibility but remarked that,
8  even·if it is administratively infeasible, "we are somewhat skeptical of the contention that the state
9  would be found to have violated the FLSA if, during a budget impasse, the state (1) pays full regular
10  wages and overtime compensation to those nonexempt employees who it reasonably anticipates will
11  work overtime during a given pay period, (2) pays minimum wage rate for all straight time hours an
12  employee is scheduled to work during the pay period to those nonexempt employees who it
13  reasonably anticipates will not work overtime during a given pay period, and (3) in the following
14  pay period, pays employees all additional sums that are due under the FLSA for the prior pay period
15  based on information the state obtains through reporting forms it collects on or immediately
16  following the preceding payday." (*Id.*, at 578-579.) Thus, the Court has already provided the
17  Controller with a blueprint demonstrating how the Controller may overcome any administrative
18  difficulties in carrying out the Court's directives.

19        The California Supreme Court in *White v Davis* directly addressed the dispute at the core of
20  this litigation. Under the Court's ruling, the Controller has no authority to pay state employees their
21  full salaries in the absence of a budget or other available appropriation, except as minimally required
22  by the FLSA. Thus, the Controller is prohibited from paying "nonexempt" state employees more
23  than the federal minimum wage, unless those employees worked authorized overtime. The
24  Controller is prohibited from paying employees in workweek group E more than $455 per week.
25  Finally, the Controller is prohibited from paying state employees in Workweek Group SE and all
26  other employees not covered by the FLSA any wages at all in the absence of a budget or other
27  available appropriation.
28  / / /

1

   **B.    A Writ Of Mandate Must Issue To Prevent The Controller From Violating State**
2  **Law Because Petitioners Have No Plain, Speedy, And Adequate Alternative**
   **Remedy To Such Relief.**
3

4       A writ of mandate must issue in this case because the Controller has stated he will disregard

5  the California Supreme Court decision in *White v. Davis*, and not implement the DPA Pay Letter,

6  which administers employee salaries in accordance with the law.

7       The Governor issued an executive order on July 31, 2008 directing DOF and DPA "to

8  develop and implement the necessary mechanisms, including but not limited to pay letters and

9  computer programs, to comply with the California Supreme Court's decision in *White v. Davis* to

10  pay federal minimum wage to those nonexempt FLSA employees who did not work any overtime."

11  (Gilb. Decl. ¶ 4, Exh. A.)  However, the Controller has stated unequivocally, "I will not comply with

12  the Order." (Gilb. Decl. ¶ 7, Exh. B.)

13       The Controller also announced his intent to disregard DPA's implementing Pay Letter.

14  Petitioner's August 5, 2008 Pay Letter provided the Controller with the necessary instructions to

15  comply with the requirements of *White v. Davis* to pay wages as minimally required by federal law,

16  the California Constitution and applicable state law.  (Gilb Decl. ¶ 9, Exh. C.)  The Pay Letter

17  requires the Controller to refrain from paying state employees in the absence of a budget, except as

18  minimally required by federal law.  (Gilb Decl. ¶ 9, Exh. C.)  However, the Controller refuses to

19  comply with this instruction as well.

20       If the court does not issue a writ of mandate, Petitioners will be left without a plain, speedy,

21  and adequate alternative remedy. (Gilb Decl. ¶¶ 17-18.)  The Controller fully intends to disregard

22  *White v. Davis*, and DPA's Pay Letter.  If this court does not prevent the Controller from violating

23  the law, the Controller will unlawfully issue full salary to all state employees in the August 2008 pay

24  period and beyond, irrespective of a state budget or other available appropriation. (Gilb Decl. ¶ 17.)

25  Once the Controller violates the law, that violation will have occurred and cannot be reversed.  (Gilb

26  Decl. ¶ 17.)  Therefore, Petitioners seek a writ of mandate to prevent the Controller from violating

27  the California Constitution and state law.

28  / / /

## C. Petitioners Have A Beneficial Right To Performance In This Case.

The Controller does not have the right to refuse to comply with Petitioners' lawful instruction. The California Legislature vested DPA with authority over state employee compensation and salaries. Under state law, DPA "succeeds to and is *vested with the duties, purposes, responsibilities, and jurisdiction* exercised by the State Personnel Board *with respect to the administration of salaries...*" (Gov. Code § 19816.) Moreover, regarding any employee salary paid from state funds, "*the salary is subject only to the approval of [DPA] before it becomes effective and payable...*" (Gov. Code § 19825.) In addition, the law charges that DPA's director "shall *administer* and *enforce* the laws pertaining to personnel," and "perform such other duties as may be prescribed by law, and such other administrative duties as have by other provisions of law been previously imposed. (Gov. Code § 19815.4.) (Emphasis added.)

The California Court of Appeal in *Tirapelle v. Davis, supra,* 20 Cal.App.4[th] 1317 rejected a similar act of noncompliance by the Controller to the authority of DPA. In *Tirapelle,* in the midst of the budget crisis in July 1991, DPA announced an immediate general salary decrease for various state managers and other employees excluded from collective bargaining. (*Id.,* at 1326.) However, in September 1991, after initially complying with the DPA directive, the Controller announced he would cease implementing the managerial compensation reductions, and would repay managerial employees for sums which had previously been withheld. (*Id.,* at 1327.) DPA petitioned for a writ of mandate compelling the Controller to implement its salary reduction decisions, and the trial court granted the relief sought by DPA. (*Ibid.*)

The Court of Appeal affirmed the trial court's decision to grant the writ of mandate against the Controller. In the decision, the appellate court cited long-standing authority, explaining that "although in some circumstances the Controller may have discretionary duties, '...the greater part of the duties devolved upon him by law are of a ministerial character...(h)is duties are enumerated and defined by law, and they are, as we have said, generally of a purely ministerial character.' (*Id.,* at 1331 citing *McCauley v. Brooks* (1860) 16 Cal.11, 55.) Thus, according to the appellate court, "since the Controller has not been given powers of supervision over the DPA nor the power to review its decisions, the extent of his authority to disregard orders of the DPA in the performance of

-13-

his audit function is limited by fundamental principles of jurisdiction." (*Id.*, at 1333.) The appellate court therefore concluded "that the Controller's duty to audit claims against the Treasury…does not include the power to review and approve or reject decisions of a department vested by the Legislature with authority over expenditures. Where a department or agency acts within the authority delegated to it by the Legislature, the Controller *must defer* to the agency or department and leave review of the decision to the courts and/or the Legislature." (*Id.*, at 1335.) (Emphasis added.)

The Legislature delegated to DPA "jurisdiction over the state's financial relationship with its employees, including matters of salary…." (*Tirapelle v. Davis*, 20 Cal.App.4th *supra* at 1322, citing Gov. Code § 19816.) The Controller must defer to the jurisdiction of DPA in these circumstances, and cannot lawfully refuse to comply with the DPA's pay letter concerning a matter squarely within DPA's scope of authority. If the Controller is allowed to decide whether to comply or not comply with the lawful instructions that properly fall within the jurisdiction of another agency, then the governmental process becomes dysfunctional and the rule of law becomes meaningless. (See *Tirapelle v. Davis*, supra, 20 Cal.App.4th 1317, 1331.) As the California Supreme Court described in one of the state's earliest decisions, if every state officer always maintains independent authority to second-guess the decision of another state officer, "the administration of the government would for all useful purposes be dissolved…if this doctrine can be maintained, the government must cease to be one of law, and must sink into merited contempt for its weakness and inefficiency." (*McCauley v. Brooks* (1860) 16 Cal. 11, 61, cited in *Tirapelle v. Davis*, 20 Cal.App.4th *supra* at 1331.) Accordingly, Petitioners have a beneficial right to performance in this case, which the Controller may not lawfully refuse.

## II. AN INJUNCTION MUST ISSUE TO COMPEL THE CONTROLLER TO REFRAIN FROM VIOLATING STATE LAW BEGINNING IN AUGUST 2008

Code of Civil Procedure section 526(a) provides:

> (a) An injunction may be granted in the following cases:
> (1) When it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually.

-14-

(2) When it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action.

(3) When it appears, during the litigation, that a party to the action is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tending to render the judgment ineffectual.

(4) When pecuniary compensation would not afford adequate relief.

(5) Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief.

(6) Where the restraint is necessary to prevent a multiplicity of judicial proceedings.

(7) Where the obligation arises from a trust.

. . . .

Injunction is an appropriate remedy in this case. Petitioners seek to enjoin the Controller, a public official, from paying state workers full salaries without authority and contrary to the California Constitution and state law, beginning with the August 2008 pay period and continuing thereafter until the state has adopted a budget. A public entity can be enjoined from taking official action in violation of the law. (See *Environmental Protection Information Center, Inc. v. Maxxam Corp.* (1992) 4 Cal.App.4th 1373, 1381.)

**A. A Preliminary Injunction Must Issue To Prevent The Controller From Issuing Unlawful Payments Pending A Hearing On The Merits Of The Writ Petition.**

In deciding whether to issue a preliminary injunction, a court must weigh two "interrelated" factors: (1) the likelihood that the moving party will ultimately prevail on the merits and (2) the relative interim harm to the parties from issuance or non issuance of the injunction. (*Butt v. State of California* (1992) 4 Cal.4th 668, 677-678; *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 441-442.) The trial court's determination must be guided by a "mix" of the potential-merit and interim-harm factors; the greater plaintiff's showing on one, the less must be shown on the other to support an injunction." (*Butt v. State,* 4 Cal.4th *supra* at 678.) If the party seeking the injunction can make a sufficiently strong showing of likelihood of success on the merits, the trial court has discretion to issue the injunction notwithstanding that party's inability to show that the balance of harm tips in its favor. *(Common Cause v. Board of*

-15-

1 | *Supervisors,* 49 Cal.3d 432, *supra* at 447; *King v. Meese* (1987) 43 Cal.3d 1217, 1227-1228;

2 | *Pleasant Hill Bayshore Disposal v. Chip-It* (2001) 91 Cal.App.4th 696.)

**1.    There is a high probability DPA will ultimately prevail on the merits of this case.**

**a.    The Supreme Court has previously decided the issue in this Case.**

Under the doctrine of stare decisis, the lower court is bound by the precedent set by the California Supreme Court's decision in *White v. Davis.* (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962), 57 Cal.2d 450, 456.)

In *White v. Davis,* the California Supreme Court held the State Controller has no authority to pay state employees full salaries in the absence of a budget unless: (1) payment is authorized by a continuing legislative appropriation; (2) payment is authorized by a self-executing provision of the California Constitution; or (3) payment is made pursuant to federal law. (*White v. Davis, supra,* 30 Cal. 4th 528.)

The Supreme Court concluded, "thus, state law contractually guarantees that state employees will receive their full salary for work performed during a budget impasse, but state law does not authorize the Controller to disburse state funds to employees until an applicable appropriation has been enacted. (*Id.,* at 535.)

**b.    The Controller has a legal duty to adhere to the rule of law and the California Constitution.**

An official's affirmative obligation to perform encompasses a corollary obligation not to perform the duty in violation of the law. (*Horwath v. City of East Palo Alto, supra,* 212 Cal.App.3d 766, 773 (fn. 8).)

The California Constitution, Article XVI, section 7, provides, "Money may be drawn from the Treasury only through an appropriation made by law and upon a Controller's duly drawn warrant."

///
///

-16-

Harmonizing the California Constitution and other state and federal laws, the California Supreme Court in *White v. Davis* held the Controller was not authorized to disburse full salaries for work performed during a budget impasse to state employees until an applicable appropriation is made. (*White v. Davis, supra*, 30 Cal. 4th 528, 535.) The Court also held the Controller is required to pay state employees who are subject to the minimum wage and overtime provisions of the FLSA, the wages required by that act. (*Ibid.*)

The Controller does not have discretion as to the issuance of warrants for appropriations for the public service. (*Tirapelle v. Davis, supra*, 20 Cal.App.4th 1317, 1330.) The Controller's authority is ministerial when the amount of the expenditure is set by law or entrusted to the discretion of another agency or branch of government. (*Id.*, at 1329).

The DPA is the governmental entity the Legislature vested with jurisdiction over the state's financial relationship with its employees in relation to matters of salary, layoffs, and non-disciplinary demotions. (*Id.*, at 1322, citing Gov. Code §§ 19816, 19816.2, 19825, and 19826).

It is highly likely Petitioners will succeed on the merits because there is no law that authorizes the Controller to disregard his ministerial duty to comply with the California Constitution and state law.

The instant litigation seeks to implement the Court's decision in *White v. Davis* by preventing the Controller from unlawfully continuing to pay state employees their full salaries during a budget impasse, when there is no appropriation for such salaries, or when such salaries are not payable consistent with the decision in *White v. Davis*.

Therefore, there is a high likelihood Petitioners will ultimately prevail on the merits of this case seeking to compel the Controller to comply with existing judicial precedent. (*Ibid.*)

**c.      Petitioners have demonstrated they are to succeed
on the merits of the Petition for Writ of Mandate**

Injunctive relief may be granted in a declaratory relief action. (*Los Angeles County v. State Dept. of Public Health* (1958) 158 Cal.App.2d 425, 445.) Injunctive relief provides an equitable remedy similar to that provided through a writ proceeding. Both actions may be brought concurrently. (Code Civ. Proc. §1060.)

-17-

1    Petitioners are seeking declaratory relief and remedy through a writ of mandate pursuant to

2    Code of Civil Procedure section 1085. Petitioners have demonstrated above that the requirements

3    for a writ of mandate are met in this case.

4         There is no speedy alternative remedy at law to prevent the Controller from unlawfully

5    issuing full salaries to state employees beginning with the August 2008 pay period, and continuing

6    thereafter until the state has enacted a budget. The Controller has a ministerial duty to pay state

7    employees according to DPA's Pay Letter of August 5, 2008, which requires the payment of state

8    employee salaries consistent with state law, the California Constitution, and the requirements of

9    *White v. Davis* to pay wages as minimally required by federal law. Petitioners have a beneficial

10   interest in the matter as the general administrator of state salaries in accordance with the California

11   Constitution and state law.

12        There is a high likelihood Petitioners will succeed on the merits because: (1) the California

13   Supreme Court has already held in *White v. Davis* the Controller cannot pay full salaries to state

14   employees absent an appropriation or a Constitutional authorization, and this court must apply the

15   law; (2) the Controller has a duty to comply with the California Constitution, state law, and DPA's

16   Pay Letter implementing payment of employee salaries consistent with the law; and (3) Petitioners

17   will ultimately prevail on its writ of mandate compelling the Controller to comply with the

18   California Constitution and state law.

19   **B.    The Balancing Of Hardships In This Case Supports The Granting Of The**
          **Preliminary Injunction.**
20

21        All state employees, except certain appointees and high level executives, received payment

22   of their full salaries for the "July pay period" (July 1 through July 30.)   Only employees falling

23   within the parameters of *White v. Davis* will receive a partial payment of their salaries for the

24   "August pay period" (July 31 through August 31.)   This partial payment of wages is only a

25   temporary condition. Once a budget is adopted, they will receive their full salaries including any

26   unpaid wages due. The Controller traditionally establishes a "cutoff" date after which no further

27   payroll adjustments may be submitted for the current pay period. The "cutoff" date for the current

28   pay period is on or about August 21, 2008 with payday on August 29, 2008.   (Judd Decl. ¶¶ 21-25.)

-18-

The courts have variously defined the degree of harm or hardship required to justify issuing a preliminary injunction. The California Supreme Court has stated that "[t]he term 'irreparable injury' . . . means that species of damages, whether great or small, which ought not to be submitted to on the one hand or inflicted on the other." (*Anderson v. Souza* (1952) 38 Cal.2d 825, 834.) Additionally, courts have since held that "the word 'irreparable' is . . . used in expressing the rule that an injunction may issue to prevent wrongs of a repeated and continuing character." (*Christopher v. Jones* (1964) 231 Cal.App.2d 408, 416.)

The harm threatened by the Controller's actions in this case is sufficient to meet the standards set out above because it would result in injuries that defy precise calculation and is of a continuing or repeated nature. The harm caused by the Controller's actions also is of a type that cannot be left unchallenged because it undermines DPA's statutory authority to administer state employee salaries and compensation.

### 1.    The Burden On The Petitioners Is Low.

Petitioners are likely to prevail on the merits. The Supreme Court's clear holding in *White v. Davis* requires the Controller not to pay full state employee salaries without an appropriation and instead to pay wages as minimally required by federal law until there is a state budget. The Controller refuses to act consistent with that holding. As the court noted in *Right Site Coalition v. Los Angeles Unified School Dist* (2008) 160 Cal.App.4th 336, if the party seeking the injunction shows a strong likelihood of success on the merits, the trial court has discretion to issue the injunction notwithstanding a deficiency of harm. Therefore, Petitioners' legal burden, with respect to the harm suffered, is diminished.

Even so, the balance of hardships still favors the Petitioners in this case because of the difficulty in ascertaining the precise damages to the State and the repeated and continuing nature of the harm.

/ / /

/ / /

/ / /

/ / /

Memorandum of Points and Authorities in Support of Petition For Writ of Mandate

## 2. Harm To The Petitioners Is Irreparable Because Of The Uncertain Fiscal Impacts.

In *Wind v. Herbert* (1960) 186 Cal.App.2d 276, the court upheld a preliminary injunction because the plaintiffs would be subject to a type of damage that was uncertain and subject to speculation. (*Id.*, at 285.) In that case, plaintiffs, limited partners in a partnership, sought an injunction against the general partners, to halt the dissipation of partnership assets. (*Id.*, at 279.) The court found the damages were irreparable given the fact the defendant's actions would subject the petitioner to a type of damages that was "only estimable by conjecture." (*Id.*, at 285.)

In *Wind*, the defendants argued that a preliminary injunction was not necessary to prevent "irreparable injury" because any conceivable future loss of partnership assets could be compensated with money damages. (*Id.*, at 284.) The court disagreed, holding that irreparable injury is not merely limited to injuries that cannot be compensated by damages. (*Id.*, at 285) Rather, an injunction is appropriate in any case where "it would be extremely difficult to ascertain the amount of compensation that would afford relief." (*Id.*)

Due to the complexity of the state budget, because of the budget's large scope and breadth, and because an expenditure in one area often affects expenditures in other areas, the specific economic injury in this case is difficult to ascertain. The Controller's non-compliance with the executive order will exacerbate California's financial crisis by potentially forcing the state to borrow funds at higher interest rates. As in *Wind*, the financial impact of the Controller's actions defies exact calculation and subjects the State to consequences that can only be accurately measured after the lawless action occurs.

It is difficult to estimate the harm the State will suffer if the Controller is allowed to violate state law by paying state employees their full salaries without an appropriation. The lack of a state budget already places the State in a precarious fiscal situation. When no fiscal year budget is in place, the State lacks authority to make a wide range of public expenditures. (Genest Decl. ¶ 6.) For example, the State has no authority to issue payments to vendors and contractors for goods and services chargeable to Fiscal Year 2008-2009; apportionments of highway user taxes to the state, cities and counties for highway and road improvement projects;

-20-

grants to higher education students; funds for the operation of the trial courts, the University of California, California State University system, and the California Community Colleges system; payments for non-federally mandated social services programs such as Community Care Licensing, Adult Protective Services, State Only Foster Care, State Only Adoptions Assistance, and Cash Assistance Program for Immigrants; and tax relief payments to low income seniors and disabled persons. (Genest Decl. ¶ 6.)

In addition to the operational effects of a budget impasse described above, when no fiscal year budget is in place, other payments required by law continue without consideration of, or adjustments to address the state's fiscal condition. (Genest Decl. ¶ 7.) As a result, the State has now committed to spending approximately $487 million above the expenditure adjustments previously proposed by the Governor in his May Revision of the proposed Fiscal Year 2008-09 budget. (Genest Decl. ¶ 7.) Consequently, the State is suffering financially from the absence of a budget, even without the Controller issuing illegal salary disbursements to state employees.

The State's fiscal situation may be adversely affected if the Controller is allowed to pay state employees their full salaries in contravention of *White v. Davis*, and the implementing DPA pay letter. DOF works with the State Controller's Office and the State Treasurer's Office every year to determine whether, on a monthly basis, the state will have sufficient cash attributable to the General Fund to meet the state's obligations, including its obligations to its bondholders. (Genest Decl. ¶ 8.) DOF currently projects it is likely the State will have insufficient cash in the General Fund to meet those needs by either September or October 2008. (Genest Decl. ¶ 8.)

The consequences of insufficient cash in the General Fund will be extremely detrimental, and could ultimately cost the State literally hundreds of millions of dollars. It is routinely necessary to borrow cash on a short-term basis in order to meet the state's obligations between periods that tax revenues are scheduled to be received. (Genest Decl. ¶ 9.) That borrowing process is the issuance of Revenue Anticipation Notes (RANs). (Genest Decl. ¶ 9.) However, when a budget is not in place, this cash flow borrowing cannot take place. (Genest Decl. ¶ 9.) Instead, in order to meet cash flow needs, borrowing must be done through the issuance of Revenue Anticipation Warrants (RAWs). (Genest Decl. ¶ 9.) RAWs are more expensive to

-21-

issue than RANs. (Genest Decl. ¶ 9.) It is anticipated that RAWs will bear interest at a rate at least one percent higher than RANs, and that the security for this type of borrowing, which is not required for RANs, will cost approximately $215 million. (Genest Decl. ¶ 9.) If a budget appropriation for state employee salaries is not passed in time to assure that RANs can be issued to meet this cash flow need, it may be necessary to issue the much more expensive RAWs. (Genest Decl. ¶ 10.) It is therefore prudent fiscal policy to reduce spending in order to reduce the size of any issuance of RAWs. (Genest Decl. ¶ 10.)

### 3. The Harm To Petitioners Is Of A Continuing Nature.

In *Wind v. Herbert, surpa,* 186 Cal.App.2d 276, the court noted that wrongs of a repeated and continuing character may also be sufficient grounds for issuing a preliminary injunction. (*Id.*, at 285.) In that case, plaintiffs contended unless the defendants were restrained by an injunction, they would continue to dissipate partnership assets in unauthorized disbursements to themselves. (*Id.*) The defendants had access to the partnership funds and were in fact making repeated use of partnership funds in violation of the partnership agreement. The court found that wrongs were of a repeated nature and generally constituted irreparable harm.

Similarly here, the Controller has usurped control of the disbursement of funds without regard to the State's uncertain fiscal condition. His intention to pay employees their regular salaries will be of a continuing nature as he will repeatedly ignore the California Constitution, the mandates of state law, and DPA's August 5, 2008 Pay Letter implementing the holding in *White v. Davis,* limiting state employee salary payments to what is minimally required by the FLSA. This unlawful payment will occur with each pay check issued and with each successive pay period.

### 4. The Controller's Actions Will Undermine DPA's Statutory Authority.

The financial harm the State may suffer is not the only hardship justifying a preliminary injunction in this case. By refusing to comply with Petitioners' lawfully issued Pay Letter that implements *White v. Davis,* the Controller undermines the authority vested in DPA to administer employee salary and compensation in accordance with state law.

/ / /

/ / /

-22-

"Where public officers act in breach of trust or without authority, or threaten to do so, and such acts will result in irreparable injury, or will make necessary a multiplicity of suits at law to obtain adequate redress, they may be enjoined." (*Save the Welwood Murray Mem'l Library Com v. City Council* (1989) 215 Cal.App.3d 1003, 1017.)

In *Save the Welwood Murray Mem'l Library Com v. City Council* (1989) 215 Cal.App.3d 1003, a non-profit citizens' group sought an injunction against a City Council to prevent the City from using property that had been dedicated for library purposes. (*Id.,* at 1007.) The City held title to the library property subject to a public trust and could not use the property for purposes other than those specified in the title. (*Id.,* at 1006-1007.) The court noted under the Code of Civil Procedure section 526, an injunction could be granted where the obligation arises from a trust, and that "[a] public trust is created when property is held by a public entity for the benefit of the general public." (*Id.,* at 1017.) Consequently, the court held that an injunction was legally justified to restrain the City from acting. (*Id.,* at 1017-1018.)

In the present case, funds in the state treasury are property held by a public entity for the benefit of the general public. The Controller threatens to breach that trust by disbursing the property without valid authorization. Just as the City Council was not authorized to use property held in public trust for non-library purposes, the Controller draw warrants against treasury funds without an available appropriation. (See *White v. Davis, supra,* 30 Cal.4th 528.) In an orderly government, a state official cannot arbitrarily maintain independent authority to second-guess the decision of another state officer. (*McCauley v. Brooks, supra,* 16 Cal. at 61.) The Controller cannot simply ignore DPA's directions any more than the City Council in *Murray Mem'l Library* could ignore clear restrictions on its authority. Thus, the Controller's acts must be enjoined to prevent a violation of State Constitution, state law, and permanent erosion of the Petitioner's authority to lawfully administer state employee salaries consistent with *White v. Davis.* If the Controller is permitted to refuse to follow Petitioners' instructions, then Petitioners' authority will be effectively undermined.

/ / /

/ / /

/ / /

-23-

# CONCLUSION

For the aforementioned reasons, Petitioners have satisfied all standards for the issuance of writ of mandate in this case. As such, Petitioners respectfully request that this court issue a writ of mandate compelling the Controller to refrain from violating state law. Petitioners have also satisfied all the standards for the issuance of a Preliminary Injunction. Petitioners respectfully request that the court enjoin the Controller from issuing full salaries to state employees except as permitted by *White v. Davis*, in the absence of a lawful appropriation.

Dated: August 11, 2008

Respectfully submitted,

K. WILLIAM CURTIS
Chief Counsel

By: K. WILLIAM CURTIS
Chief Counsel
Attorneys for Petitioner

FILED
Superior Court Of California,
Sacramento
Dennis Jones, Executive
Officer
08/11/2008
skyulngai
By_____, Deputy
Case Number:
34-2008-80000026-CU-WM-GDS

1  K. WILLIAM CURTIS
   Chief Counsel, Bar No. 095753
2  WARREN C. STRACENER
   Deputy Chief Counsel, Bar No. 127921
3  LINDA A. MAYHEW
   Assistant Chief Counsel, Bar No. 155049
4  CHRISTOPHER E. THOMAS
   Labor Relations Counsel, Bar No. 186075
5  Department of Personnel Administration
   State of California
6  1515 S Street, North Building, Suite 400
   Sacramento, CA  95811-7258
7  Telephone:  (916) 324-0512
   Facsimile:  (916) 323-4723
8  E-mail:  christhomas@dpa.ca.gov

9  Attorneys for Petitioner, DAVE GILB, as Director of the
   California Department of Personnel Administration and the
10 Department of Personnel Administration

11            SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                     COUNTY OF SACRAMENTO

13

14 DAVID A. GILB; CALIFORNIA          )  Case No.
   DEPARTMENT OF PERSONNEL            )
   ADMINISTRATION                     )  PETITION FOR WRIT OF MANDATE (CCP §
15                                     )  1085); COMPLAINT FOR INJUNCTIVE AND
                                       )  DECLARATORY RELIEF
16         Petitioners/Plaintiffs,     )
                                       )
17    v.                               )  Date:
                                       )  Time:
18 JOHN CHIANG, sued herein in his official )  Dept:
   capacity only; OFFICE OF STATE      )  Trial Date:
19 CONTROLLER                          )
                                       )  **Exempt from Fees**
20         Respondents/Defendants.     )  **(Gov. Code § 6103)**
                                       )

21        Petitioners/Plaintiffs, DAVID A. GILB and the CALIFORNIA DEPARTMENT OF

22 PERSONNEL ADMINISTRATION, hereby allege as follows:

23                        **GENERAL ALLEGATIONS**

24                              **PARTIES**

25        1.     Petitioners/Plaintiff s DAVID A. GILB is the Director of the Department of

26 Personnel Administration, and sues herein in his official capacity only.  DAVID A. GILB (Gilb) is

27 charged with administering and enforcing the laws pertaining to personnel, and to perform such

28 other duties that may be prescribed by law.  (Gov. Code §§ 19815.3, 19815.4.)

                                      -1-

PETITION FOR WRIT OF MANDATE; COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1      2.     Petitioners/Plaintiff s CALIFORNIA DEPARTMENT OF PERSONNEL

2  ADMINISTRATION (DPA) is a California state agency statutorily created for the purposes of

3  managing the nonmerit aspects of the state's personnel system. (Gov. Code § 19815.2.)

4      3.     In general, DPA has jurisdiction over the state's financial relationship with its

5  employees, including matters of salary, layoffs, and nondisciplinary demotions. (*Tirapelle v. Davis*

6  (1993) 20 Cal.App.4[th] 1317, 1322; Gov. Code §§ 19816, 19825, 19826.)

7      4.     Respondents/Defendants JOHN CHIANG is the Controller for the State of California.

8  JOHN CHIANG (Chiang) is a state constitutional officer who is elected at the same time and places

9  and for the same term as the Governor. (Cal. Const. art. V, § 11.) The Controller is the head of the

10  Office of the Controller. (Gov. Code § 12405.)

11      5.     Petitioners/Plaintiffs bring this action against Chiang in his official capacity only.

12      6.     Respondents/Defendants OFFICE OF STATE CONTROLLER is a state department

13  charged with processing payroll transactions for state employees and auditing the disbursement of

14  any state money. (Gov. Code §§ 12410, 12412.)

15                          **VENUE**

16      7.     The California Attorney General has an office within the County of Sacramento,

17  making that county an appropriate venue. (Civ. Proc. § 401(1).)

18      8.     Both DPA and the Office of State Controller are headquartered in Sacramento

19  County.

20           **FACTS APPLICABLE TO ALL CAUSES OF ACTION**

21      9.     Article IV, section 12 of the California Constitution provides in part, "[t]he

22  Legislature shall pass the budget bill by midnight of June 15 of each year." However, in recent years

23  the timely adoption of the budget bill in California has proven to be the exception rather than the

24  rule. (*White v. Davis* (2003) 30 Cal.4[th] 528, 533.)

25      10.    This year the Legislature has failed to meet the Constitutional requirement to pass a

26  budget by July 15.

27      11.    At the time of filing this Petition for Writ of Mandate and Complaint for Injunctive

28  and Declaratory Relief, the Legislature has not passed a budget bill for Fiscal Year 2008-2009.

1        12.    The budget for the previous fiscal year expired on June 30, 2008, leaving the State of

2 California currently without a state budget.

3        13.    When there is no budget for a fiscal year, the State government has no authority to

4 make a wide variety of payments. These include public-purpose payments for, among other things,

5 payments to vendors and contractors for goods and services chargeable to Fiscal Year 2008-2009;

6 apportionments of highway user taxes to the state, cities and counties for highway and road

7 improvement projects; grants to higher education students; funds for the operation of the trial courts,

8 the University of California, California State University system, and the California Community

9 College system; payments for non-federally mandated social services programs such as Community

10 Care Licensing, Adult Protective Services, State Only Foster Care, State Only Adoptions Assistance,

11 and Cash Assistance Program for Immigrants; and tax relief payments to low income senior and

12 disabled persons. (Declaration of Michael C. Genest, (Genest Decl.) ¶ 6.)

13        14.    When there is no budget for a fiscal year, some payments required by law must

14 continue without consideration of the state's fiscal condition. This has resulted in the commitment

15 of approximately $487 million above the expenditure adjustments proposed by the Governor in his

16 May Revision of the proposed Fiscal Year 2008-2009 budget. (Genest Decl. ¶ 7.)

17        15.    The Department of Finance (DOF) currently projects it is likely the State will have

18 insufficient cash attributable to the General Fund to meet the State's obligations, including its

19 obligations to bondholders, in either September or October, 2008. (Genest Decl.¶ 8.)¶

20        16.    The salaries of state employees are paid out of the State General Fund. (Gov. Code

21 § 19824.)

22        17.    Except where payments are self-executing under the California Constitution, the State

23 has no authority to pay state employee their full salaries where it does not have an appropriation

24 such as in this case where there is no budget for Fiscal Year 2008-2009.

25        18.    In the absence of a current budget, or other available appropriation, the Office of

26 State Controller is prohibited by state law from paying state employees their salaries, except as

27 minimally provided in the California Constitution and the requirements of *White v. Davis* to pay

28 wages as minimally required by federal law. (*White v. Davis, supra, at 533.*)

-3-

1      19.    The California Supreme Court held in *White v. Davis* that in the absence of a state
2  budget state employees do not have a contractual right actually to receive the payment of salary prior
3  to enactment of an available appropriation. (*White v. Davis, supra,* at 535.)

4      20.    Consistent with the requirements of federal law, the Controller is required,
5  notwithstanding a budget impasse and the limitations imposed by state law, to timely pay those state
6  employees who are subject to the minimum wage and overtime compensation provisions of the Fair
7  Labor Standards Act ("FLSA" or "Act") (non-exempt employees), the wages required by that act.
8  (*White v. Davis, supra,* at 535.)

9      21.    The Court determined that, except as minimally required by the FLSA, or in
10  situations where there is a continuing appropriation, or payment is authorized by a self-executing
11  provision of the State Constitution, the Controller is not authorized to pay state employee salaries in
12  the absence of a budget or other available appropriation. (*White v. Davis, supra,* at 535.)

13      22.    By paying state employees their full salaries in the absence of an available
14  appropriation, the Controller violates Article XVI, section 7 of the California Constitution, which
15  provides that "money may be drawn from the treasury only through an appropriation made by law
16  and upon a Controller's duly drawn warrant." (*White v. Davis, supra,* at 566.)

17      23.    By paying state employees their full salaries in the absence of an available
18  appropriation, the Controller also violates Government Code section 12440, which provides "the
19  Controller shall draw warrants on the Treasurer for the payment of money directed by law to be paid
20  out of the State treasury; but a warrant shall not be drawn unless authorized by law, and unless,
21  except for refunds authorized by Section 13144, unexhausted specific appropriations provided by
22  law are available to meet it." (*White v. Davis, supra,* at 567.)

23      24.    Government Code section 9610 provides that "the fixing or authorizing the fixing of
24  the salary of a State officer or employee is not intended to and does not constitute an appropriation
25  of money for the payment of the salary. The salary shall be paid only in the event that monies are
26  made available by another provision of law." (*White v. Davis, supra,* at 567.)

27  / / /
28  / / /

PETITION FOR WRIT OF MANDATE; COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1    25.    Government Code section 1231.1 provides that funds from appropriations in the

2    budget act "may be expended to pay to…employees whatever salary that would have otherwise been

3    received had the budget act been adopted on or prior to July 1, of that fiscal year." (*White v. Davis*,

4    *supra*, at 568.)

5    26.    The Controller's act of paying state employees their full salaries in the absence of an

6    available appropriation violates Government Code sections 9610 and section 1231.1.

7    27.    The salary to be paid a state employee which is payable in whole or in part out of

8    state funds, is subject only to the approval of DPA before it becomes effective and payable, unless

9    the Legislature expressly provides that DPA approval is not necessary. (Gov. Code § 19825.)

10    28.    In accordance with the Governor's July 31, 2008 Executive Order, DPA has approved

11    salaries to be paid to certain state employees who are specified in DPA's August 5, 2008 Pay Letter

12    to the Controller. (Declaration of David A. Gilb, (Gilb Decl.) ¶¶ 9-11.)

13    29.    On July 31, 2008, Governor Schwarzenegger issued an Executive Order (Executive

14    Order S-09-08) directing the State of California to take various emergency measures in light of the

15    late State Budget for Fiscal Year 2008-2009. (Gilb Decl. ¶ 2, Exhibit A.)

16    30.    In the Executive Order, the Governor directed state agencies and departments "to

17    cease and desist authorization of all overtime for employees effective July 31, 2008," except for

18    "services and functions of state government deemed critical and exempt by the Order and emergent

19    situations to preserve and protect human life and safety." (Gilb Decl. ¶ 2, Exhibit A.)

20    31.    In the Executive Order, the Governor ordered DOF and DPA to work with the State

21    Controller "to develop and implement the necessary mechanisms, including but not limited to pay

22    letters and computer programs, to comply with the California Supreme Court's *White v. Davis*

23    opinion to pay federal minimum wage to those nonexempt FLSA employees who did not work any

24    overtime." (Gilb Decl. ¶ 4, Exhibit A.)

25    32.    The Executive Order further ordered "that the necessary mechanisms to ensure

26    compliance with the *White v. Davis* opinion must be in place to be effective for the August 2008

27    payroll." (Gilb Decl. ¶ 5, Exhibit A.)

28    / / /

-5-

1    33.    The Executive Order also ordered "that this Order shall remain in effect until such

2    time as both a Fiscal Year 2008-2009 Budget is adopted and the Director of the DOF confirms an

3    adequate cash balance exists to meet the State's fiscal operations." (Gilb Decl.¶ 6, Exhibit A.)

4    34.    In a July 31, 2008 letter to the Governor, the Controller stated unequivocally, "I will

5    not comply with the Order."  (Gilb Decl. ¶ 7, Exhibit B.)  In his letter to the Governor, the

6    Controller further stated he will continue to provide full pay to all state employees irrespective of an

7    available appropriation. (Gilb Decl. ¶ 7, Exhibit B.)

8    35.    DPA is the state agency charged with administering and enforcing certain laws.

9    (Gov. Code § 19815.2, 19815.4(b) and (h), 19816, 19824.)

10    36.    A "pay letter" is the historical administrative document issued by DPA (and its

11    predecessor, the California State Personnel Board) to the Controller that "triggers" the Controller's

12    duty to perform his ministerial role regarding the payment of employee salaries.  (Declaration of

13    Jerri Judd (Judd Decl.) ¶¶ 4-5.)

14    37.    On August 5, 2008, DPA issued Pay Letter 08-23.  It provided the Controller with the

15    necessary instructions to comply with state law and the requirements of *White v. Davis* to pay wages

16    as minimally required by federal law.  (Gilb Decl. ¶ 9, Exhibit C.)

17    38.    The DPA Pay Letter provided the Controller with special salary payment instructions

18    concerning state employees to be effective July 31, 2008.  In particular, DPA instructed the

19    Controller to comply with federal labor law and the California Supreme Court's decision in *White v.

20    Davis*.  With regard to non-exempt state employees (Workweek Group 2), DPA instructed the

21    Controller to pay them the federal minimum wage of $6.55 per hour. (Gilb Decl. ¶¶ 9-10, Exhibit C.)

22    39.    The Pay Letter also included a list of departments and programs that are not subject to

23    the overtime prohibition in the Executive Order due to the critical nature of the work performed by

24    these departments and programs.  The Pay Letters excluded these departments and programs because

25    there is a reasonable expectation that these non-exempt FLSA state employees will work overtime.

26    (Gilb Decl. ¶ 11, Exhibit C.)

27    40.    The DPA Pay Letter also provides the Controller with special salary payment

28    instructions for all Executive, Administrative, and Professional (EAP) (Workweek Group E)

-6-

employees covered by the FLSA. DPA instructed the Controller to pay these employees $455.00 per week, which represents the minimum salary required by the FLSA in order to preserve the EAP exemption. (Gilb Decl. ¶ 10, Exhibit C.)

41.    The DPA Pay Letter also provides the Controller with special salary payment instructions to employees covered by the Code of Federal Regulation sections 541.303 and 541.304 (Workweek Group SE). DPA instructed the Controller to delay payment of all wages to these employees because these employees are exempt from the FLSA salary basis test and are not subject to any minimum salary requirements under the FLSA. DPA instructed the Controller that these employees should not receive any compensation until after the adoption of a state budget. (Gilb Decl. ¶ 10, Exhibit C.)

42.    On August 7, 2008, DPA met with the Office of the Controller to discuss implementation of salary payments consistent with the California Supreme Court's holding in *White v. Davis*, the Governor's Executive Order, and DPA's August 5, 2008 Pay Letter. DPA presented three options it believed would enable the Controller to comply with state law and DPA's August 5, 2008 Pay Letter. (Declaration of Julie Chapman, (Chapman Decl.) ¶ 15; Judd Decl. ¶ 12.)

43.    The Controller's representatives did not present any options for complying with *White v. Davis* or DPA's August 5, 2008 Pay Letter. They did not make any recommendations or suggestions that could assist them in complying with the California Constitution, the Supreme Court's decision in *White v. Davis*, or the August 5, 2008 Pay Letter. (Chapman Decl. ¶ 30; Judd Decl. ¶ 12.)

44.    During the August 7, 2008 meeting, the State Controller's Office did not allege it was impossible to comply with the California Constitution, the Supreme Court's decision in *White v. Davis* or DPA's August 5, 2008 Pay Letter. (Chapman Decl. ¶ 14.)

45.    DPA sent the State Controller's Office a memorandum on August 8, 2008, asking if it believed any of the three options presented during the August 7 meeting would enable it to implement salary payments consistent with the law and DPA's August 5, 2008 Pay Letter. DPA also asked for alternative solutions to implementing the law and the August 5 Pay Letter. DPA requested a response by noon on Monday, August 11, 2008. (Chapman Decl. ¶ 31.)

PETITION FOR WRIT OF MANDATE; COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1   46.   The Controller responded by letter dated August 11, 2008. (Chapman Decl. ¶ 33;

2   Gilb Decl. ¶ 15.)

3   47.   Each purported obstacle, however, is something that can be resolved by the options I

4   presented on August 7, 2008, or alternatively is something the controller has had over 5 years to

5   address. (Chapman Decl. ¶ 35; Gilb Decl. ¶ 16.)

6   48.   Each issue identified in the August 11, 2008 letter is a matter that can be resolved by

7   the options presented by DPA to the Controller's office on August 7, 2008. (Chapman Decl. ¶ 36.)

8   49. .   The Controller does not intend to make wage payments for state employees that

9   comply with *White v. Davis*.

10   50.   All state employees, except certain appointees and high level executives, received

11   payment of their full salaries for the "July pay period" (July 1 through July 30.)  Only employees

12   falling within the parameters of *White v. Davis* will receive a partial payment of their salaries for the

13   "August pay period" (July 31 through August 31.)  This partial payment of wages is only a

14   temporary condition.  Once a budget is adopted, they will receive their full salaries including any

15   unpaid wages due.  (Judd Decl. ¶¶ 21-23.)

16   51.   The Controller traditionally establishes a "cut off" date after which no further payroll

17   adjustments may be submitted for the current payroll period.  The "cut off" date for the August pay

18   period is on or about August 21, 2008 with payday on August 29, 2008. (Judd Decl. ¶¶ 24-25.)

19   ## FIRST CAUSE OF ACTION

20   ## (WRIT OF MANDATE C.C.P. § 1085)

21   52.   Petitioners/Plaintiffs hereby incorporate by reference all of the foregoing paragraphs

22   as though fully set forth herein.

23   53.   Code of Civil Procedure section 1085 provides as follows:

24   "A writ of mandate may be issued by any court to any inferior tribunal, .
    corporation, board, or person, to compel the performance of an act
25   which the law specially enjoins, as a duty resulting from an office,
    trust, or station, or to compel the admission of a party to the use and
26   enjoyment of a right or office to which the party is entitled, and from
    which the party is unlawfully precluded by such inferior tribunal,
27   corporation, board, or person." (Civ. Proc § 1085, subd. (a).)

28

-8-

54.     A writ of mandate lies to compel a public official to perform an official act required by law. (*Common Cause v. Board of Supervisors* (1989), 49 Cal.3d 432, 442.) A writ must issue when there is no plain, speedy, and adequate alternative remedy; the respondent has a duty to perform; and the petitioner has a clear and beneficial right to performance. (*Payne v. Superior Court* (1976) 17 Cal.3d 908, 925.)

55.     Petitioners/Plaintiffs have no plain, speedy, or adequate alternative remedy at law to challenge the refusal of the Controller to comply with DPA's Pay Letter requiring payment of salaries in accordance with the California Supreme Court decision in *White v. Davis*. (Gilb Decl. ¶ 17.)

56.     The Controller has a legal duty to follow the law set forth in the California Supreme Court decision in *White v. Davis,* and to comply with the DPA Pay Letter cited herein.

57.     DPA has a beneficial right to performance in this case, as explained by the appellate court in *Tirapelle v. Davis* (1993) 20 Cal.App.4th 1317.

58.     The Director of DPA also has a beneficial right to the performance sought here because DPA, and its director, are charged with the responsibility to administer and enforce certain laws concerning personnel and employee compensation. (Gov. Code §§ 19815.2, 19815.4(b)(h), 19816, 19818.6, 19824.)

59.     A writ of mandate must issue to compel the Controller to refrain from paying state employee salaries in the absence of a state budget or other available appropriation in violation of state law and the requirements of *White v. Davis* to pay wages as minimally required by federal law.

## SECOND CAUSE OF ACTION

## (COMPLAINT FOR INJUNCTIVE RELIEF C.C.P. § 526)

60.     Petitioners/Plaintiffs hereby incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

61.     The Controller intends to continue to pay state employees their full and regular salaries for the August 2008 pay period in violation of state law.

62.     Judicial relief is urgently needed because the "cut-off" date for programming salary payments is August 21, 2008 for the August pay period. (Judd Decl. ¶ 22.)

-9-

1    63.    The Controller will issue these payments on or about August 29, 2008. (Judd Decl. ¶

2    22.)

3    64.    The Controller therefore must be enjoined from violating state law as soon as possible

4    and prior to its occurrence.

5    65.    Because DPA is entitled as a matter of law to have the Controller issue pay in accord

6    with DPA's Pay Letter, DPA has a reasonable likelihood of success on the merits regarding its

7    petition for writ of mandate and/or its declaratory relief cause of action.

8    66.    DPA is entitled to the relief demanded, and the relief, or any part thereof, consists in

9    restraining the commission or continuance of the act complained of herein.

10   67.    DPA will suffer irreparable injury because funds are drawn against the State General

11   Fund to make payments for employee salaries in violation of state law, the California Constitution

12   and the requirements of *White v. Davis* to pay wages as minimally required by federal law.

13   68.    Specifically, DPA is irreparably injured because DPA is charged with administering

14   and enforcing certain laws concerning personnel and employee salaries. By making payments

15   against the General Fund for employee salaries, in direct contravention of DPA's lawful authority

16   and legal duty to act, DPA's ability to fulfill its statutory duty is negated, entirely, by the

17   Controller's unlawful conduct. (Gilb Decl. ¶ 16.)

18   69.    In addition, DPA is without an adequate remedy at law. If the Controller is not

19   enjoined from violating state law, DPA will suffer a breach of its rights tending to render any

20   ultimate judgment ineffectual. (Gilb Decl. ¶ 17.)

21   70.    The facts and circumstances of this case warrant preliminary injunctive relief under

22   Code of Civil Procedure section 527.

23                    **THIRD CAUSE OF ACTION**

24            **(COMPLAINT FOR DECLARATORY RELIEF C.C.P. § 1060)**

25   71.    Petitioners/Plaintiffs hereby incorporate by reference all of the foregoing paragraphs

26   as though fully set forth herein.

27   72.    An actual controversy has arisen and now exists between Petitioners/Plaintiffs and

28   Respondents/Defendants concerning their respective rights and obligations under the California

-10-

1 | Supreme Court decision of *White v. Davis*. As set forth more fully elsewhere in the complaint,
2 | Petitioners/Plaintiffs contend that the Controller violates state law by paying state employees'
3 | salaries in the absence of a budget or other available appropriation, except as minimally required by
4 | federal law. Petitioners/Plaintiffs are informed and believe that Respondents/Defendants dispute
5 | these contentions.

6 |     73.    Petitioners/Plaintiffs seek to enforce their rights and to declare
7 | Respondents/Defendants obligations under the law. In particular, Petitioners/Plaintiffs ask this court
8 | to declare the Controller is legally required under state law to refrain from paying state employee
9 | salaries in the absence of a budget or other available appropriation, except as minimally required by
10 | the FLSA.

11 |     74.    Petitioners/Plaintiffs will continue to seek this relief even if a state budget is passed
12 | prior to the final adjudication of this dispute on the merits.

13 | **PRAYER**

14 |     WHEREFORE, PETITIONERS/PLAINTIFFS pray that judgment be entered against
15 | Respondents/Defendants, and each of them, as follows:

16 |     1.    For a writ of mandate pursuant to Code of Civil Procedure section 1085 compelling
17 | the Controller to refrain from violating state law by paying state employees in a manner inconsistent
18 | with the California Supreme Court decision of *White v. Davis*, and the DPA Pay Letter cited herein;

19 |     2.    For a preliminary and permanent injunction, against Defendant predicated on the
20 | claims presented herein, enjoining him, and his agents, servants, and employees, and all persons
21 | acting under, in concert with, or for him, from paying state employees in a manner inconsistent with
22 | the California Supreme Court decision of *White v. Davis*, and the DPA Pay Letter;

23 |     3.    For declaratory relief that the Controller is legally required under state law to refrain
24 | from paying state employee salaries in the absence of a budget or other available appropriation,
25 | except as minimally required by the FLSA;

26 | ///
27 | ///
28 | ///
  | ///

-11-

1      4.     For costs of suit incurred herein;

2      5.     For such costs and further relief as the Court deems just and proper.

3    Dated:   August 11, 2008

                                              Respectfully submitted,

4

5                                             K. WILLIAM CURTIS
                                              Chief Counsel

6

7                                    By:

8                                             K. WILLIAM CURTIS
                                              Chief Counsel

9                                             Attorneys for Petitioners/Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                     -12-



# SUPERIOR COURT OF CALIFORNIA
## County of Sacramento
### 720 Ninth Street ~ Room 102
### Sacramento, CA 95814-1380
### (916) 874-5522—Website www.saccourt.com

## NOTICE OF CASE ASSIGNMENT
### Proceeding for Writ of Mandate and/or Prohibition

Case Number:34-2008-80000026-CU-WM-GDS

This case has been assigned for all purposes to the judicial officer indicated below pursuant to rule 3.734 of the California Rules of Court and Sacramento Superior Court Local Rule 2.01; it is exempt from the requirements of the Trial Court Delay Reduction Act and the Case Management Program under Chapter 11 of the Sacramento Superior Court Local Rules.

| JUDGE | COURT LOCATION | DEPT. | PHONE |
|---|---|---|---|
| Hon. Timothy M. Frawley | Gordon D. Schaber Courthouse | 29 | (916) 874-5684 |

The petitioner shall serve all parties with a copy of this order and a copy of the Sacramento Superior Court Guide to the Procedures for Prosecuting Petitions for Prerogative Writs. The Guide is available in Room 102 of the courthouse, from the clerk of the department to which this matter has been assigned, and on the "Civil" page of the Sacramento Superior Court internet website (www.saccourt.com).

**Scheduling**
Contact the clerk in the assigned department to schedule any judicial proceedings in this matter, including hearings on ex parte applications and noticed motions.

**Other Information**
Pursuant to Local Rule 2.01, revised January 1, 2007, all documents submitted for filing in this case shall be filed in person at the Civil Front Counter (Room 102) or by mail addressed to the Clerk of the Sacramento Superior Court, Attn: Civil Division-Room 102, with the exception of certain documents filed on the day of the hearing. For specific requirements, please see the Sacramento Superior Court Guide to the Procedures for Prosecuting Petitions for Prerogative Writs.

Any administrative record must be lodged with the assigned department.

Date:08/11/2008 _____     .     Signed:_____

K. Sol, Deputy Clerk

---

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

JOHN CHIANG, sued herein in his official capacity only, office of STATE CONTROLLER

FILED/ENDORSED

AUG 1 2 2008

By: _____ T. CALAUSTRO

Deputy Clerk

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

David A. GILB, CALIFORNIA DEPARTMENT OF PERSONNEL ADMINISTRATION

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SACRAMENTO COUNTY SUPERIOR COURT<br>720 Ninth Street<br>Sacramento 95814 | CASE NUMBER<br>*(Número del Caso):* 34-2008-80000026-CU |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
K. William Curtis, Chief Counsel, CALIFORNIA DEPARTMENT OF PERSONNEL ADMINISTRATION
1515 S Street, North Building, Suite 400, Sacramento, CA 95811. (916) 324-0512

| | | |
|---|---|---|
| DATE:<br>*(Fecha)* AUG 1 2 2008 | Clerk, by _____ J Calaustro | , Deputy |
| | *(Secretario)* | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [✓] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)          [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)    [ ] CCP 416 90 (authorized person)

   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412 20, 465

www.accesslaw.com

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SACRAMENTO

| | | | |
|---|---|---|---|
| **DATE/TIME** | : AUGUST 12, 2008 | **DEPT. NO** | : 29 |
| **JUDGE** | : HON. TIMOTHY M. FRAWLEY | **CLERK** | : L. YOUNG |
| **REPORTER** | : NONE | **BAILIFF** | : NONE |

**DAVID A. GILB; CALIFORNIA DEPARTMENT OF PERSONNEL,**
      Petitioners,

**VS.**      Case No.: 34-2008-80000026

**JOHN CHIANG, sued herein in his official capacity only; OFFICE OF STATE CONTROLLER,**
      Respondents.

---

**Nature of Proceedings:**      **NOTICE OF RELATED CASE**

---

This Court has become aware that a Notice of Related Case should have been filed concerning this case and Yvonne Walker, Service Employees International Union Local 1000 vs. Schwarzenegger, et. al., Case No. 34-2008-800000013-CU-WM-GDS, which is currently assigned to Judge Marlette, Department 19.

Therefore, this case is being is being referred to the Presiding Judge, Department 47, for determination as to the appropriateness of assignment to a single judge or consolidation before a single judge, or other action deemed.

Dated: 08-12-08

           Honorable TIMOTHY M. FRAWLEY,
           Judge of the Superior Court of California, County of Sacramento

Certificate of Service by Mailing attached.

| | | |
|---|---|---|
| **BOOK** | : 20 | **Superior Court of California,** |
| **PAGE** | : | **County of Sacramento** |
| **DATE** | : August 12, 2008 | |
| **CASE NO.** | : 2008-80000026 | |
| **CASE TITLE** | : Dept. of Personnel Admin v. Office of State Controller | **BY: L. YOUNG,** |
| | | **Deputy Clerk** |

Zlmain

CASE NUMBER: 2008-80000026         DEPARTMENT: 29
CASE TITLE: DAVID A. GILB; CA DEPARTMENT OF PERSONNEL ADMIN. Vs. JOHN CHIANG
PROCEEDINGS: NOTICE OF RELATED CASE

## CERTIFICATE OF SERVICE BY MAILING
### (C.C.P. Sec. 1013a(4))

I, the undersigned deputy clerk of the Superior Court of California, County of Sacramento, do declare under penalty of perjury that I did this date place a copy of the above entitled notice in envelopes addressed to each of the parties, or their counsel of record as stated below, with sufficient postage affixed thereto and deposited the same in the United States Post Office at Sacramento, California.

K. William Curtis
Chief Counsel
Department of Personnel Administration
1515 S Street, North Building, Suite 400
Sacramento, CA 95811

Brooke D. Pierman
Attorney for Yvonne Walker and S.E.I.U.
1808 14th Street
Sacramento, CA 95811


Dated: 08-12-08                      Superior Court of California,
                                   County of Sacramento

                                  By:    L. YOUNG,
                                         Deputy Clerk


** faxed copies sent to the parties.


**BOOK**      : 29
**PAGE**      :
**DATE**      : **August 12, 2008**
**CASE NO.**  : **2008-80000026**
**CASE TITLE** : **DAVID A. GILB; CA DEPT OF**
               **PERSONNEL V. JOHN CHAING**

**Superior Court of California,**
**County of Sacramento**


**BY: L. YOUNG,**
         **Deputy Clerk**

Z1main

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SACRAMENTO

| | | | |
|---|---|---|---|
| **DATE** | : AUG 14 2008 | **DEPT. NO** | : **47** |
| **JUDGE** | : **JAMES M. MIZE** | **CLERK** | : **P. BANKS** |
| **REPORTER** | : **NONE** | **BAILIFF** | : **NONE** |

**DAVID A. GLIB, CALIFORNIA DEPARTMENT OF Case No. 34-2008-80000026** ✓
**PERSONNEL v. JOHN CHIANG, CONTROLLER OF**
**THE STATE OF CALIFORNIA**


**YVONNE WALKER et al. v. ARNOLD**      **Case No. 34-2008-80000018**
**SCHWARZENEGGER, GOVERNOR OF THE STATE**
**OF CALIFORNIA**


**WALKER v. SCHWARZENEGGER**      **Case No. 34-2008-80000013**


---

**Nature of Proceedings:**    **PROVISIONAL ASSIGNMENT TO JUDGE PATRICK MARLETTE**
                                 **FOR DETERMINATION OF WHETHER CASES ARE RELATED:**
                                 **ORDER**

       The Court has received minute orders from Judge Timothy M. Frawley and
Judge Michael P. Kenny indicating that they believe that writ cases
assigned to them for all purposes, David A. Glib, California Department of
Personnel v. John Chiang, Controller of the State of California, No. 34-
2008-80000026 and Yvonne Walker et al., v. Arnold Schwarzenegger, Governor
of the State of California, No. 34-2008-80000018, respectively, are related
to Walker v. Schwarzenegger, No. 34-2008-80000013, which was previously
assigned to Judge Patrick Marlette for all purposes.

       In light of the minute orders filed by the respective judges and in
accordance with California Rules of Court, rule 3.300(h)(1)(A), the Court
directs that the Honorable Patrick Marlette, the judge assigned the
earliest filed case, determine whether the cases should be related and
assigned to his department. Once each of the parties has appeared in the
cases, Judge Marlette may issue and serve a Notice of Related Cases. In
accordance with California Rules of Court, rule 3.300(f), each party to the

| | | |
|---|---|---|
| **BOOK** | : **47** | **Superior Court of California,** |
| **PAGE** | : AUG 14 2008 | **County of Sacramento** |
| **DATE** | : | |
| **CASE NO.** | : **34-2008-80000026/34-2008-** | |
| | **80000013/34-2008-80000018** | |
| **CASE TITLE** | : **GLIB v. CHIANG et al.** | **BY:** _____ |
| | | **Deputy Clerk** |

Page 1 of 2

**CASE NUMBER:** 34-2008-80000026/34-2008-80000013/34-2008-80000018
**DEPARTMENT :** 47
**CASE TITLE :** GLIB v. CHIANG et al.
**PROCEEDINGS:** NOTICE OF RELATED CASES AND PROVISIONAL ASSIGNMENT TO JUDGE
**PATRICK MARLETTE FOR DETERMINATION OF WHETHER CASES ARE RELATED**


respective actions shall have 5 days after service of the Notice of Related
Cases to file a response with Judge Marlette supporting or opposing having
the cases related.  Until Judge Marlette makes a determination as to
whether the cases are related, all other matters in each case shall be
heard in the department in which the case was initially assigned.  If the
cases are not found to be related by Judge Marlette, they shall remain in
the department to which they were initially assigned.  (Cal. Rules of
Court, rule 3.300(j).)

DATED:

AUG 14 2008

JUDGE OF THE SUPERIOR COURT

JAMES MIZE

| | | |
|---|---|---|
| **BOOK** | : 47 | **Superior Court of California,** |
| **PAGE** | : AUG 14 2008 | **County of Sacramento** |
| **DATE** | : | |
| **CASE NO.** | : 34-2008-80000026/34-2008-80000013/34-2008-80000018 | |
| **CASE TITLE** | : GLIB v. CHIANG et al. | **BY:** |
| | | **Deputy Clerk** |

**Page 2 of 3**

**CASE NUMBER:** 34-2008-80000026/34-2008-80000013/34-2008-80000018
**DEPARTMENT :** 47
**CASE TITLE :** GLIB v. CHIANG et al.
**PROCEEDINGS:** NOTICE OF RELATED CASES AND PROVISIONAL ASSIGNMENT TO JUDGE
PATRICK MARLETTE FOR DETERMINATION OF WHETHER CASES ARE RELATED


MAILED TO:


K. WILLIAM CURTIS
CHIEF COUNSEL
DEPARTMENT OF PERSONNEL ADMINISTRATION
1515 S STREET, NORTH BUILDING, STUITE 400
SACRAMENTO, CA 95811


BROOKE D. PIERMAN
ATTRONEY FOR YVONNE WALKER AND S.E.I.U.
1808 14TH STREET
SACRAMENTO, CA 95811


EDMUND G. BROWN,
ATTORNEY GENERAL
DEPT. OF JUSTICE, LEGAL AFFAIRS
1300 "I" STREET
SACRAMENTO, CA 95814


DAVE GILB, DIRECTOR
DEPT. OF PERONNEL ADMINISTRATION
1515 "S" STREET, NORTH BUILDING, STUITE 400
SACRAMENTO, CA 95811

DECLARATION OF MAILING
I hereby certify that I am not a party to
the within action, and that I deposited
a copy of this document in sealed
envelopes with first class postage
prepaid, addressed to each party or the
attorney of record in the U.S. Mail
at 720 Ninth Street Sacramento,
California.

DATED: AUG 14 2008

Deputy Clerk


| | | |
|---|---|---|
| **BOOK** | : | **47** |
| **PAGE** | : | |
| **DATE** | : | AUG 14 2008 |
| **CASE NO.** | : | **34-2008-80000026/34-2008-** |
| | | **80000013/34-2008-80000018** |
| **CASE TITLE** | : | **GLIB v. CHIANG et al.** |

**Superior Court of California,**
**County of Sacramento**

**BY:** _____

**Deputy Clerk**

**Page 3 of 3**



# SUPERIOR COURT OF CALIFORNIA
## County of Sacramento
### 720 Ninth Street, Room 102
### Sacramento, CA 95814-1380
### Telephone (916) 874-5522 – Website www.saccourt.com

---

# RETURNED DOCUMENT FORM

Case Name:    David A Glib, et al vs. John Chiang, et al

Document Name:    Notice of Motion and Motion To Intervene; Order; Verified Petition and Complaint In Intervention

Case Number:    34-2008-80000026

---

▶ **The enclosed document(s) is/are returned for the following reasons(s):**

| | | | |
|---|---|---|---|
| ☐ | Papers presented for filing shall be pre-punched with two holes at the top centered pursuant to CRC 2.133. | ☐ | Enclose a self-addressed, stamped envelope of the **appropriate size** for the return of conformed copies pursuant to CRC 3.1302(b). |
| ☐ | Must use local form pursuant to Local Rule 9.25. | ☐ | Original summons required for entry of default *(endorsed/filed copies are acceptable).* |
| ☐ | Complete information where indicated. | ☐ | Footer is required pursuant to CRC 2.110. |
| ☐ | Substitution of Attorney must be on adopted Judicial Council form pursuant to CRC 1.31. | ☐ | Document does not comply with CRC 2.100-2.119. |
| ☐ | A copy of the judgment is required for issuance of Writ or Abstract pursuant to Local Rule 9.27. | ☐ | Offer to Compromise does not comply with CRC 3.250(a) |
| ☐ | Civil Case Cover Sheet required pursuant to CRC 3.220(b)(1). | ☐ | We charge $15.00 for searching records or files, for each search longer than 10 minutes (includes index research). |
| ☐ | Proof of service required for:<br><br>*(endorsed/filed copies are acceptable).* | ☐ | Substitution or association of attorney must have State Bar number, firm name, address and telephone number pursuant to Local Rule 3.18. |
| ☐ | Enclose a conformed copy of the judgment for: | ☐ | The caption must specify that it is a "Limited Civil Case" pursuant to CCP 422.30 and CRC 2.111(10). |
| ☐ | Amount of demand required pursuant to GC 72055 and CRC 2.111(9). | ☐ | Requirements regarding venue have not been complied with pursuant to CCP 396a(a). |
| ☐ | Original signature required. | ☒ | $ 380.00 filing fee or fee waiver is required. |
| ☐ | No record was found. | ☐ | Copies are .50¢ per page - submit |

☒ Other: Fees due at the time of filing the Motion are as follows:  $40.00 Motion fee; $320.00 first appearance fee per each Intervenor, (total of $640.00).

The Verified Petition and Complaint In Intervention cannot be filed until the Court rules on the Motion.  Please keep your original Complaint until that time.  If necessary, you may attach a copy of the Complaint to the Motions.

---

| 8/14/2008 | |
|---|---|
| Dated | Deputy Clerk |

1 | PAUL E. HARRIS, III, Chief Counsel (State Bar No. 180265)
ANNE M. GIESE (State Bar No. 143934)
2 | BROOKE D. PIERMAN (State Bar No. 222630)
1808 14th Street
3 | Sacramento, CA 95811
Telephone: (916) 554-1279
4 | Facsimile: (916) 554-1292

FILED/ENDORSED

AUG 1 4 2008

By: A. WOODWARD
Deputy Clerk

5 | Attorneys for Intervenors YVONNE WALKER and
SERVICE EMPLOYEES INTERNATIONAL UNION, Local 1
6

7

8 | SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9 | IN AND FOR THE COUNTY OF SACRAMENTO

10

11 | DAVID A, GILB; CALIFORNIA
DEPARTMENT OF PERSONNEL
12 | ADMINISTRATION,

13 |        Petitioners/Plaintiffs,

14 | v.

15 | JOHN CHIANG, sued herein in his official
capacity only; OFFICE OF STATE
16 | CONTROLLER,

17 |        Respondents/Defendants.
                  /
18 | YVONNE WALKER; NAME; NAME;
19 | SERVICE EMPLOYEES INTERNATIONAL
UNION, LOCAL 1000,
20
21 |        Intervenors.
                  /

CASE NO. 34-2008-80000026

**NOTICE OF MOTION AND
MOTION TO INTERVENE**

Date:

Time:

Judge: Hon. Timothy M. Frawley

Department: 29

Trial Date: None

22 |      TO:    ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

23 |      **PLEASE TAKE NOTICE** that a hearing on Petitioners and Plaintiffs YVONNE

24 | WALKER, PAMELA HANDEL, TAMEKIA ROBINSON, KATHLEEN PHILLIPS, and

25 | SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1000, Motion for Leave to

26 | Intervene in the above-captioned matter has been set for the _____ day of September ___, at

27 | the hour of ___:00 a.m. or as soon thereafter as counsel may be heard, in Department 29 of the

28 | above-entitled Court located at 720 Ninth Street, Sacramento, California 95814.

1

NOTICE OF MOTION TO INTERVENE AND COMPLAINT IN INTERVENTION

1    This motion is made on the California Code of Civil Procedure section 387(a) and (b) and

2    is based on this notice, the memorandum of points and authorities, the declarations of Pamela

3    Handel, Tamekia Robinson, and Kathleen Phillips, the complete files and records in this action,

4    and such further oral and documentary evidence as may be presented at the time of hearing.

5        Pursuant to Local Rule 3.04, the court will make a tentative ruling on the merits of this

6    matter by 2:00 p.m., the court day before the hearing. To receive the tentative ruling, call the

7    department in which the matter is to be heard at 916-874-5684 (Department 29) or refer to the

8    website http://www.saccourt.com/courtrooms/trulings/dept29view.asp. If you do not call the

9    court and the opposing party by 4:00 p.m. the court day before the hearing, no hearing will be

10   held.

11                                          Respectfully submitted,

12   DATED: August 14, 2008

13                                          SEIU LOCAL 1000

14
                                            By
15                                              BROOKE D. PIERMAN
                                               Attorneys for Intervenors
16                                             YVONNE WALKER, PAMELA HANDEL,
                                               TAMEKIA ROBINSON, KATHLEEN
17                                             PHILLIPS and SERVICE EMPLOYEES
                                               INTERNATIONAL
18                                             UNION, Local 1000

19

20

21

22

23

24

25

26

27

28

                                          2

1  STEWART WEINBERG, Bar No. 031493
   WEINBERG, ROGER & ROSENFELD
2  A Professional Corporation
   1001 Marina Village Parkway, Suite 200
3  Alameda, California 94501-1091
   Telephone 510.337.1001
4  Fax 510.337.1023

5  Attorneys for Intervenor
   Stationary Engineers Local 39 International Union of
6  Operating Engineers, AFL-CIO

7

8

FILED/ENDORSED

AUG 14 2008

By: _____
    P. CRESCENTI
    DEPUTY CLERK

9         IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10            IN AND FOR THE COUNTY OF SACRAMENTO

11  DAVID A. GILB; CALIFORNIA            ) Case No. 34-2008-80000026-CU-WM-GDS
    DEPARTMENT OF PERSONNEL              )
12  ADMINISTRATION                       )        BY FAX
                                         )
13        Petitioners/Plaintiffs,        )
                                         )
14        v.                             ) EX-PARTE APPLICATION FOR LEAVE
                                         ) TO INTERVENE (CCP §387);
15  JOHN CHIANG, sued herein in his official ) MEMORANDUM OF POINTS AND
    capacity only; OFFICE OF STATE       ) AUTHORITIES IN SUPPORT OF
16  CONTROLLER                           ) INTERVENTION DECLARATION
                                         )
17        Respondents/Defendants.        )
                                         )
18  _____)
                                         ) Date:
19  STATIONARY ENGINEERS LOCAL NO. 39    ) Time:
    INTERNATIONAL UNION OF OPERATING     ) Dept.: 29
20  ENGINEERS, AFL-CIO                   )
                                         ) Trial Date: none set
21        Intervenor.                    )
                                         )
22  _____)

23       Stationary Engineers Local No. 39 International Union of Operating Engineers, AFL-CIO

24  (referred to herein as "Stationary Engineers") applies for leave to intervene in this action by filing

25  the Complaint in Intervention attached to this Application and incorporated in this Application by

26  reference.

27       This Application is made under section 387 of the Code of Civil Procedure, on the ground

28
WEINBERG, ROGER &
ROSENFELD
A Professional Corporation

EX-PARTE APPLICATION FOR LEAVE TO INTERVENE (CCP §387)
Case No. 34-2008-80000026-CU-WM-GDS

10948361.tif - 8/14/2008 3:35:56 PM

1    that Stationary Engineers has an interest in the success of Defendant John Chiang.  Stationary

2    Engineers is a recognized employee organization as defined by California Government Code

3    section 3513(b) and has been recognized by the State of California as the exclusive representative

4    of employees in Units 12 and 13 of the State of California.  State bargaining Unit 13 has

5    approximately 1000 members, and state bargaining Unit 12 has approximately 12,000 members.

6    Stationary Engineers directly represents all of the bargaining unit members in bargaining Unit 13,

7    and indirectly represents the members of bargaining Unit 12 in coordination with three other local

8    unions of the International Union of Operating Engineers.  Stationary Engineers Local 39 seeks to

9    intervene in its representational capacity on behalf of its members and the persons for whom it has

10   a statutory duty of fair representation to protect wages, hours and working conditions pursuant to

11   the Ralph C. Dills Act, California Government Code section 3512, et seq.  Those individual

12   members are threatened by this lawsuit in that the Plaintiff seeks to compel the Defendant

13   Controller to reduce the pay of Fair Labor Standards Act non-exempt employees of the State of

14   California, including employees in bargaining Units 12 and 13 to the Federal minimum wage.  In

15   the event that would occur, virtually all of the bargaining unit members in Units 12 and 13 would

16   not only lose their pay, but they would also have benefit payments which are "salary driven" or

17   dependent upon receiving a particular wage suspended as a result of such action.  Defendant

18   Chiang is a constitutional officer of the State of California who has taken a position reflecting his

19   interpretation of his obligations.  On the other hand, Stationary Engineers Local 39 represents the

20   interests of members of bargaining Units 12 and 13 whose property rights would be adversely

21   affected should Plaintiff prevail.  Thus, the interests of bargaining unit members in bargaining

22   Units 12 and 13 may not be adequately represented.

23          As of the date of the preparation of this Application, no trial date has been set, nor has there

24   been application for extraordinary relief.

25          On August 13, 2008, Stationary Engineers, through its counsel, contacted counsel for

26   Plaintiff, Linda Mayhew, and counsel for Defendant, Richard Chavarro, as to their position on

27   intervention.  Both indicated that they do not oppose intervention by Stationary Engineers.

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
(510 337 1001)

- 2 -

EX-PARTE APPLICATION FOR LEAVE TO INTERVENE (CCP §387)
Case No. 34-2008-80000026-CU-WM-GDS

1  Stationary Engineers Local 39 International Union of Operating Engineers, AFL-CIO is a
2  "recognized employee organization" in that it has been recognized by the State of California as an
3  exclusive representative of employees in an appropriate unit. In this case the appropriate units are
4  actually State bargaining Units 12 and 13. State bargaining Unit 12 has approximately 12,000
5  members, State bargaining Unit 13 has approximately 1500. Stationary Engineers is one of four
6  affiliates of the International Union of Operating Engineers which has representational obligations
7  under California Government Code section 3515.5 for matters within the scope of representation.
8  Salary and benefits are matters within the scope of representation. The instant case threatens the
9  salaries of bargaining unit members in Units 12 and 13, and indirectly affects the enjoyment of
10  fringe benefits which are salary driven or otherwise dependent upon receiving a particular level of
11  salary.

12  Because the Defendant in this action John Chiang is a constitutional officer who has based
13  his position with regard to reducing State employee salaries to the federal minimum wage during a
14  budget stalemate in the Legislature, the interests of members of State bargaining units may not be
15  adequately represented in that those interests are different than the interests of the State Controller.

16  Under these circumstances, California Code of Civil Procedure section 387 authorizes
17  intervention. Stationary Engineers Local 39 seeks to intervene on behalf of its members. Such
18  intervention has occurred in previous budgetary stalemate/wage freeze situations, including in the
19  case White v. Davis (2003) 30 Cal.4th 528, upon which the Plaintiff/Petitioner relies in the instant
20  case. In any event, the Plaintiff/Petitioner and the Defendant/Respondent have indicated to counsel
21  for Stationary Engineers Local 39 that they do not oppose intervention.

22  I declare under penalty of perjury under the laws of the State of California that the
23  foregoing is true and correct, signed in the City of Alameda, County of Alameda, State of
24  California on August 14, 2008

25
26  Respectfully submitted,
27  STEWART WEINBERG

28
WEINBERG, ROGER &
ROSENFELD
A Professional Corporation

- 3 -
EX-PARTE APPLICATION FOR LEAVE TO INTERVENE (CCP §387)
Case No. 34-2008-80000026-CU-WM-GDS

10948361.tif - 8/14/2008 3:35:56 PM

1

## PROOF OF SERVICE
### (CCP 1013)

2

3    I am a citizen of the United States and an employee in the County of Alameda, State of

4    California. I am over the age of eighteen years and not a party to the within action; my business

5    address is 1001 Marina Village Parkway, Suite 200, Alameda, California 94501-1091. On August

6    14, 2008, I served upon the following parties in this action:

7    K. William Curtis, Chief Counsel            Richard J. Chivaro,
     Warren C. Stracener                         OFFICE OF THE STATE
8    Linda A. Mayhew                             CONTROLLER
                                                 300 Capitol Mall, Suite 1850
9    Department of Personnel Administration      Sacramento, CA 95814-7089
     1515 S Street, North Building, Suite 400
10   Sacramento, CA 95811

11   Paul Harris
     Chief Counsel
12   SEIU Local 1000
     1808 14th Street
13   Sacramento, CA 95811

14   copies of the document(s) described as:

15   **EX-PARTE APPLICATION FOR LEAVE TO INTERVENE (CCP §387);**
     **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
16   **INTERVENTION DECLARATION**

17

18   [X]    **BY MAIL** I placed a true copy of each document listed herein in a sealed envelope,
            addressed as indicated herein, and caused each such envelope, with postage thereon fully
19          prepaid, to be placed in the United States mail at Alameda, California. I am readily familiar
            with the practice of Weinberg, Roger & Rosenfeld for collection and processing of
20          correspondence for mailing, said practice being that in the ordinary course of business, mail
            is deposited in the United States Postal Service the same day as it is placed for collection.

21          I certify under penalty of perjury that the above is true and correct. Executed at Alameda,

22   California, on August 14, 2008.

23                                              Linda Dobbins

24                                              Linda Dobbins

25

26

27

28
WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001



1   STEWART WEINBERG, Bar No. 031493
    WEINBERG, ROGER & ROSENFELD
2   A Professional Corporation
    1001 Marina Village Parkway, Suite 200
3   Alameda, California 94501-1091
    Telephone 510.337.1001
4   Fax 510.337.1023

5   Attorneys for Intervenor
    Stationary Engineers Local 39 International Union of
6   Operating Engineers, AFL-CIO

7

8

9              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                  IN AND FOR THE COUNTY OF SACRAMENTO

11

12  DAVID A. GILB; CALIFORNIA            ) Case No. 34-2008-80000026-CU-WM-GDS
    DEPARTMENT OF PERSONNEL              )
13  ADMINISTRATION                       )
                                         )
14              Petitioners/Plaintiffs,  )
                                         )
15          v.                           ) [PROPOSED] ORDER GRANTING
                                         ) LEAVE TO INTERVENE
16  JOHN CHIANG, sued herein in his official )
    capacity only; OFFICE OF STATE       )
17  CONTROLLER                           )
                                         )
18              Respondents/Defendants.  ) Date:
                                         ) Time:
19  _____     ) Dept.: 29
                                         )
20  STATIONARY ENGINEERS LOCAL NO. 39 ) Trial Date:  none set
    INTERNATIONAL UNION OF OPERATING )
21  ENGINEERS, AFL-CIO                   )
                                         )
22              Intervenor.              )
                                         )
23  _____     )

24          The Application for an Order that Stationary Engineers Local No. 39 International Union of

25  Operating Engineers, AFL-CIO be permitted to intervene in this action. Having been presented to

26  this Court, it appears that there is no opposition to such intervention.

27          IT IS ORDERED THAT the Application is granted and that Stationary Engineers Local

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

[PROPOSED] ORDER GRANTING LEAVE TO INTERVENE
Case No. 34-2008-80000026-CU-WM-GDS

1  No. 39 International Union of Operating Engineers, AFL-CIO is authorized to intervene in this

2  action and join with Defendant in resisting the claims of Plaintiff.

3      IT IS FURTHER ORDERED THAT Stationary Engineers Local No. 39 International

4  Union of Operating Engineers, AFL-CIO file the Complaint and intervention within thirty (30)

5  days of the date of this Order and serve upon David A. Gilb; California Department of Personnel

6  Administration; John Chiang, sued herein in his official capacity only; Office Of State Controller

7  with a copy of the Complaint in Intervention.

8  Dated:

9                                              JUDGE OF THE SUPERIOR COURT OF THE STATE
10                                             OF CALIFORNIA, COUNTY OF SACRAMENTO

11
   119493/502790
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1101 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
310.337.1001

- 2 -

[PROPOSED] ORDER GRANTING LEAVE TO INTERVENE
Case No. 34-2008-80000026-CU-WM-GDS

1

## PROOF OF SERVICE
(CCP 1013)

2

3       I am a citizen of the United States and an employee in the County of Alameda, State of

4   California.  I am over the age of eighteen years and not a party to the within action; my business

5   address is 1001 Marina Village Parkway, Suite 200, Alameda, California 94501-1091.  On August

6   14, 2008, I served upon the following parties in this action:

7       K. William Curtis, Chief Counsel          Richard J. Chivaro,
        Warren C. Stracener                        OFFICE OF THE STATE
8       Linda A. Mayhew                            CONTROLLER
        Department of Personnel Administration     300 Capitol Mall, Suite 1850
9       1515 S Street, North Building, Suite 400   Sacramento, CA 95814-7089
10      Sacramento, CA 95811

11      Paul Harris
        Chief Counsel
12      SEIU Local 1000
        1808 14th Street
13      Sacramento, CA  95811

14
    copies of the document(s) described as:

15
    **[PROPOSED] ORDER GRANTING LEAVE TO INTERVENE**

16

17  **[X]**    **BY MAIL**  I placed a true copy of each document listed herein in a sealed envelope,
               addressed as indicated herein, and caused each such envelope, with postage thereon fully
18             prepaid, to be placed in the United States mail at Alameda, California. I am readily familiar
               with the practice of Weinberg, Roger & Rosenfeld for collection and processing of
19             correspondence for mailing, said practice being that in the ordinary course of business, mail
               is deposited in the United States Postal Service the same day as it is placed for collection.

20             I certify under penalty of perjury that the above is true and correct.  Executed at Alameda,

21  California, on August 14, 2008.

22                                                       Linda Dobbins
23                                                       Linda Dobbins

24

25

26

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510 337 1001