Gary M. Messing, No. 075363
Gregg McLean Adam, No. 203436
Jonathan Yank, No. 215495
Erick V. Munoz, No. 235967
**CARROLL, BURDICK & McDONOUGH LLP**
Attorneys at Law
44 Montgomery Street, Suite 400
San Francisco, CA 94104
Telephone:     415.989.5900
Facsimile:     415.989.0932
Email:          gmessing@cbmlaw.com
                gadam@cbmlaw.com
                jyank@cbmlaw.com
                emunoz@cbmlaw.com

Attorneys for Intervenor Respondents/Defendants
CALIFORNIA CORRECTIONAL PEACE
OFFICERS' ASSOCIATION and
CALIFORNIA STATEWIDE LAW
ENFORCEMENT ASSOCIATION

David A. Sanders, No. 221393
**CALIFORNIA CORRECTIONAL
PEACE OFFICERS' ASSOCIATION**
755 Riverpoint Drive, Suite 200
West Sacramento, CA 95605-1634
Telephone:     916.372.6060
Facsimile:     916.372.9805
Email:          david.sanders@ccpoa.org

Kasey Christopher Clark, No. 148881
**CALIFORNIA STATEWIDE LAW
ENFORCEMENT ASSOCIATION**
20290 "H" Street
Sacramento, CA 95814
Telephone:     916.447.5262
Facsimile:     916.447.2530
Email:          kclark@cslea.com

FILED/ENDORSED

AUG 15 2008

By: T. CALAUSTRO
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SACRAMENTO

| | |
|---|---|
| DAVID A. GILB, CALIFORNIA DEPARTMENT OF PERSONNEL ADMINISTRATION, <br><br> Petitioners/Plaintiffs, <br><br> v. <br><br> JOHN CHIANG, sued herein in his official capacity only; OFFICE OF THE STATE CONTROLLER, <br><br> Respondents/Defendants. | No. 2008-80000026 <br><br> ***EX PARTE* APPLICATION FOR LEAVE TO INTERVENE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 387(B); MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Place:  Dept. 29 <br> Judge:  Hon. Timothy M. Frawley <br><br> Complaint Filed:  August 11, 2008 |

CBM-SF\SF415074 5

*EX PARTE* APPLICATION FOR LEAVE TO INTERVENE

| | |
|---|---|
| 1 | |
| 2 | CALIFORNIA CORRECTIONAL<br>PEACE OFFICERS' ASSOCIATION;<br>CALIFORNIA STATEWIDE LAW |
| 3 | ENFORCEMENT ASSOCIATION, |
| 4 | Intervenor |
| 5 | Respondents/Defendants |

## I

## INTRODUCTION

Proposed Intervenors CALIFORNIA CORRECTIONAL PEACE OFFICERS' ASSOCIATION ("CCPOA") and CALIFORNIA STATEWIDE LAW ENFORCEMENT ASSOCIATION ("CSLEA") (hereafter referred to collectively with their respective members as "Intervenors") are the exclusive collective bargaining representatives for approximately thirty-five-thousand public servants employed by Petitioners/Plaintiffs DEPARTMENT OF PERSONNEL ADMINISTRATION and DAVID L. GILB ("Petitioners").[1] **Neither Petitioners nor Respondents/Defendants State Controller JOHN CHIANG and OFFICE OF THE STATE CONTROLLER ("Respondents" or "the Controller") will oppose intervention**; indeed, the Controller will stipulate to intervention. (Adam Decl. at ¶¶ 2-3; Messing Decl. at ¶¶ 2-3.) Intervenors hereby request to join the lawsuit as Intervenor Respondents/Defendants in Order to litigate against Petitioners' requests for relief.

Notwithstanding that Petitioners present their Petition and Complaint ("Petition") as an effort to enforce state law—i.e., the California Supreme Court decision in *White v. Davis*, (2003) 30 Cal.4th 528 (*Davis*), and the Governor's Order (Order S-09-08, "Order" attached as Exh. A to Gilb Decl.), the primary question at issue is a federal one: *What level of pay is required by federal law under the facts of this case?*

---

[1] CCPOA represents approximately 28,000 peace officer classifications in state bargaining unit 6 ("Unit 6"). CSLEA represents approximately 7,000 peace officer classifications in state bargaining unit 7 ("Unit 7").

1    In their Order and moving papers, Petitioners assert that they need only pay
2    state employees the federal minimum wage.  Thus, Petitioners initiated this action for the
3    purpose of forcing Respondent to reduce the compensation of state employees, including
4    those represented by the Intervenor Defendants/Respondents, to the bare minimum
5    required by the federal Fair Labor Standards Act (currently $6.55 per hour), 28 U.S.C. §
6    201 *et seq*.  (Petition page 6 lines 17-21, hereafter Pet. 6: 17-21.)  This potential outcome,
7    which would lower the wages of a typical state employee by approximately eighty percent
8    (80%), creates a basis for intervention *as of right* by CCPOA and CSLEA, so that they
9    may appear in this matter to advocate the interests of the public servants they represent,
10   who will bear the brunt of Petitioner's proposed action.

11        The proposed pay cut will severely impact these employees' ability to support
12   themselves and to provide for their families.  (*See* Declarations of Chuck Alexander and
13   Kasey Christopher Clark attached hereto as Exhibits "A" and "B," respectively.)  It will
14   also result in the State's failure to timely compensate thousands of employees who will
15   inevitably work overtime, due to the exigencies of their work responsibilities.  Delayed
16   payments of this sort violate federal law.  (*See Biggs v. Wilson* (1993) 1 F.3d 1537, 1538.)

17        Furthermore, the Order violates the United States Constitution insofar as it bars
18   overtime for employees in Unit 6 represented by Intervenor CCPOA..  Federal courts have
19   recognized that State employees have a substantive due process right, cognizable under
20   the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C.
21   section 1983, to protection by their State employer from harm inflicted by third-parties.  It
22   is widely acknowledged that prisons in California are drastically understaffed.  Reducing
23   overtime for the purpose of cost-savings will result in further reduced staffing and security
24
25
26
27
28

1  in prisons administered by the California Department of Corrections and Rehabilitation

2  and will exacerbate unsafe levels, in violation of Intervenors' due process protections.[2]

3       Because of these interests in the matter before the Court, CCPOA and CSLEA

4  are entitled to intervene in this litigation as a matter of right. (Code Civ.Proc. § 387(b)

5  "Section 387".) Good cause existing for CCPOA and CSLEA to intervene, they

6  respectfully request that the Court grant them leave to intervene and permit them to file

7  the proposed Complaint in Intervention attached hereto as Exhibit "A."

8  **II**

9  **ARGUMENT**

10  **A.  The Standard for Ruling on an *Ex Parte* Application**

11       California Rule of Court No. 3.1200 *et seq*. and Sacramento Superior Court

12  Local Rules 2.04 and 3.14 set forth the procedural requirements for bringing an *ex parte*

13  request for relief before the Court. These requirements are notice to all parties and a

14  showing of good cause as to why *ex parte* relief should be granted.

15         **1.  Intervenors Have Provided the Requisite Notice**

16       Intervenors have satisfied the notice requirement of California Rule of Court

17  No. 3.1203 by advising Petitioners and Respondents (orally and in writing) of their intent

18  to intervene in this matter. (Adam Decl. at ¶ 2-4; Messing Decl. at ¶ 2-3.) **Petitioners**

19  **and Respondents advised that they do not oppose this *ex parte* application.** (*Id.*)

20         **2.  Good Cause Exists for Intervention by CCPOA and CSLEA**

21       Notice given, the Court must determine whether moving parties meet the

22  requirements to intervene. Section 387 reads, in pertinent part:

23

24  [2] Federal courts in multiple cases have determined that the level of medical care in
    California's prisons is unconstitutional—with widespread and severe understaffing
25  recognized as a major contributor. (*Ralph Coleman v. Arnold Schwarzenegger, et al.*,
    U.S.D.C., Eastern Dist. of Cal., Case No. CIV S-90-0520, *Marciano Plata, et al. v. Arnold*
26  *Schwarzenegger, et al.*, U.S.D.C., Northern Dist. of Cal., Case No. C01-1351 T.E.H.
    (*Plata*), *John Armstrong, et al. v. Arnold Schwarzenegger, et al.*, U.S.D.C., Northern
27  District, Oakland Division, Case No. 94-CV-02307-CW.)
    The Receiver's Report Re Overcrowding in *Plata*, can be found at
28  http://www.cphcs.ca.gov/docs/court/ReceiverReportReOvercrowding051507.pdf.

(a) Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding. ... A party served with a complaint in intervention may within 30 days after service move, demur, or otherwise plead to the complaint in the same manner as to an original complaint.

(b) If any provision of law confers an unconditional right to intervene or *if the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that person is so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect that interest*, unless that person's interest is adequately represented by existing parties, *the court shall, upon timely application, permit that person to intervene.*

[Emphasis added.] CCPOA and CSLEA move *ex parte* to intervene under subsection (b)—i.e., as having an unconditional right to intervene.

"Section 387 should be liberally construed in favor of intervention." (*Lindelli v. Town of San Anselmo* (2006) 139 Cal.App.4th 1499, 1505, *citing Simpson Redwood Co. v State of California* (1987) 196 Cal.App.3d. 1192, *see also Mary R. v. B. & R. Corp.* (1983) 149 Cal.App.3d 308, 315, *Stillwell Hotel Co. v. Anderson* (1936) 16 Cal.App.2d 636.) The court of appeal articulated the proper standard for intervention "as of right" under Code of Civil Procedure section 387(b) in *Hodge v. Kirkpatrick Development, Inc.* (*Hodge*) (2005) 130 Cal.App.4th 540, 547, as follows:

Intervention is mandatory (as of right) or permissive. A nonparty has a right under Code of Civil Procedure section 387, subdivision (b) to intervene in a pending action "if the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that person is so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by existing parties."[3]

---

[3] *Hodge, supra,* also delineates the section 387(a) standard for permissive intervention:

The trial court has discretion under Code of Civil Procedure section 387, subdivision (a) to permit a nonparty to intervene if: (1) the proper procedures have been followed; (2) the nonparty has a direct and immediate interest in the action; (3) the intervention will not enlarge the issues in the litigation; and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action.

(*Id.* at 547, fn.2.)

1    Because determining whether "intervention should be allowed is best
2    determined by a consideration of the facts of that case" (*In re Paul W.* (2007) 151
3    Cal.App.4th 37, 57), a summary of the action is appropriate:

### a.    The Underlying Action

5    Petitioners sued to force Respondents to comply with the July 31, 2008 Order
6    issued by the Governor. (Pet. 6:4-10; 11:14-25.) The Order purported to reduce the
7    salaries of state employees, including those represented by Intervenors, to the federal
8    minimum wage and restrict them from working overtime. (Pet. 5:16-19; 6: 20, 21).
9    Intervenors have not received consistent notice regarding which exemptions in the Order,
10   if any, will be applied to them. Consequently, Intervenors are informed and believe that
11   the Governor seeks to enforce both provisions against the vast majority of employees they
12   represent.

13   If the relief requested is granted in the ongoing action, Respondents will be
14   forced to comply with the Order, and both provisions will be enforced against Intervenors
15   by Petitioners.

### b.    The proper procedures have been followed

17   Moving parties have complied with section 387 procedures by herein
18   requesting leave of court to intervene and by filing a proposed Complaint in Intervention
19   concurrent with said request. Both CCPOA and CSLEA have standing to intervene on
20   behalf of their respective members under the representation doctrines articulated by the
21   United States Supreme Court in *Allee v. Medrano* (1974) 416 U.S. 802; *Professional Fire*
22   *Fighters v. City of Los Angeles* (1963) 60 Cal.2d 276; *International Association of Fire*
23   *Fighters v. City of Palo Alto* (1963) 60 Cal.2d 295; and *California Federation of Teachers*
24   *v. Oxnard Elementary School* (1969) 272 Cal.App.2d 514. As discussed above, the *ex*
25   *parte* procedures have also been followed.

26
27
28

### c. Intervenors' interests in the action are direct and immediate

The Intervenors' interest in the action is self-evident. If the Petitioners obtain the relief they seek, the pecuniary interests of the state employees represented by Intervenors will be greatly, and likely irreparably, harmed. Both the minimum wage and overtime provisions of the Order propose to drastically reduce the salaries of the employees represented by Intervenors. It will cause these employees to suffer gravely in innumerable ways, including, but not limited to, being unable to provide for their families, stay current with mortgage payments, and satisfy health care premiums. (Alexander Decl. ¶¶ 7-9; Clark Decl. ¶¶ 7-9.) The potential for such a catastrophic economic impact clearly demonstrates Intervenors' direct and immediate interest in the underlying subject matter of this action, satisfying section 387(b).

Furthermore, contrary to the Order that Petitioners seek to enforce by this action, Intervenors have the right to be paid their full wages and overtime compensation in accordance with *Davis, supra,* 30 Cal.4th 528, 578, which clarified the State employer's obligations under the federal Fair Labor Standards Act. In addition, the public employees represented by CCPOA have a constitutionally-protected right to substantive due process in connection with the real and immediate physical threat to them that Petitioners' success in barring overtime and reducing correctional staff would create.

### i. Right to Wages Under The FLSA

In *Davis, supra,* the California Supreme Court clarified that, while a lack of appropriation may justify non-payment of certain state worker salaries, the State employer may not be excused from paying at least the federal minimum wage to non-exempt—that is hourly—employees. (*Davis, supra,* 30 Cal.4th 528, 578.) According to the California Supreme Court, the FLSA dictates that any employee who works overtime is entitled to prompt payment of full wages and earned overtime pay, since overtime must be timely paid and must be calculated on the basis of the agreed wage (as opposed to an imposed minimum wage). (*Id.*)

Under the standard delineated by the California Supreme Court, because Intervenors are required to work overtime in Order to keep the public safe, they are entitled to prompt payment of full wages and overtime compensation. Preventing the relief requested by Petitioners in this action is necessary to vindicate that right. Therefore a direct interest is established justifying intervention.

### ii. CCPOA Members' Substantive Due Process Rights

CCPOA asserts that granting the relief Petitioners seek would violate a substantive due-process right to a safe workplace, cognizable under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. Section 1983. Federal courts have recognized that individuals possess a substantive due process right to protection by their state employer from harm inflicted by third-parties.

In *DeShaney v. Winnebago County Dep't of Soc. Servs.* (1989) 489 U.S. 189, 197, the United States Supreme Court held that, as general matter, a State's failure to protect an individual from third-party harm, even in the face of known danger, "does not constitute a violation of the Due Process Clause." However, despite this general rule, the *DeShaney* Court recognized that, in "certain limited circumstances[,] the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." (*Id.* at 198.) Although *DeShaney* itself did not so hold, one of these circumstances arises when "the State [was] aware of the dangers that [the claimant] faced" and "played [a] part in their creation" or did something to "render [the claimant] more vulnerable ... ." (*Id.* at 201.)

Since *DeShaney*, nearly all Circuit Courts of Appeals, including the Ninth Circuit, *have* relied upon this passage to hold that constitutional liability may arise under 42 U.S.C. section 1983 when the State affirmatively creates a danger to an individual or creates a situation that renders an individual more vulnerable to danger. (*See, e.g., Wood v. Ostrander* (9th Cir. 1989) 879 F.2d 583, 590 [adopting the state-created danger theory in the context of a section 1983 claim brought against police officers by the passenger in

1   an impounded vehicle who was raped after officers allegedly abandoned her on the side of

2   the road].)

3          The correctional institutions in which Intervenor CCPOA's members work are

4   already severely overcrowded, and further staff reductions would give rise to a cognizable

5   constitutional harm. In fact, the precise reason that overtime is so commonplace is that it

6   is crucial to maintaining safe and effective staffing levels. Preventing the relief requested

7   by Petitioners in this action is necessary to prevent the harm that will inevitably result

8   from staffing reductions. Therefore, a direct interest is established justifying intervention.

9          **d.    Intervention is unopposed by the existing litigants
10              who cannot adequately represent the interests of
               Intervenors**

11         As discussed above, Respondents have indicated that they are willing to

12  stipulate to CCPOA and CSLEA's intervention and Petitioners have stated they will not

13  oppose intervention. This lack of opposition makes clear that the existing parties cannot

14  adequately represent the interests of Intervenors. Even without this concession, it is clear

15  that the parties cannot adequately represent such interests because they do not have

16  standing to raise the claims relevant to those interests. Only Intervenors can raise issues

17  as to whether the overtime preclusion and reduction of wages are proper, because they are

18  the parties whose wages and welfare are directly affected.

19

20

21

22

23

24

25

26

27

28

## III

### CONCLUSION

In light of these facts it is clear that all the prerequisites enumerated in *Hodge* for compulsory intervention under Code of Civil Procedure section 387(b) are met. Having followed the proper procedures, Intervenors have established that they have several direct and indirect interests in the litigation that existing parties cannot adequately represent. There is no opposition to intervention and there is good cause therefore, as reflected in the instant papers, as well as the concurrently-filed proposed Complaint in Intervention. The Court should therefore grant Intervenors' *Ex Parte* Application for Leave to Intervene.

Dated: August 15, 2008

CARROLL, BURDICK & McDONOUGH LLP

By _____
Gary M. Messing
Gregg McLean Adam
Jonathan Yank
Erick V. Munoz
Attorneys for Intervenor Respondents/Defendants
CALIFORNIA CORRECTIONAL PEACE
OFFICERS' ASSOCIATION and
CALIFORNIA STATEWIDE LAW
ENFORCEMENT ASSOCIATION

A

EXHIBIT "A"

Gary M. Messing, No. 075363
Gregg McLean Adam, No. 203436
Jonathan Yank, No. 215495
Erick V. Munoz, No. 235967
**CARROLL, BURDICK & McDONOUGH LLP**
Attorneys at Law
44 Montgomery Street, Suite 400
San Francisco, CA 94104
Telephone:     415.989.5900
Facsimile:     415.989.0932
Email:         gmessing@cbmlaw.com
               gadam@cbmlaw.com
               jyank@cbmlaw.com
               emunoz@cbmlaw.com

*Attorneys for Intervenor Respondents/Defendants*
*CALIFORNIA CORRECTIONAL PEACE*
*OFFICERS' ASSOCIATION and*
*CALIFORNIA STATEWIDE LAW*
*ENFORCEMENT ASSOCIATION*

David A. Sanders, No. 221393              Kasey Christopher Clark, No. 148881
**CALIFORNIA CORRECTIONAL**              **CALIFORNIA STATEWIDE LAW**
**PEACE OFFICERS' ASSOCIATION**          **ENFORCEMENT ASSOCIATION**
755 Riverpoint Drive, Suite 200           20290 "H" Street
West Sacramento, CA 95605-1634            Sacramento, CA 95814
Telephone:     916.372.6060               Telephone:     916.447.5262
Facsimile:     916.372.9805               Facsimile:     916.447.2530
Email:         david.sanders@ccpoa.org    Email:         kclark@cslea.com

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SACRAMENTO

| | |
|---|---|
| DAVID A. GILB, CALIFORNIA DEPARTMENT OF PERSONNEL ADMINISTRATION, | No. 2008-80000026 |
| Petitioners/Plaintiffs, | **PROPOSED COMPLAINT IN INTERVENTION** |
| v. | Complaint Filed: August 11, 2008 |
| JOHN CHIANG, sued herein in his official capacity only; OFFICE OF THE STATE CONTROLLER, | |
| Respondents/Defendants. | |

CBM-SF\SF415194 3

CALIFORNIA CORRECTIONAL
PEACE OFFICERS' ASSOCIATION;
CALIFORNIA STATEWIDE LAW
ENFORCEMENT ASSOCIATION,

        Intervenor
        Respondents/Defendants.

By leave of Court, COME NOW CALIFORNIA STATEWIDE LAW

ENFORCEMENT ASSOCIATION ("CSLEA") and CALIFORNIA CORRECTIONAL

PEACE OFFICERS' ASSOCIATION ("CCPOA") (hereafter referred to collectively with

their respective members as "Intervenors") and complain against Petitioners, and each of

them, alleging as follows:

### PARTIES

1.     CSLEA is the exclusive recognized employee organization

representing approximately 7000 peace officer, firefighter, and various other law

enforcement-related classifications of employees in State Bargaining Unit 7 ("Unit 7"),

pursuant to the Ralph C. Dills Act, California Government Code section 3512 *et seq.*

("Dills Act").

2.     CCPOA is the exclusive recognized employee organization

representing approximately 30,000 correctional officers, correctional counselors, parole

agents, medical technical assistants, and other classifications of civil service employees

in State Bargaining Unit Six ("Unit 6"), pursuant to Dills Act.

3.     CCPOA and CSLEA have standing to intervene on behalf of their

respective members under the representation doctrines articulated by the United States

Supreme Court in *Allee v. Medrano* (1974) 416 U.S. 802; *Professional Fire Fighters v.

City of Los Angeles* (1963) 60 Cal.2d 276; *International Association of Fire Fighters v.

City of Palo Alto* (1963) 60 Cal.2d 295; and *California Federation of Teachers v.

Oxnard Elementary School* (1969) 272 Cal.App.2d 514.

4.     Respondent/Defendant JOHN CHIANG, is, and at all times relevant

herein was, the Controller for the State of California.

1       5.    Petitioner/Plaintiff CALIFORNIA DEPARTMENT OF PERSONNEL

2   ADMINISTRATION ("DPA") is the agency of the State of California designated as

3   the Governor's bargaining representative under the Dills Act. (Cal. Gov't Code §§

4   19815.4(g) and 3517). The DPA represents the Governor as the employer in all matters

5   pertaining to California state personnel employer-employee relations. (Cal. Gov. Code

6   § 19815, *et seq.*)

7       6.    Petitioner/Plaintiff DAVID GILB is the Director of DPA.

8                            **RELEVANT FACTS**

9       7.    On July 31, 2008 the Governor issued an Executive Order (Executive

10   Order S-09-08, "Order" attached as Exh. A to Gilb Decl.), decreeing, *inter alia*, that, as

11   a general proposition, the salaries of employees who are not exempted from the Fair

12   Labor Standards Act ("FLSA"), 29 U.S.C. § 201-19, including employees represented

13   by Intervenors, would be reduced to federal minimum wage and they would be

14   precluded from working overtime. Petitioner subsequently determined, in concert with

15   other state agencies, certain classifications that it exempted from the Order including

16   certain but not all employees in Units 6 and 7. Tens of thousands of employees

17   represented by the intervenors are not exempted from the Executive Order as of this

18   date.

19       8.    Although the Order provides for certain employees to be exempted

20   from its minimum wage and overtime provisions on public safety grounds the vast

21   majority of employees represented by Intervenors were not exempt from these

22   provisions.

23       9.    On August 11, 2008, Petitioners initiated the instant action requesting

24   mandamus, declaratory and injunctive relief.

25       10.    Through this lawsuit, Petitioners seek to impose the minimum wage

26   provisions on Intervenors and other public employees. (Petition page 11 lines 14-25,

27   hereafter Pet. 11: 14-25.)

28

11. Intervenors are proper parties pursuant to California Code of Civil Procedure section 387 ("section 387") because they have a clear, direct, and immediate interest in this case arising from the grave consequences they would suffer if the relief requested were granted.

12. Intervenors would obviously suffer direct pecuniary impact from the reduction of wages and the inability to work overtime, but the financial hardship would be so extreme that collateral injuries are inevitable as well. Intervenors would face the inability to pay mortgages, cover health care expenses, qualify for loans, pay credit cards and other interest bearing accounts, provide transportation, food and utilities for their families, and make timely palimony and child support payments resulting in fines and possible criminal sanctions. (*See* Declarations of Chuck Alexander and Kasey Clark.)

13. Under *Biggs v. Wilson* (1993) 1 F.3d 1537 (*Biggs*) all employees who work overtime must be timely paid their full normal wages, i.e., with their monthly paycheck. Petitioner concedes that, under *White v. Davis*, (2003) 30 Cal.4th 528 (*Davis*), it cannot pay minimum wage to those who work overtime. (Pet. 5: 20-24). Moreover, the Controller has represented in public testimony that he *cannot* practically pay employees their full salary as required by the FLSA under the conditions created by the Order[1].

14. Because of the nature of their work and understaffing in their respective departments, the overwhelming majority of Intervenors will work overtime. The Order creates a significant likelihood that such employees will be deprived of the full wages mandated by *Davis* and *Biggs*.

15. Federal Courts have recognized that state employees have Fifth and Fourteenth Amendment rights to substantive due process, actionable under 42 U.S.C.

---

[1] http://www.californiaprogressreport.com/2008/08/what_california_2.html

1   Section 1983, to prevent their employer affirmatively creating a danger to them or

2   creating a situation that renders them more vulnerable to danger.

3      16. The Order's preclusion of overtime for correction's staff represented

4   by Intervenor CCPOA would create such a danger, since it would radically reduce

5   personnel in a corrections system that all agree is already dangerously understaffed and

6   drastically overcrowded and subject to hundreds of federal court orders in *Ralph*

7   *Coleman v. Arnold Schwarzenegger, et al.*, U.S.D.C., Eastern Dist. of Cal., Case No.

8   CIV S-90-0520, *Marciano Plata, et al. v. Arnold Schwarzenegger, et al.*, U.S.D.C.,

9   Northern Dist. of Cal., Case No. C01-1351 T.E.H. (*Plata*), *John Armstrong, et al. v.*

10   *Arnold Schwarzenegger, et al.*, U.S.D.C., Northern District, Oakland Division, Case

11   No. 94-CV-02307-CW on account of the unconstitutional conditions that presently

12   exist.

13      17. Consequently, the relief requested by Petitioners in this action to

14   facilitate their enforcement of the Order against Intervenors creates several clear and

15   direct impacts that justify intervention.

16        **FIRST CAUSE OF ACTION - INJUNCTIVE RELIEF**

17   **VIOLATION OF THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 201-19: ENJOINING**

18        **REDUCTION OF INTERVENORS' WAGES**

19      18. Intervenors incorporate herein by reference all preceding paragraphs as

20   though fully set forth herein.

21      19. By this action, Petitioners propose drastic paycuts to thousands of

22   public servants by requiring the Controller to pay Intervenors federal minimum wage.

23      20. These paycuts will have severe and lasting detrimental impacts on

24   Intervenors.

25      21. Injunctive relief is therefore proper because this devastating impact

26   constitutes irreparable harm that is not outweighed by any consideration in favor of

27   executing the order.

28

1    22.   Due to the nature of their work, particularly the public safety functions
2    they perform, thousands of public servants will inevitably work overtime but will not
3    timely receive their full wage in violation of the federal law discussed above.

4    23.   Injunctive relief is therefore proper because it would prevent the State
5    from violating federal law in a manner that exposes them to potentially enormous
6    amounts of monetary liability for violating federal wage laws.

7    24.   Intervenors have no administrative remedies available to them under
8    applicable law.

9    25.   Intervenors, therefore, seek to enjoin Petitioners from enforcing the
10   order.

11   **SECOND CAUSE OF ACTION - INJUNCTIVE RELIEF**
12   **VIOLATION OF SUBSTANTIVE DUE PROCESS, 42 U.S.C. SECTION 1983: ENJOINING**
13   **OVERTIME PRECLUSION AGAINST INTERVENORS**

14   26.   Intervenors incorporate herein by reference all preceding paragraphs as
15   though fully set forth herein.

16   27.   CCPOA Intervenors are all employed by departments which suffer
17   from chronic understaffing and massive overpopulation of prison inmates.

18   28.   In order to address this understaffing, all these departments schedule
19   overtime shifts for nearly every employee.  There is simply no other way to adequately
20   staff the institutions in which Intervenors work.

21   29.   If the Order succeeds in precluding CCPOA Intervenors from working
22   overtime, this dangerous understaffing would be exacerbated to a level that would
23   inevitably create a direct threat of severe physical harm to CCPOA Intervenors.

24   30.   As discussed above, state employees have substantive due process
25   rights that prevent the State from affirmatively placing them in danger.

26   31.   The overtime preclusion against Intervenor CCPOA would generate
27   such a danger because it would create a dire understaffing of the State's already
28   overcrowded prison system and therefore would create an unsafe working environment.

32.  Intervenors have no administrative remedies available to them under applicable law.

33.  Intervenors, therefore seek to enjoin Petitioners from enforcing the Order because no other way to vindicate their federal substantive due process rights exists.

**PRAYER**

1.  A ruling in favor of Intervenors, denying each and every one of Petitioners' requests for relief.

2.  An Order enjoining Petitioners from enforcing the Order.

3.  For attorneys' fees, pursuant to 42 U.S.C. section 1988 and Code of Civil Procedure section 1021.5, or as otherwise provided or permitted by law, and

4.  For costs of suit incurred herein, and

5.  For any other relief as the Court deems just and proper.

Dated: August 15, 2008

CARROLL, BURDICK & McDONOUGH LLP

By _____
Gary M. Messing
Gregg McLean Adam
Jonathan Yank
Erick V. Munoz
*Attorneys for Intervenor Respondents/Defendants*
*CALIFORNIA CORRECTIONAL PEACE*
*OFFICERS' ASSOCIATION and*
*CALIFORNIA STATEWIDE LAW*
*ENFORCEMENT ASSOCIATION*

1  Gary M. Messing, No. 075363
   Gregg McLean Adam, No. 203436
2  Jonathan Yank, No. 215495
   Erick V. Munoz, No. 235967
3  **CARROLL, BURDICK & McDONOUGH LLP**
   Attorneys at Law
4  44 Montgomery Street, Suite 400
   San Francisco, CA 94104
5  Telephone:    415.989.5900
   Facsimile:    415.989.0932
6  Email:        gmessing@cbmlaw.com
                 gadam@cbmlaw.com
7                jyank@cbmlaw.com
                 emunoz@cbmlaw.com
8
   *Attorneys for Intervenor Respondents/Defendants*
9  *CALIFORNIA CORRECTIONAL PEACE*
   *OFFICERS' ASSOCIATION and*
10 *CALIFORNIA STATEWIDE LAW*
   *ENFORCEMENT ASSOCIATION*
11
   David A. Sanders, No. 221393          Kasey Christopher Clark, No. 148881
12 **CALIFORNIA CORRECTIONAL**           **CALIFORNIA STATEWIDE LAW**
   **PEACE OFFICERS' ASSOCIATION**       **ENFORCEMENT ASSOCIATION**
13 755 Riverpoint Drive, Suite 200       20290 "H" Street
   West Sacramento, CA 95605-1634        Sacramento, CA 95814
14 Telephone:   916.372.6060             Telephone:    916.447.5262
   Facsimile:   916.372.9805             Facsimile:    916.447.2530
15 Email:       david.sanders@ccpoa.org  Email:        kclark@cslea.com

16                SUPERIOR COURT OF THE STATE OF CALIFORNIA

17                           COUNTY OF SACRAMENTO

18

19 DAVID A. GILB, CALIFORNIA            No. 2008-80000026
   DEPARTMENT OF PERSONNEL
20 ADMINISTRATION,                      **[PROPOSED] ORDER GRANTING CCPOA
                                        AND CSLEA'S EX PARTE APPLICATION
21              Petitioners/Plaintiffs, FOR LEAVE TO INTERVENE**

22          v.                          Place: Dept. 29
                                        Judge: Hon. Timothy M. Frawley
23 JOHN CHIANG, sued herein in his
   official capacity only; OFFICE OF    Complaint Filed: August 11, 2008
24 THE STATE CONTROLLER,

25              Respondents/Defendants.

26

27

28
   CBM-SF\SF415258 1

   [PROPOSED] ORDER GRANTING CCPOA AND CSLEA'S EX PARTE APPLICATION FOR LEAVE TO INTERVENE

CALIFORNIA CORRECTIONAL
PEACE OFFICERS' ASSOCIATION;
CALIFORNIA STATEWIDE LAW
ENFORCEMENT ASSOCIATION,

        Intervenor
        Respondents/Defendants.

      Upon reading and considering the forgoing Ex Parte Application for Leave to Intervene, the proposed Complaint-in-Intervention attached thereto, and good cause appearing:

      IT IS HEREBY ORDERED THAT the California Correctional Peace Officers' Association and California Statewide Law Enforcement Association are hereby granted leave to intervene in this action as Intervenor Respondent/Defendants, pursuant to California Code of Civil Procedure Section 387 (b) and to file the aforementioned Complaint-in-Intervention.

      Dated: _____

_____
Hon. Timothy M. Frawley
Judge of the Superior Court

1  Gary M. Messing, No. 075363
   Gregg McLean Adam, No. 203436
2  Jonathan Yank, No. 215495
   Erick V. Munoz, No. 235967
3  **CARROLL, BURDICK & McDONOUGH LLP**
   Attorneys at Law
4  44 Montgomery Street, Suite 400
   San Francisco, CA 94104
5  Telephone:    415.989.5900
   Facsimile:    415.989.0932
6  Email:        gmessing@cbmlaw.com
                 gadam@cbmlaw.com
7                jyank@cbmlaw.com
                 emunoz@cbmlaw.com
8
   *Attorneys for Intervenors*
9  *CALIFORNIA CORRECTIONAL PEACE*
   *OFFICERS' ASSOCIATION and*
10 *CALIFORNIA STATEWIDE LAW*
   *ENFORCEMENT ASSOCIATION*
11
   David A. Sanders, No. 221393          Kasey Christopher Clark, No. 148881
12 **CALIFORNIA CORRECTIONAL**           **CALIFORNIA STATEWIDE LAW**
   **PEACE OFFICERS' ASSOCIATION**       **ENFORCEMENT ASSOCIATION**
13 755 Riverpoint Drive, Suite 200       20290 "H" Street
   West Sacramento, CA 95605-1634        Sacramento, CA 95814
14 Telephone:   916.372.6060             Telephone:   916.447.5262
   Facsimile:   916.372.9805             Facsimile:   916.447.2530
15 Email:       david.sanders@ccpoa.org  Email:       kclark@cslea.com
16              SUPERIOR COURT OF THE STATE OF CALIFORNIA

17                        COUNTY OF SACRAMENTO

18

19 DAVID A. GILB, CALIFORNIA          No. 2008-80000026
20 DEPARTMENT OF PERSONNEL
   ADMINISTRATION,                    **DECLARATION OF CHARLES L.**
21                                    **ALEXANDER, JR. IN SUPPORT OF** *EX PARTE*
              Petitioners/Plaintiffs, **APPLICATION FOR LEAVE TO INTERVENE**
22                                    **PURSUANT TO CCP § 387**
          v.
23                                    Place:  Dept. 29
   JOHN CHIANG, sued herein in his    Judge:  Hon. Timothy M. Frawley
24 official capacity only; OFFICE OF
   THE STATE CONTROLLER,              Complaint Filed:  August 11, 2008
25
              Respondents/Defendants.
26

27

28

CBM-SF\SF415171 1

6      I, Charles L. Alexander, Jr., declare as follows:

7          1.     I am a Correctional Officer, a member of State Employee Bargaining

8  Unit 6, and a member of the California Correctional Peace Officers' Association

9  ("CCPOA" or "the Association"). I have personal knowledge of the facts set forth below,

10 and if called upon as a witness, I could and would testify competently as to them.

11         2.     I currently serve as the Executive Vice-President of CCPOA, a position I

12 have held since October of 2005. I previously served as the elected Rank & File (CDC)

13 Vice-President of CCPOA for approximately two and one-half (2½) years. I have been a

14 Correctional Officer at the California Department of Corrections and Rehabilitation

15 ("CDCR") (formerly the "California Department of Corrections") since 1988.

16         3.     CCPOA is a private non-profit corporation organized and existing under

17 the laws of the State of California. CCPOA is the exclusive bargaining representative for

18 approximately 30,000 civil service employees in State Bargaining Unit 6 – primarily

19 peace officers employed by the CDCR.

20         4.     In my capacity as CCPOA Executive Vice-President, I am responsible for

21 the oversight of much of the day-to-day operations of the Association including its legal

22 department, which is responsible for representing the organization as well as members in

23 matters which affect their wages, benefits and other terms and conditions of employment.

24         5.     I am familiar with the underlying litigation and have reviewed the

25 Petition for Writ of Mandate and accompanying declarations filed by Petitioner, the

26 Department of Personnel Administration ("DPA"). It is my understanding that the DPA

27 seeks to enforce the Executive Order promulgated by Governor Arnold Schwarzenegger

28

1  which mandates that employees subject to the Fair Labor Standards Act ("FLSA") have

2  their wages reduced to the federal minimum wage unless otherwise exempted by the DPA.

3     6. Based on my review of Attachment A to the August 5, 2008, Draft Pay

4  Letter issued by DPA, all State employees in Bargaining Unit 6 have been classified as

5  non-exempt and are, therefore, subject to the Executive Order.

6     7. I am paid by the CDCR on a monthly basis. I receive my monthly

7  paycheck on the first of each month for the previous month's work. I am expecting to

8  receive my next paycheck on September 1, 2008, as compensation for work performed

9  during the month of August of 2008. If, rather than my normal rate of pay, I receive only

10  the federal minimum wage of $6.55 per hour (roughly $1100 per month) for work

11  performed in August and in subsequent months, those amounts will be wholly insufficient

12  to cover my home mortgage, my car payment, by child's college tuition, my family's

13  medical insurance payments, and all of my family's other living expenses.

14     8. Other Bargaining Unit 6 employees who are subject to having their

15  salaries reduced to the federal minimum wage will suffer dramatic and, in many cases,

16  irreparable injury should the order take effect. A number of members have expressed fear

17  their homes will be subject to foreclosure due to their financial inability to pay their

18  mortgage. Others have indicated that they will be unable to provide spousal or child

19  support, pay for out-of-pocket medical expenses, medical insurance premiums,

20  transportation and fuel costs, costs of utilities and food, children's education costs, and

21  credit card bills. Many members who have their paychecks directly deposited into their

22  bank or checking accounts also have their bills automatically paid and deducted from their

23  accounts. When this occurs, overdraft charges may be incurred, payment requests may be

24  declined, and there may be no money left for food and other life essentials. Many of these

25  losses will lead to consequences which will not be rectified by a subsequent retroactive

26  payment of full salary, as in the case of financial penalties, interest rate increases, and

27  potential harm to credit ratings as a result of the failure of the employee to make timely

28  payments.

1    9.    Further, to the extent that the reduction to the federal minimum wage will
2    preclude payroll deductions, CCPOA will be deprived of the monthly dues payments it
3    receives from Bargaining Unit 6 members, which will adversely affect the Association's
4    ability to conduct operations and pay its own employees.
5    I declare under penalty of perjury under the laws of the State of California that
6    the foregoing is true and correct and that this declaration is executed on this the 14th day
7    of August 2008 at West Sacramento, California.
8
9                                                Charles L. Alexander, Jr.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1   Gary M. Messing, No. 075363
    Gregg McLean Adam, No. 203436
2   Jonathan Yank, No. 215495
    Erick V. Munoz, No. 235967
3   **CARROLL, BURDICK & McDONOUGH** LLP
    Attorneys at Law
4   44 Montgomery Street, Suite 400
    San Francisco, CA 94104
5   Telephone:    415.989.5900
    Facsimile:    415.989.0932
6   Email:        gmessing@cbmlaw.com
                  gadam@cbmlaw.com
7                 jyank@cbmlaw.com
                  emunoz@cbmlaw.com
8
    *Attorneys for Intervenors*
9   *CALIFORNIA CORRECTIONAL PEACE*
    *OFFICERS' ASSOCIATION and*
10  *CALIFORNIA STATEWIDE LAW*
    *ENFORCEMENT ASSOCIATION*
11
    David A. Sanders, No. 221393              Kasey Christopher Clark, No. 148881
12  **CALIFORNIA CORRECTIONAL**                **CALIFORNIA STATEWIDE LAW**
    **PEACE OFFICERS' ASSOCIATION**            **ENFORCEMENT ASSOCIATION**
13  755 Riverpoint Drive, Suite 200           20290 "H" Street
    West Sacramento, CA 95605-1634            Sacramento, CA 95814
14  Telephone:    916.372.6060                Telephone:    916.447.5262
    Facsimile:    916.372.9805                Facsimile:    916.447.2530
15  Email:    david.sanders@ccpoa.org         Email:    kclark@cslea.com
16          SUPERIOR COURT OF THE STATE OF CALIFORNIA

17                      COUNTY OF SACRAMENTO

18

19  DAVID A. GILB, CALIFORNIA          No. 2008-80000026
20  DEPARTMENT OF PERSONNEL
    ADMINISTRATION,                    **DECLARATION OF GREGG MCLEAN ADAM**
21                                     **IN SUPPORT OF** *EX PARTE* **APPLICATION**
            Petitioners/Plaintiffs,    **FOR LEAVE TO INTERVENE PURSUANT TO**
22                                     **CCP § 387**
        v.
23                                     Place: Dept. 29
    JOHN CHIANG, sued herein in his    Judge: Hon. Timothy M. Frawley
24  official capacity only; OFFICE OF
    THE STATE CONTROLLER,              Complaint Filed: August 11, 2008
25
            Respondents/Defendants.
26

27

28

CBM-SF\SF415372.1

---

*EX PARTE* APPLICATION FOR LEAVE TO INTERVENE

```
 1   CALIFORNIA CORRECTIONAL
 2   PEACE OFFICERS' ASSOCIATION;
     CALIFORNIA STATEWIDE LAW
 3   ENFORCEMENT ASSOCIATION,

 4          Intervenors.

 5
```

6       I, Gregg McLean Adam, depose and say:

7       1.    I am an attorney entitled to practice before all of the courts of the State of

8 California. I am a partner with the firm of Carroll, Burdick & McDonough LLP, attorneys

9 of record for proposed intervenors, California Correctional Peace Officers' Association

10 ("CCPOA") and California State Law Enforcement Association ("CSLEA").

11       2.    On Tuesday, August 13, 2008, I contacted Department of Personnel

12 Administration ("DPA") Labor Relations Counsel Chris Thomas, one of the attorneys of

13 record for the petitioners in this case, and asked whether petitioners would be willing to

14 stipulate to intervention by CCPOA in this case. The following day, Mr. Thomas left a

15 voicemail message for me on my cell phone, indicating that, while DPA was not willing

16 to so stipulate, it would not oppose CCPOA's intervention.

17       3.    I subsequently e-mailed Mr. Thomas to confirm whether DPA would take

18 the same position with respect to CSLEA's intervention. By responsive e-mail, Mr.

19 Thomas confirmed that it would. (A true and correct copy of the e-mail exchange is

20 attached hereto as Exhibit "A".)

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28 //

1    4.    On Thursday, August 14, 2008, between approximately 9:45 a.m. and

2   9:53 a.m., I left to voicemail messages for Mr. Thomas and also e-mailed him. (A true

3   and correct copy of the e-mail exchange is attached hereto as Exhibit "B".) Those

4   communications advised Mr. Thomas that CCPOA and CSLEA planned to make an ex

5   parte application for leave to intervene in this case the following morning. I indicated that

6   because some questions remained as to which judge had been assigned the case, our

7   clients were at that time uncertain which courtroom the application would be heard in.

8          I declare under penalty of perjury under the laws of the State of California that

9   the foregoing is true and correct and that this declaration is executed on this the 14th day

10  of August 2008 at San Francisco, California.

11

12                                              Gregg McLean Adam

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Adam, Gregg

| | |
|---|---|
| **From:** | Chris Thomas [ChrisThomas@DPA.CA.GOV] |
| **Sent:** | Wednesday, August 13, 2008 4:21 PM |
| **To:** | Adam, Gregg |
| **Subject:** | RE: Got your message |

Our answer is still the same; thanks Gregg.

---

From: Adam, Gregg [GAdam@cbmlaw.com]
Sent: Wednesday, August 13, 2008 1:36 PM
To: Chris Thomas
Subject: Got your message

Chris: Thank you for your message. It looks like CSLEA will also intervene. Does that change your answer?


Gregg McLean Adam
Carroll, Burdick & McDonough LLP
44 Montgomery Street, Suite 400
San Francisco, CA 94104
415.743.2534 (Direct)
415.989.0932 (Fax)
Gadam@cbmlaw.com<mailto:Gadam@cbmlaw.com>
P Please consider the environment before printing this email.

(This e-mail is confidential and may contain privileged attorney-client information and/or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this communication and/or its attachment(s) is strictly prohibited.)



EXHIBIT ___A___

1

## Adam, Gregg

Got your messages; thanks Gregg.

---
From: Adam, Gregg [GAdam@cbmlaw.com]
Sent: Thursday, August 14, 2008 9:53 AM
To: Chris Thomas
Cc: Munoz, Erick V.; Yank, Jonathan; Messing, Gary
Subject: CCPOA/CSLEA Intention to Move to Intervene in Gilb/DPA v. Chiang

Chris:

This e-mail message follows up messages I left for you on your cell phone and work phone
in the last few minutes. That is, our clients CSLEA and CCPOA will file an ex parte
application for leave to intervene in the above referenced case. You previously advised
me that DPA would not oppose intervention by our clients.

As you may know, the presiding judge of the Sacramento County Superior Court has yet to
assign your case to a judge. Therefore, at this time, we are unable to provide you with a
courtroom and time at which ex parte application for leave to intervene will be heard. We
will obviously update these details as we know them. The purpose of this message is
simply to get you notice prior to the 10 a.m. deadline in the local rules.

Gregg McLean Adam
Carroll, Burdick & McDonough LLP
44 Montgomery Street, Suite 400
San Francisco, CA 94104
415.743.2534 (Direct)
415.989.0932 (Fax)
Gadam@cbmlaw.com<mailto:Gadam@cbmlaw.com>
P Please consider the environment before printing this email.

(This e-mail is confidential and may contain privileged attorney-client information and/or
work product. The information is intended only for the use of the individual or entity to
whom it is addressed. If you are not the intended recipient, or the employee or agent
responsible for delivering it to the intended recipient, you are hereby notified that any
use, dissemination, distribution, or copying of this communication and/or its
attachment(s) is strictly prohibited.)

EXHIBIT _B_

1

Gary M. Messing, No. 075363
Gregg McLean Adam, No. 203436
Jonathan Yank, No. 215495
Erick V. Munoz, No. 235967
**CARROLL, BURDICK & McDONOUGH LLP**
Attorneys at Law
44 Montgomery Street, Suite 400
San Francisco, CA 94104
Telephone:    415.989.5900
Facsimile:    415.989.0932
Email:        gmessing@cbmlaw.com
              gadam@cbmlaw.com
              jyank@cbmlaw.com
              emunoz@cbmlaw.com

Attorneys for Intervenors
CALIFORNIA CORRECTIONAL PEACE
OFFICERS' ASSOCIATION and
CALIFORNIA STATEWIDE LAW
ENFORCEMENT ASSOCIATION

David A. Sanders, No. 221393
**CALIFORNIA CORRECTIONAL
PEACE OFFICERS' ASSOCIATION**
755 Riverpoint Drive, Suite 200
West Sacramento, CA 95605-1634
Telephone:    916.372.6060
Facsimile:    916.372.9805
Email:        david.sanders@ccpoa.org

Kasey Christopher Clark, No. 148881
**CALIFORNIA STATEWIDE LAW
ENFORCEMENT ASSOCIATION**
20290 "H" Street
Sacramento, CA 95814
Telephone:    916.447.5262
Facsimile:    916.447.2530
Email:        kclark@cslea.com

FILED/ENDORSED

AUG 15 2008

By: _____ T CALAUSTRO
        Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SACRAMENTO

DAVID A. GILB, CALIFORNIA
DEPARTMENT OF PERSONNEL
ADMINISTRATION,

Petitioners/Plaintiffs,

v.

JOHN CHIANG, sued herein in his
official capacity only; OFFICE OF
THE STATE CONTROLLER,

Respondents/Defendants.

No. 2008-80000026

**DECLARATION OF GARY M. MESSING IN
SUPPORT OF *EX PARTE* APPLICATION FOR
LEAVE TO INTERVENE PURSUANT TO CCP
§ 387**

Place:  Dept. 29
Judge:  Hon. Timothy M. Frawley

Complaint Filed:  August 11, 2008

DECLARATION OF GARY M. MESSING IN SUPPORT OF *EX PARTE* APPLICATION FOR LEAVE TO INTERVENE

CALIFORNIA CORRECTIONAL
PEACE OFFICERS' ASSOCIATION;
CALIFORNIA STATEWIDE LAW
ENFORCEMENT ASSOCIATION,

        Intervenors.

I, Gary M. Messing, depose and say:

1.     I am an attorney entitled to practice before all of the courts of the State of California. I am a partner with the firm of Carroll, Burdick & McDonough LLP, attorneys of record for Intervenors California Correctional Peace Officers' Association ("CCPOA") and California Statewide Law Enforcement Association ("CSLEA"). I have personal knowledge of the facts set forth herein, and if called upon as a witness, I could and would testify competently as to them.

2.     On Wednesday, August 13, 2008, I asked Richard J. Chivaro, counsel for defendant John Chiang, the State Controller, whether the Controller would be willing to stipulate to intervention in this action by CCPOA and CSLEA. Mr. Chivaro indicated that he would be willing to stipulate to our clients' intervention.

3.     On Thursday, August 14, 2008, I advised both Mr. Chivaro, and his secretary, prior to 10:00 a.m., that our clients anticipated making an *ex parte* application for leave to intervene in this action in the Superior Court of California, County of Sacramento, located at 720 9th Street, Sacramento, California 95814 on Friday, August 15, 2008. Mr. Chivaro reiterated that he would be willing to stipulate to the intervention and would not oppose it.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration is executed on this the *14th* day of August, 2008 at Sacramento, California.

                                                Gary M. Messing

1  Gary M. Messing, No. 075363
   Gregg McLean Adam, No. 203436
2  Jonathan Yank, No. 215495
   Erick V. Munoz, No. 235967
3  **CARROLL, BURDICK & McDONOUGH LLP**
   Attorneys at Law
4  44 Montgomery Street, Suite 400
   San Francisco, CA 94104
5  Telephone:  415.989.5900
   Facsimile:  415.989.0932
6  Email:     gmessing@cbmlaw.com
               gadam@cbmlaw.com
7              jyank@cbmlaw.com
               emunoz@cbmlaw.com
8
   *Attorneys for Intervenors*
9  *CALIFORNIA CORRECTIONAL*
   *OFFICERS' ASSOCIATION and*
10 *CALIFORNIA STATEWIDE LAW*
   *ENFORCEMENT ASSOCIATION*
11
   David A. Sanders, No. 221393            Kasey Christopher Clark, No. 148881
12 **CALIFORNIA CORRECTIONAL**            **CALIFORNIA STATEWIDE LAW**
   **PEACE OFFICERS' ASSOCIATION**        **ENFORCEMENT ASSOCIATION**
13 755 Riverpoint Drive, Suite 200         20290 "H" Street
   West Sacramento, CA 95605-1634          Sacramento, CA 95814
14 Telephone:  916.372.6060                Telephone:  916.447.5262
   Facsimile:  916.372.9805                Facsimile:  916.447.2530
15 Email:     david.sanders@ccpoa.org      Email:     kclark@cslea.com

16              SUPERIOR COURT OF THE STATE OF CALIFORNIA

17                         COUNTY OF SACRAMENTO

18

19 DAVID A. GILB, CALIFORNIA              No. 2008-80000026
   DEPARTMENT OF PERSONNEL
20 ADMINISTRATION,                        **DECLARATION OF KASEY CHRISTOPHER**
                                          **CLARK IN SUPPORT OF MOTION TO**
21              Petitioners/Plaintiffs,   **INTERVENE**

22       v.                               Place:  Dept. 29
                                          Judge:  Hon. Timothy M. Frawley
23 JOHN CHIANG, sued herein in his
   official capacity only; OFFICE OF      Complaint Filed:  August 11, 2008
24 THE STATE CONTROLLER,

25              Respondents/Defendants.

26

27

28

CBM-SF\SF415206 1

FILED/ENDORSED

AUG 15 2008

By: _____ T CALAUSTRO
          Deputy Clerk

CALIFORNIA CORRECTIONAL
PEACE OFFICERS' ASSOCIATION;
CALIFORNIA STATEWIDE LAW
ENFORCEMENT ASSOCIATION,

       Intervenors.

I, Kasey Christopher Clark declare:

1.    I am currently employed and have served in the capacity of General Manager/Chief Counsel for California Statewide Law Enforcement Association (hereinafter "CSLEA") since November 1, 2006. From April 1, 2004 through October 31, 2006, I served in the capacity of Chief Legal Counsel for CSLEA. CSLEA is a private non-profit corporation organized and existing in the State of California. CSLEA is recognized by the Public Employment Relations Board as the exclusive bargaining representative for approximately 7,000 State employees who are employed as peace officer/firefighters or safety employees whose responsibilities are public safety, law enforcement and/or consumer protection. The bargaining unit represented by CSLEA is designated "Bargaining Unit 7 – Protective Services and Public Safety."

2.    In my capacity as CSLEA General Manager/Chief Counsel, I am responsible for the oversight of the day-to-day operations of the corporation and specifically the Legal Division, which is responsible for representing the organization as well as members in matters which affect their wages, benefits and other terms and conditions of employment.

3.    I am familiar with the within litigation and have reviewed the Petition for Writ of Mandate and accompanying declarations filed by Petitioner Department of Personnel Administration (hereinafter "DPA"). It is my understanding that DPA seeks to enforce the Executive Order promulgated by Governor Arnold Schwarzenegger which mandates that employees subject to the Fair Labor Standards Act ("FLSA") have their wages reduced to the federal minimum wage unless otherwise exempted by DPA.

1        4.     Based on my review of Attachment A to the August 5, 2008, Draft Pay

2  Letter issued by DPA, certain Bargaining Unit 7 peace officer/firefighter classifications

3  have been approved by DPA as exempt from the minimum wage order. Examples of

4  these classifications are State Park Rangers and Lifeguard Rangers, Fish and Game

5  Wardens, State Fire Marshals and Hospital Police Officers. However, a number of

6  Bargaining Unit 7 peace officer/firefighters have been classified as non-exempt and

7  subject to the minimum wage order. Examples of these classifications are Special Agents

8  for the Department of Justice, Investigators for the Department of Motor Vehicles,

9  Alcoholic Beverage Control and Consumer Affairs and Fraud Investigators for the

10  Department of Insurance.

11        5.     Based on my understanding of the exemptions which have been approved

12  by DPA, certain Bargaining Unit 7 safety employees have been classified as exempt by

13  DPA. Examples of these classifications include California Highway Patrol Public Safety

14  Dispatchers, Office of Emergency Services personnel, non-peace office Lifeguards and

15  Conservationists. However, a number of Bargaining Unit 7 safety employees have been

16  classified as non-exempt and subject to the minimum wage order. Examples of these

17  classifications include Criminalists for the Department of Justice, Licensing Registration

18  Examiners for the Department of Motor Vehicles, Insurance Investigators for the

19  Department of Insurance and Enforcement Representatives for the Contractors State

20  Licensing Board.

21        6.     Approximately sixty percent (60%), or 4,200 Bargaining Unit 7

22  employees have been deemed by DPA to be non-exempt and subject to the minimum

23  wage order.

24        7.     Bargaining Unit 7 employees who are subject to having their salaries

25  reduced to the federal minimum wage will suffer dramatic and, in many cases, irreparable

26  injury should the order take effect. A number of members have expressed fear their

27  homes will be subject to foreclosure due to their financial inability to pay their mortgage.

28  Some members have been informed they will lose the opportunity to purchase a home due

1  to the lender's apprehension of their reduction in income. Others have indicated that they
2  will be unable to provide spousal or child support, pay for out-of-pocket medical
3  expenses, for transportation to and from work, for the costs of utilities and food, for their
4  own student loans and their children's education costs, and for credit card payments.
5  Many of these losses will lead to consequences which will not be rectified by a
6  subsequent retroactive payment of full salary, as in the case of the missed opportunity to
7  purchase a home or additional financial penalties and interest rate increases as a result of
8  the failure of the employee to make timely payments.

9      8.    Further, to the extent that the reduction to the federal minimum wage will
10  preclude payroll deductions, CSLEA will be deprived of the monthly dues payments it
11  receives from Bargaining Unit 7 members which will adversely affect CSLEA's ability to
12  conduct operations including the ability to make contributions to the CSLEA Legal
13  Defense Fund, an ERISA trust which provides civil/criminal legal defense coverage for
14  CSLEA members, and the insurance company which provides life coverage for CSLEA
15  members.

16      I declare under the penalty of perjury under the laws of the State of California
17  the foregoing is true and correct to the best of my knowledge and if called could and
18  would testify to the same and that this declaration is executed on this the 13th day of
19  August 2008 at Sacramento, California.

20
21                                    Kasey Christopher Clark
22
23
24
25
26
27
28

| | | | |
|---|---|---|---|
| **DATE/TIME** | : AUGUST 15, 2008 | **DEPT. NO** | : 19 |
| **JUDGE** | : HON. PATRICK MARLETTE | **CLERK** | : D. RIOS, SR. |
| **REPORTER** | : NONE | **BAILIFF** | : NONE |

YVONNE WALKER, et. al. vs. SCHWARZENEGGER, et. al.   Case No.: 34-2008-80000013

YVONNE WALKER, et. al. vs. SCHWARZENEGGER, et. al.   Case No.: 34-2008-80000018

GLIB, et. al. vs. CHIANG, et. al.   Case No.: 34-2008-80000026

Nature of Proceedings:   **ORDER RE: NOTICE OF RELATED CASE**

The following order is being issued to all counsel in the following matters currently assigned to various writ departments of this Court:

1. SEIU v. SCHWARZENEGGER, et al., Case No. 34-228-80000013 (currently assigned to Department 19);
2. SEIU v. SCHWARZENEGGER, et al., Case No. 34-2008-80000018 (currently assigned to Department 13);
3. GILB v. CHIANG, et al., Case No. 34-2008-80000026 (currently assigned to Department 29).

On August 14, 2008, The Presiding Judge of this Court entered an order entitled: **"NOTICE OF RELATED CASES AND PROVISIONAL ASSIGNMENT TO JUDGE PATRICK MARLETTE FOR DETERMINATION OF WHETHER CASES ARE RELATED"**.

The Presiding Judge's order provided as follows:

"The Court has received minute orders from Judge Timothy M. Frawley and Judge Michael P. Kenny indicating that they believe that writ cases assigned to them for all purposes, David A. Glib, California Department of Personnel v. John Chiang, Controller of the State of California, No. 34-2008-80000026 and Yvonne Walker et al., v. Arnold Schwarzenegger, Governor of the State of California, No. 34-2008-80000026, respectively, are related to Walker v. Schwarzenegger, No. 34-2008-80000013, which was previously assigned to Judge Patrick Marlette for all purposes.

In light of the minute orders filed by the respective judges and in accordance with California Rules of Court, rule 3.300(h)(1)(A), the Court directs that the Honorable Patrick Marlette, the judge assigned the earliest filed case, determine whether the cases should be related and assigned to his department. Once each of the parties has appeared in the cases, Judge Marlette may issue and serve a Notice of Related Cases. In accordance with California Rules of Court, rule 3.300(f), each party to the respective actions shall have 5 days after service of the

| | | |
|---|---|---|
| **BOOK** | : 19 | **Superior Court of California,** |
| **PAGE** | : 0013-81508 | **County of Sacramento** |
| **DATE** | : August 15, 2008 | |
| **CASE NO.** | : 2008-80000013, et al | |
| **CASE TITLE** | : SEIU v. SCHWARZENNEGER | |

BY: D. RIOS, SR.,
                                    **Deputy Clerk**

**CASE NUMBER: 2008-80000013, et.al.          DEPARTMENT: 19**
**CASE TITLE: YVONNE WALKER, et al vs. SCHWARZENEGGER, et. al.**
**PROCEEDINGS: ORDER RE: NOTICE OF RELATED CASE**

Notice of Related Cases to file a response with Judge Marlette supporting or opposing having the cases related. Until Judge Marlette makes a determination as to whether the cases are related, all other matters in each case shall be heard in the department in which the case was initially assigned. If the cases are not found to be related by Judge Marlette, they shall remain in the department to which they were initially assigned. (Cal. Rules of Court, rule 3.300(j).)"

In accordance with the order of the Presiding Judge as set forth above, the Court now issues this minute order, which shall serve as a Notice of Related Cases regarding the three matters listed above. This order is being served upon all parties and counsel in the three matters as they are listed in the Court's files on these matters. Counsel are directed to contact the Court immediately with regard to any parties or counsel in any of the three actions that may have been omitted. Pursuant to the order of the Presiding Judge and California Rule of Court 3.300(g), the parties are to file a response to this Notice of Related Cases within 5 days after service thereof. The Court will thereafter make a determination whether the cases should be related and assigned to this department as provided in California Rule of Court 3.300(h)(1)(A).

        Certificate of Service by Mailing attached.

| | | |
|---|---|---|
| **BOOK** | : **19** | **Superior Court of California,** |
| **PAGE** | : **0013-81508** | **County of Sacramento** |
| **DATE** | : **August 15, 2008** | |
| **CASE NO.** | : **2008-80000013, et al** | |
| **CASE TITLE** | : **SEIU v. SCHWARZENNEGER** | BY: D. RIOS, SR. |
| | | Deputy Clerk |

                                Page 2 of 3

Z1main

CASE NUMBER: 2008-80000013, et.al.      DEPARTMENT: 19
CASE TITLE: YVONNE WALKER, et al vs. SCHWARZENEGGER, et. al.
PROCEEDINGS: ORDER RE: NOTICE OF RELATED CASE

## CERTIFICATE OF SERVICE BY MAILING
### (C.C.P. Sec. 1013a(4))

    I, the undersigned deputy clerk of the Superior Court of California, County of Sacramento, do declare under penalty of perjury that I did this date place a copy of the above entitled notice in envelopes addressed to each of the parties, or their counsel of record as stated below, with sufficient postage affixed thereto and deposited the same in the United States Post Office at Sacramento, California.

K. WILLIAM CURTIS
Chief Counsel
Department of Personnel Administration
1515 S Street, North Building, Suite 400
Sacramento, CA 95811

EDMUND G. BROWN,
Attorney General
Dept. of Justice, Legal Affairs
1300 'I' Street
Sacramento, CA 95814

BROOKE D. PIERMAN
Attorney for Yvonne Walker and S.E.I.U.
1808 14th Street
Sacramento, CA 95811

DAVE GILB, Director
Dept of Personnel Administration
1515 'S' Street, North Building, Ste 400
Sacramento, CA 95814

STEWART WEINBERG
Weinberg, Roger & Rosenfeld
1001 Marina Village Parkway, Ste. 200
Alameda, CA 94501-1091

GARY M. MESSING
Carroll, Burdick & McDonough
44 Montgomery Street, Ste. 400
San Francisco, CA 94104

Dated: 08-15-08

Superior Court of California,
County of Sacramento

By    D. Rios, Sr.
      Deputy Clerk

| | |
|---|---|
| **BOOK** | : 19 |
| **PAGE** | : 0013-81508 |
| **DATE** | : August 15, 2008 |
| **CASE NO.** | : 2008-80000013, et al |
| **CASE TITLE** | : SEIU v. SCHWARZENNEGER |

**Superior Court of California,**
**County of Sacramento**

BY: **D. RIOS, SR.,**
       **Deputy Clerk**

**Page 3 of 3**

Z1main

1 | K. WILLIAM CURTIS
Chief Counsel, Bar No. 095753
2 | WARREN C. STRACENER
Deputy Chief Counsel, Bar No. 127921
3 | LINDA A. MAYHEW
Assistant Chief Counsel, Bar No. 155049
4 | CHRISTOPHER E. THOMAS
Labor Relations Counsel, Bar No. 186075
5 | Department of Personnel Administration
State of California
6 | 1515 S Street, North Building, Suite 400
Sacramento, CA 95811-7258
7 | Telephone: (916) 324-0512
Facsimile: (916) 323-4723
8
Attorneys for Petitioner, DAVID A. GILB, as Director of the
9 | California Department of Personnel Administration and the
Department of Personnel Administration
10

11 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

12 | COUNTY OF SACRAMENTO

13
DAVID GILB, CALIFORNIA DEPARTMENT ) Case No. 34-200-80000026-CU-WM-GDS
14 | OF PERSONNEL ADMINISTRATION, )
) **PROOF OF SERVICE**
15 | Petitioners/Plaintiffs, )
) Date:
16 | v. ) Time:
) Dept:
17 | JOHN CHIANG, sued herein in his official ) Trial Date:
capacity only, OFFICE OF STATE )
18 | CONTROLLER, ) **Exempt from Fees**
) **(Gov. Code § 6103)**
19 | Respondents/Defendants. )
20 )
)
21 )

22

23

24

25

26

27

28

-1-

Proof of Service

# PROOF OF SERVICE

CASE NAME:     *Gilb, et. al. v. Chiang et. al.*
CASE NUMBER:   34-200-80000026-CU-WM-GDS

I, RICHARELL AMES, declare:

I am employed in the County of Sacramento, California. I am over the age of 18 years, and not a party to the within action. My business address is 1515 S Street, North Building Suite 400, Sacramento, California 95811-7258. I am readily familiar with my employer's business practice for collection and processing of correspondence for GSO, U.S. Mail, Fax Transmission and/or Personal Service.

On August 12, 2008, I caused the following documents to be served:

1.  **Petition for Writ of Mandate (CCP § 1085); Complaint for Injunctive and Declaratory Relief**
2.  **Memorandum of Points and Authorities in Support of Petition for Writ of Mandate (CCP §1085); Complaint for Injunctive and Declaratory Relief**
3.  **Declaration of Julie Chapman in Support of Petition for Writ of Mandate (CCP § 1085); Complaint for Injunctive and Declaratory Relief**
4.  **Declaration of Jerri Judd in Support of Petition for Writ of Mandate (CCP § 1085); Complaint for Injunctive and Declaratory Relief**
5.  **Declaration of David A. Gilb in Support of Petition for Writ of Mandate (CCP § 1085); Complaint for Injunctive and Declaratory Relief**
6.  **Declaration of Michael C. Genest**
7   **Summons**
8.  **Alternative Dispute Resolution Information Sheet**
9.  **Guide to Procedures for Prosecuting Petitions for Prerogative Writs**
10. **Civil Case Cover Sheet**
11. **Notice of Case Assignment**

on the parties listed as follows:

<u>XXXX</u>     via personal service by a representative of Capitol Couriers, Inc.

| | |
|---|---|
| The Honorable John Chiang, California State Controller | Office of the Attorney General |
| 300 Capitol Mall, Suite 1850 | 1300 I Street, Suite 1101 |
| Sacramento, CA 95814 | Sacramento, CA 95814 |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on August 12, 2008, at Sacramento, California.

*Richarell Ames*

RICHARELL AMES

-2-

---

Proof of Service

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| K. William Curtis SBN 09575    Warren C. Stracener SBN 127921<br>Linda A. Mayhew SBN 155049    Christopher E. Thomas SBN 186075<br>**Department of Personnel Administration, State of California**<br>1515 S Street, North Building, Suite 400<br>Sacramento, CA 95811-7258<br>TELEPHONE NO (916) 324-0512    FAX NO *(Optional)* (916) 323-4723<br>E-MAIL ADDRESS *(Optional)*<br>ATTORNEY FOR *(Name)* Petitioner, David Gilb, Director, Department of Personnel Administration | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO | |
|---|---|
| STREET ADDRESS 720 Ninth Street<br>MAILING ADDRESS Same<br>CITY AND ZIP CODE Sacramento, 95814<br>BRANCH NAME | |

| PLAINTIFF/PETITIONER David Gilb, Califonria Department of Personnel Administration | CASE NUMBER |
|---|---|
| DEFENDANT/RESPONDENT: John Chiang, sued herein in his official capacity only, Office of State Controller | 34-2008-0000026-CU-WM-GDS |

| PROOF OF SERVICE OF SUMMONS | Ref No or File No |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [X] summons

   b. [X] complaint for Injunctive and Declaratory Relief

   c. [X] Alternative Dispute Resolution (ADR) package

   d. [X] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [X] other *(specify documents):* Petition for Writ of Mandate (CCP Sec. 1085); Memorandum of Points and Authorities In Support of Pdtition for Writ; Declaration of Julie Chapman In Support of Petition for Writ; Declaration of Jerri Judd In Support of Petition for Writ; Declaration of David A. Gilb In Support of Petition for Writ; Declaration of Michael C. Genest; Guide to Procedures for Prosecuting Petitions for Prerogative Writs

3. a. Party served *(specify name of party as shown on documents served):*

   Office of the Attorney General

   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

   B. Mazon, Security Officer, Authorized To Accept Service of Process

4. Address where the party was served: 1300 I Street, Suite 1101, Government Law Section
   Sacramento, CA 95814

5. I served the party *(check proper box)*

   a. [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 08/12/2008    (2) at *(time):* 12:00 P.M.

   b. [ ] **by substituted service.** On *(date):*    at *(time):*    I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*    from *(city):*    or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

**PROOF OF SERVICE OF SUMMONS**

Legal Solutions Plus

Code of Civil Procedure, § 417 10

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                      (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☒ On behalf of *(specify):* Office of the Attorney General
    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☒ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**
  a. Name: Jesse Saucedo
  b. Address: Capitol Couriers, Inc., 3000 T Street, Suite 200, Sacramento, CA 95816
  c. Telephone number: (916) 451-3697
  d. **The fee** for service was: $ 55.00
  e. I am:
    (1) ☒ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ registered California process server:
      (i) ☐ owner ☐ employee ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☒ I **declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

  or

9. ☐ I am a **California sheriff or marshal** and I certify that the foregoing is true and correct.

Date: 08/13/2008

Jesse Saucedo
  (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)       ▶          (SIGNATURE)

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| K. William Curtis SBN 09575     Warren C. Stracener SBN 127921<br>Linda A. Mayhew SBN 155049     Christopher E. Thomas SBN 186075<br>**Department of Personnel Administration, State of California**<br>1515 S Street, North Building, Suite 400<br>Sacramento, CA 95811-7258<br>   TELEPHONE NO (916) 324-0512    FAX NO *(Optional)* (916) 323-4723<br>E-MAIL ADDRESS *(Optional)*.<br>  ATTORNEY FOR *(Name)* Petitioner, David Gilb, Director, Department of Personnel Administration | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SACRAMENTO
   STREET ADDRESS 720 Ninth Street
   MAILING ADDRESS Same
   CITY AND ZIP CODE Sacramento, 95814
   BRANCH NAME

| PLAINTIFF/PETITIONER: David Gilb, Califonria Department of Personnel Administration<br><br>DEFENDANT/RESPONDENT. John Chiang, sued herein in his official capacity only, Office of State Controller | CASE NUMBER<br>34-2008-0000026-CU-WM-GDS |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref No or File No |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

  a. [X] summons

  b. [X] complaint for Injunctive and Declaratory Relief

  c. [X] Alternative Dispute Resolution (ADR) package

  d. [X] Civil Case Cover Sheet *(served in complex cases only)*

  e. [ ] cross-complaint

  f. [X] other *(specify documents):* Petition for Writ of Mandate (CCP Sec. 1085); Memorandum of Points and Authorities In Support of Pdtition for Writ; Declaration of Julie Chapman In Support of Petition for Writ, Declaration of Jerri Judd In Support of Petition for Writ, Declaration of David A. Gilb In Support of Petition for Writ; Declaration of Michael C. Genest; Guide to Procedures for Prosecuting Petitions for Prerogative Writs

3. a. Party served *(specify name of party as shown on documents served):*
   John Chiang, California State Controller

  b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   Shawn Silva, Staff Counsel, Authorized To Accept Service of Process

4. Address where the party was served: Office of the State Controller
   300 Capitol Mall, Suite 1850, Sacramento, CA 95814

5. I served the party *(check proper box)*

  a. [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 08/12/2008    (2) at *(time):* 11:50 A.M.

  b. [ ] **by substituted service.** On *(date):*    at *(time):*    I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

    (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

    (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

    (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

    (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*    from *(city):*    or [ ] a declaration of mailing is attached.

    (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Legal<br>Solutions<br>Plus | Code of Civil Procedure, § 417 10 |
|---|---|---|---|

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on (date):               (2) from (city):

    (3) ☐ with two copies of the Notice and Acknowledgment of Receipt and a postage-paid return envelope addressed to me. (Attach completed Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** (specify means of service and authorizing code section):

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of (specify):

  c. ☐ as occupant.

  d. ☒ On behalf of (specify): John Chiang, California State Controller

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☒ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**

  a. Name: Jesse Saucedo

  b. Address: Capitol Couriers, Inc., 3000 T Street, Suite 200, Sacramento, CA 95816

  c. Telephone number: (916) 451-3697

  d. **The fee** for service was: $ 55.00

  e. I am:

    (1) ☒ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☐ registered California process server:

      (i) ☐ owner   ☐ employee   ☐ independent contractor.

      (ii) Registration No.:

      (iii) County:

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

  or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 08/13/2008

Jesse Saucedo
    (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶                   (SIGNATURE)

K. WILLIAM CURTIS
Chief Counsel, Bar No. 095753
WARREN C. STRACENER
Deputy Chief Counsel, Bar No. 127921
LINDA A. MAYHEW
Assistant Chief Counsel, Bar No. 155049
CHRISTOPHER E. THOMAS
Labor Relations Counsel, Bar No. 186075
Department of Personnel Administration
State of California
1515 S Street, North Building, Suite 400
Sacramento, CA 95811-7258
Telephone: (916) 324-0512
Facsimile: (916) 323-4723

Attorneys for Petitioner, DAVID A. GILB, as Director of the
California Department of Personnel Administration and the
Department of Personnel Administration

FILED/ENDORSED

AUG 18 2008

By: _____ A. MACIAS
DEPUTY CLERK

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SACRAMENTO

DAVID GILB, CALIFORNIA DEPARTMENT ) Case No. 34-200-80000026-CU-WM-GDS
OF PERSONNEL ADMINISTRATION, )
) **PROOF OF SERVICE**
    Petitioners/Plaintiffs, )
) Date:
  v. ) Time:
) Dept:
JOHN CHIANG, sued herein in his official ) Trial Date:
capacity only, OFFICE OF STATE )
CONTROLLER, ) **Exempt from Fees**
) **(Gov. Code § 6103)**
    Respondents/Defendants. )
)
)
)
_____ )

-1-

| | |
|---|---|
| 1 | PROOF OF SERVICE |
| 2 | CASE NAME: ***Gilb, et. al. v. Chiang et. al.*** |
| 3 | CASE NUMBER: 34-200-80000026-CU-WM-GDS |

I, LISETTE OLIVAR, declare:

I am employed in the County of Sacramento, California. I am over the age of 18 years, and not a party to the within action. My business address is 1515 S Street, North Building Suite 400, Sacramento, California 95811-7258. I am readily familiar with my employer's business practice for collection and processing of correspondence for GSO, U.S. Mail, Fax Transmission and/or Personal Service.

On August 18, 2008, I caused the following documents to be served:

**1.     EX PARTE APPLICATION FOR AN ORDER SHORTENING TIME TO HEAR PETITION FOR WRIT OF MANDATE (CCP § 1085)**

**2.     ORDER SHORTENING NOTICE OF HEARING ON PETITION FOR WRIT OF MANDATE (CCP § 1085); COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

on the parties listed as follows:

<u>XXXX</u>        via personal service by a representative of Capitol Couriers, Inc.

| | |
|---|---|
| The Honorable John Chiang, California State Controller<br>300 Capitol Mall, Suite 1850<br>Sacramento, CA 95814 | Office of the Attorney General<br>1300 I Street, Suite 1101<br>Sacramento, CA 95814 |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on August 18, 2008, at Sacramento, California.

_____
LISETTE OLIVAR

-2-

K. WILLIAM CURTIS
Chief Counsel, Bar No. 095753
WARREN C. STRACENER
Deputy Chief Counsel, Bar No. 127921
LINDA A. MAYHEW
Assistant Chief Counsel, Bar No. 155049
CHRISTOPHER E. THOMAS
Labor Relations Counsel, Bar No. 186075
Department of Personnel Administration
State of California
1515 S Street, North Building, Suite 400
Sacramento, CA  95811-7258
Telephone: (916) 324-0512
Facsimile: (916) 323-4723
E-mail: christhomas@dpa.ca.gov

Attorneys for Petitioner, DAVE GILB, as Director of the
California Department of Personnel Administration and the
Department of Personnel Administration

```
FILED/ENDORSED

AUG  1 8  2008

By:_____
        A. MACIAS
        DEPUTY CLERK
```

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SACRAMENTO

| | |
|---|---|
| DAVID A. GILB; CALIFORNIA DEPARTMENT OF PERSONNEL ADMINISTRATION<br><br>Petitioners/Plaintiffs,<br><br>v.<br><br>JOHN CHIANG, sued herein in his official capacity only; OFFICE OF STATE CONTROLLER<br><br>Respondents/Defendants. | Case No. 34-2008-80000026-CU-WM-GDS<br><br>**EX PARTE APPLICATION FOR AN ORDER SHORTENING TIME TO HEAR PETITION FOR WRIT OF MANDATE (CCP § 1085)**<br><br>Date:<br>Time:<br>Dept:                29<br>Trial Date:        None<br><br>**Exempt from Fees**<br>**(Gov. Code § 6103)** |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

Petitioners/Plaintiffs, DAVID A. GILB ("Gilb") and the CALIFORNIA DEPARTMENT OF

PERSONNEL ADMINISTRATION ("DPA"), by and through their counsel, hereby apply ex parte

for an order shortening time to hear Petitioners'/Plaintiffs' Petition for Writ of Mandate (CCP §

1085) on the grounds there is insufficient time to give notice to Respondents/Defendants of a hearing

on the merits of this matter by regularly noticed writ procedure without causing irreparable harm to

Petitioners/Plaintiffs.

-1-

EX PARTE APPLICATION FOR AN ORDER SHORTENING TIME TO HEAR PETITION FOR WRIT OF MANDATE

# MEMORANDUM OF POINTS AND AUTHORITIES

This court may grant the ex parte application for an order shortening time to hear Petitioners'/Plaintiffs' Petition for Writ of Mandate (CCP § 1085). Local Rule 2.01(D) provides a hearing on a petition for writ of mandate shall take place not less than 45 days after the opening points and authorities are filed. However, pursuant to the provisions of California Rules of Court, Rule 3.1200, et seq. and Superior Court of Sacramento County, Local Rules, rule 2.04, this court, for good cause shown, may grant an ex parte application for an order shortening time.

The California Legislature has vested DPA with authority over state employee compensation and salaries. Under state law, DPA "succeeds to and is *vested with the duties, purposes, responsibilities, and jurisdiction* exercised by the State Personnel Board *with respect to the administration of salaries*..." (Gov. Code § 19816.) Moreover, regarding any employee salary paid from state funds, "*the salary is subject only to the approval of [DPA] before it becomes effective and payable*..." (Gov. Code § 19825.) In addition, the law charges DPA's director "shall *administer* and *enforce* the laws pertaining to personnel," and "perform such other duties as may be prescribed by law, and such other administrative duties as have by other provisions of law been previously imposed. (Gov. Code § 19815.4.) In this case, DPA acts within this authority in seeking a writ of mandate to compel the Office of State Controller to comply with the California Constitution, state law, and the California Supreme Court's decision in *White v. Davis* (2003) 30 Cal.4th 528. In *White v. Davis* (2003), the California Supreme Court determined the California Constitution and state law does not authorize the Controller to disburse state funds to state employees until an applicable appropriation has been enacted. The Court explained as an initial matter that article XVI, section 7 of the California Constitution provides "money may be drawn from the treasury only through an appropriation made by law and upon a Controller's duly drawn warrant." (*Id.*, at 566.) The Court also noted that, consistent with article XVI, section 7 of the California Constitution, Government Code section 12440 provides "the Controller shall draw warrants on the Treasurer for the payment of money directed by law to be paid out of the State treasury; but a warrant shall not be drawn unless authorized by law, and unless, except for refunds authorized by Section 13144, unexhausted specific appropriations provided by law are available to meet it." (*Id.*, at 567.) Further,

EX PARTE APPLICATION FOR AN ORDER SHORTENING TIME TO HEAR PETITION FOR WRIT OF MANDATE

1 the Court referenced Government Code section 9610, which provides, "the fixing or authorizing the

2 fixing of the salary of a State officer or employee is not intended to and does not constitute an

3 appropriation of money for the payment of the salary. The salary shall be paid only in the event that

4 monies are made available by another provision of law." (*Ibid.*) The Court concluded that "the

5 constitutional and statutory provisions set forth above clearly require that some applicable

6 appropriation be available before a state employee's salary actually may be paid from public funds."

7 (*Ibid.*) In particular, the Court ultimately held that the Controller may not pay state employee

8 salaries in the absence of a budget or other available appropriation, except as minimally required by

9 federal law. (*Id.*, at 576-577.)

10     As detailed more fully in the points and authorities already filed in support of the petition for

11 writ of mandate, the Controller is threatening to pay state employees their full salaries despite the

12 lack of a state budget or other available appropriation. The state currently has no budget for fiscal

13 year 2008-2009. (Gilb Decl. ¶ 2,Exh. A.)[1] On July 31, 2008, still without a state budget in place, the

14 Governor issued Executive Order No. S-09-08, which included a directive to temporarily pay

15 minimum wage by the California Supreme Court in *White v. Davis* and federal law. (Gilb Decl. ¶ 2,

16 Exh. A.)    The Order took effect immediately and was to remain in effect "until such time as both a

17 Fiscal Year 2008-09 Budget is adopted and the Director of the Department of Finance confirms an

18 adequate cash balance exists to meet the State's fiscal obligations." (Gilb Decl. ¶ 2, Exh. A.) The

19 Order further instructed Petitioners/Plaintiffs to work with Respondents/Defendants to implement

20 mechanisms necessary to comply with the California Supreme Court's holding in *White v. Davis*.

21 (Gilb Decl. ¶ 2, Exh. A.) However, the Controller has declared unequivocally , "I will not comply

22 with the Order." (Gilb Decl. ¶ 7, Exh. C.)

23     On August 5, 2008, Petitioners/Plaintiffs issued a "pay letter" instructing

24 Respondents/Defendants to comply with the requirements of *White v. Davis* by refraining from

25 paying state employee salaries in the absence of a budget, except as minimally required by federal

26 law. (Gilb Decl. ¶ 9, Exh. C.) However, Respondents/Defendants also announced their intention to

27

28   [1] The declarations cited in this ex parte application are attached for the court's convenience.

1   refuse to comply with the DPA pay letter. In an August 11, 2008 letter from the Office of the State
2   Controller to DPA, Respondents/Defendants purport to identify a number of scenarios the Office of
3   the State Controller considers obstacles to Respondents'/Defendants' ability to comply with *White v.*
4   *Davis.* (Gilb Decl. ¶ 16.) Yet, the Office of the State Controller provides no information in this letter
5   that indicates that the Controller has departed from his previous statements indicating his refusal to
6   comply with his legal duties under *White v. Davis.* (Gilb Decl. ¶ 16.)

7        Petitioners/Plaintiffs are informed and believe and thereon allege Respondents/Defendants
8   traditionally establishes a "cutoff" date after which no further payroll adjustments may be submitted
9   for the current pay period. (Judd Decl, ¶24.) The "cutoff" date for the current pay period is on or
10   about August 21, 2008. (Judd Decl., ¶ 25.) Moreover, state employees are paid on the last
11   weekday of each month, and the next paychecks are scheduled to issue on August 29, 2008. (Judd
12   Decl., ¶ 25.)

13        Good cause exists for this court to grant the ex parte application for an order shortening time
14   to hear Petitioners'/Plaintiffs' Petition for Writ of Mandate (CCP § 1085). Petitioners/Plaintiffs seek
15   a writ of mandate compelling Respondents/Defendants to act within the parameters of the law and in
16   compliance with *White v. Davis.* A hearing on the merits of Petitioners' petition for writ of mandate
17   must be expedited to prevent the Controller from improperly paying state employees in the absence
18   of a state budget or other available appropriation. If this court does not accelerate the ordinary writ
19   of mandate process, the Controller will illegally disperse monies to state employees before this court
20   has the opportunity to decide the instant writ petition on the merits.

21        An order shortening time for the hearing on Petitioners'/Plaintiffs' Petition for Writ of
22   Mandate (CCP § 1085) must be issued because a regularly noticed writ petition will not be heard by
23   the court until late-September, at the earliest. Even if this matter cannot be heard before the August
24   21st payroll cut-off date, the matter still needs to be heard as soon as possible in advance of the
25   September payroll cut-off date so the Controller has the opportunity to comply. If an order
26   shortening time is not granted, Respondents/Defendants' actions will continue to disregard the
27   California Constitution and state law. They will continue to repeatedly usurp the Legislative
28   authority expressly vested in Petitioners/Plaintiffs. This harm is immeasurable and irreparable.

1   The courts have variously defined the degree of harm or hardship required to justify issuing a

2   preliminary injunction  The California Supreme Court has stated, "[t]he term 'irreparable injury' . . .

3   means that species of damages, whether great or small, which ought not to be submitted to on the

4   one hand or inflicted on the other." (*Anderson v  Souza* (1952) 38 Cal.2d 825, 834.)  Additionally,

5   courts have since held that "the word 'irreparable' is . . . used in expressing the rule that an

6   injunction may issue to prevent wrongs of a repeated and continuing character."  (*Christopher v.*

7   *Jones* (1964) 231 Cal.App.2d 408, 416.)

8
9   The harm threatened by the Controller's actions in this case is sufficient to meet the

10   standards set out above because it would result in injuries that defy precise calculation and is of a

11   continuing or repeated nature.  The harm caused by the Controller's actions also is of a type that

12   cannot be left unchallenged because it undermines DPA's statutory authority to administer state

13   employee salaries and compensation.

14          **2.      Harm To The Petitioners Is Irreparable Because Of The Uncertain**
                       **Fiscal Impacts.**
15

16          In *Wind v  Herbert* (1960) 186 Cal.App.2d 276, the court upheld a preliminary

17   injunction because the plaintiffs would be subject to a type of damage that was uncertain and subject

18   to speculation.  (*Id.*, at 285.)  In that case, plaintiffs, limited partners in a partnership, sought an

19   injunction against the general partners, to halt the dissipation of partnership assets.  (*Id.*, at 279.)

20   The court found the damages were irreparable given the fact the defendant's actions would subject

21   the petitioner to a type of damages that was "only estimable by conjecture." (*Id.*, at 285.)

22          In *Wind*, the defendants argued that a preliminary injunction was not necessary to prevent

23   "irreparable injury" because any conceivable future loss of partnership assets could be compensated

24   with money damages.  (*Id.*, at 284.)  The court disagreed, holding that irreparable injury is not

25   merely limited to injuries that cannot be compensated by damages.  (*Id.*, at 285)  Rather, an

26   injunction is appropriate in any case where "it would be extremely difficult to ascertain the amount

27   of compensation that would afford relief." (*Id* )

28   / / /

Due to the complexity of the state budget, because of the budget's large scope and breadth, and because an expenditure in one area often affects expenditures in other areas, the specific economic injury in this case is difficult to ascertain. The Controller's non-compliance with the executive order will exacerbate California's financial crisis by potentially forcing the state to borrow funds at higher interest rates. As in *Wind*, the financial impact of the Controller's actions defies exact calculation and subjects the State to consequences that can only be accurately measured after the lawless action occurs.

It is difficult to estimate the harm the State will suffer if the Controller is allowed to violate state law by paying state employees their full salaries without an appropriation. The lack of a state budget already places the State in a precarious fiscal situation. When no fiscal year budget is in place, the State lacks authority to make a wide range of public expenditures. (Genest Decl. ¶ 6.) For example, the State has no authority to issue payments to vendors and contractors for goods and services chargeable to Fiscal Year 2008-2009; apportionments of highway user taxes to the state, cities and counties for highway and road improvement projects; grants to higher education students; funds for the operation of the trial courts, the University of California, California State University system, and the California Community Colleges system; payments for non-federally mandated social services programs such as Community Care Licensing, Adult Protective Services, State Only Foster Care, State Only Adoptions Assistance, and Cash Assistance Program for Immigrants; and tax relief payments to low income seniors and disabled persons. (Genest Decl. ¶ 6.)

In addition to the operational effects of a budget impasse described above, when no fiscal year budget is in place, other payments required by law continue without consideration of, or adjustments to address the state's fiscal condition. (Genest Decl. ¶ 7.) As a result, the State has now committed to spending approximately $487 million above the expenditure adjustments previously proposed by the Governor in his May Revision of the proposed Fiscal Year 2008-09 budget. (Genest Decl. ¶ 7.) Consequently, the State is suffering financially from the absence of a budget, even without the Controller issuing illegal salary disbursements to state employees.

///

1    The State's fiscal situation may be adversely affected if the Controller is allowed to pay
2    state employees their full salaries in contravention of *White v. Davis*, and the implementing DPA
3    pay letter. DOF works with the State Controller's Office and the State Treasurer's Office every
4    year to determine whether, on a monthly basis, the state will have sufficient cash attributable to
5    the General Fund to meet the state's obligations, including its obligations to its bondholders.
6    (Genest Decl. ¶ 8.) DOF currently projects it is likely the State will have insufficient cash in the
7    General Fund to meet those needs by either September or October 2008. (Genest Decl. ¶ 8.)

8        The consequences of insufficient cash in the General Fund will be extremely detrimental,
9    and could ultimately cost the State literally hundreds of millions of dollars. It is routinely
10   necessary to borrow cash on a short-term basis in order to meet the state's obligations between
11   periods that tax revenues are scheduled to be received. (Genest Decl. ¶ 9.) That borrowing
12   process is the issuance of Revenue Anticipation Notes (RANs). (Genest Decl. ¶ 9.) However,
13   when a budget is not in place, this cash flow borrowing cannot take place. (Genest Decl. ¶ 9.)
14   Instead, in order to meet cash flow needs, borrowing must be done through the issuance of
15   Revenue Anticipation Warrants (RAWs). (Genest Decl. ¶ 9.) RAWs are more expensive to
16   issue than RANs. (Genest Decl. ¶ 9.) It is anticipated that RAWs will bear interest at a rate at
17   least one percent higher than RANs, and that the security for this type of borrowing, which is not
18   required for RANs, will cost approximately $215 million. (Genest Decl. ¶ 9.) If a budget
19   appropriation for state employee salaries is not passed in time to assure that RANs can be issued
20   to meet this cash flow need, it may be necessary to issue the much more expensive RAWs.
21   (Genest Decl. ¶ 10.) It is therefore prudent fiscal policy to reduce spending in order to reduce
22   the size of any issuance of RAWs. (Genest Decl. ¶ 10.)

23              **3.    The Harm To Petitioners Is Of A Continuing Nature.**

24        In *Wind v. Herbert, surpa,* 186 Cal.App.2d 276, the court noted that wrongs of a repeated and
25   continuing character may also be sufficient grounds for issuing a preliminary injunction. (*Id.*, at
26   285.) In that case, plaintiffs contended unless the defendants were restrained by an injunction, they
27   would continue to dissipate partnership assets in unauthorized disbursements to themselves. (*Id.*)
28   The defendants had access to the partnership funds and were in fact making repeated use of

1  partnership funds in violation of the partnership agreement. The court found that wrongs were of a
2  repeated nature and generally constituted irreparable harm.

3      Similarly here, the Controller has usurped control of the disbursement of funds without
4  regard to the State's uncertain fiscal condition. His intention to pay employees their regular salaries
5  will be of a continuing nature as he will repeatedly ignore the California Constitution, the mandates
6  of state law, and DPA's August 5, 2008 Pay Letter implementing the holding in *White v. Davis*,
7  limiting state employee salary payments to what is minimally required by the FLSA. This unlawful
8  payment will occur with each pay check issued and with each successive pay period.

9      **4.     The Controller's Actions Will Undermine DPA's Statutory Authority.**
10  The financial harm the State may suffer is not the only hardship justifying a preliminary injunction
11  in this case. By refusing to comply with Petitioners' lawfully issued Pay Letter that implements
12  *White v. Davis*, the Controller undermines the authority vested in DPA to administer employee
13  salary and compensation in accordance with state law.

14      "Where public officers act in breach of trust or without authority, or threaten to do so, and
15  such acts will result in irreparable injury, or will make necessary a multiplicity of suits at law to
16  obtain adequate redress, they may be enjoined." (*Save the Welwood Murray Mem'l Library Com v.*
17  *City Council* (1989) 215 Cal.App.3d 1003, 1017.)

18      In *Save the Welwood Murray Mem'l Library Com v. City Council* (1989) 215 Cal.App.3d
19  1003, a non-profit citizens' group sought an injunction against a City Council to prevent the City
20  from using property that had been dedicated for library purposes. (*Id.,* at 1007.) The City held title
21  to the library property subject to a public trust and could not use the property for purposes other than
22  those specified in the title. (*Id.,* at 1006-1007.) The court noted under the Code of Civil Procedure
23  section 526, an injunction could be granted where the obligation arises from a trust, and that "[a]
24  public trust is created when property is held by a public entity for the benefit of the general public."
25  (*Id.,* at 1017.) Consequently, the court held that an injunction was legally justified to restrain the
26  City from acting. (*Id.,* at 1017-1018.)

27      In the present case, funds in the state treasury are property held by a public entity for the
28  benefit of the general public. The Controller threatens to breach that trust by disbursing the property

-8-

without valid authorization. Just as the City Council was not authorized to use property held in public trust for non-library purposes, the Controller draw warrants against treasury funds without an available appropriation. (See *White v. Davis, supra,* 30 Cal.4th 528.) In an orderly government, a state official cannot arbitrarily maintain independent authority to second-guess the decision of another state officer. (*McCauley v. Brooks, supra,* 16 Cal. at 61.) The Controller cannot simply ignore DPA's directions any more than the City Council in *Murray Mem'l Library* could ignore clear restrictions on its authority. Thus, the Controller's acts must be enjoined to prevent a violation of State Constitution, state law, and permanent erosion of the Petitioner's authority to lawfully administer state employee salaries consistent with *White v. Davis*. If the Controller is permitted to refuse to follow Petitioners' instructions, then Petitioners' authority will be effectively undermined.

In the event that Petitioners/Plaintiffs' Petition for Writ of Mandate (CCP §1085) is not heard until after the August 21, 2008, "cutoff" date, Petitioners/Plaintiffs requests that the court nonetheless proceed with the hearing on the earliest date available, but before the "cutoff" date for the September pay period, which is anticipated to be September 21, 2008.

Based on the foregoing, Petitioners/Plaintiffs respectfully requests that the court issue an order shortening time for the hearing on Petitioners/Plaintiffs Petition for Writ of Mandate (CCP § 1085) on the grounds that there is insufficient time to give notice to Respondents/Defendants of a hearing on the merits of this matter by regularly noticed writ procedure without causing irreparable harm to Petitioners/Plaintiffs.

Dated: August 18, 2008

Respectfully submitted,

By: _____
K. WILLIAM CURTIS
Chief Counsel
Attorneys for Petitioners/Plaintiffs

EX PARTE APPLICATION FOR AN ORDER SHORTENING TIME TO HEAR PETITION FOR WRIT OF MANDATE

1  K. WILLIAM CURTIS
   Chief Counsel, Bar No. 095753
2  WARREN C. STRACENER
   Deputy Chief Counsel, Bar No. 127921
3  LINDA A. MAYHEW
   Assistant Chief Counsel, Bar No. 155049
4  CHRISTOPHER E. THOMAS
   Labor Relations Counsel, Bar No. 186075
5  Department of Personnel Administration
   State of California
6  1515 S Street, North Building, Suite 400
   Sacramento, CA  95811-7258
7  Telephone:  (916) 324-0512
   Facsimile:  (916) 323-4723
8  E-mail:  christhomas@dpa.ca.gov

9  Attorneys for Petitioner, DAVE GILB, as Director of the
   California Department of Personnel Administration and the
10 Department of Personnel Administration

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                       COUNTY OF SACRAMENTO

13

14                                        )  Case No. 34-2008-80000026-CU-WM-GDS
   DAVID A. GILB; CALIFORNIA             )
15 DEPARTMENT OF PERSONNEL              )  **ORDER SHORTENING NOTICE OF**
   ADMINISTRATION                        )  **HEARING ON PETITION FOR WRIT OF**
16                                        )  **MANDATE (CCP § 1085); COMPLAINT**
             Petitioners/Plaintiffs,      )  **FOR INJUNCTIVE AND DECLARATORY**
17                                        )  **RELIEF**
   v.                                     )
18                                        )  Date:
   JOHN CHIANG, sued herein in his official )  Time:
19 capacity only; OFFICE OF STATE        )  Dept:            29
   CONTROLLER                            )  Trial Date:      None
20                                        )
             Respondents/Defendants.      )  **Exempt from Fees**
21                                        )  **(Gov. Code § 6103)**

22
              Satisfactory proof having been made, and good cause appearing,
23
              IT IS ORDERED that:
24
              1.      The application is granted.
25
              2.      The time for hearing on Petitioners'/Plaintiffs' Petition for Writ of Mandate (CCP §
26
   1085); Complaint for Injunctive and Declaratory Relief is hereby shortened, and shall be heard on
27
   _____, 2008 at _____ (a.m./p.m.) in Department _____ of this court.
28

                                            -1-
   _____
              ORDER SHORTENING NOTICE OF HEARING ON PETITION FOR WRIT OF MANDATE

1    3.    The time for service of the Notice of Hearing on Petition for Writ of Mandate (CCP §

2    1085); Complaint for Injunctive and Declaratory Relief is hereby shortened.  Service of this order

3    and the notice shall be accomplished by personal service no later than _____, 2008

4    at _____ (a.m./p.m.)

5        4.    All papers opposing the Petition for Writ of Mandate (CCP § 1085); Complaint for

6    Injunctive and Declaratory Relief must be filed and served five court days prior to the time set for

7    hearing.

8        5.    All reply papers must be filed and served two court days prior to the time set for

9    hearing.

10       6.    In no event shall the last paper be filed later than 9:00 a.m. two court days before the

11   hearing.

12

13

14   Date: _____

                                    _____
15                                   Judge of the Superior Court
                                    Sacramento County
16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER SHORTENING NOTICE OF HEARING ON PETITION FOR WRIT OF MANDATE

K. WILLIAM CURTIS
Chief Counsel, Bar No. 095753
WARREN C. STRACENER
Deputy Chief Counsel, Bar No. 127921
LINDA A. MAYHEW
Assistant Chief Counsel, Bar No. 155049
CHRISTOPHER E. THOMAS
Labor Relations Counsel, Bar No. 186075
Department of Personnel Administration
State of California
1515 S Street, North Building, Suite 400
Sacramento, CA 95811-7258
Telephone: (916) 324-0512
Facsimile: (916) 323-4723
E-mail: christhomas@dpa.ca.gov

Attorneys for Petitioner, DAVE GILB, as Director of the
California Department of Personnel Administration and the
Department of Personnel Administration

FILED/ENDORSED

AUG 18 2008

By: A. MACIAS
    DEPUTY CLERK

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SACRAMENTO

| | |
|---|---|
| DAVID A. GILB; CALIFORNIA DEPARTMENT OF PERSONNEL ADMINISTRATION <br><br> Petitioners/Plaintiffs, <br><br> v. <br><br> JOHN CHIANG, sued herein in his official capacity only; OFFICE OF STATE CONTROLLER <br><br> Respondents/Defendants. | Case No. 34-2008-80000026-CU-WM-GDS <br><br> **AMENDED EX PARTE APPLICATION FOR AN ORDER SHORTENING TIME TO HEAR PETITION FOR WRIT OF MANDATE (CCP § 1085) WITH ATTACHMENT** <br><br> Date: <br> Time: <br> Dept:      29 <br> Trial Date:   None <br><br> **Exempt from Fees** <br> **(Gov. Code § 6103)** |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

Petitioners/Plaintiffs, DAVID A. GILB ("Gilb") and the CALIFORNIA DEPARTMENT OF

PERSONNEL ADMINISTRATION ("DPA"), by and through their counsel, hereby apply ex parte

for an order shortening time to hear Petitioners'/Plaintiffs' Petition for Writ of Mandate (CCP §

1085) on the grounds there is insufficient time to give notice to Respondents/Defendants of a hearing

on the merits of this matter by regularly noticed writ procedure without causing irreparable harm to

Petitioners/Plaintiffs.

-1-

# MEMORANDUM OF POINTS AND AUTHORITIES

This court may grant the ex parte application for an order shortening time to hear Petitioners'/Plaintiffs' Petition for Writ of Mandate (CCP § 1085). Local Rule 2.01(D) provides a hearing on a petition for writ of mandate shall take place not less than 45 days after the opening points and authorities are filed. However, pursuant to the provisions of California Rules of Court, Rule 3.1200, et seq. and Superior Court of Sacramento County, Local Rules, rule 2.04, this court, for good cause shown, may grant an ex parte application for an order shortening time.

The California Legislature has vested DPA with authority over state employee compensation and salaries. Under state law, DPA "succeeds to and is *vested with the duties, purposes, responsibilities, and jurisdiction* exercised by the State Personnel Board *with respect to the administration of salaries*..." (Gov. Code § 19816.) Moreover, regarding any employee salary paid from state funds, "*the salary is subject only to the approval of [DPA] before it becomes effective and payable*..." (Gov. Code § 19825.) In addition, the law charges DPA's director "shall *administer* and *enforce* the laws pertaining to personnel," and "perform such other duties as may be prescribed by law, and such other administrative duties as have by other provisions of law been previously imposed. (Gov. Code § 19815.4.) In this case, DPA acts within this authority in seeking a writ of mandate to compel the Office of State Controller to comply with the California Constitution, state law, and the California Supreme Court's decision in *White v. Davis* (2003) 30 Cal.4[th] 528. In *White v. Davis* (2003), the California Supreme Court determined the California Constitution and state law does not authorize the Controller to disburse state funds to state employees until an applicable appropriation has been enacted. The Court explained as an initial matter that article XVI, section 7 of the California Constitution provides "money may be drawn from the treasury only through an appropriation made by law and upon a Controller's duly drawn warrant." (*Id.*, at 566.) The Court also noted that, consistent with article XVI, section 7 of the California Constitution, Government Code section 12440 provides "the Controller shall draw warrants on the Treasurer for the payment of money directed by law to be paid out of the State treasury; but a warrant shall not be drawn unless authorized by law, and unless, except for refunds authorized by Section 13144, unexhausted specific appropriations provided by law are available to meet it." (*Id.*, at 567.) Further,

1 the Court referenced Government Code section 9610, which provides, "the fixing or authorizing the
2 fixing of the salary of a State officer or employee is not intended to and does not constitute an
3 appropriation of money for the payment of the salary.` The salary shall be paid only in the event that
4 monies are made available by another provision of law." (*Ibid.*) The Court concluded that "the
5 constitutional and statutory provisions set forth above clearly require that some applicable
6 appropriation be available before a state employee's salary actually may be paid from public funds."
7 (*Ibid.*) In particular, the Court ultimately held that the Controller may not pay state employee
8 salaries in the absence of a budget or other available appropriation, except as minimally required by
9 federal law. (*Id.*, at 576-577.)

10      As detailed more fully in the points and authorities already filed in support of the petition for
11 writ of mandate, the Controller is threatening to pay state employees their full salaries despite the
12 lack of a state budget or other available appropriation. The state currently has no budget for fiscal
13 year 2008-2009. (Gilb Decl. ¶ 2, Exh. A.)[1] On July 31, 2008, still without a state budget in place, the
14 Governor issued Executive Order No. S-09-08, which included a directive to temporarily pay
15 minimum wage by the California Supreme Court in *White v. Davis* and federal law. (Gilb Decl. ¶ 2,
16 Exh. A.)     The Order took effect immediately and was to remain in effect "until such time as both a
17 Fiscal Year 2008-09 Budget is adopted and the Director of the Department of Finance confirms an
18 adequate cash balance exists to meet the State's fiscal obligations." (Gilb Decl. ¶ 2, Exh. A.) The
19 Order further instructed Petitioners/Plaintiffs to work with Respondents/Defendants to implement
20 mechanisms necessary to comply with the California Supreme Court's holding in *White v. Davis*.
21 (Gilb Decl. ¶ 2, Exh. A.) However, the Controller has declared unequivocally , "I will not comply
22 with the Order." (Gilb Decl. ¶ 7, Exh. C.)

23      On August 5, 2008, Petitioners/Plaintiffs issued a "pay letter" instructing
24 Respondents/Defendants to comply with the requirements of *White v. Davis* by refraining from
25 paying state employee salaries in the absence of a budget, except as minimally required by federal
26 law. (Gilb Decl. ¶ 9, Exh. C.) However, Respondents/Defendants also announced their intention to
27

28     [1] The declarations cited in this ex parte application are attached for the court's convenience.

-3-

1  refuse to comply with the DPA pay letter. In an August 11, 2008 letter from the Office of the State
2  Controller to DPA, Respondents/Defendants purport to identify a number of scenarios the Office of
3  the State Controller considers obstacles to Respondents'/Defendants' ability to comply with *White v.*
4  *Davis.* (Gilb Decl. ¶ 16.) Yet, the Office of the State Controller provides no information in this letter
5  that indicates that the Controller has departed from his previous statements indicating his refusal to
6  comply with his legal duties under *White v. Davis.* (Gilb Decl. ¶ 16.)

7      Petitioners/Plaintiffs are informed and believe and thereon allege Respondents/Defendants
8  traditionally establishes a "cutoff" date after which no further payroll adjustments may be submitted
9  for the current pay period. (Judd Decl, ¶24.) The "cutoff" date for the current pay period is on or
10 about August 21, 2008. (Judd Decl., ¶ 25.)  Moreover, state employees are paid on the last
11 weekday of each month, and the next paychecks are scheduled to issue on August 29, 2008.  (Judd
12 Decl., ¶ 25.)

13     Good cause exists for this court to grant the ex parte application for an order shortening time
14 to hear Petitioners'/Plaintiffs' Petition for Writ of Mandate (CCP § 1085). Petitioners/Plaintiffs seek
15 a writ of mandate compelling Respondents/Defendants to act within the parameters of the law and in
16 compliance with *White v. Davis.*  A hearing on the merits of Petitioners' petition for writ of mandate
17 must be expedited to prevent the Controller from improperly paying state employees in the absence
18 of a state budget or other available appropriation. If this court does not accelerate the ordinary writ
19 of mandate process, the Controller will illegally disperse monies to state employees before this court
20 has the opportunity to decide the instant writ petition on the merits.

21     An order shortening time for the hearing on Petitioners'/Plaintiffs' Petition for Writ of
22 Mandate (CCP § 1085) must be issued because a regularly noticed writ petition will not be heard by
23 the court until late-September, at the earliest.  Even if this matter cannot be heard before the August
24 21st payroll cut-off date, the matter still needs to be heard as soon as possible in advance of the
25 September payroll cut-off date so the Controller has the opportunity to comply.  If an order
26 shortening time is not granted, Respondents/Defendants' actions will continue to disregard the
27 California Constitution and state law.  They will continue to repeatedly usurp the Legislative
28 authority expressly vested in Petitioners/Plaintiffs.  This harm is immeasurable and irreparable.

-4-

1    The courts have variously defined the degree of harm or hardship required to justify issuing a
2    preliminary injunction   The California Supreme Court has stated, "[t]he term 'irreparable injury' . . .
3    means that species of damages, whether great or small, which ought not to be submitted to on the
4    one hand or inflicted on the other." (*Anderson v. Souza* (1952) 38 Cal.2d 825, 834.)  Additionally,
5    courts have since held that "the word 'irreparable' is . . . used in expressing the rule that an
6    injunction may issue to prevent wrongs of a repeated and continuing character."  (*Christopher v*
7    *Jones* (1964) 231 Cal.App.2d 408, 416.)

8
9          The harm threatened by the Controller's actions in this case is sufficient to meet the
10   standards set out above because it would result in injuries that defy precise calculation and is of a
11   continuing or repeated nature.   The harm caused by the Controller's actions also is of a type that
12   cannot be left unchallenged because it undermines DPA's statutory authority to administer state
13   employee salaries and compensation.

14                    2.      **Harm To The Petitioners Is Irreparable Because Of The Uncertain
                              Fiscal Impacts.**
15

16         In *Wind v. Herbert* (1960) 186 Cal.App.2d 276, the court upheld a preliminary
17   injunction because the plaintiffs would be subject to a type of damage that was uncertain and subject
18   to speculation.  (*Id.*, at 285.)  In that case, plaintiffs, limited partners in a partnership, sought an
19   injunction against the general partners, to halt the dissipation of partnership assets.  (*Id.*, at 279.)
20   The court found the damages were irreparable given the fact the defendant's actions would subject
21   the petitioner to a type of damages that was "only estimable by conjecture." (*Id.*, at 285.)

22         In *Wind*, the defendants argued that a preliminary injunction was not necessary to prevent
23   "irreparable injury" because any conceivable future loss of partnership assets could be compensated
24   with money damages.  (*Id.*, at 284.)  The court disagreed, holding that irreparable injury is not
25   merely limited to injuries that cannot be compensated by damages.  (*Id.*, at 285)  Rather, an
26   injunction is appropriate in any case where "it would be extremely difficult to ascertain the amount
27   of compensation that would afford relief." (*Id.*)

28   / / /

-5-

1    Due to the complexity of the state budget, because of the budget's large scope and
2  breadth, and because an expenditure in one area often affects expenditures in other areas, the
3  specific economic injury in this case is difficult to ascertain. The Controller's non-compliance
4  with the executive order will exacerbate California's financial crisis by potentially forcing the
5  state to borrow funds at higher interest rates. As in *Wind*, the financial impact of the
6  Controller's actions defies exact calculation and subjects the State to consequences that can only
7  be accurately measured after the lawless action occurs.

8    It is difficult to estimate the harm the State will suffer if the Controller is allowed to
9  violate state law by paying state employees their full salaries without an appropriation. The lack
10  of a state budget already places the State in a precarious fiscal situation. When no fiscal year
11  budget is in place, the State lacks authority to make a wide range of public expenditures.
12  (Genest Decl. ¶ 6.) For example, the State has no authority to issue payments to vendors and
13  contractors for goods and services chargeable to Fiscal Year 2008-2009; apportionments of
14  highway user taxes to the state, cities and counties for highway and road improvement projects;
15  grants to higher education students; funds for the operation of the trial courts, the University of
16  California, California State University system, and the California Community Colleges system;
17  payments for non-federally mandated social services programs such as Community Care
18  Licensing, Adult Protective Services, State Only Foster Care, State Only Adoptions Assistance,
19  and Cash Assistance Program for Immigrants; and tax relief payments to low income seniors and
20  disabled persons. (Genest Decl. ¶ 6.)

21    In addition to the operational effects of a budget impasse described above, when no fiscal
22  year budget is in place, other payments required by law continue without consideration of, or
23  adjustments to address the state's fiscal condition. (Genest Decl. ¶ 7.) As a result, the State has
24  now committed to spending approximately $487 million above the expenditure adjustments
25  previously proposed by the Governor in his May Revision of the proposed Fiscal Year 2008-09
26  budget. (Genest Decl. ¶ 7.) Consequently, the State is suffering financially from the absence of
27  a budget, even without the Controller issuing illegal salary disbursements to state employees.
28  ///

1    The State's fiscal situation may be adversely affected if the Controller is allowed to pay

2    state employees their full salaries in contravention of *White v. Davis*, and the implementing DPA

3    pay letter. DOF works with the State Controller's Office and the State Treasurer's Office every

4    year to determine whether, on a monthly basis, the state will have sufficient cash attributable to

5    the General Fund to meet the state's obligations, including its obligations to its bondholders.

6    (Genest Decl. ¶ 8.) DOF currently projects it is likely the State will have insufficient cash in the

7    General Fund to meet those needs by either September or October 2008. (Genest Decl. ¶ 8.)

8        The consequences of insufficient cash in the General Fund will be extremely detrimental,

9    and could ultimately cost the State literally hundreds of millions of dollars. It is routinely

10   necessary to borrow cash on a short-term basis in order to meet the state's obligations between

11   periods that tax revenues are scheduled to be received. (Genest Decl. ¶ 9.) That borrowing

12   process is the issuance of Revenue Anticipation Notes (RANs). (Genest Decl. ¶ 9.) However,

13   when a budget is not in place, this cash flow borrowing cannot take place. (Genest Decl. ¶ 9.)

14   Instead, in order to meet cash flow needs, borrowing must be done through the issuance of

15   Revenue Anticipation Warrants (RAWs). (Genest Decl. ¶ 9.) RAWs are more expensive to

16   issue than RANs. (Genest Decl. ¶ 9.) It is anticipated that RAWs will bear interest at a rate at

17   least one percent higher than RANs, and that the security for this type of borrowing, which is not

18   required for RANs, will cost approximately $215 million. (Genest Decl. ¶ 9.) If a budget

19   appropriation for state employee salaries is not passed in time to assure that RANs can be issued

20   to meet this cash flow need, it may be necessary to issue the much more expensive RAWs.

21   (Genest Decl. ¶ 10.) It is therefore prudent fiscal policy to reduce spending in order to reduce

22   the size of any issuance of RAWs. (Genest Decl. ¶ 10.)

23                    **3.    The Harm To Petitioners Is Of A Continuing Nature.**

24       In *Wind v. Herbert, surpa,* 186 Cal.App.2d 276, the court noted that wrongs of a repeated and

25   continuing character may also be sufficient grounds for issuing a preliminary injunction. (*Id.*, at

26   285.) In that case, plaintiffs contended unless the defendants were restrained by an injunction, they

27   would continue to dissipate partnership assets in unauthorized disbursements to themselves. (*Id.*)

28   The defendants had access to the partnership funds and were in fact making repeated use of

1 partnership funds in violation of the partnership agreement. The court found that wrongs were of a
2 repeated nature and generally constituted irreparable harm.

3 Similarly here, the Controller has usurped control of the disbursement of funds without
4 regard to the State's uncertain fiscal condition. His intention to pay employees their regular salaries
5 will be of a continuing nature as he will repeatedly ignore the California Constitution, the mandates
6 of state law, and DPA's August 5, 2008 Pay Letter implementing the holding in *White v. Davis*,
7 limiting state employee salary payments to what is minimally required by the FLSA. This unlawful
8 payment will occur with each pay check issued and with each successive pay period.

9 **4. The Controller's Actions Will Undermine DPA's Statutory Authority.**
10 The financial harm the State may suffer is not the only hardship justifying a preliminary injunction
11 in this case. By refusing to comply with Petitioners' lawfully issued Pay Letter that implements
12 *White v. Davis*, the Controller undermines the authority vested in DPA to administer employee
13 salary and compensation in accordance with state law.

14 "Where public officers act in breach of trust or without authority, or threaten to do so, and
15 such acts will result in irreparable injury, or will make necessary a multiplicity of suits at law to
16 obtain adequate redress, they may be enjoined." (*Save the Welwood Murray Mem'l Library Com v.*
17 *City Council* (1989) 215 Cal.App.3d 1003, 1017.)

18 In *Save the Welwood Murray Mem'l Library Com v. City Council* (1989) 215 Cal.App.3d
19 1003, a non-profit citizens' group sought an injunction against a City Council to prevent the City
20 from using property that had been dedicated for library purposes. (*Id.*, at 1007.) The City held title
21 to the library property subject to a public trust and could not use the property for purposes other than
22 those specified in the title. (*Id.*, at 1006-1007.) The court noted under the Code of Civil Procedure
23 section 526, an injunction could be granted where the obligation arises from a trust, and that "[a]
24 public trust is created when property is held by a public entity for the benefit of the general public."
25 (*Id.*, at 1017.) Consequently, the court held that an injunction was legally justified to restrain the
26 City from acting. (*Id.*, at 1017-1018.)

27 In the present case, funds in the state treasury are property held by a public entity for the
28 benefit of the general public. The Controller threatens to breach that trust by disbursing the property

-8-

1   without valid authorization. Just as the City Council was not authorized to use property held in

2   public trust for non-library purposes, the Controller draw warrants against treasury funds without an

3   available appropriation. (See *White v. Davis, supra,* 30 Cal.4th 528.) In an orderly government, a

4   state official cannot arbitrarily maintain independent authority to second-guess the decision of

5   another state officer. (*McCauley v. Brooks, supra,* 16 Cal. at 61.) The Controller cannot simply

6   ignore DPA's directions any more than the City Council in *Murray Mem'l Library* could ignore

7   clear restrictions on its authority. Thus, the Controller's acts must be enjoined to prevent a violation

8   of State Constitution, state law, and permanent erosion of the Petitioner's authority to lawfully

9   administer state employee salaries consistent with *White v. Davis.* If the Controller is permitted to

10   refuse to follow Petitioners' instructions, then Petitioners' authority will be effectively undermined.

11       In the event that Petitioners/Plaintiffs' Petition for Writ of Mandate (CCP §1085) is not heard

12   until after the August 21, 2008, "cutoff" date, Petitioners/Plaintiffs requests that the court

13   nonetheless proceed with the hearing on the earliest date available, but before the "cutoff" date for

14   the September pay period, which is anticipated to be September 21, 2008.

15       Based on the foregoing, Petitioners/Plaintiffs respectfully requests that the court issue an

16   order shortening time for the hearing on Petitioners/Plaintiffs Petition for Writ of Mandate (CCP §

17   1085) on the grounds that there is insufficient time to give notice to Respondents/Defendants of a

18   hearing on the merits of this matter by regularly noticed writ procedure without causing irreparable

19   harm to Petitioners/Plaintiffs.

20   Dated: August 18, 2008

21                            Respectfully submitted,

22

23

24                     By: K. WILLIAM CURTIS

25                        Chief Counsel
                               Attorneys for Petitioners/Plaintiffs

26

27

28

EX PARTE APPLICATION FOR AN ORDER SHORTENING TIME TO HEAR PETITION FOR WRIT OF MANDATE

ATTACHMENT

K. WILLIAM CURTIS
Chief Counsel, Bar No. 095753
WARREN C. STRACENER
Deputy Chief Counsel, Bar No. 127921
LINDA A. MAYHEW
Assistant Chief Counsel, Bar No. 155049
CHRISTOPHER E. THOMAS
Labor Relations Counsel, Bar No. 186075
Department of Personnel Administration
State of California
1515 S Street, North Building, Suite 400
Sacramento, CA 95811-7258
Telephone: (916) 324-0512
Facsimile: (916) 323-4723

Attorneys for Petitioner, DAVE GILB, as Director of the
California Department of Personnel Administration and the
Department of Personnel Administration

FILED
Superior Court Of California,
Sacramento
Dennis Jones, Executive
Officer
08/11/2008
skyulngal
By_____, Deputy
Case Number:
34-2008-80000026-CU-WM-GDS

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SACRAMENTO

| | |
|---|---|
| DAVID GILB, CALIFORNIA DEPARTMENT OF PERSONNEL ADMINISTRATION,<br><br>    Petitioners/Plaintiffs,<br><br>v.<br><br>JOHN CHIANG, sued herein in his official capacity only, CALIFORNIA STATE CONTROLLER'S OFFICE,<br><br>    Respondents/Defendants. | Case No.<br><br>**DECLARATION OF DAVID A. GILB IN SUPPORT OF PETITION FOR WRIT OF MANDATE (CCP § 1085); COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>Date:<br>Time:<br>Dept:<br>Trial Date:<br><br>**Exempt from Fees (Gov. Code § 6103)** |

I, DAVID A. GILB, do hereby say and declare as follows:

1.     I am the Director of the Department of Personnel Administration (DPA). As the Director, I am charged by state law with the duty to administer and enforce certain laws concerning personnel and employee compensation. As part of those duties, I have the authority to issue what are known as pay letters. Pay letters are generally issued to implement changes in the employee compensation system.

/ / /

2.     On or about July 31, 2008, I received a copy of Executive Order S-09-08, signed by Governor Schwarzenegger, suspending regular employee compensation. (A true and accurate copy of Executive Order S-09-08 is attached hereto as Exhibit A.) Executive Order S-09-08 directed the State of California to take various emergency measures in light of the late budget for Fiscal Year 2008-2009.

3.     As part of Executive Order S-09-08, the Governor directed state agencies and departments "to cease and desist authorization of all overtime and for employees effective July 31, 2008", except for "services and functions of state government deemed critical and exempt by the Order and emergent situations to preserve and protect human life and safety."

4.     In Executive Order S-09-08, the Governor ordered the Department of Finance (DOF) and the DPA to work with the State Controller to "develop and implement the necessary mechanisms, including but not limited to pay letters and computer programs, to comply with the California Supreme Court's *White v. Davis* opinion to pay federal minimum wage to those nonexempt FLSA employees who did not work any overtime."

5.     Executive Order S-09-08 further directed "that necessary mechanisms to ensure compliance with the *White v. Davis* opinion must be in place to be effective for the August 2008 payroll."

6.     The Executive Order also directed "that this Order shall remain in effect until such time as both a Fiscal Year 2008-2009 Budget is adopted and the Director of the Department of Finance confirms an adequate cash balance exists to meet the State's fiscal operations."

7.     On or about July 31, 2008, State Controller John Chiang (Controller) sent a letter to the Governor declaring his intent not to comply with Executive Order S-09-08. In the letter the Controller stated: "I will not comply with the Order." The Controller further stated he intended to continue to provide full pay to all state employees irrespective of an available appropriation, and notwithstanding the California Supreme Court's decision in *White v. Davis*. (A true and accurate copy of the Letter from The Controller to the Governor dated July 31, 2008 is attached hereto as Exhibit B.)

/ / /

-2-

1    8.      On or about August 1, 2008, I met with the DOF Director Michael Genest and the
2   Controller. The purpose of the meeting was to advise the Controller DPA would be issuing a pay
3   letter instructing him to make the necessary changes to payroll to comply with the California
4   Supreme Court's decision in *White v. Davis.*

5    9.      In accordance with Executive Order S-09-08, on August 5, 2008, I provided the
6   Controller with DPA Pay Letter 08-23 and a cover letter, which included the necessary instructions
7   for complying with the requirement of *White v. Davis* to pay wages as minimally required by federal
8   law. I informed the Controller DOF and the DPA were prepared to assist him in developing and
9   implementing the necessary mechanisms to comply with California Supreme Court's decision in
10   *White v. Davis.* Pay Letter 08-23 requires the Controller to refrain from paying state employees in
11   the absence of a budget, except as minimally required by federal law. (A true and accurate copy of
12   the Cover Letter to Controller dated August 5, 2008 and Pay Letter 08-23 are attached hereto as
13   Exhibit C.)

14   10.      Pay Letter 08-23 authorizes payment of certain wages to employees during a budget
15   impasse in accordance with Executive Order S-09-08. Specifically, it authorizes the payment of the
16   federal minimum wage of $6.55 per hour to state employees in Workweek Group 2. The pay letter
17   also authorizes payment of $455 per week to all state employees in Workweek Group E. With
18   respect to employees in Workweek Group SE, the pay letter authorizes the delay of compensation
19   until after the adoption of a state budget. Similarly, the pay letter authorizes the continued delay of
20   compensation to state employees not covered by the Fair Labor Standards Act (FLSA).

21   11.      Pay Letter 08-23 also included a list of departments and programs that are not subject
22   to the overtime prohibition in Executive Order S-09-08 because of the critical nature of the work
23   performed by these departments and programs. Pay Letter 08-23 excluded these departments and
24   programs because there was a reasonable expectation that these employees will work overtime.

25   12.      In order to ensure that employees receive as much compensation as possible during
26   impasse, I made the decision to only take mandatory deductions out of employee paychecks.
27   ///
28   ///

-3-

1   13.    On or about August 7, 2008, I directed Julie Chapman, Deputy Director of Labor

2   Relations and Jerri Judd, Personal Program Manager in the Labor Relations Division ("LRD"),

3   Bernice Torres, Personnel Program Analyst, and Theresa White, Staff Services Analyst to meet with

4   Controller's representatives. I also directed them to present the Controller's Office with three viable

5   means of implementing Executive Order S-09-08 along with corresponding draft pay letters.

6   14.    On or about August 8, 2008, I directed Julie Chapman to send a letter to the

7   Controller advising him DPA needed to know whether or not he would be complying with Pay

8   Letter 08-23 by Monday, August 11, 2008 at noon.

9   15.    On or about August 11, 2008, DPA received a response from Don Scheppmann.

10  16.    The Controller's August 11, 2008 letter is consistent with his prior statements

11  indicating he will not comply with his legal duties under *White v. Davis* (2003) 30 Cal.4th 528.

12  Instead he purports to identify a number of scenarios that he considers obstacles to his ability to

13  comply with *White v. Davis*

14  17.    The August 11, 2008 letter suggests the Controller has taken virtually no action since

15  the 2003 *White v. Davis* decision to address the alleged obstacles in implementing salary payment

16  consistent with *White v. Davis*.

17  18.    Assuming the obstacles raised in the August 11, 2008 letter have some validity (a fact

18  I dispute) action is needed by the court to compel the Controller to fulfill his responsibility to

19  comply with the law.

20  19.    DPA is performing its statutory duty to uphold the law to administer employee

21  salaries consistent with the California Supreme Court's decision in *White v. Davis*. DPA's ability to

22  fulfill its statutory duty is entirely negated by the Controller's unlawful conduct.

23  20.    DPA is without an adequate remedy at law. When the Controller pays all employees

24  full salary for the August pay period, his payment is irrevocable. His unlawful actions are subject to

25  repetition. He will continue to violate the law and prevent DPA from performing its statutory duty.

26  ///

27  ///

28  ///

-4-

DECLARATION OF DAVID A. GILB

1  21. Employee salaries for the August pay period are payable on August 29, 2008, thus

2 immediate relief must be granted to ensure compliance with the California Supreme Court's decision

3 in *White v. Davis* to pay wages minimally required by federal law until there is a state budget.

4  I have personal knowledge of the facts set forth herein and if called as a witness would testify

5 competently thereto. I declare under penalty of perjury, under the laws of the State of California,

6 that the foregoing is true and correct.

7  Executed August __//__ , 2008, at Sacramento, California.

8

9

10         _____

11        DAVID A. GILB
         Director

12        Department of Personnel Administration

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 n:\ \declaration of dave gilb docx

-5-

DECLARATION OF DAVID A. GILB

EXHIBIT A



**Office of the Governor**   ARNOLD SCHWARZENEGGER
THE PEOPLE'S GOVERNOR

# EXECUTIVE ORDER S-09-08

07/31/2008

   **WHEREAS** the constitutional deadline for enacting a state budget for Fiscal Year 2008-09 has passed without the enactment of a budget, and

   **WHEREAS** in the absence of a budget, State government is constitutionally prohibited from making payments that are not compelled by either the State Constitution or federal law; and

   **WHEREAS** until there is a state budget, the State has no authority to pay the following payments: (1) Vendors and Contractors for goods and services chargeable to Fiscal Year 2008-09, (2) Payroll for legislative staff, appointees, and exempt employees, (3) Payroll for other state employees beyond that required by federal labor law, (4) Highway User Taxes that are apportioned to the state, cities and counties for highway and road improvement projects; (5) Cal Grants to students in higher education, (6) Transfers to the Trial Courts, (7) Transfers to University of California, California State University, and Community Colleges, (8) Transportation Revolving Fund disbursements, (9) Non-revenue limit school payments, and (10) Payments for non-federally mandated social services programs such as Community Care Licensing, Adult Protective Services, State Only Foster Care, State Only Adoptions Assistance, and Cash Assistance Program for Immigrants, and (11) tax relief payments to low income seniors and disabled persons, and

   **WHEREAS** on May 1, 2003, the California Supreme Court, in *White v Davis*, issued a decision that, in conjunction with other pre-existing court orders, clarified that during a period that there is no state budget in place, federal labor laws require the State to pay its nonexempt FLSA employees either federal minimum wage or, for those employees that work overtime, their full salaries plus overtime; and

   **WHEREAS** it is not known when a budget will be adopted for Fiscal Year 2008-09, and

   **WHEREAS** as a result of the late budget, there is a real and substantial risk that the State will have insufficient cash to pay for state expenditures, and

   **WHEREAS** since June 2008, the unprecedented number and size of fires in California has created states of emergency that have required additional and substantial expenditures of cash to ensure that there are sufficient resources to effectively fight these fires and save lives and homes, and

   **WHEREAS** it is critical that the State be able to meet any unforeseen emergency such as fire, flood or public health emergency and to continue to make timely payments on constitutionally and federally-mandated obligations and existing obligations to pay holders of state bonds, and

   **WHEREAS** due to the impending cash crisis and budget delay, the State may be forced to consider a Revenue Anticipation Warrant (RAW) at an exorbitant cost to the State, including hundreds of millions of dollars in credit enhancements, in order to make sure there is sufficient cash to pay for state expenditures; and

   **WHEREAS** after the late adoption of a budget, there will be additional cash demands because all of the deferred payments that were not permitted to be made during the budget impasse will become due and payable; and

   **WHEREAS** the late budget has resulted in loss of savings to the State in the amount of $164 million for July, and failure to enact a budget in August will result in additional loss of savings in the amount of $323 million, and

   **WHEREAS** as a result of the late budget, additional mitigation measures must be implemented to offset the loss of savings and to ensure that there is sufficient cash to make the State's payments, and

   **WHEREAS** the State employs nearly 22,000 retired annuitants, permanent intermittent employees, and seasonal employees and the State hires new employees at the rate of approximately 1,700 per month; and

   **WHEREAS** except for services and functions of state government deemed critical by this Order, additional mitigation measures need to be taken to immediately reduce expenditures and preserve cash, including the following. (1) halting all hiring, transfers and promotions of employees, and contracting for individuals to perform services, (2)

prohibition of overtime, (3) termination of the services of retired annuitants, permanent intermittent employees, seasonal employees, temporary help workers and, student assistants, and (4) suspension of personal services contracts

**NOW, THEREFORE, I, ARNOLD SCHWARZENEGGER,** Governor of the State of California, in accordance with the authority vested in me by the Constitution and the statutes of the State of California, do hereby issue the following orders to become effective immediately·

**IT IS ORDERED** that the services and functions of state government directly related to the preservation and protection of human life and safety, including but not limited to emergency and disaster response activities and the provision of 24-hour medical care, shall be deemed critical and exempt from this Order.

**IT IS FURTHER ORDERED** that except for services and functions of state government deemed critical and exempt by this Order, all State agencies and departments under my direct executive authority take immediate action effective July 31, 2008 to cease and desist hiring of employees (except in instances in which there is a bona fide offer and acceptance prior to the effective date of this Order), transferring employees between State agencies and departments, promoting employees, and contracting for individuals to perform services

**IT IS FURTHER ORDERED** that except for services and functions of state government deemed critical and exempt by this Order and emergent situations to preserve and protect human life and safety, all State agencies and departments under my direct executive authority take immediate action to cease and desist authorization of all overtime for employees effective July 31, 2008

**IT IS FURTHER ORDERED** that except for services and functions of state government deemed critical and exempt by this Order, all State agencies and departments under my direct executive authority take immediate action to terminate the services of the following five categories of employees and individuals effective July 31, 2008 (1) Retired Annuitants, (2) Permanent Intermittent Employees, (3) Seasonal Employees, (4) Temporary Help Workers, and (5) Student Assistants

**IT IS FURTHER ORDERED** that except for services and functions of state government deemed critical and exempt by this Order and except for services provided pursuant to.multi-year contracts for Information Technology systems and services, all State agencies and departments under my direct executive authority take immediate action to suspend all personal services contracts effective July 31, 2008

**IT IS FURTHER ORDERED** that all Agency Secretaries and Department Directors shall take immediate action to implement this Order, and any other action that will reduce state expenditures

**IT IS FURTHER ORDERED** that the Director of the Department of Finance shall establish an exemption process that Agency Secretaries shall utilize to determine if an exemption is justified based on critical services and functions, which may include either cost-reducing or revenue-producing services and functions that will help ensure that there is sufficient cash for the State to make its payments.

**IT IS FURTHER ORDERED** that Agency Secretaries and Cabinet-level Directors shall report their exemptions to the Cabinet Secretary and the Director of the Department of Finance within 24 hours of approving an exemption

**IT IS FURTHER ORDERED** that the Director of the Department of Finance and Director of the Department of Personnel Administration shall work with the State Controller to develop and implement the necessary mechanisms, including but not limited to pay letters and computer programs, to comply with the California Supreme Court's *White v Davis* opinion to pay federal minimum wage to those nonexempt FLSA employees who did not work any overtime

**IT IS FURTHER ORDERED** that the necessary mechanisms to ensure compliance with the *White v Davis* opinion must be in place to be effective for the August 2008 payroll

**IT IS HEREBY REQUESTED** that during this budget impasse, the State Treasurer shall take all actions necessary to maintain the State's ability to pay its bond obligations, including payment of principal and interest with funds in the State Treasury, and shall take all actions that are necessary to protect the State's funds and investments

**IT IS FURTHER REQUESTED** that other entities of State government not under my direct executive authority, including the California Public Utilities Commission, the University of California, the California State University, California Community Colleges, constitutional officers, the legislative branch (including the Legislative Counsel Bureau), and judicial branch, assist in the implementation of this Order and implement similar mitigation measures that will help to preserve the State's cash supply during this budget impasse

**IT IS FURTHER ORDERED** that this Order shall remain in effect until such time as both a Fiscal Year 2008-09 Budget is adopted and the Director of the Department of Finance confirms an adequate cash balance exists to meet the State's fiscal obligations

**I FURTHER DIRECT** that as soon as hereafter possible, this Order be filed in the Office of the Secretary of State and that widespread publicity and notice be given to this Order



**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 31st day of July 2008

ARNOLD SCHWARZENEGGER
Governor of California

**ATTEST:**

DEBRA BOWEN
Secretary of State

# EXHIBIT B

# DEPARTMENT OF PERSONNEL ADMINISTRATION

OFFICE OF THE DIRECTOR
1515 "S" STREET, NORTH BUILDING, SUITE 400
SACRAMENTO, CA  95814-7243

August 5, 2008

The Honorable John Chiang
California State Controller
300 Capitol Mall, Suite 1850
Sacramento, California  95814

Dear Mr. Chiang,

The California Supreme Court held in *White v. Davis* that in the absence of an approved state budget, the Controller has no legal authority to issue warrants against the State Treasury for employee salaries except as required by federal labor law.

As the Director of the Department of Personnel Administration (DPA), I am charged by state law with the duty to administer and enforce laws pertaining to state employee compensation. In accord with *White v. Davis* and with my obligations under federal and state law, I am providing you with the attached pay letter concerning the payment of wages.

In general, the attached pay letter authorizes the following wage payments during a budget impasse:

(1)  Pay all non-exempt (Workweek Group II) state employees the federal minimum wage of $6.55 per hour.

(2)  Pay all Executive, Administrative and Professional (EAP) (Workweek Group E) employees $455.00 per week. This amount represents the minimum salary required by the FLSA in order preserve the EAP exemption.

(3)  Delay payment of all wages to employees covered by the Code of Federal Regulation sections 541.303 and 541.304 (Workweek Group SE). These employees are exempt from the salary basis test and are not subject to any minimum salary requirements and therefore will not receive any compensation until after adoption of a state budget.

(4)  Continue to delay payment of wages to employees who are not covered by the FLSA including elected officials, appointees of elected officials and their personal and legal staffs, until after adoption of a state budget.

With regard to (1) above, the attached pay letter includes a list of departments and programs not subject to the overtime prohibition in the Executive Order due to the

critical nature of the work performed by these departments and programs. For these departments and programs, there is a reasonable expectation that the non-exempt state employees will work overtime. Therefore, the pay letters are excluding these departments and programs.

The Director of the Department of Finance and I are prepared to work with you to develop and implement the necessary mechanisms to comply with *White v. Davis* and the FLSA My office will be contacting your office shortly to schedule a meeting with appropriate staff

Sincerely,

Dave A. Gilb
Director

cc:     Bill Curtis, Chief Counsel, Department of Personnel Administration
        Mike Genest, Director, Department of Finance
        Dan Dunmoyer, Cabinet Secretary, Governor's Office
        Andrea Hoch, Legal Affairs Secretary, Governor's Office

## DEPARTMENT OF PERSONNEL ADMINISTRATION
### SECTION I

## SUMMARY OF PROVISIONS CONCERNING THE PAYMENT OF SALARIES IN THE ABSENCE OF A STATE BUDGET
### LOCATED ON DPA'S PUBLIC WEB SITE

### This Pay Letter is pursuant to Executive Order S-09-08

**SPECIAL SALARY PAYMENT INSTRUCTION: (Effective 07/31/08)**

To comply with federal labor law and the California Supreme Court's decision in White v. Davis, in the absence of an approved state budget WWG 2, E, and SE classes shall be paid as follows:

**WWG 2: (Except for the departments and programs listed on Attachment A)**

$1,153 per month
$52 40 per day
$6.55 per hour

**WWG E: (Equivalent to $455.00 per week to meet FLSA requirements)**

$2,003 per month
$91.00 per day
$11.38 per hour

**WWG SE:**

0 per month
0 per day
0 per hour

**DOCUMENTATION:**

## Attachment A (Applies to WWG 2 Only)

**BTH**
California Highway Patrol
Department of Transportation

**CDFA**
Agriculture Security and Emergency Response

**CDVA**
Whole Department

**CHHS**
Department of Developmental Services
Department of Mental Health

**Military**
Whole Department

**OES**
Whole Department

**Resources**
Department of Water Resources
Department of Forestry (CALFIRE)
Department of Parks and Recreation
California Conservation Corps
Office of Spill Prevention
Department of Fish and Game

# *Exempt Pay Letter*



**DATE:** August 5, 2008

**TO:**    Personnel Officers

**FROM:**  **Department of Personnel Administration**
           **Executive Compensation Unit**

**SUBJ:**  Exempt Salary Program-Payment of Salaries During Time of No Budget

To comply with federal labor law and the California Supreme Court's decision in *White v. Davis*, in the absence of an approved State budget, WWG 2, E, and SE Exempt appointees shall be paid as follows:

| WWG E | WWG 2 | WWG SE |
|-------|-------|--------|
| $2,003 per month | $1,153 per month | $0.00 per month |
| $91.00 per day | $52.40 per day | $0.00 per day |
| $11.38 per hour | $6.55 per hour | $0.00 per hour |

This salary payment is effective July 31, 2008 and will remain in affect until a budget is passed and certified.  Departments should key a SAL transaction to process this special salary payment adjustment.

If you have any questions regarding the salary program you may contact me at the number below.

Debbie Baldwin
Exempt Program Manager
(916) 323-8495
DebbieBaldwin@dpa.ca.gov

Attachment

cc: Carol Neely, SACS Unit, State Controllers' Office B-8
    Lynn Catania, Governor's Appointment Desk E-15
    Classification Staff, CCD, DPA

# EXHIBIT C



# John Chiang
## California State Controller

July 31, 2008

The Honorable Arnold Schwarzenegger
Governor of California
State Capitol Building
Sacramento, CA 95814

Dear Governor Schwarzenegger,

I understand that today you signed an executive order (Order) demanding the salaries of more than 200,000 civil servants who are covered by the federal Fair Labor Standards Act (FLSA) be cut to the federal minimum wage of $6.55 an hour.

To the extent that the Order attempts to govern the constitutional duties for which I was independently elected to perform and, because it is based on faulty legal and factual premises, I will not comply with the Order.

Your Order to reduce the salaries of these civil servants, making them bear the brunt of the budget stalemate, appears to be based in part upon what you perceive to be a conclusive and unequivocal determination by the California Supreme Court in the case, *White v. Davis* (May 1, 2003) 30 Cal. 4th 528, that my authority to issue warrants to employees in the absence of a budget is limited to the minimum wage.

One of the main purposes of the FLSA in creating a minimum wage standard was to protect vulnerable employees from employer wage exploitation. In furtherance of that objective, and in order to afford employees some level of protection, Congress set a minimum salary level for all employees covered by the Act. The FLSA does not, in any way, prevent an employer from paying more than the minimum wage.

In *White v. Davis*, this office took the position that due to technical limitations inherent in a payroll system that was developed more than 25 years ago, it was infeasible, if not impossible, to adjust payroll for the workforce to minimum wage during a budgetary impasse and, after the budget has been passed, to promptly restore the unpaid wages in a manner consistent with the law. Given the choice of paying nothing, which is a clear violation of the FLSA, and continuing to pay full wages, my office opted for the latter option as a means of protecting the employees from unnecessary financial hardship and, moreover, from exposing the State to possible treble damages for failing to comply with the FLSA.

300 Capitol Mall, Suite 1850, Sacramento, CA 95814 • P.O. Box 942850, Sacramento CA 94250 • (916) 445-2636 • Fax (916) 322-4404
777 S. Figueroa Street, Suite 4800 Los Angeles CA 90017 • (213) 833 6010 • Fax, (213) 833-6011
www.sco.ca.gov



In reviewing the matter, the California Supreme Court specifically declined to rule on the amount of salary that could lawfully be paid during a budget impasse. In its ruling, the court concluded that "in order to comply with the FLSA, the state, during a budget impasse, must timely pay nonexempt employees who do not work overtime *at least* at the minimum wage rate." (italics added) But the court declined to specify whether the federal minimum wage or full salary is appropriate, opining, on page 68 of the decision, "In any event, as already noted, the Controller's claim of infeasibility was not fully litigated below, and thus we do not believe it would be appropriate to attempt to definitively resolve the claim at this juncture. . . ."

Also, contrary to your statement that the State is at risk, due to the budget impasse, of having insufficient cash to pay state expenditures, it should be pointed out that there is enough cash to meet all expenditures through September. As of June 30, unused borrowable resources totaled $12.7 billion. This is $3.6 billion higher than the $9.1 billion projected in your May revision to the budget. Should it be determined that the cash is insufficient, the law authorizes me to borrow money either through a Revenue Anticipation Note should there be a budget in place, or a Registered Reimbursement Warrant, commonly known as a RAW, in the absence of a budget. Some form of external borrowing is part of the State's normal cash management process and will occur regardless of when a budget is passed or what solutions are contemplated in the budget. Reducing employees to minimum wage will not save the State money and will not impact any forthcoming borrowing decisions. In fact, deferring compensation until after the budget is passed may well expedite the need for cash to meet the unpaid amounts as soon as the budget is signed.

Finally, it appears as though your Order, while purporting to require compliance with the *White* decision, is actually inapposite of your reading of that decision. On one hand, you incorrectly indicate that there exists no authority to pay employees not working overtime more than the minimum wage and then, on the other hand, purport to authorize full pay to certain classes of employees. If your reading of the case is correct, then my office cannot make exceptions for those public employees who are engaged in "services and functions of state government deemed critical and exempt." In other words, your reading of the court conclusion in *White* would mean I do not have authority to pay full wages to any FLSA-covered employee, including the firefighters on the front line in Butte County, the peace officers who patrol our streets and any other employee dedicated to "preserve and protect human life and safety." Your assertion that I do not have the authority to pay some FLSA workers their full pay, but do for others, is not supported by the Supreme Court ruling in *White.* I either have the authority to only pay minimum wage, or I do not.

In closing, I must reiterate that any attempted adjustments to the payroll system would result in payroll problems that would continue for months after a budget is enacted. I also am compelled, as the State's chief fiscal officer, to remind you that such a drastic cut in pay would cause huge fiscal harm to the families of more than 200,000 devoted civil servants. The loss of spending dollars will increase the loss in consumer

confidence, and further deteriorate California's fragile economy. The *Sacramento Bee* on Thursday published an article noting that the pay cuts to the 112,500 state workers in the region would cost the area $15 million a day.

For these many reasons, I have no intention of complying with the Order and encourage you to continue to work with the Legislature on passing a budget and with my office to ensure we have sufficient funds to meet the State's financial obligations and pay for the education, health and public safety programs Californians expect and deserve.

Sincerely,

*Original signed by:*

JOHN CHIANG
California State Controller

1  K. WILLIAM CURTIS
   Chief Counsel, Bar No. 095753
2  WARREN C. STRACENER
   Deputy Chief Counsel, Bar No. 127921
3  LINDA A. MAYHEW
   Assistant Chief Counsel, Bar No. 155049
4  CHRISTOPHER E. THOMAS
   Labor Relations Counsel, Bar No. 186075
5  Department of Personnel Administration
   State of California
6  1515 S Street, North Building, Suite 400
   Sacramento, CA 95811-7258
7  Telephone: (916) 324-0512
   Facsimile: (916) 323-4723
8
   Attorneys for Petitioner, DAVID A. GILB, as Director of the
9  California Department of Personnel Administration and the
   Department of Personnel Administration
10

FILED/ENDORSED

AUG 1 8 2008

By: A. MACIAS
DEPUTY CLERK

11             SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                      COUNTY OF SACRAMENTO

13
   DAVID GILB, CALIFORNIA DEPARTMENT )   Case No. 34-200-80000026-CU-WM-GDS
14 OF PERSONNEL ADMINISTRATION,       )
                                      )   **AMENDED PROOF OF SERVICE**
15        Petitioners/Plaintiffs,     )
                                      )   Date:
16 v.                                 )   Time:
                                      )   Dept:        29
17 JOHN CHIANG, sued herein in his official )  Trial Date:   None
   capacity only, OFFICE OF STATE     )
18 CONTROLLER,                        )   **Exempt from Fees**
                                      )   **(Gov. Code § 6103)**
19        Respondents/Defendants.     )
                                      )
20                                    )
                                      )
21 _____)

22

23

24

25

26

27

28

                              -1-
   _____
   Proof of Service

CASE NAME: **_Gilb, et. al. v. Chiang et. al._**
CASE NUMBER: 34-200-80000026-CU-WM-GDS

I, LISETTE OLIVAR, declare:

I am employed in the County of Sacramento, California. I am over the age of 18 years, and not a party to the within action. My business address is 1515 S Street, North Building Suite 400, Sacramento, California 95811-7258. I am readily familiar with my employer's business practice for collection and processing of correspondence for GSO, U.S. Mail, Fax Transmission and/or Personal Service.

On August 18, 2008, I caused the following documents to be served:

1. **AMENDED EX PARTE APPLICATION FOR AN ORDER SHORTENING TIME TO HEAR PETITION FOR WRIT OF MANDATE (CCP § 1085) WITH ATTACHMENT**

2. **ORDER SHORTENING NOTICE OF HEARING ON PETITION FOR WRIT OF MANDATE (CCP § 1085); COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

on the parties listed as follows:

<u>XXXX</u>          via personal service by a representative of Capitol Couriers, Inc.

| | |
|---|---|
| The Honorable John Chiang, California State Controller | Office of the Attorney General |
| 300 Capitol Mall, Suite 1850 | 1300 I Street, Suite 1101 |
| Sacramento, CA 95814 | Sacramento, CA 95814 |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on August 18, 2008, at Sacramento, California.

_____
LISETTE OLIVAR

-2-

GERALD JAMES - State Bar #179258
JOSHUA P. GOLKA - State Bar #236344
660 J Street, Suite 445
Sacramento, CA 95814
Telephone: (916) 446-0400
Facsimile: (916) 446-0489

Attorney for Proposed Intervenors:
California Association of Professional
Scientists; Professional Engineers in
California Government

FILED/ENDORSED

AUG 1 8 2008

By: _____ T CALAUSTRO
Deputy Clerk

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| DAVID A. GILB; CALIFORNIA DEPARTMENT OF PERSONNEL ADMINISTRATION<br><br>        Petitioners/Plaintiffs,<br><br>    v.<br><br>JOHN CHIANG, sued herein in his official capacity only; OFFICE OF STATE CONTROLLER<br><br>        Respondents/Defendants. | CASE NO. 34-2008-80000026<br><br>**PROOF OF SERVICE BY PERSONAL DELIVERY** |

     I declare that I am employed in the County of Sacramento, California. I am over the age

of 18 years and not a party to the within entitled cause. The address of my business is 660 J

Street, Suite 445, Sacramento, California, 95814.

1

On August 15 2008, I served the following documents:

**EX PARTE APPLICATION FOR LEAVE TO INTERVENE IN ACTION;**

**MEMORANDUM OF POINTS AND AUTHORITIES; AND PROPOSED**

**COMPLAINT IN INTERVENTION**

on the parties listed below by delivering a true copy thereof to the following persons:

K. William Curtis
Chief Counsel
Department of Personnel Administration
1515 S Street, North Bldg., Ste. 400
Sacramento, CA 95811-7246
*Attorney for Plaintiff/Petitioners David Gib and Department of Personnel Administration*

Richard Chivaro
Chief Counsel
Office of the State Controller
300 Capitol Mall, Suite 1850
Sacramento, CA 95814
*Attorney for Defendant/Respondent John Chiang and Office of the State Controller*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on August 18, 2008 at Sacramento, California.

Elizabeth Cantu

2

ORIGINAL
FILED/ENDORSED

AUG 1 8 2008

By: _____T CALAUSTRO_____
Deputy Clerk

1  PAUL E. HARRIS, III, Chief Counsel (State Bar No. 180265)
   ANNE M. GIESE (State Bar No. 143934)
2  BROOKE D. PIERMAN (State Bar No. 222630)
   1808 14ᵗʰ Street
3  Sacramento, CA 95811
   Telephone: (916) 554-1279
4  Facsimile: (916) 554-1292

5  Attorneys for Intervenors YVONNE WALKER, PAMELA HANDEL,
   TAMEKIA ROBINSON, KATHLEEN PHILLIPS and
6  SERVICE EMPLOYEES INTERNATIONAL UNION, Local 1000

7

8            SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF SACRAMENTO

10

11  DAVID A, GILB; CALIFORNIA              CASE NO.  34-2008-80000026
    DEPARTMENT OF PERSONNEL
12  ADMINISTRATION,                        **EX PARTE APPLICATION FOR**
                                           **LEAVE TO INTERVENE (CCP §**
13          Petitioners/Plaintiffs,        **387); MEMORANDUM OF POINTS**
                                           **AND AUTHORITIES IN SUPPORT**
14  v.                                     **OF VERIFIED PETITION AND**
                                           **COMPLAINT IN INTERVENTION**
15  JOHN CHIANG, sued herein in his official
    capacity only; OFFICE OF STATE
16  CONTROLLER,                            Date:

17          Respondents/Defendants.        Time:
    _____/
18                                         Judge:  Hon. Timothy M. Frawley
    YVONNE WALKER; PAMELA HANDEL;
19  TAMEKIA ROBINSON; KATHLEEN             Department:  29
    PHILLIPS; SERVICE EMPLOYEES
20  INTERNATIONAL UNION, LOCAL 1000,       Trial Date:

21          Intervenors.
    _____/
22

23                    I.    **APPLICATION**

24          Intervenors hereby apply for an order granting leave to intervene in the above-entitled

25  action as authorized by Section 387(a) of the Code of Civil Procedure.

26          This Application is being made on the ground that Intervenors Yvonne Walker

27  ("Walker"), Pamela Handel ("Handel"), Tamekia Robinson ("Robinson"), and Kathleen Phillips

28  ("Phillips") are state workers directly affected by the improper application of law which is being

                                          1
              EX PARTE APPLICATION FOR LEAVE TO INTERVENE

1    asserted in the above-captioned litigation and have a direct and immediate interest in the

2    litigation and the resolution of the rights therein being challenged. Further, Intervenor Service

3    Employees International Union, Local 1000 ("Local 1000") is the exclusive representative of

4    state workers in nine state bargaining units who number in excess of ninety-five thousand

5    (95,000). These state employees each have an individual interest in the matter in litigation but

6    cannot practically enforce their rights in this litigation absent representation by Local 1000.

7        This Application is based on the declarations, memorandum of points and authorities and

8    the proposed petition and complaint in intervention presented with this Application. A true and

9    correct copy of the Proposed Verified Petition and Complaint in Intervention is attached hereto as

10    "Exhibit D" and incorporated herein as though fully set forth.

11                     **II.**    **INTRODUCTION**

12        Intervenors hereby submit this Application to Intervene in the above-captioned claim

13    filed on August 13, 2008. This timely application is made pursuant to Code Civil Procedure

14    section 387. Proposed Intervenors Walker, Handel, Robinson, Phillips, and Local 1000

15    respectfully request that their application be granted.

16                  **III.**    **STATEMENT OF FACTS**

17        The above-captioned action was commenced by Petitioners/Plaintiffs David A. Gilb

18    ("Gilb") and the California Department of Personnel Administration ("DPA") against

19    Respondents/Defendants John Chiang ("Controller") and the Office of State Controller on

20    August 11, 2008, seeking a writ of mandate and requesting declaratory and injunctive relief.

21    Petitioners/Plaintiffs seek a writ of mandate to compel the Controller to refrain from violating

22    state law by paying state employees in a manner inconsistent with the California Supreme Court

23    decision *White v. Davis*, (2003) 133 Cal.Rptr.2d 648, 30 Cal.4th 528, and DPA Pay Letter 08-23.

24        On July 31, 2008, Governor Arnold Schwarzenegger ("Governor") issued Executive

25    Order S-09-08. The Executive Order requires the Controller to issue pay warrants to those

26    nonexempt FLSA state employees who did not work any overtime at the rate of federal minimum

27    wage. The Executive Order further directed DPA to "work with" the Controller to implement a

28    payroll system to pay federal minimum wage to those specified state employees. Shortly

1 | thereafter, DPA issued Pay Letter 08-23 which implements the payroll requirements set forth in

2 | the Executive Order.

3 | ## IV. ARGUMENT

4 | **A. MANDATORY INTERVENTION IS WARRANTED WHERE THE PLAINTIFF IN INTERVENTION PROTECTS AN ENDANGERED**
5 | **INTEREST IN THE SUBJECT MATTER WHICH INTEREST OTHER PARTIES DO NOT REPRESENT**

6 |

7 | Code of Civil Procedure section 387, subdivision (b) provides as follows:

8 | If the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that
9 | person is so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect
10 | that interest, unless that person's interest is adequately represented by existing parties, the court shall, upon timely application, permit
11 | that person to intervene.

12 | Where a plaintiff in intervention was able to show that "Disposition of the action [in that

13 | party's] absence could impair its ability to protect its interests in the subject matter of the action"

14 | the Fourth District Court of Appeals ruled that the requirements of Code of Civil Procedure

15 | section 387, subdivision (b) were met. (*Redevelopment Agency of the City of San Marcos v.*

16 | *Commission on State Mandates* (1996) 51 Cal.Rptr.2d 100, 105, 43 Cal.App.4th 1188, 1198.)

17 | The principal subject matter of this litigation are payments of wages by

18 | Petitioners/Plaintiffs to the named Intervenors and tens of thousands of similarly situated state

19 | employees for whom Local 1000 is the certified representative. (Verified Petition and Complaint

20 | for Intervention ("Complaint") at ¶ 1.) A disposition of this litigation that results in violations of

21 | the constitution and/or the Fair Labor Standards Act ("FLSA") leading to the nonpayment of

22 | wages to state employees would have an obviously grievous and tragic impact on their lives and

23 | upon Local 1000's ability to carry out its responsibility on their behalf.

24 | Indeed, the disposition of this litigation may result in the named Intervenors, and

25 | thousands of state employees not receiving their full salary, or any salary at all, for an unknown

26 | period of time. Intervenor Handel is a seventeen year state employee who works as a Resource

27 | Specialist (Teacher - Special Education) at the Department of Corrections and Rehabilitation,

28 | Department of Juvenile Justice. (Declaration of Pamela Hornbeck Handel, ¶¶ 4-6 attached hereto

3

as "Exhibit A" and incorporated herein as though fully set forth.) Under DPA's unconstitutional and unlawful pay letter, Handel's regular salary will be reduced to zero. (Declaration of Handel, ¶ 9 attached hereto as "Exhibit A.") As a result, Handel will be unable to pay her mortgage, and contribute financially to her mother's need for food, clothing, medical care, and housing. (Declaration of Handel, ¶ 12 attached hereto as "Exhibit A.")

Intervenor Robinson is a seven year state employee who works as a Tax Technician II for the Board of Equalization. (Declaration of Tamekia Nicole Robinson, ¶¶ 4-6 attached hereto as "Exhibit B" and incorporated herein as though fully set forth.) As a result of this litigation, Robinson's pay will be reduced to the federal minimum wage, or $6.55 an hour, before deductions for taxes, health care premiums and pension contributions are made. (Declaration of Robinson, ¶ 9 attached hereto as "Exhibit B.") This change in pay will effectively cut her monthly income in half. As a result, Robinson will not be able to make her monthly rent payment and may face eviction. (Declaration of Robinson, ¶ 11 attached hereto as "Exhibit B.") In order to pay for the necessities of life, Robinson will need to use her consumer credit cards thereby incurring additional debt in interest. Robinson may also be forced to default on her student loan. (*Id.*)

Intervenor Phillips is a nine year state employee that works as a Registered Nurse, Nurse Evaluator II, for the Department of Health Care Services. (Declaration of Kathleen Marie Phillips, ¶¶ 4-6 attached hereto as "Exhibit C" and incorporated herein as though fully set forth.) Due to DPA's unconstitutional and unlawful pay letter, Phillips' pay will be also reduced to the federal minimum wage. (Declaration of Phillips, ¶ 9 attached hereto as Exhibit C.) Phillips will suffer a drastic reduction in her monthly income from $4,200 per month to less than $1,048 per month. (Declaration of Phillips, ¶ 10 attached hereto as "Exhibit C.") Phillips is the sole source of financial support for her immediate family and is responsible for contributing financially to the care, housing, and feeding of her elderly parents, both of whom have chronic health conditions. (Declaration of Phillips, ¶ 11 attached hereto as "Exhibit C.") As a result of this litigation, Phillips will be unable to pay her mortgage, and pay for the necessities of life for herself and her family. (Declaration of Phillips, ¶ 12 attached hereto as "Exhibit C.")

4

The declarations of Handel, Robinson, and Phillips make clear that the Intervenors have a vital interest in the outcome of this litigation and therefore are entitled to mandatory intervention. Because the named Intervenors and Local 1000 can show that the disposition of this litigation in the absence of the Intervenors "could impair [their] ability to protect [their] interests in the subject matter of the action" (*City of San Marcos, supra.*) the conditions for mandatory intervention are met.

**B.    ALTERNATIVELY, CODE OF CIVIL PROCEDURE SECTION 387(a) PERMITS THE INTERVENTION SOUGHT HERE**

Code of Civil Procedure section 387(a) provides, in relevant part:

> Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding. . .

For the same reasons argued above, Local 1000 and the named Intervenors have an interest in the constitutional application of the law relating to the timely payment of wages to named Intervenors and the tens of thousands of similarly situated state employees, even during this period of budget impasse.

In addition, Local 1000 and named Intervenors have a unique interest in the subject matter which no other party can be relied upon to protect. Petitioners/Plaintiffs are clearly oblivious to or desirous of the dire tragic economic consequences of their constitutional violations, their arbitrary and capricious application of the FLSA, and their impairment of wage benefits to named Intervenors and their fellow Local 1000 represented co-workers. Respondents/Defendants may seek a resolution of this lawsuit which could seriously harm the constitutional and statutory rights of named Intervenors and Local 1000 represented state employees. Therefore, should the Court determine that Intervenors fail to comply with the requirements for mandatory intervention, Local 1000 and named Intervenors should nonetheless be granted leave by the Court to protect their fundamental interests. (Code Civ. Proc. § 387(a).)

Moreover, it cannot be disputed that one of the main purposes of intervention is to prevent multiple actions. (*People v. Superior Court of Ventura County* (1976) 17 Cal.3d 732, 131 Cal.Rptr. 800.) The unconstitutional and unlawful application of the Executive Order and

5

DPA's pay letter affects thousands of state workers. Each of these state workers has an individual claim, and could potentially bring suit to enforce their constitutional and statutory rights. It is therefore essential in the present case to grant intervention to avoid multiple actions.

Because of the vital interests at stake for state employees, and because Local 1000 represents the largest portion of state employees, Local 1000 is obligated to pursue a just disposition of this controversy on behalf of its members. Consequently, if intervention is denied, Local 1000 intends to pursue separate actions to assert the rights of state workers in relation to the unconstitutional actions of Petitioners/Plaintiffs being put forward in the above-captioned litigation. Local 1000 has already filed two other actions which resulted from the Governor's unconstitutional and unlawful Executive Order. The first of those actions is *Yvonne Walker, and Service Employees International Union, Local 1000 v. Schwarzenegger, et al.,* Sacramento Superior Court, Case No. 34-2008-800000013-CU-WM-GDS. The second action filed is *Yvonne Walker, and Service Employees International Union, Local 1000 v. Schwarzenegger, et al.,* Sacramento Superior Court, Case No. 34-2008-800000018-CU-WM-GDS. The Court is currently determining the appropriateness of assigning these actions to a single judge or consolidation before a single judge. Given the enormous potential for the multiplicity of lawsuits, Intervenors should be granted intervention in the present litigation.

**C.  INTERVENOR SEIU LOCAL 1000 HAS AN INTEREST IN THE SUBJECT MATTER OF THE ACTION**

Local 1000 has a statutory right to represent its members under the Dills Act (Gov. Code § 3512, et seq.) which provides that employee organizations have the right to represent their members in their employment relations with the State of California.

Local 1000's interest in wages, hours, and conditions of employment supports standing under *Brotherhood of Teamsters & Auto Truck Drivers v. Unemployment Insurance Appeals Board,* (1987) 256 Cal.Rptr. 78, 190 Cal.App.3d 1515. The interests Local 1000 asserts relates to employer-employee relations and the constitutional rights of state workers. Like the claim asserted in *Teamsters,* the claim asserted here does not require the court to consider the individual circumstances of the aggrieved member. It is a question of law whether

6

1  Petitioners/Plaintiffs improperly violated constitutional mandates.

2      The California Supreme Court has long recognized that labor unions such as Local 1000

3  have standing to sue in their own name to enforce the rights of employees they represent.

4  (*Professional Fire Fighters, Inc. v. City of Los Angeles* (1963) 32 Cal.Rptr. 830, 60 Cal.2d 276;

5  *Social Workers' Union Local 535 v. Alameda County Welfare Department* (1974) 113 Cal.Rptr.

6  461, 11 Cal.3d 382; *Long Beach City Employees Association v. City of Long Beach, et al.* (1986)

7  227 Cal.Rptr. 90, 41 Cal.3d 937; *Glendale City Employees' Association v. City of Glendale*

8  (1975) 124 Cal.Rptr. 513, 15 Cal.3d 328.) Pursuant to this authority and *Teamsters,* Local 1000

9  has standing to petition for a writ of mandate on behalf its members.

10      In the instant matter, it is incontestable that the members of Local 1000 are interested in

11  the pending litigation. As state employees they are undeniably concerned that Petitioners/

12  Plaintiffs uphold and enforce the laws and authority of the state in a constitutionally permissible

13  manner. The DPA is given statutory authority to uphold and enforce the state civil service laws

14  particularly in regards to orders - such as pay letters - affecting the timely payment of wages. It is

15  however, incumbent upon Petitioners/Plaintiffs to act in a constitutionally permissible manner.

16  To do less jeopardizes the foundation of civil service law. Instead, with the Petitioners/Plaintiffs

17  implementation of the pay letter, they have caused the waiver of numerous constitutional and

18  statutory protections which directly impacts the named Intervenors and thousands of Local 1000

19  members.

20      The underlying action was filed on August 11, 2008, therefore, there is nothing untimely

21  about this application. Courts have also recognized that organizations which represent those

22  persons affected by litigation, satisfy requirements for intervention. (*Bustop v. Superior Court*

23  *for Los Angeles County* (1977) 137 Cal.Rptr. 793, 69 Cal.App.3d 66.)

24  ///

25  ///

26  ////

27  ///

28  ///

## V. __CONCLUSION__

For all the foregoing reasons, Intervenors respectfully request that their application be granted.

Respectfully submitted,

DATED: August 18, 2008

SEIU LOCAL 1000

By _____
BROOKE D. PIERMAN
Attorneys for Intervenors
YVONNE WALKER, PAMELA HANDEL,
TAMEKIA ROBINSON, KATHLEEN
PHILLIPS, and SERVICE EMPLOYEES
INTERNATIONAL
UNION, Local 1000

# EXHIBIT A

I, Pamela Hornbeck Handel, do declare and say:

1.    I make this declaration on the basis of my own personal knowledge and if called to testify to the facts stated herein, I am competent to do so.

2.    I am a member of SEIU Local 1000.

3.    I am a part of Bargaining Unit 03.

4.    I am employed by the State of California as a Resource Specialist (Teacher - Special Education).

5.    I am employed in this position at the Department of Corrections and Rehabilitation, Department of Juvenile Justice.

6.    I have worked for the State of California for more than seventeen (17) years.

7.    My current rate of pay, net of deductions is approximately $4,800 per month.

8.    My job classification is categorized as Work Week Group SE by the Department of Personnel Administration. As a result, I am treated as exempt from the minimum wage provisions of the Fair Labor Standards Act.

9.    If the Department of Personnel Administration succeeds in compelling the State Controller to pay state employees according to its interpretation of the requirements of the Fair Labor Standards Act, my pay will be reduced to zero and I will receive nothing in exchange for the work that I perform for the State of California.

10.    My fixed monthly expenditures total $3,935 each month, including, a mortgage payment, insurance, property taxes, food, utilities, transportation, contributions toward my elderly mother's living expenses and credit card payments.

11.    I am responsible for contributing financially to the care, housing and feeding of my elderly mother who is seventy-five (75) years old.

12.    An outright elimination of my monthly income of $4,800 per month will have significant and long term negative impacts on my life and my ability to provide the necessities of life for myself and my family. Specifically, the elimination of my monthly income will result in my inability to pay my mortgage on my primary residence. I am informed and believe and on that basis allege that should I miss more than one monthly payment on the mortgage, the

lienholder will initiate default and foreclosure proceedings against me. If my home is foreclosed upon, my family and I will have no place to live. In addition, I will be unable to contribute financially to my mother's need for food, clothing, medical care and housing.

13. Even if the State eventually reimburses me for the monthly pay I will forego if the Department of Personnel Administration is successful in its attempt to force the State Controller to pay me nothing during the period in which there is no budget, I will have suffered irreparable injury. My home may well be foreclosed upon, leaving me and my family without a place to live. In the absence of my financial contribution, my elderly mother may be left destitute.

I declare under penalty of perjury and under the laws of the State of California that the foregoing is true and correct, the facts stated herein are within my personal knowledge, and that if called to testify I would make the same statements under oath that are set forth above.

Executed this 13th day of August, 2008, at Sacramento, California.

PAMELA HORNBECK HANDEL

2.

# EXHIBIT B

I, Tamekia Nicole Robinson, do declare and say:

1.     I make this declaration on the basis of my own personal knowledge and if called to testify to the facts stated herein, I am competent to do so.

2.     I am a member of SEIU Local 1000.

3.     I am a part of Bargaining Unit 04.

4.     I am employed by the State of California as a Tax Technician II.

5.     I am employed in this position at the California Board of Equalization.

6.     I have worked for the State of California for a total of seven (7) years.

7.     My current rate of pay, net of deductions is $2,100 per month.

8.     My job classification is categorized as Work Week Group 2 by the Department of Personnel Administration. As a result, I am treated as non-exempt from the minimum wage provisions of the Fair Labor Standards Act.

9.     If the Department of Personnel Administration succeeds in compelling the State Controller to pay state employees according to its interpretation of the requirements of the Fair Labor Standards Act, my pay will be reduced to $6.55 per hour or $1,048 per month, before deductions for taxes, health care premiums and pension contributions are made.

10.     My fixed monthly expenditures total $1,885 each month, including, rent, car payments, insurance, food, utilities, transportation, student loans and credit card payments.

11.     A reduction in my monthly income from $2,100 per month to less than $1,048 per month will have significant and long term negative impacts on my life and my ability to provide the necessities of life for myself. Specifically, this drastic reduction in my monthly income will result in my inability to pay my rental payment on my primary residence. I am informed and believe and on that basis allege that should I miss more than one monthly rental payment on the property, the landlord will initiate eviction proceedings against me. If I am evicted from my home, I will have no place to live.

12.     A reduction in my monthly income from $2,100 per month to less than $1,048 per month will have significant and long term negative impacts on my life and my ability to provide the necessities of life for myself. I have very little savings set aside and, as a result, I will be

1.

forced to use my consumer credit cards to pay for the necessities of life. I estimate that I will be unable to pay my car payment or basic utility bills. I will be unable to transport myself to and from my place of employment. After that, I will be wholly without means to provide for myself. I will also be forced to default on my student loan, resulting in additional damage to my credit rating and my ability to obtain consumer credit.

13. Even if the State eventually reimburses me for the difference between my regular monthly pay and the amount the Department of Personnel Administration is attempting to force the State Controller to pay me, I will have suffered irreparable injury. I may well be evicted from my home and the drastic reduction in income will result in my inability to pay even minimum required payments on my student loan. If I am unable to make these payments, my credit score will be negatively affected and will likely result in several consumer loans issued in my name adjusting to a higher interest rate. Should this occur, I will be forced to default on these obligations.

I declare under penalty of perjury and under the laws of the State of California that the foregoing is true and correct, the facts stated herein are within my personal knowledge, and that if called to testify I would make the same statements under oath that are set forth above.

Executed this ____ day of August, 2008, at Sacramento, California.

TAMEKIA NICOLE ROBINSON

2.

# EXHIBIT C

I, Kathleen Marie Phillips, do declare and say:

1. I make this declaration on the basis of my own personal knowledge and if called to testify to the facts stated herein, I am competent to do so.

2. I am a member of SEIU Local 1000.

3. I am a part of Bargaining Unit 17.

4. I am employed by the State of California as a Registered Nurse, Nurse Evaluator II.

5. I am employed in this position at the Department of Health Care Services.

6. I have worked for the State of California for more than nine (9) years.

7. My current rate of pay, net of deductions is approximately $4,200 per month.

8. My job classification is categorized as Work Week Group 2 by the Department of Personnel Administration. As a result, I am treated as non-exempt from the minimum wage provisions of the Fair Labor Standards Act.

9. If the Department of Personnel Administration succeeds in compelling the State Controller to pay state employees according to its interpretation of the requirements of the Fair Labor Standards Act, my pay will be reduced to $6.55 per hour or $1,048 per month, before deductions for taxes, health care premiums and pension contributions are made.

10. My fixed monthly expenditures total $4,022 each month, including, a first and second mortgage payment, insurance, property taxes, food, utilities, transportation, my husband's college tuition, contributions toward my parents' living expenses and credit card payments.

11. I am the sole source of financial support for my immediate family and I am responsible for contributing financially to the care, housing and feeding of my elderly parents, both of whom suffer from chronic health conditions. My father, a stroke survivor is eighty-seven (87) years old and my mother, who has terminal cancer, is seventy-six (76) years old.

12. A reduction in my monthly income from $4,200 per month to less than $1,048 per month will have significant and long term negative impacts on my life and my ability to provide the necessities of life for myself and my family. Specifically, this drastic reduction in my monthly income will result in my inability to pay my mortgage on my primary residence. I am

1.

informed and believe and on that basis allege that should I miss more than one monthly payment on the mortgage, the lienholder will initiate default and foreclosure proceedings against me. If my home is foreclosed upon, my family and I will have no place to live. In addition, I will be unable to pay my husband's college tuition and I will no longer be able to contribute financially to my parents' need for food, clothing, medical care and housing.

13. Even if the State eventually reimburses me for the difference between my regular monthly pay and the amount the Department of Personnel Administration is attempting to force the State Controller to pay me, I will have suffered irreparable injury. My home may well be foreclosed upon, leaving me and my family without a place to live. In the absence of my financial contribution, my elderly and infirm parents may be left destitute.

I declare under penalty of perjury and under the laws of the State of California that the foregoing is true and correct, the facts stated herein are within my personal knowledge, and that if called to testify I would make the same statements under oath that are set forth above.

Executed this _13_ day of August, 2008, at Sacramento, California.

KATHLEEN MARIE PHILLIPS

2.

**EXHIBIT D**

1  PAUL E. HARRIS, III, Chief Counsel (State Bar No. 180265)
   ANNE M. GIESE (State Bar No. 143934)
2  BROOKE D. PIERMAN (State Bar No. 222630)
   1808 14th Street
3  Sacramento, CA 95811
   Telephone: (916) 554-1279
4  Facsimile: (916) 554-1292

5  Attorneys for Intervenors YVONNE WALKER, PAMELA HANDEL,
   TAMEKIA ROBINSON, KATHLEEN PHILLIPS and
6  SERVICE EMPLOYEES INTERNATIONAL UNION, Local 1000

7

8              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                  IN AND FOR THE COUNTY OF SACRAMENTO

10

11  DAVID A. GILB; CALIFORNIA            CASE NO.  34-2008-80000026
    DEPARTMENT OF PERSONNEL
12  ADMINISTRATION,                      **[PROPOSED] VERIFIED PETITION
                                         AND COMPLAINT IN
13           Petitioners/Plaintiffs,     INTERVENTION**

14  v.
                                         Date:
15  JOHN CHIANG, sued herein in his official
    capacity only; OFFICE OF STATE       Time:
16  CONTROLLER,
                                         Judge:    Hon. Timothy M. Frawley
17           Respondents/Defendants.
    _____/    Department:  29
18
    YVONNE WALKER; PAMELA HANDEL;        Trial Date:
19  TAMEKIA ROBINSON; KATHLEEN
    PHILLIPS; SERVICE EMPLOYEES
20  INTERNATIONAL UNION, LOCAL 1000,

21           Intervenors.
    _____/
22

23        By leave of Court, Yvonne Walker ("Walker"), Pamela Handel ("Handel"), Tamekia

24  Robinson ("Robinson"), Kathleen Phillips ("Phillips"), and Service Employees International

25  Union, Local 1000 ("Local 1000") (collectively "Intervenors") hereby intervene in this action and

26  join with Respondents/Defendants in resisting the claims of the Petitioners/Plaintiffs, and do by

27  this verified petition and complaint state demands adverse to Petitioners/Plaintiffs and which

28  may, based on their asserted defenses, be adverse to Respondents/Defendants.

                                         1

**INTERVENORS ALLEGE AS FOLLOWS:**

1.      This action was commenced by Petitioners/Plaintiffs, David A. Gilb ("Gilb"), and the California Department of Personnel Administration ("DPA") against Respondents/ Defendants John Chiang ("Controller") and the Office of State Controller on August 11, 2008, seeking a writ of mandate and requesting declaratory and injunctive relief. Petitioners/Plaintiffs seek a writ of mandate compelling the Controller to refrain from violating state law by paying state employees in a manner inconsistent with the California Supreme Court decision of *White v. Davis*, (2003) 133 Cal.Rptr.2d 648, 30 Cal.4th 528, and DPA Pay Letter 08-23.

2.      On information and belief, Intervenors allege that Respondents/Defendants have not yet appeared in this action by filing a responsive pleading.

3.      Intervenors, Yvonne Walker, Pamela Handel, Tamekia Robinson, Kathleen Phillips, and Service Employees International Union, Local 1000, claim an interest in the matter in litigation as follows by reason of which intervention is proper under Code of Civil Procedure section 387. Intervenors, Walker, Handel, Robinson, and Phillips, are state employees who are entitled to timely payment of wages in cash or its equivalent. Intervenors, Walker, Handel, Robinson, and Phillips, are also beneficially interested in ensuring the appropriate and timely payment of wages to state employees and the constitutional application of the law as it applies to their pay and that of similarly situated state employees. Further, they have a direct interest in the proper application and interpretation of *White v. Davis* in a manner which upholds their constitutional rights and is not applied arbitrarily and capriciously. Intervenor, Local 1000, claims an interest in that it is entitled to represent its members concerning their wages, hours and working conditions. Intervenor, Local 1000, is therefore beneficially interested in ensuring the appropriate and timely payment of wages to its state employee members. The writ of mandate filed by Petitioners/Plaintiffs requests that the Controller change the manner in which state employees are currently paid, which directly impacts the wages, hours and working conditions of Intervenors Walker, Handel, Robinson and Phillips, as well as members represented by Intervenor Local 1000.

///

**PARTIES**

4.    Petitioner/Plaintiff, DAVID A. GILB, is the Director of the California Department of Personnel Administration and therefore an agent of the State of California. Gilb is charged with administering and enforcing the laws pertaining to personnel, and to perform such other duties as may be prescribed by law.

5.    Petitioner/Plaintiff, CALIFORNIA DEPARTMENT OF PERSONNEL ADMINISTRATION, is a department or agency of the State of California. DPA is the State agency responsible for administering, overseeing, and reviewing labor relations and personnel matters for State departments. DPA is, therefore, responsible for ensuring that State departments comply with relevant labor laws, statutes, and regulations.

6.    Respondent/Defendant, JOHN CHIANG, is the elected Controller of the State of California. Chiang is the head of the Office of the Controller. Chiang is a state constitutional officer and is given constitutional authority to draw warrants for the expenditure of state funds.

7.    Intervenor, YVONNE WALKER, is a nonexempt permanent state employee currently employed by the Department of Justice in the classification of Legal Secretary. Walker receives a monthly pay check from the State of California for the services she renders. Walker is a member of Local 1000. Walker is a member of Bargaining Unit 4. Walker is also a taxpayer of the State of California. Walker has been assessed for and is liable to pay tax to the State of California within the last year. Walker is a resident of Sacramento County. Walker is, as a result, beneficially interested in ensuring the appropriate and timely payment of wages to state employees.

8.    Intervenor, PAMELA HANDEL, is an exempt permanent state employee currently employed by the Department of Corrections and Rehabilitation, Department of Juvenile Justice in the classification of Resource Specialist (Teacher - Special Education). Handel receives a monthly pay check from the State of California for the services she renders. Handel is a member of Local 1000. Handel is a member of Bargaining Unit 3. Handel is also a taxpayer of the State of California. Handel has been assessed for and is liable to pay tax to the State of California within the last year. Handel is, as a result, beneficially interested in ensuring the

3

1 | appropriate and timely payment of wages to state employees.

2 | 9. Intervenor, TAMEKIA ROBINSON, is a nonexempt permanent state employee
3 | currently employed by the Board of Equalization in the classification of Tax Technician II.
4 | Robinson receives a monthly pay check from the State of California for the services she renders.
5 | Robinson is a member of Local 1000. Robinson is a member of Bargaining Unit 4. Robinson is
6 | also a taxpayer of the State of California. Robinson has been assessed for and is liable to pay tax
7 | to the State of California within the last year. Robinson is, as a result, beneficially interested in
8 | ensuring the appropriate and timely payment of wages to state employees.

9 | 10. Intervenor, KATHLEEN PHILLIPS, is a nonexempt permanent state employee
10 | currently employed by the Department of Health Care Services in the classification of Registered
11 | Nurse, Nurse Evaluator II. Phillips receives a monthly pay check from the State of California for
12 | the services she renders. Phillips is a member of Local 1000. Phillips is a member of Bargaining
13 | Unit 17. Phillips is also a taxpayer of the State of California. Phillips has been assessed for and
14 | is liable to pay tax to the State of California within the last year. Phillips is, as a result,
15 | beneficially interested in ensuring the appropriate and timely payment of wages to state
16 | employees.

17 | 11. Intervenor, SERVICE EMPLOYEES INTERNATIONAL UNION,
18 | LOCAL 1000, is a nonprofit mutual benefit corporation organized under the laws of the State of
19 | California with its principal office in Sacramento, California. Local 1000 is organized to
20 | represent employees of the State of California in participating collectively in the mutual
21 | formulation of wages, hours, working conditions and retirement benefits. Local 1000 is the
22 | certified exclusive representative of employees in State Bargaining Units 1, 3, 4, 11, 14, 15, 17,
23 | 20 and 21. Local 1000 negotiates collective bargaining contracts on behalf of employees in such
24 | bargaining units, represents such employees as to their terms and conditions of employment
25 | under the Dills Act, and receives dues and fair share fees from such employees. Local 1000
26 | represents the exempt and nonexempt civil service employees who work for the State of
27 | California and whose state or civil service employment is affected by Petitioners/Plaintiffs
28 | request that the Controller alter the manner in which state employees are paid. Local 1000 is, as

4

1 │ a result, beneficially interested in ensuring the appropriate and timely payment of wages to state

2 │ employees.

3 │ **VENUE**

4 │     12.    Respondents/Defendants engaged in all of the acts alleged herein within the

5 │ County of Sacramento.  Accordingly, venue in this County is proper.

6 │     13.    Furthermore, the California Attorney General has an office within the City of

7 │ Sacramento, making Sacramento County an appropriate venue.  (Code Civ. Proc. § 401(1).)

8 │ **FIRST CAUSE OF ACTION**

9 │ **PETITION FOR WRIT OF MANDATE**

10 │ (Separation of Powers and Duty to Uphold the Law)

11 │     14.    Intervenors incorporate by reference the allegations in paragraphs 1 through 13

12 │ hereof as if fully set forth in this Cause of Action.

13 │     15.    Article III, section 3 of the Constitution of the State of California states "The

14 │ powers of state government are legislative, executive, and judicial.  Persons charged with the

15 │ exercise of one power may not exercise either of the others except as permitted by this

16 │ Constitution."

17 │     16.    Article V, section 1 of the Constitution of the State of California states "The

18 │ supreme executive power of this State is vested in the Governor.  The Governor shall see that the

19 │ law is faithfully executed."

20 │     17.    Article V, section 11 of the Constitution of the State of California states in

21 │ relevant part "The Lieutenant Governor, Attorney General, Controller, Secretary of State, and

22 │ Treasurer shall be elected at the same time and place for the same term as the Governor."

23 │     18.    Article XVI, section 7 of the Constitution of the State of California states "Money

24 │ may be drawn from the Treasury only through an appropriation made by law and upon a

25 │ Controller's duly drawn warrant."

26 │     19.    The establishment of a public office in the state constitution impliedly grants

27 │ certain inherent powers and responsibilities.  (*Love v. Baehr* (1874) 47 Cal. 364, 367-368.)  The

28 │ constitutional requirement that a public officer be elected by the people reflects an intent to grant

5

1 autonomy to the officer in the performance of his or her duties. (*Brown v. Barkley* (Ky.1982)

2 628 S.W.2d 616.)

3       20.     The authority to supervise a public officer, such as the Controller, does not

4 include the power to direct the manner in which that public officer performs his or her duties.

5 (*People v. Brophy* (1942) 49 Cal.App.2d 15; *Pitts v. County of Kern* (1998) 70 Cal.Rptr.2d 823,

6 17 Cal.4th 340, 368; *Hicks v. Board of Supervisors* (1977) 138 Cal.Rptr. 101, 69 Cal.App.3d

7 228.)

8       21.     The Controller is empowered to exercise his authority independent of the

9 direction of the Governor. (*Madden v. Riley* (1942) 53 Cal.App.2d 814, 820-21; *Lukens v. Nye*

10 (1909) 156 Cal. 498, 504; *Tirapelle v. Davis* (1994) 26 Cal.Rptr.2d 666, 20 Cal.App.4th 1317,

11 1327.) The Legislature has defined the duties and functions of the Controller. (*Tirapelle*

12 *v. Davis* (1994) 26 Cal.Rptr.2d 666, 20 Cal.App.4th 1317, *see also,* Government Code §§ 12410

13 and 12440.)

14       22.     On or about July 31, 2008, Governor Arnold Schwarzenegger ("Governor") issued

15 Executive Order S-09-08. The Executive Order states in relevant part:

16             IT IS FURTHER ORDERED that the Director of the Department of
            Finance and the Director of the Department of Personnel Administration

17             shall work with the State Controller to develop and implement the
            necessary mechanisms, including but not limited to pay letters and

18             computer programs, to comply with the California Supreme Court's *White*
            *v. Davis* opinion to pay federal minimum wage to those nonexempt FLSA

19             employees who did not work any overtime.

20             IT IS FURTHER ORDERED that the necessary mechanisms to
            ensure compliance with the *White v. Davis* opinion must be in

21             place to be effective for the August 2008 payroll.

22       23.     This Executive Order violates the Constitution of the State of California,

23 including but not limited to, Article III, section 3, Article V, section 1, Article V, section 11, and

24 Article XVI, section 7. By ordering the Controller to issue pay warrants to specified state

25 employees at the rate of federal minimum wage, the Executive Order violates the Constitution of

26 the State of California. The Executive Order violates the doctrine of separation of powers and

27 the Governor's obligation to uphold the laws of the State because it infringes upon the

28 constitutional authority vested in the Controller.

1   24.    By issuing Pay Letter 08-23, DPA is acting pursuant to the Governor's Executive
2   Order which explicitly directs DPA to "work with" the Controller to implement a payroll system
3   to pay federal minimum wage to those nonexempt FLSA state employees who did not work any
4   overtime. Petitioners/Plaintiffs are therefore acting at the behest of the Governor to implement
5   his unconstitutional and unlawful Executive Order.

6   25.    Based on state constitutional and statutory provisions, the Controller is
7   empowered to exercise his authority independent of the direction of the Governor and DPA. The
8   Governor and DPA do not have constitutional or statutory authority to direct the Controller to
9   issue pay warrants pursuant to an unconstitutional and unlawful executive order.

10  26.    Petitioners/Plaintiffs have a mandatory obligation to uphold the laws of the
11  state, including the provisions of the constitution and the duties and functions of the Controller as
12  set forth by the Legislature. The Court's intervention is required to compel Petitioners/Plaintiffs
13  to comply with their mandatory and ministerial duties under these State laws. Intervenors have
14  no adequate administrative remedy in this matter and no adequate remedy at law to compel
15  Petitioners/Plaintiffs to fulfill their mandatory and ministerial duties.

16  27.    Intervenors are beneficially interested in this litigation in that the order sought by
17  this Petition is necessary to ensure that they have the opportunity to secure the rights and benefits
18  of the employees who are entitled to these statutory and constitutional protections. This has all
19  occurred in a manner which will result in continuing injury and irreparable harm to the exempt
20  and nonexempt state workers and civil servants employed. Therefore, pending determination on
21  the merits of this action, Intervenors seek temporary and preliminary injunctive relief directing
22  Petitioners/Plaintiffs to cease and desist from taking such illegal and unconstitutional action.

23  28.    These violations of mandatory duties cannot be compensated in damages; once the
24  right is violated, it will be lost. The loss of such rights cannot be compensated fully by damages
25  or other form of legal relief. Interim injunctive relief is therefore proper directing Petitioners/
26  Plaintiffs to cease and desist from failing to adhere to their mandatory duties. Intervenors lack
27  any plain, speedy and adequate remedy in the ordinary course of law to enforce Petitioners'/
28  Plaintiffs' mandatory duties under the Constitution and laws of the State of California.

1    29.    Intervenors have necessarily engaged the services of counsel to represent them in

2    the preparation and prosecution of the within action resulting from the conduct and threatened

3    conduct of Petitioners/Plaintiffs. The legal services rendered will thus inure to the benefit of all

4    persons employed in the state civil service and to all citizens and taxpayers of the State of

5    California. Such benefits will be derived in part through the efforts of Intervenors herein.

6    Therefore, Intervenors will, upon entry of final judgment, request the court in its discretion, to

7    award the reasonable value of Intervenors' counsel fees and other litigation expenses and to

8    assess the amount thereof against Petitioners/Plaintiffs, and each of them.

9                              **SECOND CAUSE OF ACTION**

10                            **PETITION FOR WRIT OF MANDATE**

11                               (Timely Payment of Wages)

12    30.    Intervenors incorporate by reference the allegations in paragraphs 1 through 29

13    hereof as if fully set forth in this Cause of Action.

14    31.    The Fair Labor Standards Act ("FLSA") requires that "(a) Every employer shall

15    pay to each of his employees who in any workweek and is...employed in an enterprise engaged in

16    commerce..., wages at the following rates: (1)...not less than [the current designated minimum

17    wage.]" (29 U.S.C. § 206.)

18    32.    The FLSA overtime compensation provision provides in relevant part:

19            (a)(1) Except as otherwise provided in this section, no employer
              shall employ any of his employees...for a workweek longer than
20            forty hours unless such employee receives compensation for his
              employment in excess of the hours above specified at a rate not
21            less than one and one-half times the regular rate at which he is
              employed. (29 U.S.C. § 207.)
22

23    33.    The FLSA, 29 U.S.C. § 201-19, sets forth the mandatory duty that employers pay

24    employees timely in cash or its equivalent. The State of California, including Plaintiffs/

25    Petitioners are an "employer" as that term is used in the FLSA and are, therefore, bound to

26    comply with this mandatory duty.

27    34.    The failure to issue paychecks promptly when due violates the FLSA. (*Biggs v.*

28    *Wilson*, 1 F.3d 1537 (1993).) During the 1990 state budget impasse, the state failed to pay

1 certain employees until 14-15 days after their payday. (*Id.*) This nonpayment violated 29 U.S.C.
2 § 206(b) which directs every employer to pay an employee's wage once the work is complete or
3 on pay day.

4     35.    The FLSA's implementing regulations require payment of statutory wages "in
5 cash or its equivalent." (29 U.S.C. 206, 207, 29 C.F.R. § 531.27.) In addition, these regulations
6 require payment of statutory wages "in cash or negotiable instrument payable at par" and "finally
7 and unconditionally or 'free and clear.'" (29 C.F.R. §531.27, 531.35.) Employers may not pay
8 these wages by scrip or other medium. (29 C.F.R. § 531.34.)

9     36.    In *White v. Davis*, the Court held that in order to comply with the FLSA, the state,
10 during a budget impasse, must timely pay nonexempt employees who do not work overtime at
11 least the minimum wage rate for all straight hours worked by the employee, and must timely pay
12 nonexempt employees who work overtime their full salary for all straight time worked plus one
13 and one-half times their regular rate of pay for overtime. (133 Cal.Rptr.2d 648, 688; 30 Cal.4th
14 528, 578.)

15     37.    The Court in *White v. Davis* did not address which state employees, or state
16 employee positions, are subject to the minimum wage and overtime compensation provisions of
17 the FLSA and which employees are exempt from such provisions. (133 Cal.Rptr.2d 648, 686; 30
18 Cal.4th 528, 575.)

19     38.    The Controller has claimed that it is infeasible or impossible to comply with the
20 directives contained in the Governor's Executive Order and DPA Pay Letter 08-23, and timely
21 pay only the minimum compensation required by the FLSA. The infeasibility and/or
22 impossibility is due in part to the difficulty of segregating those employees who will work
23 overtime from those that will not work overtime. The Controller has stated that within the
24 confines of the State's computerized payroll system, it is unable to make such immediate
25 adjustments in order to comply with the timely payment requirements of the FLSA. The
26 Controller has indicated that even if it is able to adjust payroll for the state workforce to the
27 federal minimum wage, after the budgetary impasse has passed, it would be infeasible and/or
28 impossible to promptly restore the unpaid wages in a manner consistent with the law.

1    39.    The Court in *White v. Davis* explicitly declined to resolve the issue of the

2    Controller's claim of infeasibility or impossibility. (133 Cal.Rptr.2d 648, 688; 30 Cal.4th 528,

3    578.)

4    40.    The above-captioned case filed by Petitioners/Plaintiffs requests an order

5    requiring the Controller to refrain from violating state law by paying state employees in a manner

6    inconsistent with *White v. Davis* and DPA Pay Letter 08-23. Such an order would require the

7    Controller to pay only the minimum compensation required by the FLSA for certain state

8    employees. Given the infeasibility and/or impossibility of implementing such an order, and the

9    infeasibility and/or impossibility of restoring the regular payroll system once the budgetary

10   impasse is resolved, the Intervenors' rights under the FLSA requiring the timely payment of

11   wages will likely be violated.

12   41.    Intervenors lack any plain, speedy and adequate remedy in the ordinary course of

13   law to enforce Petitioners'/Plaintiffs' mandatory duties under the FLSA. For the forgoing

14   reasons, Intervenors request that the Court issue a peremptory writ of mandate directing

15   Petitioners/Plaintiffs to cease and desist from violating the FLSA.

16   42.    The loss of such rights cannot be compensated fully by damages or other form of

17   legal relief. Therefore, pending determination on the merits of this action, Intervenors seek

18   temporary and preliminary injunctive relief directing Petitioners/Plaintiffs to cease and desist

19   from violating the FLSA.

20   43.    Intervenors have necessarily engaged the services of counsel to represent them in

21   the preparation and prosecution of the within action resulting from the conduct and threatened

22   conduct of Petitioners/Plaintiffs. The legal services rendered will thus inure to the benefit of all

23   persons employed in the state civil service and to all citizens and taxpayers of the State of

24   California. Such benefits will be derived in part through the efforts of Intervenors herein.

25   Therefore, Intervenors will, upon entry of final judgment, request the court in its discretion, to

26   award the reasonable value of Intervenors' counsel fees and other litigation expenses and to

27   assess the amount thereof against Petitioners/Plaintiffs, and each of them.

28   ///

## THIRD CAUSE OF ACTION

## PETITION FOR WRIT OF MANDATE

(Abuse of Discretion - Arbitrary and Capricious Conduct)

44. Intervenors incorporate by reference the allegations in paragraphs 1 through 43 hereof as if fully set forth in this Cause of Action.

45. The Executive Order provides in relevant part:

> IT IS FURTHER ORDERED that the Director of the Department of Finance shall establish an exemption process that Agency Secretaries shall utilize to determine if an exemption is justified based on critical services and functions, which may include either cost-reducing or revenue-producing services and functions that will help ensure that there is sufficient cash for the State to make its payments.

46. DPA Pay Letter 08-23 includes a list of state departments and programs not subject to the overtime prohibition in the Executive Order due to the alleged critical nature of the work performed by these departments and programs. DPA therefore excluded these departments and programs from their pay letter. The nonexempt state employees that are employed by departments and programs on this list will not be paid federal minimum wage, will not be prohibited from working overtime, and are expected to receive their full salary.

47. The decision in *White v. Davis* does not support Petitioners/Plaintiffs position that the Controller is required to pay some state workers covered by the FLSA their full pay, but that other state workers also covered by the FLSA must receive federal minimum wage. Indeed, *White v. Davis* does not contemplate the type of exemption process established by the Governor's Executive Order, and implemented by DPA Pay Letter 08-23.

48. By the acts described above, Petitioners/Plaintiffs have arbitrarily and capriciously applied the Executive Order, including the requirement to pay federal minimum wage, to Intervenors and other similarly situated state employees. Petitioners/Plaintiffs have abused their discretion by issuing a pay letter which arbitrarily and capriciously exempts certain state employees from the requirement of paying federal minimum wage. Plaintiffs/Petitioners have further abused their discretion by interpreting and/or applying *White v. Davis* in an arbitrary and capricious manner in a way which violates the rights of state employees.

11

1   49.    Intervenors lack any plain, speedy and adequate remedy in the ordinary course of

2   law to enforce Petitioners'/Plaintiffs' mandatory duties. For the forgoing reasons, Intervenors

3   request that the Court issue a peremptory writ of mandate directing Petitioners/Plaintiffs to cease

4   and desist from abusing their discretion by arbitrarily and capriciously applying their pay letter.

5   50.    The loss of such rights cannot be compensated fully by damages or other form of

6   legal relief. Therefore, pending determination on the merits of this action, Intervenors seek

7   temporary and preliminary injunctive relief directing Petitioners/Plaintiffs to cease and desist

8   from abusing their discretion.

9   51.    Intervenors have necessarily engaged the services of counsel to represent them in

10  the preparation and prosecution of the within action resulting from the conduct and threatened

11  conduct of Petitioners/Plaintiffs. The legal services rendered will thus inure to the benefit of all

12  persons employed in the state civil service and to all citizens and taxpayers of the State of

13  California. Such benefits will be derived in part through the efforts of Intervenors herein.

14  Therefore, Intervenors will, upon entry of final judgment, request the court in its discretion, to

15  award the reasonable value of Intervenors' counsel fees and other litigation expenses and to

16  assess the amount thereof against Petitioners/Plaintiffs, and each of them.

17                      **FOURTH CAUSE OF ACTION**

18                      **PETITION FOR WRIT OF MANDATE**

19                      (Denial of Uniform Operation of the Laws)

20  52.    Intervenors incorporate by reference the allegations in paragraphs 1 through 51

21  hereof as if fully set forth in this Cause of Action.

22  53.    Article IV, section 16(a) of the Constitution of the State of California states "All

23  laws of a general nature have uniform operation."

24  54.    The Fourteenth Amendment's guarantee of equal protection and the state

25  constitution's protection of the same right are substantially equivalent and are analyzed in a

26  similar fashion. (*Landau v. Superior Court* (App.1 Dist. 1998) 97 Cal.Rptr.2d 657.)

27  55.    Petitioners/Plaintiffs have a mandatory duty to apply the FLSA equally to state

28  employees. Petitioners/Plaintiffs have violated, and continue to violate, their mandatory duty

12

to uniformly apply the FLSA to state employees by taking the position that the Controller is required to pay some state workers covered by the FLSA their full pay, while others also covered by the FLSA must receive federal minimum wage. By issuing its pay letter which exempts certain state employees, Petitioners/Plaintiffs have unlawfully burdened certain state employees and violated their mandatory duty to uniformly apply the law.

56. Intervenors lack any plain, speedy and adequate remedy in the ordinary course of law to enforce Petitioners'/Plaintiffs' mandatory duty to uniformly apply the FLSA. For the forgoing reasons, Intervenors request that the Court issue a peremptory writ of mandate directing Petitioners/Plaintiffs to cease and desist from violating state employees' constitutional right to the equal protection and uniform application of the law.

57. The loss of such rights cannot be compensated fully by damages or other form of legal relief. Therefore, pending determination on the merits of this action, Intervenors seek temporary and preliminary injunctive relief directing Petitioners/Plaintiffs to cease and desist from violating state employees' constitutional right to the equal protection and uniform application of the law.

58. Intervenors have necessarily engaged the services of counsel to represent them in the preparation and prosecution of the within action resulting from the conduct and threatened conduct of Petitioners/Plaintiffs. The legal services rendered will thus inure to the benefit of all persons employed in the state civil service and to all citizens and taxpayers of the State of California. Such benefits will be derived in part through the efforts of Intervenors herein. Therefore, Intervenors will, upon entry of final judgment, request the court in its discretion, to award the reasonable value of Intervenors' counsel fees and other litigation expenses and to assess the amount thereof against Petitioners/Plaintiffs, and each of them.

### FIFTH CAUSE OF ACTION

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

59. Intervenors incorporate by reference the allegations in paragraphs 1 through 58 hereof as if fully set forth in this Cause of Action.

///

1    60.    There exists a present and actual controversy between Petitioners/Plaintiffs, on the
2    one hand, and Respondents/ Defendants and Intervenors, on the other hand, as to whether
3    Petitioners/Plaintiffs have violated and continue to violate provisions of the Constitution of the
4    State of California, State statutes, and the FLSA by implementing an unlawful executive order in
5    an arbitrary and discriminatory manner.

6    61.    Intervenors desire a determination and judicial declaration as to the rights and
7    duties of Petitioners/Plaintiffs in regards to whether they have violated and continue to violate
8    the provisions of the Constitution of the State of California, State statutes, and the FLSA by
9    implementing an unlawful executive order in an arbitrary and discriminatory manner.

10    62.    Petitioners'/Plaintiffs' actions have resulted in continuing injury and harm to the
11    state employees employed by the State including the denial of constitutional, state, and federal
12    rights. The loss of such rights cannot be compensated fully by damages or other form of legal
13    relief. Therefore, Intervenors seek temporary, preliminary and permanent injunctive relief
14    directing Petitioners/Plaintiffs to cease and desist from violating the doctrine of separation of
15    powers, violating the FLSA, and abusing their discretion by implementing their pay letter in an
16    arbitrary and capricious manner.

17    **WHEREFORE**, Intervenors pray for relief as follows:

18    **On the First Cause of Action:**

19    1.    A.    That this Court, on hearing this petition and on consideration of any return
20    filed thereto, issue an alternative and peremptory writ of mandate directing Petitioners/Plaintiffs
21    to comply with their mandatory duties under Article III, section 3, Article V, section 1, Article V,
22    section 11, and Article XVI, section 7.

23          B.    Pending issuance of a peremptory writ, that this Court issue a temporary
24    restraining order and preliminary injunction, directing Petitioners/Plaintiffs to cease and desist
25    from failing to adhere to their mandatory duties under Article III, section 3, Article V, section 1,
26    Article V, section 11, and Article XVI, section 7.

27    2.    For its costs of suit;

28    3.    For its attorney's fees;

14

1    4.    For such other and further relief as the Court deems appropriate.

2    **On the Second Cause of Action:**

3    1.    A.    That this Court, on hearing this petition and on consideration of any return

4    filed thereto, issue an alternative and peremptory writ of mandate directing Petitioners/Plaintiffs

5    to cease and desist from failing to adhere to the FLSA.

6          B.    Pending issuance of a peremptory writ, that this Court issue a temporary

7    restraining order and preliminary injunction, directing Petitioners/Plaintiffs to cease and desist

8    from failing to adhere to the FLSA.

9    2.    For its costs of suit;

10    3.    For its attorney's fees;

11    4.    For such other and further relief as the Court deems appropriate.

12    **On the Third Cause of Action:**

13    1.    That this Court, on hearing this petition and on consideration of any return filed

14    thereto, issue an alternative and peremptory writ of mandate directing Petitioners/Plaintiffs to

15    cease and desist from implementing the Governor's Executive Order and their pay letter in an

16    arbitrary and capricious manner.

17    2.    For its costs of suit;

18    3.    For its attorney's fees;

19    4.    For such other and further relief as the Court deems appropriate.

20    **On the Fourth Cause of Action:**

21    1.    A.    For a declaratory judgment and declaration of rights that

22    Petitioners/Plaintiffs have violated and continue to violate the provisions of Article IV, section

23    16 of the Constitution of the State of California.

24          B.    For temporary, preliminary and permanent injunctive relief directing

25    Petitioners/Plaintiffs to cease and desist from violating state employees' constitutional right to

26    the equal protection of the law.

27    2.    For its costs of suit;

28    3.    For its attorney's fees;

[PROPOSED] VERIFIED PETITION AND COMPLAINT IN INTERVENTION

1  4.  For such other and further relief as the Court deems appropriate.

2  **On the Fifth Cause of Action:**

3  1.  A.  For a declaratory judgment and declaration of rights that

4  Petitioners/Plaintiffs have violated and continue to violate the provisions of Article III, section 3,

5  Article IV, section 16, Article V, section 1, Article V, section 11, and Article XVI, section 7,

6  State statutes, and the FLSA.

7      B.  For temporary, preliminary and permanent injunctive relief directing

8  Petitioners/Plaintiffs to cease and desist from violating their mandatory duties under the laws as

9  described in the preceding causes of action.

10  2.  For its costs of suit;

11  3.  For its attorney's fees;

12  4.  For such other and further relief as the Court deems appropriate.

13

14  DATED: August 18, 2008                SEIU LOCAL 1000

15

16                                        By _____

17                                        BROOKE D. PIERMAN
                                          Attorneys for Intervenors
18                                        YVONNE WALKER, PAMELA HANDEL,
                                          TAMEKIA ROBINSON, KATHLEEN
                                          PHILLIPS and SERVICE EMPLOYEES
19                                        INTERNATIONAL
                                          UNION, Local 1000

20

21

22

23

24

25

26

27

28

ORIGINAL

1  PAUL E. HARRIS, III, Chief Counsel (State Bar No. 180265)
   ANNE M. GIESE (State Bar No. 143934)
2  BROOKE D. PIERMAN (State Bar No. 222630)
   1808 14th Street
3  Sacramento, CA 95811
   Telephone: (916) 554-1279
4  Facsimile: (916) 554-1292

5  Attorneys for Intervenors YVONNE WALKER and
   SERVICE EMPLOYEES INTERNATIONAL UNION, Local 1000
6

7

8              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                 IN AND FOR THE COUNTY OF SACRAMENTO

10

11  DAVID A, GILB; CALIFORNIA                CASE NO.  34-2008-80000026
    DEPARTMENT OF PERSONNEL
12  ADMINISTRATION,                          **[PROPOSED] ORDER GRANTING
                                             LEAVE TO INTERVENE**
13         Petitioners/Plaintiffs,

14  v.                                       Date:

15  JOHN CHIANG, sued herein in his official Time:
    capacity only; OFFICE OF STATE
16  CONTROLLER,                              Judge: Hon. Timothy M. Frawley

17         Respondents/Defendants.           Department:  29
                                        /
18                                           Trial Date: None
    YVONNE WALKER; PAMELA HANDEL;
19  TAMEKIA ROBINSON; KATHLEEN
    PHILLIPS; SERVICE EMPLOYEES
20  INTERNATIONAL UNION, LOCAL 1000,

21         Intervenors.
                                        /
22

23         The application of Yvonne Walker, Pamela Handel, Tamekia Robinson, Kathleen

24  Phillips, and Service Employees International Union, Local 1000 for an order that they be

25  permitted to intervene in this action has been fully submitted, and good cause appearing for

26  permission to intervene:

27         IT IS ORDERED THAT the application of Yvonne Walker, Pamela Handel, Tamekia

28  Robinson, Kathleen Phillips, and Service Employees International Union, Local 1000 is granted

                                             1

| 1 | and they are authorized to intervene in this action and join with Respondents/Defendants in |
| 2 | resisting the claims of Petitioners/Plaintiffs in claiming what is sought and in asserting interests |
| 3 | adverse to Petitioners/Plaintiffs. IT IS FURTHER ORDERED THAT Yvonne Walker, Pamela |
| 4 | Handel, Tamekia Robinson, Kathleen Phillips, and Service Employees International Union, |
| 5 | Local 1000 file the Verified Petition and Complaint in Intervention within 30 days of the date of |
| 6 | this order. |

DATED:_____

_____
Honorable Judge of the Superior Court

# ORIGINAL

1 BROOKS ELLISON
State Bar No. 122705
2 PATRICK J. WHALEN
State Bar No. 173489
3 THE LAW OFFICE OF BROOKS ELLISON
1725 Capitol Ave.
4 Sacramento, CA 95814
Telephone: (916) 448-2187
5 Facsimile: (916) 448-5349
E-mail: Brooks.Ellison@calattorneys.org
6
Attorneys for Intervenor Respondents/Defendants
7 California Attorneys, Administrative Law Judges,
And Hearing Officers in State Employment
8

FILED/ENDORSED

AUG 1 9 2008

By: A MACIAS
DEPUTY CLERK

9

10 SUPERIOR COURT OF THE STATE OF CALIFORNIA

11 COUNTY OF SACRAMENTO

12

| | |
|---|---|
| 13 DAVID A. GILB, CALIFORNIA DEPARTMENT OF PERSONNEL ADMINISTRATION | Case No. 34-2008-80000026 |
| 14 | ***EX PARTE* APPLICATION FOR LEAVE TO INTERVENE;** |
| 15 Petitioners/Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| 16 vs. | **(CCP § 387)** |
| 17 JOHN CHIANG, sued herein in his official capacity only, OFFICE OF THE STATE | Judge: Honorable Timothy E. Frawley |
| 18 CONTROLLER, | Dept: 29 Date: August 20, 2008 |
| 19 Respondents/Defendants. | Time: 10:00 a.m. |
| 20 | |

21

22

23 **I.**

24 **INTRODUCTION**

25    Proposed Intervenor California Attorneys, Administrative Law Judges, and Hearing

26 Officers in State Employment ("CASE") is the exclusive representative for approximately 3,500

27 attorneys, administrative law judges and other legal professionals employed by

28 Petitioners/Plaintiffs David L. Gilb and the Department of Personnel Administration ("DPA").

- 1 -

Ex Parte Application for Leave to Intervene

As the exclusive representative, CASE is statutorily obligated to represent the interests of its members in matters related to wages, hours, and terms and conditions of employment. (Gov. Code § 3516.)

Proposed Intervenor CASE hereby requests leave to join the lawsuit as Intervenor Respondents/Defendants. Counsel for both Petitioners/Plaintiffs and Respondents/Defendants have each indicated that they have no opposition to the instant request for leave to intervene.

## II.

## PROCEDURAL FACTS

There have been no prior ex parte applications that have been refused within the meaning of California Rule of Court No. 3.1202(b). Intervenor notes that there are several pending applications for leave to intervene by other intervenors.

Notice to all parties was given at least 24 hours prior to the hearing on this application, as required by California Rule of Court No. 3.1203(a).

Counsel for both Petitioners/Plaintiffs and Respondents/Defendants have each indicated that they have no opposition to the instant request for leave to intervene. (Decl. of Patrick Whalen, ¶¶ 2-4.)

Pursuant to California Rule of Court No. 3.1202(a), the following are known to be attorneys for the parties:

1. Christopher E. Thomas, Linda Mayhew, Warren C. Stracener, and K. William Curtis, all represent Petitioners/Plaintiffs, and are located at 1515 S Street, North Building, Suite 400, Sacramento, CA 95811-7258. Their telephone number is (916) 324-0512.

2. Richard Chaviro represents Respondents/Defendants, and is located at 300 Capitol Mall, Suite 1850, Sacramento CA 95814. His telephone number is (916) 445-2636.

///

///

///

Ex Parte Application for Leave to Intervene

# III.

# ARGUMENT

## A. Legal Authority For Intervention

Under Code of Civil Procedure section 387, leave to intervene may be granted at the discretion of the court, or, in some cases, intervention is mandatory. That section reads as follows:

> (a) Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding. An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and the defendant, and is made by complaint, setting forth the grounds upon which the intervention rests, filed by leave of the court and served upon the parties to the action or proceeding who have not appeared in the same manner as upon the commencement of an original action, and upon the attorneys of the parties who have appeared, or upon the party if he has appeared without an attorney, in the manner provided for service of summons or in the manner provided by Chapter 5 (commencing with Section 1010) Title 14 of Part 2. A party served with a complaint in intervention may within 30 days after service move, demur, or otherwise plead to the complaint in the same manner as to an original complaint.

> (b) If any provision of law confers an unconditional right to intervene or if the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that person is so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by existing parties, the court shall, upon timely application, permit that person to intervene.

## B. Interest of Intervenor CASE

CASE represents approximately 3500 legal professionals employed by the State of California and Petitioners/Plaintiffs. The Governor's Executive Order S-09-08 (See Decl. of David A. Gilb, Exh. A) and the DPA Pay Letter 08-23, (See Decl. of David A. Gilb, Exh. B) impacts state employees in different ways depending on their respective work week groups.

CASE members include attorneys in Work Week Group ("WWG") SE, Administrative Law Judges and Hearing Officers in WWG E, and Deputy Labor Commissioners and Graduate Legal Assistants in WWG 2. (Decl. of Peter Flores, ¶ 2.) Accordingly, CASE membership contains employees in all of the different work week groups affected by the DPA pay letter.

Under the Pay Letter, CASE attorneys (in WWG SE) would get paid zero. CASE administrative law judges (in WWG E) would be paid $455.00 per week. CASE members in WWG 2 would be paid the federal minimum wage of $6.55 per hour. (See Pet. at pp. 6-7.) All CASE members, in every work week group, would have their pay drastically reduced, in many cases, to zero. All CASE members therefore have a direct, immediate, and personal pecuniary interest in the outcome of the litigation. Although the Executive Order and Pay Letter purported to exempt certain departments from its provisions, it appears that most, if not all CASE members will *not* be exempted from the impact of the order and the pay letter, regardless of the particular department in which they may work. (Decl. of Patrick Whalen, ¶ 5.)

CASE members will suffer grave financial harm if the Petitioners/Plaintiffs prevail in this litigation. They face the specter of the loss of their homes, cars, and health insurance. (Decl. of Peter Flores, ¶ 4; Decl. of Patrick Whalen, ¶ 5.) They will be unable to provide support for their families. (Decl. of Peter Flores, ¶ 4.) The potential for catastrophic economic impact is large and the related ancillary impacts are difficult to calculate, but will undoubtedly be wide-ranging.

In addition to representing the interests of its members, CASE as an entity has a direct financial stake in the outcome of this litigation. CASE is a nonprofit mutual benefit corporation which is supported entirely by membership dues which are deducted from the pay of its members on a monthly basis. The vast majority of CASE members would have their pay reduced to zero. As such, there would be no pay from which to deduct membership dues. As a result, CASE would experience direct and immediate financial hardship. (Decl. of Peter Flores, ¶ 3.)

C. <u>CASE Is Entitled to Intervene As Of Right</u>

Pursuant to subdivision (b) of section 387, CASE has "an interest relating to the property or transaction which is the subject of the action" both because its members will suffer the direct

- 4 -

financial consequences of having their pay reduced and because CASE as an entity will lose a substantial portion of its only source of revenue. Moreover, "the disposition of the action may as a practical matter impair or impede [CASE's] ability to protect that interest," because if the Petitioners/Plaintiffs prevail, CASE will lack the financial resources to sustain litigation for any substantial period of time. Finally, CASE's interest is not "adequately represented by existing parties." While Controller Chiang has indicated that he will not comply with the order, his decision appears to be based on factors distinct from the interests of CASE. For example, his decision appears to be based in part on the infeasibility of adjusting the Controller's computer payroll system, the availability of sufficient cash reserves, and the Governor's apparently selective application of his Executive Order. (See Decl. of David A. Gilb, Exh. C.) However meritorious these arguments may be, they do not and cannot serve as a substitute for the immediate financial harm that will be suffered by both CASE and all of its members. Moreover, it is doubtful that Respondents/Defendants have standing to assert the interests of CASE and its members, nor do they appear to have the knowledge, experience, and expertise with which to adequately protect the interests of CASE and its members.

Section 387 "should be liberally construed in favor of intervention." (*Simpson Redwood Co. v. State of California* (1987) 196 Cal.App.3d 1192, 1200.) While courts have been less than clear in articulating the precise interests that are sufficient to justify mandatory intervention (see *id.*, at pp. 1199-1200), the direct economic impact that will be suffered by CASE and its members should be sufficient to justify intervention in this case. If Petitioners/Plaintiffs prevail, Respondents will be forced to comply with the Executive Order, and its provisions will be enforced against Intervenors by Petitioners.

D.  CASE Should Be Permitted Leave to Intervene

Even if CASE is not entitled to intervene as of right under subdivision (b) of section 387, this Court should exercise its discretion to grant CASE leave to intervene under subdivision (a). To justify permissive intervention, "the proposed intervener's interest must be direct rather than consequential, and it must be an interest that is capable of determination in the action." (*Lindelli*

*v. Town of Anselmo* (2006) 139 Cal.App.4[th] 1499, 1505.) As has been previously stated, CASE and its members will suffer direct and immediate financial harm should the Petitioners/Plaintiffs prevail in this action. Moreover, CASE's interests are capable of determination in this action, because the resolution of the claims made by Petitioners/Plaintiffs will resolve, positively or negatively, CASE's interest in the litigation.

E. Intervention is Unopposed by the Parties

Counsel for both parties have indicated that they have no opposition to the instant application, which tends to indicate that the parties recognize that the interests of Intervenor CASE cannot adequately be represented by either party. Neither party will suffer the effects of reduced pay, or zero pay, as will CASE members.

## IV.

## CONCLUSION

For the foregoing reasons, CASE respectfully requests submits that CASE is entitled to intervene as a matter of right, pursuant to Code of Civil Procedure section 387, subdivision (b). Alternatively, CASE respectfully requests leave to intervene under section 387, subdivision (a).

THE LAW OFFICE OF BROOKS ELLISON

Dated: 8-19-07

PATRICK J. WHALEN

Attorneys for Plaintiff
CALIFORNIA ATTORNEYS,
ADMINISTRATIVE LAW JUDGES AND
HEARING OFFICERS IN STATE
EMPLOYMENT

# ORIGINAL

1  BROOKS ELLISON
   State Bar No. 122705
2  PATRICK J. WHALEN
   State Bar No. 173489
3  THE LAW OFFICE OF BROOKS ELLISON
   1725 Capitol Ave.
4  Sacramento, CA 95814
   Telephone: (916) 448-2187
5  Facsimile: (916) 448-5349
   E-mail: Brooks.Ellison@calattorneys.org
6
   Attorneys for Intervenor Respondents/Defendants
7  California Attorneys, Administrative Law Judges,
   And Hearing Officers in State Employment
8

9

10            SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                      COUNTY OF SACRAMENTO

12
   DAVID A. GILB, CALIFORNIA            Case No. 34-2008-80000026
13 DEPARTMENT OF PERSONNEL
   ADMINISTRATION
14                                      **[PROPOSED] ORDER GRANTING
                                        CASE'S *EX PARTE* APPLICATION**
15         Petitioners/Plaintiffs,      **FOR LEAVE TO INTERVENE
                                        (CCP § 387)**
16      vs.
                                        Judge: Honorable Timothy E. Frawley
17 JOHN CHIANG, sued herein in his official   Dept: 29
   capacity only, OFFICE OF THE STATE        Date: August 20, 2008
18 CONTROLLER,                               Time: 10:00 a.m.

19
           Respondents/Defendants.
20

21

22

23         Upon consideration of the Ex Parte Application for Leave to Intervene filed by California

24 Attorneys, Administrative Law Judges, and Hearing Officers in State Employment ("CASE"), on

25 August 19, 2008, and good cause appearing:

26         IT IS HEREBY ORDERED THAT California Attorneys, Administrative Law Judges,

27 and Hearing Officers in State Employment ("CASE") are granted leave to intervene in this action

28

[Proposed] Order Granting CASE's Application for Leave to Intervene

as Respondent/Defendant, pursuant to California Code of Civil Procedure section 387, subdivisions (a) and/or (b).

Dated: _____

_____
Hon. Timothy M. Frawley
Judge of the Superior Court

[Proposed] Order Granting CASE's Application for Leave to Intervene

# ORIGINAL

1  BROOKS ELLISON
   State Bar No. 122705
2  PATRICK J. WHALEN
   State Bar No. 173489
3  THE LAW OFFICE OF BROOKS ELLISON
   1725 Capitol Ave.
4  Sacramento, CA 95814
   Telephone: (916) 448-2187
5  Facsimile: (916) 448-5349
   E-mail: Brooks.Ellison@calattorneys.org
6
   Attorneys for Intervenor Respondents/Defendants
7  California Attorneys, Administrative Law Judges,
   And Hearing Officers in State Employment
8



FILED/ENDORSED

AUG 19 2008

By: _____ A. MACIAS
         DEPUTY CLERK

9

10            SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                        COUNTY OF SACRAMENTO

12

13  DAVID A. GILB, CALIFORNIA          Case No. 34-2008-80000026
    DEPARTMENT OF PERSONNEL
14  ADMINISTRATION
                                       **DECLARATION OF PETER FLORES,**
15            Petitioners/Plaintiffs,  **JR. IN SUPPORT OF** *EX PARTE*
                                       **APPLICATION FOR LEAVE TO**
16       vs.                           **INTERVENE**
                                       **(CCP § 387)**
17  JOHN CHIANG, sued herein in his official
    capacity only, OFFICE OF THE STATE  Judge: Honorable Timothy E. Frawley
18  CONTROLLER,                         Dept: 29
                                        Date: August 20, 2008
19            Respondents/Defendants.   Time: 10:00 a.m.

20

21

22

23       ·I, PETER FLORES, JR., hereby declare:

24       1.  I am the duly elected president of California Attorneys, Administrative Law Judges,

25           and Hearing Officers in State Employment ("CASE"), the exclusive representative

26           for Bargaining Unit 2.

27       2.  CASE represents approximately 3500 legal professionals employed by the State of

28           California. Approximately 2693 members are attorneys in Work Week Group SE.

---

- 1 -

Approximately 647 members are administrative law judges or hearing officers in Work Week Group E. Approximately 133 members are graduate legal assistants or deputy labor commissioners in Work Week Group 2.

3. CASE is a nonprofit mutual benefit corporation supported entirely by membership dues. These membership dues are deducted from the pay of members by the Controller and forwarded directly to CASE. CASE has no other source of revenue, and has no independent ability to collect dues from its members. CASE cannot continue to function in the absence of timely receipt of membership dues.

4. I am familiar with the litigation in David Gilb, et al. v. John Chiang, et al., case no. 34-2008-80000026, as well as the Governor's Executive Order S-09-08, and DPA's Pay Letter 08-23. I have personally spoken to dozens of CASE members about the impact of the Governor's Executive Order, and have been in email contact with dozens more. They have expressed to me in no uncertain terms that if the Executive Order is implemented, and their pay is reduced as specified in the Pay Letter, they will suffer severe financial hardship. Many CASE members are the sole breadwinners for their family. Reducing their pay to federal minimum wage, or, in most cases, to zero, would mean that there would be no financial support whatsoever for many members and their families. Members have expressed concern over the possibility of losing their homes, cars, and healthcare due to an inability to make the required monthly payments.

5. I am also a dues-paying member of CASE. I know that if the Executive Order is implemented, it will have a dire financial impact upon myself and my family.

///
///
///
///

1    I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct and that this declaration is executed on the ⌊9 day of August,

3    2008, at San Francisco, California.

4

5

6

7

8                                              PETER FLORES, JR.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

Declaration of Peter Flores in Support of Application for Leave to Amend

# ORIGINAL

1  BROOKS ELLISON
State Bar No. 122705
2  PATRICK J. WHALEN
State Bar No. 173489
3  THE LAW OFFICE OF BROOKS ELLISON
1725 Capitol Ave.
4  Sacramento, CA 95814
Telephone: (916) 448-2187
5  Facsimile: (916) 448-5349
E-mail: Brooks.Ellison@calattorneys.org
6
Attorneys for Intervenor Respondents/Defendants
7  California Attorneys, Administrative Law Judges,
And Hearing Officers in State Employment
8



FILED/ENDORSED

AUG 19 2008

By: A. MACIAS
DEPUTY CLERK

9

10                SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                          COUNTY OF SACRAMENTO

12

13  DAVID A. GILB, CALIFORNIA              Case No. 34-2008-80000026
DEPARTMENT OF PERSONNEL
14  ADMINISTRATION                         **DECLARATION OF PATRICK
                                           WHALEN IN SUPPORT OF *EX PARTE*
15          Petitioners/Plaintiffs,        APPLICATION FOR LEAVE TO
                                           INTERVENE**
16      vs.                                **(CCP § 387)**

17  JOHN CHIANG, sued herein in his official   Judge: Honorable Timothy E. Frawley
capacity only, OFFICE OF THE STATE         Dept: 29
18  CONTROLLER,                            Date: August 20, 2008
                                           Time: 10:00 a.m.
19          Respondents/Defendants.

20

21

22

23      I, PATRICK WHALEN, hereby declare:

24      1.  I am an attorney licensed to practice before all of the courts of the State of California.

25          I serve as General Counsel for California Attorneys, Administrative Law Judges, and

26          Hearing Officers in State Employment ("CASE"), the exclusive representative for

27          Bargaining Unit 2.

28

-1-

Declaration of Patrick Whalen in Support of Application for Leave to Amend

2. On Monday, August 18, 2008, I contacted by telephone Ms. Linda Mayhew, Assistant Chief Counsel at DPA, and one of the attorneys representing Petitioners in this action. I asked whether Petitioners had a position on the planned application for leave to intervene by CASE. Ms. Mayhew stated that while DPA could not stipulate to the intervention, they were able to state that they had no opposition.

3. I subsequently confirmed that telephonic conversation by email to Ms. Mayhew.

4. On Monday, August 18, 2008, I contacted by telephone Mr. Richard Chivaro, counsel for defendant John Chiang, the State Controller. I asked whether Defendants had a position on the planned application for leave to intervene by CASE. Mr. Chivaro stated that Defendants had no opposition.

5. On Tuesday, August 12, 2008, I and other members of the CASE Board of Directors met with representatives of the Department of Personnel Administration regarding the impact of the Executive Order on Bargaining Unit 2. During that meeting, DPA explained that the vast majority of CASE members (those in Work Week Group SE) would be paid zero, and that therefore, there would be nothing from which to deduct CASE membership dues, employee insurance premiums for CASE-administered disability and long-term care insurance plans, or employee health care premiums. During that same meeting, DPA could not confirm whether any CASE members were exempted from the order.

6. On Tuesday, August 19, 2008, I contacted counsel for both parties by telephone and informed them of Intervenor CASE's intention to file the instant application, as well as the date, time, and place it was set for hearing, pursuant to California Rule of Court No. 3.1204, as follows:

   Linda Mayhew, counsel for Petitioners/Plaintiffs, was contacted by telephone at 8:17 a.m. and advised of all the above information.

   Richard Chivaro, counsel for Respondents/Defendants, was contacted at 8:08 a.m. but was not in the office. I left a message with his receptionist notifying her of

-2-

the date, time and place of the hearing on this application. I also followed up with an email to Mr. Chivaro at 8:11 a.m. Mr. Chivaro previously indicated he had no opposition to the instant application.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration is executed on the 19 day of August, 2008, at Sacramento, California.


PATRICK J. WHALEN

Declaration of Patrick Whalen in Support of Application for Leave to Amend

## PROOF OF SERVICE

I am a citizen of the United States and a resident of the County of Sacramento, California. I am over the age of eighteen (18) years and not a party to the above-entitled action. My business address is 1725 Capitol Avenue, Sacramento, CA 95814.

On August 19, 2008 I served the following documents:

1. Ex Parte Application for Leave to Intervene and Memorandum of Points and Authorities
2. Declaration of Patrick Whalen
3. Declaration of Peter Flores, Jr.
4. Proposed Order

I served the aforementioned document(s) by enclosing them in an envelope and (check one):

_XX_ depositing the sealed envelope with the United States Postal Service with the postage fully prepaid.

_____ placing the sealed envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

The envelope was addressed and mailed to the following person(s):

Richard Chaviro
State Controller's Office
300 Capitol Mall, Suite 1850
Sacramento, CA 95814

Christopher E. Thomas
Department of Personnel Administration
1515 S Street, North Building, Suite 400
Sacramento, CA 95811-7258

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on August 19, 2008.

Kirk Blackburn