UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DAVID A. GILB, CALIFORNIA
DEPARTMENT OF PERSONNEL
ADMINISTRATION,

        Petitioners,

   v.

JOHN CHIANG, sued herein in
his official capacity only,
OFFICE OF THE STATE
CONTROLLER,

        Respondents.

CALIFORNIA CORRECTIONAL PEACE
OFFICERS' ASSOCIATION; CALIFORNIA
STATEWIDE LAW ENFORCEMENT
ASSOCIATION; STATIONARY ENGINEERS
LOCAL 39 INTERNATIONAL UNION OF
OPERATING ENGINEERS, AFL-CIO;
CALIFORNIA ASSOCIATION OF
PROFESSIONAL SCIENTISTS;
PROFESSIONAL ENGINEERS IN
CALIFORNIA GOVERNMENT; YVONNE
WALKER and SERVICE EMPLOYEES
INTERNATIONAL; UNION, LOCAL 1000;
CALIFORNIA ATTORNEYS,
ADMINISTRATIVE LAW JUDGES, AND
HEARING OFFICERS IN STATE
EMPLOYMENT (CASE)

        Intervenor Respondents.

No. 2:08-cv-01960-MCE-DAD

MEMORANDUM AND ORDER

----oo0oo----

1

1  Plaintiffs, the Department of Personnel Administration
2  ("DPA") and David Gilb, Director of the DPA, (collectively
3  "Plaintiffs") filed this action against Defendants, the Office of
4  the State Controller and John Chiang, the Controller,
5  (collectively "Controller") in Sacramento County Superior Court.
6  Plaintiffs sought to compel the Controller to refrain from
7  violating state law by paying state employees in a manner
8  inconsistent with the California Supreme Court decision in <u>White</u>
9  <u>v. Davis</u>, 30 Cal. 4th 528 (2003), and specifically to compel the
10 Controller to conform his conduct to the California Constitution
11 and various California Government Code sections.  A number of
12 employee organizations intervened as Defendants and removed the
13 case to this Court.  Presently before the Court are Plaintiffs'
14 Motion to Remand, Defendants' Motion to Dismiss, and various
15 Intervenor-Defendants' Motions to Change Venue.  On October 29,
16 2008, this Court heard oral argument and took these matters under
17 submission.  Because the Court concludes that it lacks
18 jurisdiction over Plaintiffs' claims, Plaintiffs' Motion to
19 Remand is granted.  Accordingly, Defendants' Motion to Dismiss
20 and Intervenor-Defendants' Motions to Remand are denied.

21

22                          **BACKGROUND**

23 **A.   Factual History**

24

25  The following facts are derived from Plaintiffs' Petition
26 for Writ of Mandate and Complaint for Injunctive and Declaratory
27 Relief ("Complaint"), which Plaintiffs originally filed in state
28 court.

Plaintiffs allege that under the California Supreme Court decision in White v. Davis in the absence of a budget or another appropriation, the Controller is prohibited by state law from paying state employees' salaries, except as minimally required by federal law.

Plaintiffs acknowledge that "[c]onsistent with the requirements of federal law, the Controller is required, notwithstanding a budget impasse and the limitations imposed by state law, to timely pay those state employees who are subject to the minimum wage and overtime compensation provisions of the Fair Labor Standards Act ("FLSA"), [29 U.S.C. § 201, et seq.,]...the wages required by that act." Complaint, ¶ 20, citing White v. Davis at 535. Additionally, according to Plaintiffs, "except as minimally required by the FLSA, or in situations where there is a continuing appropriation, or payment is authorized by a self-executing provision of the State Constitution, the Controller is not authorized to pay state employee salaries in the absence of a budget or other available appropriation." Id., ¶ 21.

Thus, Plaintiffs maintain that by paying state employees' salaries during a budget impasse, the Controller violates various provisions of state law, specifically, Article XVI, section 7 of the California Constitution, and California Government Code §§ 1231.1, 9610, and 12440.

Pursuant to the California Constitution, the State Legislature is mandated to "pass the budget bill by midnight of June 15 of each year." Cal. Const. Art. IV, § 12. This year, as in a number of years past, the Legislature failed to meet the requisite deadline.

1  The budget appropriating funds for the 2007-2008 fiscal year

2  expired on June 30, 2008, and, since the legislature was at an

3  impasse, California was left with no budget for the 2008-2009

4  fiscal year.

5       On July 31, 2008, the Governor issued an Executive Order

6  directing Plaintiffs to work with Defendants "to develop and

7  implement the necessary mechanisms, including but not limited to,

8  pay letters and computer programs, to comply with the California

9  Supreme Court's White v. Davis opinion to pay federal minimum

10 wage to those nonexempt FLSA employees who did not work any

11 overtime."  Id., § 31.  That same day, the Controller expressly

12 refused to comply with the Governor's Order.

13      On August 5, 2008, Plaintiffs issued a Pay Letter, an

14 administrative document "triggering" the Controller's duty to pay

15 employee salaries, instructing the Controller "to comply with

16 state law and the requirements of White v. Davis to pay wages as

17 minimally required by federal law."  Id., § 37.  Through their

18 Pay Letter, Plaintiffs "provided the Controller with the

19 necessary instructions to comply with state law and the

20 requirements of White v. Davis to pay wages as minimally required

21 by federal law."  Id., § 37.  Among other directions, that Pay

22 Letter also "provided the Controller with special salary payment

23 instructions concerning state employees" and "instructed the

24 Controller to comply with federal labor law and the California

25 Supreme Court's decision in White v. Davis."  Id., § 38.

26 ///

27 ///

28 ///

4

1    When the Controller allegedly failed to comply with the pay
2    Letter, Plaintiffs sought relief in state court.  Plaintiffs
3    sought "a writ of mandate...compelling the Controller to refrain
4    from violating state law by paying state employees in a manner
5    inconsistent with the California Supreme Court decision of White
6    v. Davis, and the DPA Pay Letter."  Id. 11:16-18.  Plaintiffs
7    further requested "a preliminary and permanent injunction,
8    against Defendant predicated on the claims presented herein,
9    enjoining him...from paying state employees in a manner
10   inconsistent with the California Supreme Court decision of White
11   v. Davis, and the DPA Pay Letter."  Id. at 11:19-22.  Finally,
12   Plaintiffs sought "declaratory relief that the Controller is
13   legally required under state law to refrain from paying state
14   employee salaries in the absence of a budget or other available
15   appropriation, except as minimally required by the FLSA."  Id.,
16   11:23-25.

17       On September 23, 2008, prior to any substantive adjudication
18   in this case, the California Legislature adopted a state budget.[1]
19   Motion to Dismiss, 1:12-13.

20

21   **B.   Procedural History**

22

23       Plaintiffs filed their Complaint in Sacramento County
24   Superior Court on August 11, 2008.

25

26       [1] While the passage of the state budget raises the question
     of whether this suit is moot, because this Court disposes of this
27   case on jurisdictional grounds, it need not address that question
     and Defendants' Motion to Dismiss is denied.  For the same
28   reasons, both Motions to Change Venue are denied as well.

The following entities (hereafter referred to collectively along with the Controller as "Defendants") subsequently intervened as Defendants in the State action and all Defendants then removed to this Court:

- California Correctional Peace Officers Association ("CCPOA")
- California Statewide Law Enforcement Association ("CSLEA")
- Stationary Engineers Local 39 International Union of Operating Engineers, AFL-CIO
- California Association of Professional Scientists
- Professional Engineers in California Government
- Service Employees International Union, Local 1000 and various individuals (collectively "SEIU Local 1000")
- California Attorneys, Administrative Law Judges, and Hearing Officers in State Employment ("CASE")

On September 10, Plaintiffs moved to remand to state court arguing that this Court lacks subject matter jurisdiction over Plaintiffs' claims because Plaintiffs' Complaint does not raise a federal question.

On September 3, 2008, CCPOA and CSLEA filed a Motion to Change Venue to the Northern District of California, specifically to the Honorable Thelton Henderson, who presides over Marciano Plata, *et al.* v. Arnold Schwarzenegger, *et al.*, Case No. C01-1351 THE.  Only a few days later, CASE filed its own Motion to Change Venue, also requesting a transfer to Judge Henderson in the Northern District, this time on the grounds that he presides over Madrid v. Tilton, Case No. C90-3094 THE.  On October 8, 2008, the Controller filed a Memorandum Concerning Venue specifically taking no position with respect to either Motion.  SEIU Local 1000 subsequently joined in both of Intervenor-Defendants' Motions.

///

///

1   On September 30, the CCPOA and the CSLEA moved to dismiss
2   this case as moot.  All Defendants thereafter joined in that
3   motion.

4       Presently before the Court are the two Motions to Change
5   Venue, one Motion to Dismiss, and one Motion to Remand.

6

7                            **STANDARD**

8

9       A defendant may remove any civil action from state court to
10  federal district court if the district court has original
11  jurisdiction over the matter.  28 U.S.C. § 1441(a).  Generally,
12  district courts have original jurisdiction over civil actions in
13  two instances: (1) where there is complete diversity between the
14  parties, or (2) where a federal question is presented in an
15  action arising under the Constitution, federal law, or treaty.
16  28 U.S.C. §§ 1331 and 1332.

17      The removing party bears the burden of establishing federal
18  jurisdiction.  Ethridge v. Harbor House Rest., 861 F.2d 1389,
19  1393 (9th Cir. 1988).  Furthermore, courts construe the removal
20  statute strictly against removal.  Gaus v. Miles, Inc., 980 F.2d
21  564, 566 (9th Cir. 1992) (citations omitted).  If there is any
22  doubt as to the right of removal in the first instance, remand
23  must be granted.  See Gaus, 980 F.2d at 566.  Therefore, if it
24  appears before final judgment that a district court lacks subject
25  matter jurisdiction, the case shall be remanded to state court.
26  28 U.S.C. § 1447(c).

27  ///

28  ///

7

The district court determines whether removal is proper by first determining whether a federal question exists on the face of the plaintiff's well-pleaded complaint.  Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  If a complaint alleges only state-law claims and lacks a federal question on its face, then the federal court must grant the motion to remand.  See 28 U.S.C. § 1447(c); Caterpillar, 482 U.S. at 392.  Nonetheless, there are rare exceptions when a well-pleaded state-law cause of action will be deemed to arise under federal law and support removal. They are " . . . (1) where federal law completely preempts state law, (2) where the claim is necessarily federal in character, or (3) where the right to relief depends on the resolution of a substantial, disputed federal question."  ARCO Envtl. Remediation L.L.C. v. Dep't of Health & Envtl. Quality of Mont., 213 F.3d 1108, 1114 (9th Cir. 2000) (internal citations omitted).

**ANALYSIS**

The extraordinary nature of this suit makes it unlikely to fit neatly within the four corners of any established precedent. In this case, two California agencies are pitted against one another over the legality under state law of the payment of salaries to state employees during a state budget impasse.  One arm of the state removed to this Court, while its adversary, also a state agency, maintains that the state courts are the proper forum.  It is difficult to conceive of a case more likely to invoke principles of federalism and the need for judicial restraint by the federal courts.

8

The apparent complexity of the questions at issue in this action lies not in its facts, which are undisputed.  Rather, its potential to perplex derives from Plaintiffs' allegations that, *inter alia*, during a budget impasse, Defendants are prohibited from paying state salaries under state law, <u>except as minimally required by the FLSA</u>.

Though California had originally haled itself into its own courts in an attempt to mandate its own compliance with its own laws, Defendants view Plaintiffs' seemingly innocuous reference to federal law as a door to federal jurisdiction, arguing that Plaintiffs' claims "arise under" federal statutes.  However, despite the facial difficulty in applying Defendants' arguments to a case in which the State simultaneously serves as both Plaintiff and Defendant, expressly pleads violations of only state law, and yet acknowledges the necessity of its compliance with federal law, this Court is left with but one conclusion.  Plaintiffs' well-pleaded Complaint does not arise under federal law and this Court must remand this action to the Superior Court.

**I.   THE CALIFORNIA SUPREME COURT'S DECISION IN <u>WHITE V. DAVIS</u>, 30 CAL. 4TH 528 (2003)**

Central to this dispute is the California Supreme Court's analysis in a 2003 taxpayer action arising out of the 1997 and 1998 state budget impasses.  <u>White v. Davis</u>, 30 Cal. 4th 528 (2003).

///

///

Two issues were appealed to that court: "1) whether the trial
court erred in granting a preliminary injunction in the
underlying taxpayer action, and 2) the substantive question
whether the Controller is authorized to pay state employees their
full and regular salaries during a budget impasse." Id. at 534.
Only the latter issue is germane to the current dispute before
this Court.

The California court determined "state law contractually
guarantees that state employees ultimately will receive their
full salary for work performed during a budget impasse, but state
law does not authorize the Controller to disburse state funds to
the employees until an applicable appropriation has been
enacted." Id. (emphasis in original). In making its
determination, that court relied on Article XVI, section 7 of the
California Constitution and California Government Code §§ 12440,
9610, 1231, and 1231.1. Id. at 568-569.

Nevertheless, that Court also determined that "by virtue of
the supremacy of federal law, the state is obligated to comply
with the minimum requirements of the FLSA during a budget
impasse, notwithstanding the lack of an available appropriation."
Id. at 579. That court also stated, "[I]n light of the
requirements of federal law, the Controller is required...to
timely pay those state employees who are subject to the minimum
wage and overtime compensation provisions of the federal
[FLSA]...the wages required by that act." Id. at 535.

///

///

///

10

1    Finally, that court concluded that "the state satisfies the

2    requirements of the FLSA by paying nonexempt state employees (who

3    do not work overtime) at the minimum wage rate for the straight-

4    time hours (that is, nonovertime hours) worked by those employees

5    during the pay period.  For nonexempt employees who do not work

6    overtime, the FLSA does not require the prompt payment of <u>full</u>

7    salary.  By contrast, under the applicable federal regulation,

8    whenever a nonexempt employee works overtime, the FLSA requires

9    the employer to pay the employee his or her <u>full regular salary</u>

10   for the employee's straight time as well as at least one and one-

11   half times the employee's regular salary for overtime hours

12   worked."  <u>Id</u>. at 577 (emphasis in original).

13   Accordingly, though not necessary to the application of

14   state law, California's highest court nonetheless reasoned that

15   "it [was] appropriate to clarify [its] understanding of what the

16   FLSA require[d] with regard to the amount of salary payments that

17   must be made during a budget impasse, so as not to leave the

18   Controller without guidance on the issue."  <u>Id</u>. at 575.

19

20   **II.  PLAINTIFFS' CLAIMS DO NOT "ARISE UNDER" FEDERAL LAW AS
          REQUIRED BY 28 U.S.C. § 1331.**

21

22

23   In their current Complaint, Plaintiffs seek to compel

24   Defendants' compliance with Article XVI, section 7 of the

25   California Constitution, and California Government Code

26   §§ 1231.1, 9610, and 12440, while at the same time acknowledging

27   such compliance is limited by the strictures of the FLSA.

28   ///

1  Therefore, against the backdrop of <u>White v. Davis</u>, the question

2  this Court must decide today is whether a federal question is

3  implicated by Plaintiffs' state law claims since Plaintiffs

4  specifically acknowledged that those claims are limited by the

5  application of federal law.

6      "Only state-court actions that originally could have been

7  filed in federal court may be removed to federal court by the

8  defendant." <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392

9  (1987). "In the absence of diversity of citizenship, federal-

10 question jurisdiction is necessary." <u>Id</u>.

11     "To bring a case within [28 U.S.C. § 1331], a right or

12 immunity created by the Constitution or laws of the United States

13 must be an element, and an essential one, of the plaintiff's

14 cause of action. The right or immunity must be such that it will

15 be supported if the Constitution or laws of the United States are

16 given one construction or effect, and defeated if they receive

17 another. A genuine and present controversy, not merely a

18 possible or conjectural one, must exist with reference thereto,

19 and the controversy must be disclosed upon the face of the

20 complaint, unaided by the answer or by the petition for removal."

21 <u>Gully v. First Nat. Bank in Meridian</u>, 299 U.S. 109, 112-113

22 (1936).

23     Moreover, under the "well-pleaded complaint rule," a federal

24 question "must be presented on the face of the plaintiff's

25 properly pleaded complaint." <u>Caterpillar</u> at 392, citing <u>Gully</u>,

26 299 U.S. at 112-113.

27 ///

28 ///

1 "Thus, it is now settled law that a case may _not_ be removed to

2 federal court on the basis of a federal defense, including the

3 defense of pre-emption, even if the defense is anticipated in the

4 plaintiff's complaint, and even if both parties concede that the

5 federal defense is the only question truly at issue." _Id_. at 393

6 (emphasis in original).  "[T]he presence of a federal

7 question...in a defensive argument does not overcome the

8 paramount policies embodied in the well-pleaded complaint rule -

9 that the plaintiff is the master of the complaint, that a federal

10 question must appear on the face of the complaint, and that the

11 plaintiff may, by eschewing claims based on federal law, choose

12 to have the cause heard in state court." _Id_. at 398-399.

13     "[A] _defendant_ cannot, merely by injecting a federal

14 question into an action that asserts what is plainly a state-law

15 claim, transform the action into one arising under federal law,

16 thereby selecting the forum in which the claim shall be

17 litigated.  If a defendant could do so, the plaintiff would be

18 master of nothing." _Id_. at 399 (emphasis in original).

19 Moreover, "a federal court does not have original jurisdiction

20 over a case in which the complaint presents a state-law cause of

21 action, but also asserts that federal law deprives the defendant

22 of a defense he may raise, or that a federal defense the

23 defendant may raise is not sufficient to defeat the claim."

24 Franchise Tax Board of the State of California v. Construction

25 Laborers Vacation Trust for Southern California, 463 U.S. 1, 10

26 (1983).

27 ///

28 ///

1    Nonetheless, under the "artful pleading" doctrine, there are
2  rare exceptions when a well-pleaded state-law cause of action
3  will be deemed to arise under federal law and support removal.
4  "[C]ourts have used the artful pleading doctrine in: (1) complete
5  preemption cases, and (2) substantial federal question cases.
6  Subsumed within this second category are those cases where the
7  claim filed is necessarily federal in character, or where the
8  right to relief depends on the resolution of a substantial,
9  disputed federal question." Lippitt v. Raymond James Financial
10 Services, Inc., 340 F.3d 1033, 1041-1042 (internal citations
11 omitted).  Nonetheless, "[t]he artful pleading doctrine does not
12 permit defendants to...rewrite a plaintiff's properly pleaded
13 claim in order to remove it to federal court." Rains v.
14 Criterion Systems, Inc., 80 F.3d 339, 344 (9th Cir. 1996).

15   In light of the preceding jurisdictional doctrines,
16 Plaintiffs argue that federal law is implicated only to the
17 extent Defendants raise the FLSA as a defense to Plaintiffs'
18 state law claims.  Defendants, on the other hand, argue that
19 because Plaintiffs' state law claims necessarily turn on the
20 construction of a substantial and disputed aspect of federal law,
21 namely the application of the FLSA to a state's expenditures
22 during a budget impasse, those claims "arise under" federal law.
23 The Court will address each of these arguments in turn.
24 ///
25 ///
26 ///
27 ///
28 ///

**A.   Plaintiffs' Well-Pleaded Complaint Merely Anticipates Defendants' Federal Defense.**

Plaintiffs' Complaint seeks to compel the Controller to comply with state law, except as minimally required by federal law.  Regardless of the parties' individual characterizations of this case, at least that much is clear.

Nevertheless, the parties' subsequent interpretations diverge greatly.  Plaintiffs argue that their Complaint merely anticipates Defendants' FLSA preemption defense and acknowledges that, exclusive of the application of state law, the Controller must comply with the FLSA.  Defendants disagree and characterize Plaintiffs' reference to the FLSA as a request that this Court also mandate Defendants' compliance with federal law.[2]

Defendants support their interpretation by arguing, *inter alia*, that because Plaintiffs seek compliance with the Pay Letter, which itself mandates that the Controller comply with state law, except to the extent preempted by federal law, and which prescribes specific wages to be paid during a budget impasse, allegedly derived from Plaintiffs' interpretation of the FLSA, Plaintiffs seek compliance with the FLSA.

///

///

---

[2] As a threshold matter, the Court notes that Plaintiffs have not pled any actual or imminent violation of the FLSA and allege only that Defendants have refused to comply with state law.  If this Court were to accept Defendants' arguments, it would have to interpret Plaintiffs' Complaint to seek compliance with a law not yet violated, nor in imminent danger of being violated.  Issues of justiciability abound, conjuring questions of ripeness beyond the necessary scope of the current discussion.

1  That simply is not the case.  Plaintiffs repeatedly seek
2  compliance with state law, under which it is allegedly unlawful
3  for the Controller to pay any state employee salaries during a
4  budget impasse.  The wages prescribed in the Pay Letter, rather
5  than mandating compliance with the FLSA, are merely intended to
6  avoid violations of the FLSA, which might occur if compliance
7  with state law is had.  A recognition, whether in a Pay Letter or
8  in a Complaint, of a need to avoid violating federal law does not
9  morph Plaintiffs' Complaint into one raising federal claims.

10      Thus, the issue to be decided with regards to the Pay Letter
11  is not whether Plaintiffs properly interpreted the FLSA in
12  drafting that document.  The issue is whether, under state law,
13  Defendants must comply with the Pay Letter and reduce salaries
14  during a budget impasse.  Plaintiffs seek to compel compliance
15  with the Pay Letter only under state law and claim that
16  Defendants' failure to comply with that letter will violate
17  California law.  Plaintiffs' interpretation of the FLSA within
18  the Pay Letter is simply irrelevant to whether or not state law
19  was violated.

20      Stated another way, compliance, or the lack of compliance,
21  with the FLSA does not directly affect Plaintiffs' state law
22  claims.  Plaintiffs' claims are affected only indirectly via
23  Defendants' argument that they cannot comply with state law
24  because to do so would violate the FLSA.

25  ///
26  ///
27  ///
28  ///

It follows that Plaintiffs' references to the FLSA in the Pay Letter are simply further instances of Plaintiffs' anticipation of Defendants' federal defense to Plaintiffs' state law claims.   This Court does not see a difference between Plaintiffs' anticipation of a defense on the face of the Pay Letter versus on the face of the Complaint.

Based on their interpretation of Plaintiffs' Complaint, Defendants raise numerous practical questions as to how the Controller can feasibly comply with federal law.  However, such questions have no bearing on this Court's current decision. Rather, it is the State's prerogative to determine the manner in which to conform its actions to federal law, and, in this case, Defendants' questions regarding federal compliance do not arise until compliance with state law is had.  Only then, does the FLSA become an issue, and only then would this Court address federal questions.

In other words, California law does not require compliance with the FLSA, nor does interpretation of the FLSA determine the correctness of California law.  The FLSA is implicated in Plaintiffs' Complaint only because Plaintiffs openly acknowledge that, regardless of the application of its own laws, the State must simultaneously tailor its actions to comply with federal law. This is hardly an abstract concept, and is, instead, simply a statement of one of the bedrock principles underlying our system of government, that federal law, under the proper conditions, preempts state law.

///

///

17

1    The Supremacy Clause states, "This Constitution, and the
2  Laws of the United States which shall be made in Pursuance
3  thereof; and all Treaties made, or which shall be made, under the
4  Authority of the United States, shall be the supreme Law of the
5  Land; and the Judges in every State shall be bound thereby, any
6  Thing in the Constitution or Laws of any State to the Contrary
7  notwithstanding."  U.S. Const. Art. VI § 2.  Accordingly, "[t]o
8  secure state-court compliance with, and national uniformity of,
9  federal law, the exercise of jurisdiction by state courts over
10  cases encompassing issues of federal law is subject to two
11  conditions: state courts must interpret and enforce faithfully
12  the 'supreme Law of the Land,' and their decisions are subject to
13  review" in the United States Supreme Court.  McKesson Corp. V.
14  Division of Alcoholic Beverages and Tobacco, Dept. Of Business
15  Regulation of Florida, 496 U.S. 18, 28-30 (1990).

16    The California Supreme Court did not say in White v. Davis,
17  nor do Plaintiffs now plead, that California law rests on an
18  interpretation of the FLSA.  Rather, California's highest court
19  said, and again, Plaintiffs plead, that California law prohibits
20  paying salaries to state employees during a budget impasse.
21  Additionally, in a wholly distinct discussion, mindful of the
22  Supremacy Clause, the California Supreme Court also attempted to
23  provide guidance to the State Controller regarding the minimal
24  requirements of the FLSA.
25  ///
26  ///
27  ///
28  ///

1   Thus, at its most basic, Plaintiffs' Complaint simply states
2   that Defendants must comply with state law except as limited by
3   the supremacy of federal law.  Plaintiffs' statement "except as
4   minimally required by the FLSA" is mere surplusage because it
5   simply reiterates one of the constitutional principles underlying
6   every case filed in every court, that, under the supremacy
7   clause, when conditions are right, applicable federal law trumps
8   that of the states.
9   The application of the supremacy clause is a fundamental
10  principle of law, not an allegation that must be proven.  Whether
11  or not a plaintiff acknowledges in his pleading that his state
12  law claims are subject to the limits imposed by federal law
13  simply has no bearing on the jurisdiction of this Court.  Rather,
14  the principles embodied in the supremacy clause are inherent in
15  every complaint, in every decision of this and every court.  It
16  follows that Plaintiffs need not, as a basis for their claims,
17  prove that those claims are <u>not</u> preempted.  Rather, it is the job
18  of Defendants in putting on their defense, to show the opposite.
19  <u>See</u> <u>E. & J. Gallo Winery v. Encana Energy Services, Inc.</u>, 2008 WL
20  2489887, *5 (E.D. Cal.) ("'[A]n affirmative defense, under the
21  meaning of Federal Rule of Civil Procedure 8(c), is a defense
22  that does not negate the elements of the plaintiff's claim, but
23  instead precludes liability even if all of the elements of the
24  plaintiff's claim are proven.'"), quoting <u>Roberge v. Hannah</u>
25  <u>Marine Corp.</u>, 1997 WL 4683330 *3 (6th Cir. 1997).
26  ///
27  ///
28  ///

1  Finally, even had Plaintiffs ignored the FLSA in their Complaint,

2  the Supremacy Clause would still be implicated, and Defendants

3  would still have every right to plead their inability to

4  simultaneously comply with both state and federal law.  That

5  alleged inability constitutes a defense.

6      Notably, if the acknowledgment of the supremacy of federal

7  law was sufficient to open the door to federal jurisdiction, then

8  rare would be the case that could not be brought in federal

9  court.  Any state law claim that involved state issues even

10  arguably preempted by federal law could be viewed as raising a

11  federal question.  Thus, despite decades-old rules to the

12  contrary, by anticipating a preemption defense, plaintiffs could

13  hale an unwilling defendant into federal court in a multitude of

14  inappropriate cases.[3]

15      Accordingly, by engaging in the preceding analysis, this

16  Court has simply navigated an alternative path to reach the well-

17  established principle that a federal defense, even if anticipated

18  on the face of a plaintiffs' complaint, does not create federal

19  question jurisdiction.  <u>Caterpillar</u>, 482 U.S. at 393.

20  ///

21  ///

22  ///

23

24      [3] Additionally, as Defendants themselves point out in their
   Opposition, under the "artful pleading" exception to the "well-
25  pleaded complaint" rule, this Court would be unable to accept the
   absence of such allegations as determinative of a lack of
26  jurisdiction.  See Opposition, 11 n.3.  Thus, if this Court
   adopted Defendants' view, that the FLSA issues are indeed central
27  to Plaintiffs' state law claims, such would be the case in any
   complaint alleging state law claims that even speculatively
28  invoked the principles of the supremacy clause.

1   Thus, stripping this case of its cloak of complexity bares the

2   simple fact that if this Court accepted Defendants'

3   interpretation of Plaintiffs' Complaint, it would be forced to

4   turn a blind eye to over a century's worth of Supreme Court

5   precedent.  That the Court will not do, and in keeping with that

6   precedent, this Court must remand.

7        This Court's decision is strongly supported by the Supreme

8   Court's decision in Franchise Tax Board, *supra* at 13.  In that

9   case, the California Franchise Tax Board ("Tax Board") filed suit

10  against Construction Laborers Vacation Trust for Southern

11  California ("CLVT"), pursuant to California Revenue and Tax Code

12  § 18817, for failing to comply with three tax levies.  Id. at 4-

13  7.  The Tax Board also sought declaratory relief under the

14  California Declaratory Judgment Act stating, "[t]here was at the

15  time of the levies alleged above and continues to be an actual

16  controversy between the parties concerning their respective legal

17  rights and duties.  The Board contends that [CLVT is] obligated

18  and required by law to pay over to the Board all amounts

19  held...in favor of the Board's delinquent taxpayers.  On the

20  other hand, defendants contend that section 514 of [the

21  Employment Retirement Income Security Act of 1974 ("ERISA"), 29

22  U.S.C. §§ 1001 et seq.] preempts state law and that the trustees

23  lack the power to honor the levies made upon them by the State of

24  California."  Id. at 6.  The Tax Board alleged Defendants would

25  continue to disregard the tax levies, and sought "a

26  declaration...of the parties' respective rights...to fully and

27  finally resolve this controversy."  Id. at 7.  Asserting federal

28  jurisdiction, CLVT removed the case to federal court.

21

1    According to the Supreme Court, "original federal

2 jurisdiction is unavailable unless it appears that some

3 substantial, disputed question of federal law is a necessary

4 element of one of the well-pleaded state claims, or that one or

5 the other claim is 'really' one of federal law."  Id. at 13.

6 "For many cases in which federal law becomes relevant only

7 insofar as it sets bounds for the operation of state authority,

8 the well-pleaded complaint rule makes sense as a quick rule of

9 thumb."  Id. at 11.  "The rule, however, may produce awkward

10 results, especially in cases in which neither the obligation

11 created by state law nor the defendant's factual failure to

12 comply are in dispute, and both parties admit that the only

13 question for decision is raised by a federal preemption defense.

14 Nevertheless, it has been correctly understood to apply in such

15 situations."  Id. at 12.

16    Applying those rules, the Supreme Court determined that it

17 lacked jurisdiction over the Tax Board's state law claims because

18 "California law establishes a set of conditions, without

19 reference to federal law, under which a tax levy may be enforced;

20 federal law becomes relevant only by way of a defense to an

21 obligation created entirely by state law, and then only if

22 appellant has made out a valid claim for relief under state law."

23 Id. at 13.

24 ///

25 ///

26 ///

27 ///

28 ///

1    The same is true here.  The California Supreme Court in
2  White v. Davis made no reference to federal law in analyzing the
3  application of state law.  Rather, that Court raised the FLSA in
4  a distinct and separate discussion intended to provide guidance
5  to the Controller as to the technical requirements of FLSA
6  compliance during a budget impasse.

7    In the current case, Plaintiffs have pled only state law
8  causes of action.  Nothing in Plaintiffs' Complaint leads this
9  Court to believe that Plaintiffs' state law claims turn on a
10  construction of federal law or that the application of federal
11  law is relevant to a determination of whether that state law has
12  been complied with or violated.  Rather, in order for this Court
13  to reach any issues under the FLSA, Plaintiffs must first make
14  out a valid claim under state law, specifically that California
15  law prohibits paying state employee salaries absent an
16  appropriation.  No matter how remote the possibility, if this
17  Court were to reject Plaintiffs' claims and to determine that
18  state law mandates the payment of salaries during a budget
19  impasse, application of the FLSA would be irrelevant.

20    Finally, Defendants do not, indeed cannot, argue that
21  application of the FLSA is necessary to a determination of
22  Plaintiffs' claims under state law.  Defendants simply argue
23  that, by way of their Pay Letter, Plaintiffs seek compliance with
24  federal law.  As stated above, that is not the case.  Plaintiffs
25  do not contend that compliance with the FLSA is required to avoid
26  a violation of California law, nor do Plaintiffs contend that a
27  violation of the FLSA will result in a violation of California
28  law.

Plaintiffs argue only that Defendants must be compelled to comply with the Pay Letter because a failure to so comply will violate California law.  This Court need not interpret the FLSA to answer that question.  Rather, federal law arises only as a "defense to an obligation created entirely by state law" because Defendants claim that the FLSA prevents their

Defendants point out that, if forced to comply with state law and the Pay Letter, numerous issues concerning the technical requirements of the FLSA will arise.  Defendants are surely correct.  A multitude of unanswered questions abound as to how the FLSA should be applied to state expenditures during a budget impasse.  Again, however, "since 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue."  Id. at 14.  Thus, despite the existence of unanswered questions raised by the application of the FLSA to state expenditures during a budget impasse, because those questions are not implicated on the face of Plaintiffs' Well-Pleaded Complaint, this Court lacks jurisdiction over Plaintiffs' claims.

Additionally, even more indicative of the strength of the well-pleaded complaint doctrine is the Supreme Court's disposition of the Tax Board's declaratory relief claim.  That Court stated, "[w]hereas the question of federal preemption is relevant to appellant's first cause of action only as a potential defense, it is a necessary element of the declaratory judgment claim."  Id.

1    Under their second cause of action, those plaintiffs sought
2    a declaration of the parties' respective rights and duties, and
3    the only question actually in dispute concerned "the rights and
4    duties of CLVT and its trustees under ERISA." Id. The Supreme
5    Court noted that "[n]ot only does appellant's request for a
6    declaratory judgment under California law clearly encompass
7    questions governed by ERISA, but appellant's complaint identifies
8    no other questions as a subject of controversy between the
9    parties." Id. Therefore, that Court acknowledged that "it [was]
10   clear on the face of its well-pleaded complaint that appellant
11   may not obtain the relief it seeks in its second cause of
12   action...without a construction of ERISA and/or an adjudication
13   of its preemptive effect and constitutionality - all questions of
14   federal law." Id.

15   Nevertheless, the Court proceeded to rely on its prior
16   decision in Skelly Oil Co. v. Phillips Petroleum Co., 399 U.S.
17   667 (1950), which "has come to stand for the proposition that
18   'if, but for the availability of the declaratory judgment
19   procedure, the federal claim would arise only as a defense to a
20   state created action, jurisdiction is lacking.'" Id. at 16. The
21   Court extended that analysis to cases where, as here, a plaintiff
22   raises a declaratory relief action under state law. Id. at 16,
23   18-19.

24   The Court then asked, "If CLVT could have sought an
25   injunction under ERISA against application to it of state
26   regulations that require acts inconsistent with ERISA, does a
27   declaratory judgment suit by the State 'arise under' federal
28   law?" Id. at 20.

25

Despite the fact that the Tax Board had requested a declaration of both parties' rights, and despite the fact that the only disputed issue arose under federal law, that Court answered in the negative.  Id.  The Court reasoned:

> There are good reasons why the federal courts should not entertain suits by the States to declare the validity of their regulations despite possibly conflicting federal law.  States are not significantly prejudiced by an inability to come to federal court for a declaratory judgment in advance of a possible injunctive suit by a person subject to federal regulation.  They have a variety of means by which they can enforce their own laws in their own courts, and they do not suffer if the preemption questions such enforcement may raise are tested there.  The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties...as to whom Congress presumably determined that a right to enter federal court was necessary to further the statute's purposes. It did not go so far as to provide that any suit against such parties must also be brought in federal court when they themselves did not choose to sue.  The situation presented by a State's suit for a declaration of the validity of state law is sufficiently removed from the spirit of necessity and careful limitation of district court jurisdiction that informed our statutory interpretation in Skelly Oil and Gully to convince us that, until Congress informs us otherwise, such a suit is not within the original jurisdiction of the United States district courts.  Accordingly, the same suit brought originally in state court is not removable either.

Id. at 21-22.

The same logic applies here to dispose of Plaintiffs' declaratory relief claims.  The question in this case is, "[i]f Defendants could have sought an injunction under the FLSA against application to it of state regulations that require acts inconsistent with the FLSA, does a declaratory judgment suit by the State arise under federal law?"

///

///

1  In keeping with Franchise Tax Board, despite Plaintiffs' request
2  for a declaration "that the Controller is legally required under
3  state law to refrain from paying state employee salaries in the
4  absence of a budget or other available appropriation, except as
5  minimally required by the FLSA," and despite the fact that
6  application of the FLSA quite possibly presents the only disputed
7  issue in this case, the answer here must be "No."

8      The Supreme Court decision in Caterpillar, Inc. v. Williams,
9  482 U.S. 386 (1987), further supports this Court's position.
10 Defendants disagree stating that "unlike the situation in
11 Caterpillar, the DPA's complaint on its face seeks compliance
12 with the FLSA, thus directly requiring resolution of the meaning
13 and interpretation of federal law in order to justify the relief
14 requested."  Opposition, 12:4-6.

15     In Caterpillar, the plaintiffs filed state court claims for
16 breach of employment contracts against the defendant,
17 Caterpillar, in state court.  Id. at 390.  Caterpillar removed to
18 federal court and argued that federal jurisdiction was proper
19 "because any individual employment contracts made with
20 [defendants] 'were, as a matter of federal substantive labor law,
21 merged into and superseded by the ...collective bargaining
22 agreements,'" which were governed exclusively by federal law.
23 Id.

24     Thus, the parties' dispute in that case arose from an
25 exception to the well-pleaded complaint rule, known as the
26 "complete pre-emption" doctrine.  Id. at 393.
27 ///
28 ///

27

"On occasion, the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'  Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."  Id., quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987).  Accordingly, the Supreme Court has determined that when "'[t]he heart of the [state-law] complaint [is] a ... clause in the collective bargaining agreement,' that complaint arises under federal law."  Id. at 394, quoting Avco Corp. v. Machinists, 390 U.S. 557, 558 (1968).

Pursuant to the preceding rules, Caterpillar argued that the plaintiffs' claims were completely preempted by § 301, thereby conferring federal question jurisdiction over the case. Caterpillar further asserted "that § 301 pre-empts a state-law claim even when the employer raises only a defense that requires a court to interpret or apply a collective-bargaining agreement." Id. at 398.

The Supreme Court disagreed because the plaintiffs had challenged only the individual employment contracts alleged to have arisen prior to any coverage under the bargaining agreements, and because, while plaintiffs could have brought actions under § 301 based on their rights as they existed under the later bargaining agreements, they did not.  Id. at 394.

///

///

28

1    Moreover, that Court stated "[i]t is true that when a

2    defense to a state claim is based on the terms of a collective-

3    bargaining agreement, the state court will have to interpret that

4    agreement to decide whether the state claim survives.  But the

5    presence of a federal question, even a § 301 question, in a

6    defensive argument does not overcome the paramount policies

7    embodied in the well-pleaded complaint rule - that the plaintiff

8    is the master of the complaint, that a federal question must

9    appear on the face of the cause heard in state court.  When a

10   plaintiff invokes a right created by a collective-bargaining

11   agreement, the plaintiff has <u>chosen</u> to plead what we have held

12   must be regarded as a federal claim, and removal is at the

13   defendants option.  But a <u>defendant</u> cannot, merely by injecting a

14   federal question into an action that asserts what is plainly a

15   state-law claim, transform the action into one arising under

16   federal law."  <u>Id</u>. at 398-399 (emphasis in original).  Therefore,

17   despite the fact that the defense asserted to plaintiffs' state

18   law claims was based on § 301, an area of the law that

19   "completely pre-empted" state law claims, such defense was still

20   insufficient to raise federal question jurisdiction.

21   The <u>Caterpillar</u> Court's refusal to find a federal question

22   when federal law was implicated as a defense, even when the

23   applicable body of federal law "completely preempted" state law

24   evidences the strength of the well-pleaded complaint doctrine.

25   The case before this Court is not so strong.

26   ///

27   ///

28   ///

1    Defendants here do not argue that the FLSA completely
2   preempts state law.  Defendants merely argue that the FLSA
3   allegations do not constitute a defense because, on the face of
4   their Complaint, Plaintiffs seek to compel Defendants' compliance
5   with the federal law.  The fallacy in this argument, as discussed
6   above, is that Plaintiffs raise only state law claims in their
7   pleading.  The FLSA is implicated only because Plaintiffs
8   acknowledged the supremacy of federal law and limited their state
9   claims to the extent minimally required by the FLSA.  Though this
10  Court may ultimately have to interpret federal law in order to
11  determine whether Plaintiffs' state claims survive, on the face
12  of their Complaint, Plaintiffs simply anticipated that the
13  Controller would raise a federal preemption defense to those
14  well-pleaded state claims.  Because a federal defense, even if
15  anticipated in the Complaint, is insufficient to raise a federal
16  question within the meaning of 28 U.S.C. § 1331, this Court lacks
17  jurisdiction over this case and must remand.

18  ───────────────

19       **B.   Plaintiffs' Right to Relief Does Not Depend on the
              Resolution of a Substantial, Disputed Federal Question[4]**
20

21    Defendants argue that Plaintiffs' claims turn on a
22  construction of federal law.  The crux of Defendants' argument
23  is, again, that Plaintiffs have allegedly sought to compel
24  compliance with federal law.
25  ///

26  ─────────────────────
27       [4] While artful pleading can be found in other circumstances,
     such as complete preemption and federal claim preclusion, the
     only question before this Court is whether Plaintiffs' state law
28   claims turn on the requisite construction of federal law.

30

Defendants allege that Plaintiffs' Complaint "explicitly references the FLSA and the federal minimum wage throughout and seeks to compel the Controller 'to comply with federal labor law' and to cut State employee salary payments to the minimum level required by the FLSA.'" Opposition, 9:13-16. Even if that were the case, the Court's above discussion disposes of the viability of that argument.  Nevertheless, the magnitude of the interests at stake in this case warrant further discussion.

The Supreme Court has held that "a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law." Franchise Tax Board, 463 U.S. at 9, citing Smith v. Kansas City Title & Trust Co., 255 U.S. 180 (1921); Hopkins v. Walker, 244 U.S. 486 (1917).  In dicta that Court elaborated stating, "Leading commentators have suggested that for purposes of § 1331 an action 'arises under' federal law 'if in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law.'" Id., citing P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 889 (2d ed. 1973); T.B. Harms Co. v. Eliscu, 339 F.2d 823 (2d Cir. 1964).  Ultimately, as stated above, "original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that...the...claim is 'really' one of federal law."  Id. at 13.

///

31

1    Defendants argue that "resolution of issues of federal law
2    are necessary in order to provide [Plaintiffs] with the relief
3    they seek."  Defendants also point out that "although it is not a
4    necessary condition for federal question jurisdiction,
5    [Plaintiffs'] complaint explicitly refers to the [FLSA] as
6    delineating part of the law with which...the Controller must
7    comply."  Opposition, 2:21-24.

8    Furthermore, Defendants state that "entitlement to the
9    relief sought in its complaint turns on a determination of
10   (1) which state employees are subject to the FLSA and which are
11   not, and (2) the amount, timing, and manner of payment that the
12   State of California must under federal law make to those
13   employees subject to the FLSA. [Plaintiffs'] attempts to
14   characterize [their] claims as wholly state-law claims
15   constitute[s] a transparent effort to avoid the obvious – namely,
16   that interpretation of the FLSA is required in order to determine
17   [Plaintiffs'] right to relief in this case."  Opposition, 6:24-
18   7:3.

19   Defendants premise their argument in part on the Pay Letter,
20   which provided detailed instructions to the Controller regarding
21   the necessary steps to comply with state law, while
22   simultaneously avoiding a violation of federal law.  Defendants
23   go on to state, "[A] straightforward reading of [Plaintiffs']
24   complaint, along with...the Executive Order and the other
25   documents on which it is based, shows that the relief requested
26   by [Plaintiffs] necessarily would be based on the construction
27   and application of the FLSA.
28   ///

Specifically, a determination as to whether the Controller should comply with the...Pay Letter 08-23, which categorizes State employees according to whether they are subject to the FLSA and then orders that those employees' paid compensation be cut to the minimum level allegedly permitted by the FLSA, clearly turns on the interpretation and application of federal law."

Defendants further contend that the FLSA issues raised are "actually disputed and substantial." Defendants are especially concerned as to "whether the state would violate the FLSA by failing to pay full regular straight-time wages at the end of each pay period to non-exempt employees who worked unanticipated overtime during that pay period." Opposition, 10:19-11:2.

Nevertheless, these issues, while undoubtedly substantial and disputed, are not implicated on the face of Plaintiffs' Complaint. Plaintiffs allege only that Defendants have not complied with California law and seek to compel that compliance. Plaintiffs make none of the same claims with respect to federal law. In fact, it appears undisputed that Defendants have not violated the FLSA and that such a violation is merely conjectural until Defendants have complied, or made some effort to comply, with state law. Until such time, the FLSA raises speculative issues implicated only in defense of Defendants' alleged failure to comply with state law and, consequently, there is no "federal question."

///
///
///
///

33

1    Moreover, Plaintiffs' state law claims are wholly
2    independent of federal law.  While the State of California may
3    choose to interpret the FLSA in determining which of its
4    employees are entitled to be paid and by how much, nothing in
5    Plaintiffs' Complaint shows that Plaintiffs' relief under their
6    state law causes of action turns on the application of those
7    federal rules.

8    Thus, Defendants' argument that this Court must determine
9    that the Pay Letter is valid under the FLSA in order for
10   Plaintiffs to obtain the relief sought cannot stand.  Except by
11   way of a defense, this Court need not determine whether the FLSA
12   was properly applied in that letter in order for Plaintiffs to
13   show whether Defendants, under state law, must comply with that
14   document.  Again, California law does not require compliance with
15   the FLSA.  The need to comply with federal law is instead derived
16   from the supremacy clause.

17   Likewise, the White v. Davis Court did not discuss the FLSA
18   in determining whether state constitutional and statutory law was
19   violated when the Controller paid state employees' salaries
20   absent an appropriation.  Rather, that court interpreted federal
21   law, not in its resolution of California law, but to provide
22   guidance to the Controller as to how to comply with that separate
23   body of law.  Accordingly, this Court lacks jurisdiction over
24   Plaintiffs' claims, and while this Court's lack of jurisdiction
25   may be the result of "more history than logic," it is still the
26   proper result based on over one-hundred years of precedent.
27   Franchise Tax Board, 463 U.S. at 4.
28   ///

34

1    Nevertheless, Defendants contend that "federal question

2   jurisdiction exists here *a fortiori*" under Grable & Sons Metal

3   Products, Inc., v. Darue Engineering & Manufacturing, 545 U.S.

4   308 (2005).  Opposition, 13:11.  According to Defendants,

5   jurisdiction derives from the fact that Plaintiffs' "[C]omplaint

6   actually discloses on its face the federal issue at the heart of

7   this case – i.e., the issues of what wages and benefits are due

8   to various employees of the State of California under the FLSA

9   during the State budget impasse."  Id. at 13:11-14.  As

10  previously discussed, the fact that a federal issue is implicated

11  is not necessarily sufficient to raise a federal question, and

12  Grable is not as helpful to Defendants' argument as they appear

13  to believe.

14    In Grable, the Supreme Court determined that federal

15  question jurisdiction was proper over the plaintiff's state law

16  quiet title action.  545 U.S. at 310.  In that case, the

17  plaintiff argued that the defendant's title was invalid because,

18  prior to seizing the plaintiff's property for sale to the

19  defendant, the Internal Revenue Service ("IRS") had failed to

20  provide the plaintiff with proper notice under 26 U.S.C.

21  § 6335(a).  Id. at 311.

22    The Grable Court stated "the question is, does a state-law

23  claim necessarily raise a stated federal issue, actually disputed

24  and substantial, which a federal forum may entertain without

25  disturbing any congressionally approved balance of federal and

26  state judicial responsibilities."  Id. at 314.  That Court first

27  determined that the breach of federal law was an essential

28  element of the plaintiff's quiet title action.  Id. at 315.

35

1  Such a conclusion is logical because that plaintiff alleged the
2  violation of a federal statute as the basis for his state law
3  claim.

4      Nevertheless, despite plaintiff's allegation that federal
5  law was violated, that Court found that "even when the state
6  action discloses a contested and substantial federal question,
7  the exercise of federal jurisdiction is subject to a possible
8  veto.  For the federal issue will ultimately qualify for a
9  federal forum only if federal jurisdiction is consistent with
10 congressional judgment about the sound division of labor between
11 state and federal courts governing the application of
12 § 1331...Because arising-under jurisdiction to hear a state-law
13 claim always raises the possibility of upsetting the state-
14 federal line drawn (or at least assumed) by Congress, the
15 presence of a disputed federal issue and the ostensible
16 importance of a federal forum are never necessarily dispositive;
17 there must always be an assessment of any disruptive portent in
18 exercising jurisdiction."  Id. at 313-314.

19     The Grable Court concluded that "[t]he meaning of the
20 federal tax provision is an important issue of federal law that
21 sensibly belongs in a federal court.  The Government has a strong
22 interest in the prompt and certain collection of delinquent
23 taxes, and the ability of the IRS to satisfy its claims from the
24 property of delinquents requires clear terms of notice to allow
25 buyers...to satisfy themselves that the Service has touched the
26 bases necessary for good title.

27 ///
28 ///

1   The Government thus has a direct interest in the availability of
2   a federal forum to vindicate its own administrative action, and
3   buyers...may find it valuable to come before judges used to
4   federal tax matters.  Finally, because it will be the rare state
5   title action that raises a contested matter of federal law,
6   federal jurisdiction to resolve genuine disagreement over federal
7   tax title provisions will portend only a microscopic effect on
8   the federal-state division of labor."  Id. at 315 (internal
9   citations and quotations omitted).

10      The case before this Court is inherently different from
11  Grable because none of Plaintiffs' state law claims turn on a
12  violation, or even an application, of federal law.  Most notably
13  lacking in the current case is any alleged violation of a federal
14  law.  While the Grable plaintiff's state-claims were premised on
15  such a violation, no violation is remotely alleged to have
16  occurred in the current case.  To the contrary, whether
17  Defendants violated, or will violate, the FLSA is not "an
18  essential element" of Plaintiffs' state law claims, and is merely
19  conjectural until compliance with state law is had.

20      Moreover, the success of Plaintiffs' state law claims does
21  not rise or fall based on an interpretation of federal law.
22  Rather, the FLSA is implicated only to the extent that Plaintiffs
23  acknowledged the supremacy of federal law and to the extent that
24  Defendants argue they are unable to simultaneously comply with
25  both bodies of law.  As discussed above, Defendants' argument is
26  a defense.  Thus, Plaintiffs' current claims do not fit within
27  the parameters of Grable and this Court lacks jurisdiction over
28  this case.

1    Finally, even if this Court agreed with Defendants, if ever
2    jurisdiction should be vetoed, it would be here.  First and
3    foremost, this Court does not take lightly the fact that in this
4    case a state is seeking resolution of what is essentially an
5    internal dispute in federal court.  Furthermore, if this Court
6    determines that Plaintiffs' state law claims warrant federal
7    jurisdiction because, under the supremacy clause, Plaintiffs'
8    allegedly seek compliance with a federal law superseding those
9    claims, the floodgates surely will open.  A plaintiff will be
10   free to file in federal court any suit raising purely state law
11   claims as long as the plaintiff seeks compliance with a federal
12   body of law that may or may not preempt those state claims.
13   Moreover, in light of the artful pleading doctrine, a defendant
14   would be able to remove those same claims to federal court even
15   where, as here, federal issues are only implicated in defense of
16   the state claims.  Such an outcome runs contrary to over one
17   century of precedent, and forecloses a finding of jurisdiction in
18   this Court.

19   Further supporting this Court's decision is the 2006 Supreme
20   Court case, Empire Healthchoice Assurance, Inc. v. McVeigh, 547
21   U.S. 677 (2006).  That case originated when the administrator of
22   an estate filed a state-court tort action to recover for injuries
23   that allegedly led to the death of the decedent, a federal
24   employee.  Id. at 687.  Empire administered the plan that
25   provided medical care to federal employees.  Id. at 687.
26   ///
27   ///
28   ///

1  Such plans fell within the purview of the Federal Employees

2  Health Benefits Act of 1959 (FEHBA), 5 U.S.C § 8901 et seq.,

3  which established "a comprehensive program of health insurance

4  for federal employees," contained a "preemption

5  clause...displacing state law on issues relating to 'coverage or

6  benefits', but contained "no provision addressing...reimbursement

7  rights of carriers." Id. at 682.

8      Upon learning the administrator had settled her state

9  action, Empire filed suit in federal court for reimbursement of

10 funds it had previously paid for the decedent's medical care.

11 Id. at 687-688. Despite the fact that the FEHBA provided for

12 federal jurisdiction only over actions in which the United States

13 was a defendant, relying on Grable, Empire alleged, *inter alia*,

14 that, federal law was "a necessary element of [its] claim" for

15 reimbursement. Id. at 699. The Supreme Court disagreed.

16     The Empire Court interpreted Grable as extending

17 jurisdiction to a "special and small category" of cases. Id. at

18 699. That Court distinguished Grable on the grounds that the

19 prior case "centered on the action of a federal agency (IRS) and

20 its compatibility with a federal statute, the question qualified

21 as 'substantial,' and its resolution was both dispositive of the

22 case and would be controlling in numerous other cases." Id. at

23 700, citing Grable, 545 U.S. at 313. Moreover, according to the

24 Empire Court, "Grable presented a nearly pure issue of law, one

25 that could be settled once and for all and thereafter would

26 govern numerous tax sale cases." Id. (internal quotations and

27 citations omitted).

28 ///

39

1        The Empire case, to the contrary, involved a dispute arising

2   out of the settlement of a state court personal injury action and

3   involved the resolution of "fact-bound and situation-specific"

4   issues, such as whether "there were overcharges or duplicative

5   charges by care providers" and "whether particular services were

6   properly attributed to the injuries" caused by the accident

7   underlying the state court litigation.  Id. at 700-701.

8        Here, too, Plaintiffs have no federal cause of action

9   against Defendants for an FLSA violation because none has

10  occurred or will potentially occur until compliance with state

11  law is had.  Furthermore, in this case, as in Empire, none of

12  Plaintiffs' allegations turn on the action or inaction of a

13  federal agency.  Quite the opposite, this Court is presented with

14  a controversy arising out of an internal conflict between two

15  state agencies.  Additionally, the application of the FLSA to the

16  payment of state employee salaries during a budget impasse

17  clearly involves factual questions of great breadth and depth, as

18  is evidenced by the variety of issues Defendants raise in support

19  of their argument for jurisdiction.  Thus, even if this Court

20  were inclined to agree with Defendants' argument that the FLSA

21  presents an issue imbedded in Plaintiff's Complaint, this Court

22  does not have jurisdiction under Grable or Empire.

23       Finally, though a bit anti-climactic, this Court will

24  address Plaintiffs' argument that their claims belong in state

25  court based on the Supreme Court opinion in Merrell Dow

26  Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804 (1986).

27  ///

28  ///

In that case, in two separate state actions later consolidated, plaintiffs sought remedies under state law for birth defects suffered by children as a result of their mothers' ingestion during pregnancy of a drug manufactured by the defendant.  Id. at 805.  In furtherance of their tort claims, plaintiffs alleged, *inter alia*, that the drug was "misbranded," which constituted a violation of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq.  Id. at 805-806.

Despite the fact that no private federal remedy existed for the FDCA violations underlying Plaintiffs' state claims, the defendant removed to federal court on the basis of federal question jurisdiction.  Id. at 805-806, 810-811.  Defendant argued, *inter alia*, that, regardless of the lack of a federal cause of action, under Franchise Tax Board, the Court had jurisdiction because "it appear[ed] that some substantial, disputed question of federal law [was] a necessary element of one of the well-pleaded state claims."  Id. at 813, quoting Franchise Tax Board, 463 U.S. at 13.

The Supreme Court rejected defendant's argument stating, "Far from creating some kind of automatic test, Franchise Tax Board thus candidly recognized the need for careful judgments about the exercise of federal judicial power in an area of uncertain jurisdiction.  Given the significance of the assumed congressional determination to preclude federal private remedies, the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system...
///

41

We simply conclude that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial'" to confer federal-question jurisdiction." Id. at 814.

This case differs from Merrell Dow, and the potential for jurisdiction is even more remote here, because an FLSA violation is simply not alleged in furtherance of Plaintiffs' state law claims.  An interpretation of the FLSA is not necessary to any element of Plaintiffs' state causes of action, which are premised on the California Constitution and state statutes.  Accordingly, this Court concludes that Plaintiffs' well-pleaded complaint does not state claims "arising under" federal law as required under § 1331.  This Court lacks jurisdiction over Plaintiffs' causes of action and must remand to the Superior Court.

## III. DEFENDANTS' JUDICIAL ECONOMY ARGUMENTS ARE IRRELEVANT TO WHETHER THIS COURT HAS JURISDICTION

In an appeal to this Court's interest in judicial economy, it was pointed out during oral argument that, should this case be remanded to, and decided unfavorably in, state court, Intervenors will, after much delay, return to this Court raising the same arguments.  Ignoring the fact that this Court has no jurisdiction over an appeal from a state court, this Court's opinion regarding the efficiency of such a scenario is irrelevant.

///

///

Under Defendants' argument, the parties in the future litigation would be reversed, Defendants would be proceeding as Plaintiffs, and Defendants' Complaint would determine the appropriateness of their chosen forum.  Defendants' threat of some hypothetical future litigation is not sufficient to bestow jurisdiction on this Court, and despite their efforts, Defendants cannot escape the fact that Plaintiffs are the masters of their own Complaint.[5]

---

[5] In light of this argument, a final practical point bears mentioning as well.  As stated, this case presents the unusual set of facts in which one arm of a state has sued a sister arm of the same state, and the defendant agency has then joined in removal to federal court.  Though, by all accounts this action constitutes a suit against a state, because this Court lacks jurisdiction over Plaintiffs' claims, it need not address whether the State of California is immune from suit in federal court.  Such a determination would be necessary under Defendants' predicted scenario.

Assuming without deciding that sovereign immunity applies to litigation against a state initiated by another arm of the same state, it is an open question whether removal to federal court by the defendant agency constitutes a waiver of that immunity.  See Lapides v. Board of Regents of the University System of Georgia, 535 U.S. 613, 619 (2002) (observing that the state had not "pointed to any special feature, either of removal or of [that] case, that would justify taking the case out from under the general rule" that removal constitutes a waiver of immunity).  This Court is cognizant of the White v. Davis court's reliance on the Ninth Circuit opinion in Biggs v. Wilson, 1 F.3d 1537 (9th Cir. 1993), in which the federal court addressed FLSA issues in an action against California's Controller.  Such a judgment would appear to support the conclusion that sovereign immunity did not apply.

However, Biggs was decided prior to the Supreme Court's decision in Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996), which overruled its prior decision in Pennsylvania v. Union Gas Company, 491 U.S. 1 (1989), and obviated the ability of Congress to abrogate state immunity pursuant to the Commerce Clause.  The Ninth Circuit has since stated, "Like the statute at issue in Union Gas, the FLSA was passed pursuant to the Commerce Clause.  Therefore, in the absence of a waiver by [the State] of its Eleventh Amendment immunity, federal courts lack jurisdiction to review the claims by the Appellants."  Quillin v. State of Oregon, 127 F.3d 1136, 1138 (1997) (internal citation omitted);

(continued...)

**CONCLUSION**

Accordingly, Plaintiffs' Motion to Remand is GRANTED. Consequently, both Motions to Change Venue and the Motion to Dismiss are DENIED as moot.  The Clerk of the Court is directed to close the file.

IT IS SO ORDERED.

Dated: November 6, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[5](...continued)
see also Thompson v. Regents of University of California, 206 Fed. Appx. 714, 715 (9th Cir. 2006) (not published in the Federal Reporter).

The Court need not decide whether such a waiver occurred here.  It notes, however, that though "a state that voluntarily brings suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal to a federal court of competent jurisdiction," and though the Supreme Court has found removal by a state defendant sufficient to waive sovereign immunity, it remains unclear whether an arm of a State can hale an unwilling arm of the same state into federal court simply by removing a state action.  California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 848 (9th Cir. 2004); Lapides, 535 U.S. at 624 (2002) (limiting its holding to "state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings").  Since a state's waiver of immunity must be unequivocally expressed, it is entirely possible that the state-Plaintiffs' Motion to Remand in this case could preclude a finding that the state-Defendants have so waived their immunity. See PennhuPst State School & Hospital v. Halderman, 465 U.S. 89, 99 (1984); see also Lapides, 535 U.S. at 621.  Nevertheless, despite its import, this is a question for another day.